MARKS & KLEIN
Andrew P. Bleiman, Esq.
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062
Telephone:  (312) 206-5162
E-mail:  andrew@marksklein.com
(*pro hac vice* application to be submitted)

LEE HIGH, LTD.
Cecilia Lee, Esq.
Nevada Bar No. 3344
Elizabeth High, Esq.
Nevada Bar No. 10082
448 Ridge Street
Reno, Nevada 89501
Telephone:  775.499.5712
Email: c.lee@lee-high.com
Email: e.high@lee-high.com

Attorneys for Plaintiff HP Tuners, LLC

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company, | Case No. |
| Plaintiff, | **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |
| vs. | |
| KENNETH CANNATA, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff HP TUNERS, LLC, a Nevada limited liability company ("HPT" or "Plaintiff"), by its attorneys, Andrew P. Bleiman, Esq., Marks & Klein, and Cecilia Lee, Esq. and Elizabeth High, Esq., Lee High, Ltd. as local counsel, for its Complaint for Injunctive Relief and Damages ("Complaint") against Defendant KENNETH CANNATA ("Defendant"), states as follows:

## NATURE OF THE ACTION

1.      Defendant is a former member and one of the founders of Plaintiff HPT.

2.      However, in early 2016, while still a member of HPT, Defendant wrongfully shared, provided and disseminated highly confidential and proprietary intellectual property of HPT to a competitor, including its most valuable piece of intellectual property, and began consulting or providing services for the competitor shortly after negotiations commenced regarding a purchase of Defendant's membership interest in HPT.

3.      At all times during the negotiations leading up to the purchase of Defendant's membership interest and subsequent thereto, Defendant concealed and failed to disclose that he had shared, provided and disseminated HPT's intellectual property to a competitor or that he was consulting or providing services for the competitive business.  In fact, it was not until August 2018 when Defendant finally disclosed that he provided a Flash Drive storage device containing HPT's highly confidential and proprietary intellectual property to a competitor.

4.      Notwithstanding his duties as a member of HPT, Defendant wrongfully, improperly and unlawfully:

a.  used, misappropriated, disclosed and disseminated HPT's confidential and proprietary intellectual property, including but not limited to HPT's proprietary source code, key generator program, hardware design documents, hardware schematics and other proprietary files, documents and information to one or more third parties; and

b.  worked with, consulted for, assisted, developed products and/or software with and/or was otherwise communicating with competitors of HPT for the purpose of competing with the business of HPT; and

c.  competed with HPT in connection with a competitive business.

5.      Here, as a proximate result of Defendant's fraud and concealment of his breaches of fiduciary duties, HPT agreed to pay Defendant $6,800,000.00 for his interest in HPT and affiliated entities on October 20, 2016 pursuant to a Membership Interest Purchase Agreement (the "Purchase Agreement").  But for Defendant's fraud and concealment of his breaches of fiduciary duties, HPT would not have agreed to purchase Defendant's membership interest for more than

the book value of Defendant's one-third interest in HPT.

6.     In addition, since the execution of the Purchase Agreement, Defendant has materially breached the provisions of the Purchase Agreement by, among other things:

    a.  possessing HPT's confidential and proprietary intellectual property since the execution of the Purchase Agreement;

    b.  using, incorporating and misappropriating intellectual property owned by HPT into hardware products and firmware that he is developing for himself and/or third parties; and

    c.  competing with HPT in connection with a competitive business owned in part by his spouse, Bobbie Cannata.

7.     Defendant has misappropriated and wrongfully possesses HPT's trade secrets and proprietary information for his own benefit in violation of the terms of the Purchase Agreement and state and federal statutory law.

8.     This is an action against Defendant for: (i) breach of fiduciary duty; (ii) fraud; (iii) violation of the Computer Fraud and Abuse Act ("CFAA") arising under 18 U.S.C. §1030; (iv) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836 et seq.; (v) violation of the Copyright Act ("DMCA") arising under 17 U.S.C. § 1201(a)(1)(A); (vi) misappropriation of trade secrets arising under the Nevada Uniform Trade Secrets Act, NRS Chapter 600A; (vii) violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 et seq.; (viii) unfair competition under the Nevada Deceptive Trade Practices Act, NRS Chapter 598; (ix) unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.; (x) breach of contract; (xi) tortious interference with prospective economic relations; and (xii) conversion.

## PARTIES

9.     Plaintiff, HPT, is a Nevada limited liability company with its principal place of business in Buffalo Grove, Illinois.

10.     Defendant, Kenneth Cannata, an individual, is a resident of Reno, Nevada.

///

**JURISDICTION AND VENUE**

11.     This Court has subject matter jurisdiction for the CFAA, DTSA and DMCA claims pursuant to 28 U.S.C. §1331.  This Court has supplemental jurisdiction for the state law claims pursuant to 28 U.S.C. §1367.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) in that Defendant is a resident of the state in which the district is located and a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred in this Judicial District.

**BACKGROUND FACTS**

13.     HPT was formed on or about December 31, 2003, as a Nevada limited liability company by Keith Prociuk, Chris Piastri, and Defendant.

14.     At that time, Mr. Prociuk, Mr. Piastri, and Defendant each owned one-third of HPT.

15.     As members of HPT, Mr. Prociuk, Mr. Piastri, and Defendant signed the HP Tuners, LLC Operating Agreement on or about March 25, 2004.  A copy of the Operating Agreement dated March 25, 2004, including the Amendment to HP Tuners, LLC Operating Agreement is attached hereto as Exhibit A and incorporated herein fully by reference.

16.     HPT is a niche business, which provides complete, cost-effective automotive tuning and data acquisition solutions for enthusiasts and professional shops.

17.     HPT's business includes, but is not limited to, computer hardware and software designed for use in custom and/or pre-programmed engine and transmission tuning and calibration applications for automobiles, trucks and other types of vehicles (including but not limited to ATVs, snowmobiles and watercraft) (the "HP Tuners Business").

18.     As a core function of the HP Tuners Business, HPT sells Interfaces (*e.g.* the MPVI) which connect to the onboard computer of a vehicle.

19.     In connection with the Interfaces, as another core function of the HP Tuners Business, HPT sells credits and distributes them via application keys, which are the license mechanism used by customers to tune vehicles.  HPT's credits are generally sold for approximately

$50.00 USD and only HPT has the ability and authority to generate authentic application keys.

20.    HPT has expended significant time, money and resources to develop the HP Tuners Business, and HPT has created methods of business, strategies, programs and technologies which did not exist in the industry prior to HPT's development of the HP Tuners Business.

21.    HPT conducts business worldwide.  Over the years, HPT has invested a great deal of time and money in developing its proprietary products and source code, and in building and growing the HP Tuners Business.

22.    In order for HPT to gain a competitive advantage in the industry, it has cultivated, nurtured and maintained an extensive network of vendors, resellers and customers to which HPT provides its products and offerings.   HPT's network of vendors, resellers and customers is expansive and relies on HPT to ensure that only authorized, authentic products and offerings are available in the marketplace.

23.    HPT invests a substantial amount of money and other resources in developing and maintaining its network of vendors, reseller and customers.

24.    HPT prides itself in catering to the needs of its vendors, resellers and customers and providing authorized, authentic and functional products and offerings, and the most competitive pricing in the industry.

25.    HPT works diligently to create new products and offerings and to quickly and adeptly match its vendors, resellers and customers' needs and requests.

26.    HPT is constantly working to develop its products, source code and offerings, and has devoted substantial time, money and resources to protect its confidential and proprietary information, and to avoid efforts by third parties to pirate HPT's products and offerings.

27.    As a result of HPT's reputation, exceptional service, and diligent development of products and offerings, HPT has developed long-standing relationships with many of its vendors, resellers and customers.

28.    HPT's confidential and proprietary software, source code, license key generator and offerings have been developed and extensively refined by HPT at a substantial cost and effort

1  and constitute confidential information and valuable trade secrets of HPT (collectively, the
2  "Confidential Information").

3       29.    HPT derives economic value from the fact that its Confidential Information is not
4  known outside of HPT's business and is not available through any public records and information
5  sources.  HPT's Confidential Information cannot be independently developed by its competitors
6  without great effort and expense.

7       30.    Recognizing the economic value that it derives from its Confidential Information,
8  as well as the potential value of this information to its competitors, HPT requires that its
9  Confidential Information be kept strictly confidential by its employees and restricts access to this
10 information.  HPT has taken substantial steps and security measures to protect the confidentiality
11 of its Confidential Information, including but not limited to the following:

12       a.  HPT protects access to its Confidential Information through computer passwords;

13       b.  HPT protects to its Confidential Information through hard drive encryption on all
14           employee's computers;

15       c.  HPT protects access to its Confidential Information through sophisticated firewalls;

16       d.  HPT protects distribution of Confidential Information through non-compete and
17           non-disclosure agreements;

18       e.  HPT limits the number of employees having access to its Confidential Information;

19       f.  Employees are given access to HPT's Confidential Information on a "need to
20           know" basis;

21       g.  HPT does not give access to its Confidential Information to non-employees;

22       h.  HPT employees are forbidden from copying, transferring or otherwise duplicating
23           any of HPT's Confidential Information; and

24       i.  HPT requires each employee to return to HPT all Confidential Information when
25           the employee leaves HPT's employ.

26       31.    Furthermore, HPT undertook reasonable measures to maintain the secrecy of its
27  proprietary products, source code, software and offerings, including but not limited to entering

into licensing agreements with protective clauses and installing security measures to prevent others from obtaining access and pirating HPT's confidential and proprietary products, source code, software and offerings.

32.     Prior to January 2016, Mr. Prociuk and Mr. Piastri had become dissatisfied with Defendant's conduct, performance and contributions to HPT.

33.     In or around February 2016, Mr. Prociuk and Mr. Piastri initiated discussions and communications with Defendant concerning the acquisition of Defendant's membership interest in HPT.

34.     Thereafter, extensive negotiations and communications regarding the purchase and sale of Defendant's membership interest in HPT took place.

35.     In connection with those discussions and negotiations, HPT and Defendant began contemplating a transaction through which HPT would purchase the Defendant's membership interest in HPT.

36.     However, unbeknownst to HPT, on March 11, 2016, Defendant (individually and not on behalf of HPT) entered into a Non-Disclosure Agreement ("Syked NDA") with Syked ECU Tuning, Inc., a competitor of HPT.

37.     In connection with the Syked NDA, Defendant, individually, agreed not to disclose any and all information related to Syked ECU Tuning, Inc.

38.     In connection with the Syked NDA, Defendant, individually, and Syked ECU Tuning, Inc. were exploring a business opportunity with each other despite the fact that Defendant was a member of HPT at that time.

39.     Defendant concealed and never disclosed to HPT at any time that he had executed the Syked NDA or that he was exploring a business opportunity with Syked ECU Tuning, Inc.

40.     In addition, sometime in early 2016, without HPT's authorization, Defendant provided Kevin Sykes-Bonnett, one of the owners of Syked ECU Tuning, Inc., and possibly others, with a Flash Drive containing HPT's confidential and proprietary information.

41.     The Flash Drive provided to Sykes-Bonnett of Syked ECU Tuning, Inc. contained

a number of HPT source code files, descriptive documents and folders including but not limited to the following:

    a. "Firmware" – Folder;

    b. "Firmware Hack" – Folder;

    c. "CAN0RX_ISR.ASM" – Firmware source code file from HPT MPVI that only Mr. Prociuk, Defendant and Mr. Piastri had access to;

    d. "CAN0TXPROCESS.ASM" – Firmware source code file from HPT MPVI that only Mr. Prociuk, Defendant and Mr. Piastri had access to;

    e. "P32_ALGO.ASM" – Firmware source code file from HPT MPVI that only Mr. Prociuk, Defendant and Mr. Piastri had access to;

    f. "FirmwareHack.rar" – Archive file;

    g. "Interface Reprogramming.doc" – HPT document describing MPVI firmware reprogramming commands and method; and

    h. "MPVI Protocol.doc" – HPT document describing MPVI protocol commands used to command and control the MPVI from PC.

42. The Flash Drive provided to Sykes-Bonnet of Syked ECU Tuning, Inc. also contained a number of HPT folders and files from HPT VCM Suite source code including:

    a. "License" – HPT source code folder containing core VCM Suite licensing code;

    b. "LicTransfer" – Folder containing HPT utility program source code used to transfer licenses from one MPVI to another, used for interface replacements;

    c. "Shared" – Folder containing VCM Suite source code;

    d. "cCable.cs" – HPT VCM Suite source code file;

    e. "cController.cs" – HPT VCM Suite source code file;

    f. "cMPVI.cs" – HPT VCM Suite source code file;

    g. "cUtil.cs" – HPT VCM Suite source code file;

    h. "cVehicle.cs" – HPT VCM Suite source code file;

    i. "License Writer.exe" – HPT utility program used to transfer licenses from one

MPVI to another; and

j.   "Lictransfer.exe" – HPT utility program used to transfer licenses from one MPVI to another.

43.   Furthermore, Defendant provided Sykes-Bonnett of Syked ECU Tuning, Inc. (and possibly others) with the HPT key generator program.

44.   The key generator algorithm, application and source code is confidential and proprietary information of HPT and not owned by Defendant.

45.   The key generator provided by Defendant to Sykes-Bonnett of Syked ECU Tuning, Inc. enables Sykes-Bonnett and Syked ECU Tuning, Inc. to generate application keys that provide licensing credits for third parties without having to purchase those credits from HPT.

46.   In fact, Sykes-Bonnett has admitted to generating application keys that provide licensing credits for third parties for profit.

47.   HPT's key generator is the single most valuable piece of intellectual property that HPT possesses.

48.   The key generator is the tool that generates the overwhelming majority of user licenses and is the security control for substantially all of HPT's revenues.

49.   The sale and distribution of credits via application keys, which are the license mechanism used by customers to tune vehicles, is a fundamental component of HPT's business.

50.   Only HPT is authorized to generate authentic application keys for use with HPT's products and HPT credits are generally sold for approximately $50.00 USD.

51.   Prior to the execution of the Purchase Agreement, Defendant also worked with and provided services for Syked ECU Tuning, Inc. while he was an owner and member of HPT.

52.   The negotiations concerning the acquisition of Defendant's interest in HPT took place over the course of several months between approximately February 2016 and October 20, 2016.

53.   At no time during the discussions and negotiations concerning the purchase and sale of Defendant's membership interest in HPT did Defendant advise, notify, communicate or

disclose to HPT that Defendant was working with, consulting for, assisting, developing products or software with or otherwise communicating with any competitors of HPT for the purpose of competing with the business of HPT.

54.     Instead, Defendant concealed and failed to disclose that he was working with, consulting for, assisting, developing products or software with or otherwise communicating with any competitors of HPT for the purpose of competing with the business of HPT.

55.     At no time during the discussions and negotiations concerning the purchase and sale of Defendant's membership interest in HPT did Defendant advise, notify, communicate or disclose to HPT that he had provided, shared, disseminated, tendered or given any of HPT's confidential and proprietary intellectual property to any third party or competitor of HPT.

56.     Instead, Defendant concealed and failed to disclose that he had provided, shared, disseminated, tendered or given any of HPT's confidential and proprietary intellectual property to any third party or competitor of HPT.

57.     Prior to October 20, 2016, HPT was owned by Keith Prociuk, Chris Piastri and Defendant, with each owning a one-third interest in HPT.

58.     On October 20, 2016, HPT and Defendant executed the Purchase Agreement whereby HPT agreed to purchase Defendant's one-third interest in the company.

59.     Pursuant to the Purchase Agreement and ancillary documents, in exchange for Defendant's membership interest in HPT and its affiliated entities, HPT agreed to pay Defendant good and valuable consideration in the amount of $6,800,000.00.   A copy of the Purchase Agreement and ancillary documents are attached hereto as Exhibit B and incorporated herein fully by this reference.

60.     Pursuant to the Purchase Agreement, among other things, Defendant agreed to various restrictive covenants, he agreed to return all of HPT's proprietary and confidential information (including but not limited to all MPVI firmware and source code) and he agreed to destroy all confidential and proprietary information of HPT.

61.     Pursuant to the Purchase Agreement, "Proprietary Information" was broadly

defined to include all confidential and proprietary information of the Company.

62.    Pursuant to Section 6.1(c) of the Purchase Agreement, Defendant agreed:

(c) At or prior to the Closing, Seller shall deliver to the Company each of the following: (i) any and all firmware and software source code in Seller's possession relating to the MPVI, (ii) any and all designs and schematics in Seller's possession relating to the MPVI, (iii) any and all hardware programming devices and programming devise [sic] software purchased by or otherwise belonging to the Company; (iv) any and all hardware design, layout and schematic creation software and license information of the Company, or that was purchased by the Company, in Seller's possession; (v) all Company phones, laptops or other personal devices and any other Company computer hardware, monitors and other peripherals (it being agreed that Seller may expunge from any such devices and equipment all information stored on such devices and equipment). Additionally, at or prior to the Closing, Seller shall destroy any and all copies of Proprietary Information (whether written or electronic) and destroy any and all documents or other media that contain or reflect any Intellectual Property or Proprietary Information (or, if such other media is an electronic device or hard drive that Seller is not required to deliver to the Company, Seller shall permanently expunge from such device or hard drive all information containing or reflecting any Intellectual Property or Proprietary Information, such expungement to the reasonable satisfaction of the Company's outside counsel).

63.    Pursuant to Section 6.3 of the Purchase Agreement, Defendant agreed:

Confidentiality.  From and after the date hereof, Seller shall, and shall cause his Affiliates and his Representatives to, keep confidential and not disclose, or otherwise use in any manner, any information that any of them have relating to: (i) this Agreement; (ii) the Ancillary Agreements; (iii) the transactions contemplated by this Agreement or the Ancillary Agreements (including details relating to the Purchase Price); or (iv) the Proprietary Information; provided, however, the foregoing shall not prevent Seller from making any disclosure of the foregoing to the extent such disclosure is required by Law.

64.    Pursuant to Section 6.4 of the Purchase Agreement, Defendant agreed:

Non-Competition and Non-Solicitation.

(a)      Seller, for himself, and on behalf of each of his Affiliates, (collectively, the "Restricted Parties," and each individually, a "Restricted Party"), acknowledges that he is familiar with the

LEE HIGH, LTD.
448 Ridge Street
Reno, NV 89501
(775) 324-1011

Intellectual Property and Proprietary Information of the Company. Seller, for himself and on behalf of each of the other Restricted Parties, acknowledges and agrees that the Company would be irreparably damaged if any of the Restricted Parties were to directly or indirectly compete with the Company or provide services to any person competing with the Company or engaging in the Business, and that such direct or indirect competition by any Restricted Party would harm the Company.  In connection therewith, and in further consideration for Purchaser's payment of the Purchase Price under this Agreement (in respect of which payment the Restricted Parties derive a substantial and direct benefit), and in order to protect the value of the Company, Seller agrees not to, and Seller shall cause the other Restricted Parties not to, during the period commencing on the Closing Date and ending at the conclusion of eighteen (18) months from the Closing Date (the "Non-Competition Period"), directly or indirectly, invest in, own, manage, operate, finance, control, or participate in the ownership, management, operation, financing, or control of, be employed by, or lend such Restricted Party's credit to any business or person that, directly or indirectly, owns or operates any business that competes with the Business anywhere in the world; provided, however, that a Restricted Party may purchase or otherwise acquire up to (but no more than) two percent (2%) of any class of securities of any enterprise (but without otherwise participating in the activities of such enterprise) if such securities are listed on any national or regional securities exchange or have been registered under Section 12(g) of the Securities Exchange Act of 1934, as amended.  Restricted Party agrees that this covenant is reasonable with respect to its duration, geographical area, and scope.

(b)     During the period commencing on the Closing Date and ending on the third (3rd) anniversary of the Closing Date (the "Non-Solicitation Period"), Seller shall not, and shall cause each of its Affiliates to not, directly or indirectly, either individually or acting in concert with another person or persons, solicit for employment or retention, or hire, employ, retain or engage (as a consultant or otherwise) any person who is an employee of, or engaged as a consultant by, the Company (or any of their respective Affiliates), or influence or attempt to influence any such employee or consultant to terminate his or her employment or engagement with the Company during the Non-Solicitation Period.

65.     Pursuant to Section 6.5 of the Purchase Agreement, Defendant agreed:

Non-Disparagement.  From and after the date hereof, Seller shall not make, and shall cause his respective Affiliates not to make, any negative, derogatory or disparaging statements or communications

Lee High, Ltd.
448 Ridge Street
Reno, NV 89501
(775) 324-1011

regarding the Company, any Affiliate of the Company, or the Business. From and after the date hereof, the Company shall not make, and it shall cause its Affiliates not to make, any negative, derogatory or disparaging statements or communications regarding Seller. For the avoidance of doubt, this Section 6.5 shall not restrict the making of claims, or bringing of enforcement actions, relating to this Agreement, the Ancillary Agreements or any transaction contemplated hereby or thereby.

66.     Upon information and belief, Defendant possesses and has used and disseminated HPT's confidential and proprietary intellectual property in violation of the Purchase Agreement.

67.     Defendant's possession, use, dissemination and misappropriation of HPT's key generator, and his ability to provide and/or generate unauthorized application keys and/or his use of unauthorized application keys to obtain credits without purchasing them from HPT constitutes a breach of fiduciary duty as well as violations of statutory law and puts HPT's entire business at stake.

68.     Moreover, Defendant, directly or indirectly, obtained an ownership interest in a competitive business prior to April 20, 2018 in violation of the Purchase Agreement.

69.     In particular, Defendant's wife obtained an ownership interest in Syked ECU Tuning, Inc. in or about January 2017, less than 90 days after the execution of the Purchase Agreement.

70.     In violation of the terms and provisions of the Purchase Agreement, upon information and belief, Defendant failed to return all of HPT's proprietary information to HPT, and Defendant possesses HPT's proprietary information including but not limited to HPT's source code for HPT's VCM Suite Software and HPT's key generator tool.

71.     Furthermore, upon information and belief, since October 20, 2016, Defendant has used, incorporated and misappropriated intellectual property of HPT into hardware products and firmware that he is developing for himself and/or third parties in violation of the terms and provisions of the Purchase Agreement.

72.     Defendant, acting in concert with others, has also used HPT's key generator to generate and sell licenses publicly that have been passed off as genuine and authentic products and

offerings of HPT.

73.     Additionally, Defendant, acting in concert with others, has attempted to sell cloned HPT interfaces with hacked credits.

74.     Defendant, acting in concert with others, has manipulated HPT interfaces which have been disabled in order to 'unkill' such interfaces and allow them to be used with unauthorized credits.

75.     Defendant's generation and/or use of unauthorized application keys to obtain credits without purchasing infringes upon HPT's intellectual property rights and constitutes a misappropriation of HPT's confidential and proprietary information.

76.     Defendant, acting in concert with others, has knowingly and wrongfully acquired, possess and is using unauthorized application keys to generate licenses, tune vehicles and generate revenues for his own benefit or the benefit of others.

77.     Defendant concealed and never disclosed to HPT that he provided any third parties with HPT's confidential and proprietary intellectual property at any time prior to August 20, 2018.

78.     Defendant concealed and never disclosed to HPT that he was working with, consulting for, assisting, developing products or software with or otherwise communicating with any competitors of HPT at any time prior to August 20, 2018.

79.     Defendant concealed and never disclosed to HPT that he had provided, shared, disseminated, tendered or given any of HPT's confidential and proprietary intellectual property to any third party or competitor of HPT at any time prior to August 20, 2018.

80.     Pursuant to Section 12 of the Buy-Sell Agreement between the parties, if Defendant's misconduct as set forth herein had not been wrongfully concealed by Defendant, HPT would have terminated Defendant for "cause" and the purchase price of his interest would have been the book value of Defendant's one-third interest of HPT, and not the amount set forth in the Purchase Agreement for his interest.  A copy of the Buy-Sell Agreement, as amended, is attached hereto as Exhibit C and incorporated herein fully by this reference.

///

LEE HIGH, LTD.
448 Ridge Street
Reno, NV 89501
(775) 324-1011

14

# FIRST CLAIM FOR RELIEF

## BREACH OF FIDUCIARY DUTY

81.     HPT realleges and incorporates by reference the allegations set for in paragraphs 1 through 80, inclusive, of the Complaint as if fully set forth herein.

82.     At all times prior to October 20, 2016, Defendant was a member of HPT.

83.     At all times prior to October 20, 2016, Defendant owed fiduciary duties to HPT and all of the other members of HPT.

84.     By virtue of Defendant's actions in working with, consulting for, assisting, developing products or software with and/or otherwise communicating with competitors of HPT for the purpose of competing with the business of HPT prior to October 20, 2016, Defendant breached his fiduciary duties to HPT and the other members of HPT.

85.     By virtue of Defendant's actions in providing, sharing, disseminating, tendering and/or giving confidential and proprietary intellectual property of HPT to any third party or competitor of HPT prior to October 20, 2016, Defendant breached his fiduciary duties to HPT and the other members of HPT.

86.     Defendant's actions were intentional and were completed in bad faith knowing that the actions taken were not in the best interests of HPT.

87.     Defendant's actions have proximately caused HPT to suffer monetary and other damages.

88.     Defendant's actions were intentional and willful and were done with the specific malicious intent to injure HPT.

## SECOND CLAIM FOR RELIEF

## FRAUD

89.     HPT realleges and incorporates by reference the allegations set for in paragraphs 1 through 80, inclusive, of the Complaint as if fully set forth herein.

90.     In or around February 2016, HPT and Defendant commenced negotiations concerning the purchase and sale of Defendant's interest in HPT.

91.     Between February 2016 and October 20, 2016, the parties engaged in negotiations and communications leading up to the execution of the Purchase Agreement and the purchase of Defendant's interest in HPT.

92.     Defendant concealed and never disclosed to HPT at any time prior to October 20, 2016, that he provided any third parties with confidential and proprietary intellectual property of HPT, including HPT's proprietary key generator.

93.     Defendant concealed and never disclosed to HPT at any time prior to October 20, 2016, that he was working with, consulting for, assisting, developing products or software with or otherwise communicating with any competitors of HPT.

94.     Defendant concealed and never disclosed to HPT at any time prior to October 20, 2016, that he had provided, shared, disseminated, tendered or given any of HPT's confidential and proprietary intellectual property to any third party or competitor of HPT.

95.     Defendant concealed and never disclosed to HPT that prior to October 20, 2016, he had provided, shared, disseminated, tendered or given Kevin Sykes-Bonnett and Syked ECU Tuning, Inc. a Flash Drive containing HPT's confidential and proprietary information.

96.     Defendant concealed and never disclosed to HPT that prior to October 20, 2016, he had provided, shared, disseminated, tendered or given Kevin Sykes-Bonnett and Syked ECU Tuning, Inc. a USB drive that included a key generator that would enable Kevin Sykes-Bonnett and Syked ECU Tuning, Inc. to generate credits.

97.     Defendant intentionally and fraudulently concealed the disclosure of all of this information from HPT in connection with the negotiations and discussion concerning the acquisition of Defendant's membership interest in HPT in order to elicit a higher purchase for his interest.

98.     At all times prior to October 20, 2016, Defendant had a duty to fully and accurately disclose all facts pertaining to his disclosure and/or dissemination of HPT's confidential and proprietary intellectual property, including but not limited to his involvement with a competitive business and his conveyance, transfer or dissemination of HPT's proprietary and confidential key

generator and source code.

99.    By concealing all facts concerning his involvement with a competitive business and his disclosure and/or dissemination of HPT's confidential and proprietary intellectual property, including but not limited to his conveyance, transfer or dissemination of HPT's proprietary and confidential key generator and source code, Defendant intended to induce HPT into the false belief that he was not involved in any manner with any competitive business and had not disclosed and/or disseminated HPT's confidential and proprietary intellectual property to any third party and that he had not misappropriated any of HPT's confidential and intellectual property in any manner.

100.    By concealing all facts concerning his involvement with a competitive business and his disclosure and/or dissemination of HPT's confidential and proprietary intellectual property, including but not limited to his conveyance, transfer or dissemination of HPT's proprietary and confidential key generator and source code, Defendant intended to induce HPT into paying more money for his membership interest in HPT.

101.    HPT reasonably relied on Defendant's silence and had no reason to believe that Defendant was involved in any manner with any competitive business or that Defendant had disclosed and/or disseminated HPT's confidential and proprietary intellectual property, including but not limited to HPT's proprietary and confidential key generator and source code, to any third party or competitor.

102.    If HPT had known that Defendant was involved in any manner with any competitive business or had disclosed and/or disseminated HPT's confidential and proprietary intellectual property, including but not limited to HPT's proprietary and confidential key generator and source code, to any third party or competitor, HPT would not have paid Defendant $6,800,000.00 for his interest in HPT and affiliated entities and would have paid Defendant the book value of his one-third interest in HPT.

103.    As a direct and proximate result of Defendant's fraudulent concealment, HPT has suffered damages in excess of $6,800,000.00.

///

LEE HIGH, LTD.
448 Ridge Street
Reno, NV 89501
(775) 324-1011

### THIRD CLAIM FOR RELIEF

### VIOLATION OF COMPUTER FRAUD AND ABUSE ACT

### 18 U.S.C. §1030

104.    HPT realleges and incorporates by reference the allegations set for in paragraphs 1 through 80, inclusive, of the Complaint as if fully set forth herein.

105.    Upon information and belief, Defendant, knowingly and with intent to defraud, wrongfully accessed, trespassed, engineered and/or hacked HPT's software, hardware, systems and source code to add extra licenses to existing interfaces and resell them.

106.    Defendant also manipulated disabled HPT interfaces to re-enable them for use with unauthorized credits.

107.    HPT's business, computers, software, hardware, systems, and source code are used in, and affect, interstate commerce.

108.    Moreover, in doing so, Defendant intended to and succeeded in obtaining something of value in excess of $5,000 per year (as required by the CFAA).

109.    Through his fraudulent activity, Defendant has generated profits and obtained revenues that otherwise would have gone to HPT.

110.    Defendant's activities described hereinabove constitute a violation of the CFAA, 18 U.S.C. §1030(a)(4).

111.    HPT may maintain a civil action against Defendant for violations of the CFAA pursuant to 18 U.S.C. §1030(g).

112.    HPT is entitled to compensatory damages, injunctive relief and other equitable relief.

113.    As a direct and proximate result of Defendant's ongoing violations and the misconduct alleged herein, HPT has suffered and will continue to suffer substantial injuries, loss and damage to its business and goodwill in an amount to be proven at trial.

114.    If Defendant is permitted to continue its conduct, HPT will be irreparably harmed. HPT has been and continues to be damaged in an amount to be proven at trial and also in a manner

Lee High, Ltd.
448 Ridge Street
Reno, NV 89501
(775) 324-1011

and amount that cannot be fully measured or compensated in economic terms.  Such irreparable damage will continue unless Defendant's conduct is enjoined during the pendency of this action and thereafter.

**FOURTH CLAIM FOR RELIEF**

**VIOLATION OF THE DEFEND THE TRADE SECRETS ACT**

**18 U.S.C. § 1836**

115.    HPT realleges and incorporates by reference the allegations set for in paragraphs 1 through 80, inclusive, of the Complaint as if fully set forth herein.

116.    HPT owned and possessed confidential and proprietary documents and data containing trade secrets, including but not limited to source code and HPT's key generator program and tool.

117.    Without authorization by HPT, Defendant provided third parties with copies of and access to the confidential and proprietary intellectual property, including its confidential and proprietary source code and key generator program and tool.

118.    The confidential and proprietary intellectual property of HPT wrongfully possessed by Defendant, gives Defendant, and those active in concert with him, the ability to bypass all licensing checks and prompts, thus enabling HPT's users to use the software and interfaces on any vehicle they wish without paying any licensing fees to HPT.

119.    HPT's confidential and proprietary source code and key generator have never been accessible to the public.

120.    HPT has taken various reasonable measures to ensure that its source code and key generator remain confidential and proprietary, and to prevent misappropriation of its confidential and proprietary trade secrets, including its source code and key generator.

121.    HPT's trade secrets derive independent economic value, both actual and potential, from not being generally known to other persons, businesses, or the public, who could obtain economic value from their disclosure or use.

122.    In violation of law, Defendant has misappropriated HPT's trade secrets by

Lee High, Ltd.
448 Ridge Street
Reno, NV 89501
(775) 324-1011

1    providing HPT's confidential and proprietary intellectual property to third parties without

2    authorization.

3         123.    Such dissemination and disclosure of HPT's confidential and proprietary trade

4    secret information constitutes misappropriation under the DTSA.

5         124.    As a direct and proximate result of Defendant's ongoing violations and the

6    misconduct alleged herein, HPT has suffered and will continue to suffer substantial injuries, loss

7    and damage to its business and goodwill in an amount to be proven at trial.

8         125.    If Defendant is permitted to continue its conduct, HPT will be irreparably harmed.

9    HPT has been and continues to be damaged in an amount to be proven at trial and also in a manner

10   and amount that cannot be fully measured or compensated in economic terms.

11        126.    Such irreparable damage will continue unless Defendant's conduct is enjoined

12   during the pendency of this action and thereafter.

13                            **FIFTH CLAIM FOR RELIEF**

14   **VIOLATION OF THE COPYRIGHT ACT ARISING UNDER 17 U.S.C. § 1201(A)(1)(A)**

15        127.    HPT realleges and incorporates by reference the allegations set for in paragraphs 1

16   through 80, inclusive, of the Complaint as if fully set forth herein.

17        128.    Defendant's actions constitute direct circumvention of a technological measure that

18   effectively controls access to a copyrighted work in violation of 17 U.S.C. § 1201(a)(1)(A).

19        129.    Defendant, on his own behalf and through his engagement of and encouragement

20   to the actions of third parties, are aiding and abetting or inducing violations of 17 U.S.C. §

21   1201(a)(1)(A).

22        130.    Defendant, on his own behalf and through Kevin Sykes-Bonnett and Syked ECU

23   Tuning, Inc., circumvented HPT's technological measures to access the HPT software, hardware

24   devices and intellectual property in an unauthorized manner by bypassing HPT's usage restrictions

25   in connection therewith.

26        131.    Defendant's acts constituting DMCA violations have been and continue to be

27   performed without the permission, authorization or consent of HPT.

132.    Defendant has violated Section 1201 of the DMCA willfully and for private commercial gain.

133.    Defendant's conduct has caused damage to HPT and has unjustly enriched Defendant in an amount to be proven at trial.

134.    As a result of Defendant's acts and conduct, HPT has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.

135.    HPT is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Defendant will continue to violate Section 1201 of the DMCA.

136.    HPT has no adequate remedy at law.

137.    HPT is entitled to injunctive relief to restrain and enjoin Defendant's continuing infringing conduct.

## SIXTH CLAIM FOR RELIEF

## VIOLATION OF THE NEVADA UNIFORM TRADE SECRETS ACT

## NRS CHAPTER 600A

138.    HPT realleges and incorporates by reference the allegations set for in paragraphs 1 through 80, inclusive, of the Complaint as if fully set forth herein.

139.    HPT owned and possessed confidential and proprietary documents and data containing trade secrets, including but not limited to source code and HPT's key generator program and tool.

140.    Without authorization by HPT, Defendant provided third parties with copies of and access to the confidential and proprietary intellectual property, including its confidential and proprietary source code and key generator program and tool.

141.    The confidential and proprietary intellectual property of HPT wrongfully possessed by Defendant, gives Defendant, and those active in concert with him, the ability to bypass all licensing checks and prompts, thus enabling HPT's users to use the software and interfaces on any vehicle they wish without paying any licensing fees to HPT.

LEE HIGH, LTD.
448 Ridge Street
Reno, NV 89501
(775) 324-1011

142.   HPT's confidential and proprietary source code and key generator have never been accessible to the public.

143.   HPT has taken various reasonable measures to ensure that its source code and key generator remain confidential and proprietary, and to prevent misappropriation of its confidential and proprietary trade secrets, including its source code and key generator.

144.   HPT's trade secrets derive independent economic value, both actual and potential, from not being generally known to other persons, businesses, or the public, who could obtain economic value from their disclosure or use.

145.   In violation of law, Defendant has misappropriated HPT's trade secrets by providing HPT's confidential and proprietary intellectual property to third parties without authorization.

146.   Such dissemination and disclosure of HPT's confidential and proprietary trade secret information constitutes misappropriation under the Nevada Uniform Trade Secrets Act.

147.   As a direct and proximate result of Defendant's ongoing violations and the misconduct alleged herein, HPT has suffered and will continue to suffer substantial injuries, loss and damage to its business and goodwill in an amount to be proven at trial.

148.   If Defendant is permitted to continue its conduct, HPT will be irreparably harmed. HPT has been and continues to be damaged in an amount to be proven at trial and also in a manner and amount that cannot be fully measured or compensated in economic terms.

149.   Such irreparable damage will continue unless Defendant's conduct is enjoined during the pendency of this action and thereafter.

## SEVENTH CLAIM FOR RELIEF

## VIOLATION OF THE ILLINOIS TRADE SECRETS ACT

## 765 ILCS 1065/1, ET SEQ.

150.   HPT realleges and incorporates by reference the allegations set for in paragraphs 1 through 80, inclusive, of the Complaint as if fully set forth herein.

151.   HPT owned and possessed confidential and proprietary documents and data

LEE HIGH, LTD.
448 Ridge Street
Reno, NV 89501
(775) 324-1011

containing trade secrets, including but not limited to source code and HPT's key generator program and tool.

152.   Without authorization by HPT, Defendant provided third parties with copies of and access to the confidential and proprietary intellectual property, including its confidential and proprietary source code and key generator program and tool.

153.   The confidential and proprietary intellectual property of HPT wrongfully possessed by Defendant, gives Defendant, and those active in concert with him, the ability to bypass all licensing checks and prompts, thus enabling HPT's users to use the software and interfaces on any vehicle they wish without paying any licensing fees to HPT.

154.   HPT's confidential and proprietary source code and key generator have never been accessible to the public.

155.   HPT has taken various reasonable measures to ensure that its source code and key generator remain confidential and proprietary, and to prevent misappropriation of its confidential and proprietary trade secrets, including its source code and key generator.

156.   HPT's trade secrets derive independent economic value, both actual and potential, from not being generally known to other persons, businesses, or the public, who could obtain economic value from their disclosure or use.

157.   In violation of law, Defendant has misappropriated HPT's trade secrets by providing HPT's confidential and proprietary intellectual property to third parties without authorization.

158.   Such dissemination and disclosure of HPT's confidential and proprietary trade secret information constitutes misappropriation under the Illinois Trade Secrets Act.

159.   As a direct and proximate result of Defendant's ongoing violations and the misconduct alleged herein, HPT has suffered and will continue to suffer, substantial injuries, loss and damage to its business and goodwill in an amount to be proven at trial.

160.   If Defendant is permitted to continue its conduct, HPT will be irreparably harmed. HPT has been and continues to be damaged in an amount to be proven at trial and also in a manner

LEE HIGH, LTD.
448 Ridge Street
Reno, NV 89501
(775) 324-1011

1    and amount that cannot be fully measured or compensated in economic terms.

2    161.    Such irreparable damage will continue unless Defendant's conduct is enjoined

3    during the pendency of this action and thereafter.

4    **EIGHTH CLAIM FOR RELIEF**

5    **UNFAIR COMPETITION UNDER THE NEVADA DECEPTIVE TRADE PRACTICES**

6    **ACT – NRS CHAPTER 598**

7    162.    HPT realleges and incorporates by reference the allegations set for in paragraphs 1

8    through 80, inclusive, of the Complaint as if fully set forth herein.

9    163.    Through the acts described hereinabove, Defendant has engaged in unfair practices

10   in violation of the public interest by misappropriating the trade secrets of HPT.

11   164.    Specifically, Defendant deceives the public by passing off HPT credits and license

12   keys as authentic products and offerings of HPT when, in fact, they are not.

13   165.    Defendant's misconduct, as described hereinabove, affects the public interest.

14   166.    HPT's interests have been injured in numerous ways as a result of Defendant's

15   unfair and deceptive acts and practices.

16   167.    But for Defendant's unfair and deceptive practices, HPT would not have suffered

17   these injuries.

18   **NINTH CLAIM FOR RELIEF**

19   **UNFAIR COMPETITION UNDER THE ILLINOIS CONSUMER FRAUD AND**

20   **DECEPTIVE BUSINESS PRACTICES ACT**

21   **815 ILCS 505/1 ET SEQ.**

22   168.    HPT realleges and incorporates by reference the allegations set for in paragraphs 1

23   through 80, inclusive, of the Complaint as if fully set forth herein.

24   169.    Through the acts described hereinabove, Defendant has engaged in unfair practices

25   in violation of the public interest by misappropriating the trade secrets of HPT.

26   170.    Specifically, Defendant's deceives the public by passing off HPT credits and

27   license keys as authentic products and offerings of HPT when, in fact, they are not.

171.    Defendant's misconduct, as described hereinabove, affects the public interest.

172.    HPT's interests have been injured in numerous ways as a result of Defendant's unfair and deceptive acts and practices.

173.    But for Defendant's unfair and deceptive practices, HPT would not have suffered these injuries.

## TENTH CLAIM FOR RELIEF

## BREACH OF CONTRACT

174.    HPT realleges and incorporates by reference the allegations set for in paragraphs 1 through 80, inclusive, of the Complaint as if fully set forth herein.

175.    On October 20, 2016, HPT and Defendant entered into the Purchase Agreement.

176.    The Purchase Agreement is a valid and enforceable contract.

177.    HPT fully performed its obligations under the Purchase Agreement.

178.    By virtue of Defendant's misconduct as set forth hereinabove, Defendant has materially breached his obligations under the Purchase Agreement in several respects.

179.    Defendant's actions constitute a material breach of Section 6.1 of the Purchase Agreement.

180.    Defendant's actions constitute a material breach of Section 6.3 of the Purchase Agreement.

181.    Defendant's actions constitute a material breach of Section 6.4 of the Purchase Agreement.

182.    Defendant's actions constitute a material breach of Section 6.5 of the Purchase Agreement.

183.    Defendant's actions constitute a material breach of various other terms and provisions of the Purchase Agreement.

184.    As a direct and proximate result of Defendant's ongoing violations and the misconduct alleged herein, HPT has suffered and will continue to suffer substantial injuries, loss and damages in an amount to be proven at trial.

## ELEVENTH CLAIM FOR RELIEF

## TORTIOUS INTEFERENCE WITH PROSPECTIVE CONTRACTUAL OR

## ECONOMIC RELATIONS

185.    HPT realleges and incorporates by reference the allegations set for in paragraphs 1 through 80, inclusive, of the Complaint as if fully set forth herein.

186.    HPT has maintained valid business relationships with many vendors, resellers and customers.

187.    HPT has a reasonable expectation that the relationships with its vendors, resellers and customers will continue and will not be disrupted by Defendant's conduct.

188.    Defendant knew of HPT's relationships and expectations, but intentionally, wrongfully and unjustifiably interfered with those relationships.

189.    Specifically, Defendant has worked with others to solicit vendors, customers and suppliers of HPT to purchase unauthorized license keys, has worked with competitors to develop competing products using HPT's confidential and proprietary information, has sold or provided unauthorized license keys and versions of software with licensing defeated to third parties, has provided HPT's confidential and proprietary intellectual property to third parties, has interfered with HPT's relationships with its vendors, resellers and customers, and has manipulated interfaces to allow such interfaces to be used without purchasing authorized credits from HPT.

190.    As a result of Defendant's actions, HPT has suffered irreparable harm for which it has no adequate remedy at law.  Unless enjoined, Defendant's will continue to harm HPT's business, causing further irreparable harm to HPT.

191.    As a direct and proximate result of Defendant's ongoing violations and the misconduct alleged herein, HPT has suffered and will continue to suffer substantial injuries, loss and damages in an amount to be proven at trial.

## TWELFTH CLAIM FOR RELIEF

## CONVERSION

192.    HPT realleges and incorporates by reference the allegations set for in paragraphs 1

Lee High, Ltd.
448 Ridge Street
Reno, NV 89501
(775) 324-1011

1   through 80, inclusive, of the Complaint as if fully set forth herein.

2       193.    Despite the terms and provisions of the Purchase Agreement, Defendant has failed

3   and refused to return property belonging to HPT, including HPT's confidential and proprietary

4   intellectual property, documents and information.

5       194.    Defendant's retention of HPT's property is conversion.

6       195.    Defendant's conversion of HPT's property caused HPT damage to be established

7   by proof at the time of the trial.

8                              **PRAYER FOR RELIEF**

9       **WHEREFORE,** HP TUNERS, LLC respectfully prays for judgment against Defendant,

10  KENNETH CANNATA, and in favor of HP Tuners, LLC as follows:

11      1.      An award of damages in an amount in excess of $6,800,000.00 based on

12  Defendant's breaches of fiduciary duties;

13      2.      An award of damages in an amount in excess of $6,800,000.00 based on

14  Defendant's fraud;

15      3.      An award of damages in an amount in excess of $6,800,000.00 based on

16  Defendant's breaches of contract;

17      4.      An award of damages in an amount to be proven at trial based on Defendant's

18  tortious interference with HPT's prospective contractual or economic relations;

19      5.      An award of damages in an amount to be proven at trial based on Defendant's unfair

20  competition;

21      6.      An award of damages in an amount to be proven at trial based on Defendant's

22  conversion;

23      7.      Awarding HPT compensatory damages, in an amount to be proven at trial;

24      8.      Awarding Plaintiff exemplary damages as authorized by statute for Defendant's

25  willful misappropriation;

26      9.      An award of damages pursuant to the Nevada Deceptive Trade Practices Act, NRS

27  598;

10.     An award of damages pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1;

11.     Awarding and ordering an accounting and disgorgement of all of Defendant's profits and/or damages suffered by Plaintiff due to Defendant's misappropriation of the HPT's confidential and proprietary trade secrets pursuant to:

  a.  the Computer Fraud and Abuse Act, 18 U.S.C. §1030;

  b.  the Defend Trade Secrets Act, 18 U.S.C. §1836 et seq.;

  c.  the Nevada Uniform Trade Secrets Act, NRS Chapter 600A; and

  d.  the Illinois Trade Secrets Act, 765 ILCS 1065/1 et seq.;

12.     Enjoining Defendant from using misappropriated trade secrets pursuant to statute;

13.     Entry of a declaratory judgment that Defendant's conduct was a violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030 (a)(4);

14.     Enjoining Defendant from accessing HPT's Protected Computers;

15.     Awarding such other and further relief as may be just and proper caused by Defendant's violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030 (a)(4);

16.     Awarding pre- and post-judgment interest to HPT;

17.     Awarding HPT preliminary and permanent injunctive relief as follows:

  a.  That Defendant, as well as each of his agents and all persons acting in concert with him, be enjoined from, directly or indirectly, accessing any folders, files, documents, information and/or electronically stored information containing HPT's confidential and proprietary intellectual property;

  b.  That Defendant, as well as each of his agents and all persons acting in concert with him, be ordered to return to HPT any and all originals and copies of files, folders, documents, hardware, software, intellectual property, information and/or electronically stored information containing HPT's confidential and proprietary intellectual property;

  c.  That Defendant, as well as each of his agents and all persons acting in concert with

him, be enjoined from, directly or indirectly, using, accessing, distributing, disseminating, transferring, copying or otherwise referencing any information relating to HPT's key generator program and tool, and that Defendant shall return any and all copies of such program and tool in his possession to HPT;

d.   That Defendant, as well as each of his agents and all persons acting in concert with him, be enjoined from, directly or indirectly, publicly releasing source code (open sourcing code) in any manner;

e.   That Defendant, as well as each of his agents and all persons acting in concert with him, be enjoined from, directly or indirectly, selling any competitive products or software to HPT;

f.   That Defendant, as well as each of his agents and all persons acting in concert with him, be enjoined from, directly or indirectly, releasing any products or services using HPT's proprietary code to any third party;

g.   That Defendant, as well as each of his agents and all persons acting in concert with him, be enjoined from, directly or indirectly, selling any products or services using HPT's proprietary code to any third party;

h.   That Defendant, as well as each of his agents and all persons acting in concert with him, be enjoined from, directly or indirectly, releasing any products or software that is based on or derived from HPT's software or products;

i.   That Defendant, as well as each of his agents and all persons acting in concert with him, be enjoined from, directly or indirectly, selling any products or software that is based on or derived from HPT's software or products;

j.   That Defendant, as well as each of his agents and all persons acting in concert with him, be enjoined from, directly or indirectly, accessing any folders, files, documents, information or electronically stored information containing HPT's confidential and proprietary intellectual property;

k.   That Defendant, as well as each of his agents and all persons acting in concert with

him, be enjoined restrained from, directly or indirectly, engaging in any activities related to the planning, design, development, coding or creation of any software or products that in any way uses, relies upon, is based on or discloses any of HPT's confidential, proprietary or trade secret information, including but not limited to source code; and

l.   Such other preliminary and permanent injunctive relief as this Court deems necessary and appropriate;

18.   Awarding HPT a preliminary and permanent injunction enjoining Defendant, his agents, servants and employees, and those people in active concert or participation with them from:

a.   Passing off any products or services as those of HPT;

b.   Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of Defendant's businesses, products or services;

c.   Causing a likelihood of confusion or misunderstanding as to the affiliation, connection or association with HPT or any of HPT products or services; and

d.   Unfairly competing with HPT in any manner;

19.   An order that Defendant be required to file with the Court and to serve upon HPT's counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which he has complied with such injunction or order;

///
///
///

LEE HIGH, LTD.
448 Ridge Street
Reno, NV 89501
(775) 324-1011

20. An award of the costs and expenses, including reasonable attorney's fees, incurred by HPT in connection with this action as provided for by statute; and

21. An award of such other and further relief as the Court deems just and proper.

DATED this 1st day of November, 2018.

Respectfully Submitted,

LEE HIGH, LTD.

/s/ Elizabeth High, Esq.
CECILIA LEE, ESQ.
ELIZABETH HIGH, ESQ.

ANDREW P. BLEIMAN, ESQ.
Attorneys for Plaintiff HP Tuners, LLC

INDEX OF EXHIBITS

| Exhibit | Description | Number of Pages |
|---------|-------------|-----------------|
| A | HP Tuners, LLC Operating Agreement dated March 25, 2004, including the Amendment to HP Tuners, LLC Operating Agreement | 17 pages |
| B | Membership Interest Purchase Agreement dated October 20, 2016, and Ancillary Documents | 59 pages |
| C | Buy Sell Agreement, as amended | 14 pages |

Lee High, Ltd.
448 Ridge Street
Reno, NV 89501
(775) 324-1011