UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| HP TUNERS, LLC, | | Case No. 3:18-cv-00527-LRH-WGC |
| | Plaintiff, | ORDER |
| v. | | |
| KENNETH CANNATA, | | |
| | Defendant. | |

Plaintiff HP Tuners, LLC ("HPT") has filed a motion requesting a temporary restraining order ("TRO") and preliminary injunction against defendant Kenneth Cannata. (ECF No. 19). For the reasons stated below, the Court will grant HPT's motion in part and deny it in part without prejudice.

**I. Factual Background and Procedural History**

In its November 2018 complaint, HPT, a company that develops and sells computer software and hardware for tuning automobile engines and transmissions, alleged that Cannata, one of its former principals, unlawfully transferred proprietary intellectual property to a competitor prior to his exit from HPT. (ECF No. 1 at 2). In addition to transferring the intellectual property to the competitor, HPT has alleged that Cannata worked with the competitor and others to develop competing products in the automobile tuning market. (*Id.*) HPT set forth numerous causes of action in its complaint, including breach of a fiduciary duty, fraud, and violations of federal, Nevada, and

Illinois[1] trade secrets statutes. (*Id*. at 3). Later that November, Cannata filed a motion to dismiss HPT's complaint, which remains pending before the Court.

In its TRO application, HPT asserts that on March 22, 2018, it received text messages from a business associate of Cannata's, Kevin Sykes-Bonnett (the competitor alluded to above), through discovery in a separate but related case. (ECF No. 19 at 2). HPT argues that those text messages, which span from November 19, 2017 to November 17, 2018, reveal that not only is Cannata still in possession of HPT's intellectual property and has assisted a rival in developing products based on it, but he has threatened to release that confidential intellectual property to the public. (*Id*.) In its request for relief, HPT seeks to enjoin Cannata and his associates from (1) releasing any confidential or proprietary information to the public; (2) releasing any products or services that have been developed using HPT's proprietary code, including "the hardware device developed by [Cannata] in connection with the Syked ECU Tuning, Inc. software solution"; and (3) selling or releasing any products or software based on or derived from HPTs software or products. (*Id*. at 3). HPT also requests that Cannata and his associates: (4) turn over all communications, documents, and information received from "Syked ECU Tuning, Inc., [Sykes-Bonnett], or John Martinson; (5) be restrained from developing, in any way, any software based on HPT's proprietary trade secrets; (6) turn over all confidential trade secrets and proprietary intellectual property belonging to HPT, and (7) submit all computers and other electronic storage devices for forensic examination. (*Id*. at 3–4).

## II. Legal Standard

The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing; its provisional nature is designed to prevent irreparable loss of rights prior to judgment. *Sierra On–Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984) (citing *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808–09 (9th Cir. 1963)). TROs are governed by Federal Rule of Civil Procedure 65(b), which states that the moving party must provide specific facts showing that immediate and irreparable injury, loss, or damage will result before the adverse party's opposition to a motion for a preliminary injunction can be heard. *Ditech Financial LLC v.*

---

[1] While Cannata is a resident of Reno, Nevada, HPT is based in Illinois.

*American West Village II Owners Association*, 2017 WL 3610559, at *2 (D. Nev. Aug. 22, 2017) (citing Fed. R. Civ. P. 65(b)). Although a TRO can be issued without notice to the adverse party, in this case, HP Tuners has provided sufficient notice to Cannata by serving a copy of its application for a TRO and preliminary injunction on counsel for Cannata. (ECF No. 19 at 18). To be entitled to a TRO, the moving party must demonstrate (1) a likelihood of irreparable injury if preliminary relief is not granted; (2) the balance of hardships weighs in its favor; (3) an injunction (or TRO in this case) is in the public's interest, and (4) a likelihood of success on the merits. *Winter v. Natural Resources Defense Counsel, Inc.*, 555 U.S. 7, 20 (2008).

### III. Discussion

Attached to HPT's TRO application are a sworn declaration of facts by Chris Piastri (a principal of HPT) and approximately 240 pages of text messages between Cannata and Sykes-Bonnett. After reviewing the text messages and declaration, the Court finds that HPT has sufficiently demonstrated each of the four TRO requirements.

First, it is clear that HPT would suffer an irreparable injury if Cannata or his associates either released its proprietary intellectual property to the public or released or sold a product based upon that intellectual property to the public. It is axiomatic that a company is substantially harmed when its proprietary intellectual property is released to the public, where it would be available to both consumers and rivals at no cost. The evidence provided by HPT shows that Cannata has considered such an act: in a March 25, 2018 text message, Cannata suggests that Sykes-Bonnett should "release all [HPT's] software," because doing so would result in the "entire industry" "hat[ing] them [sic]." (ECF No. 24-3 at 10). In the same text, Cannata also asserts that he could "do a special version of firmware that [would] sink [HPT] for sure." (*Id.*) This constitutes irreparable harm. *See, e.g., Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir.1991). HPT would also be harmed if Sykes-Bonnett's rival company could release a product developed using HPT's intellectual property, as the rival company would essentially be profiting off the labor of another company without compensating it for its work. The text messages between Cannata and Sykes-Bonnett show that Sykes-Bonnett had, at an earlier

3

date, received HPT documents, source code, and several HPT devices from Cannata to assist him in developing his own tuning hardware and software. (ECF Nos. 24-3 at 18, 24-4 at 43).

Second, The balance of hardships weighs in HPT's favor. Cannata would suffer no harm if he was prohibited from releasing HPT's proprietary intellectual property, but HPT would likely suffer substantial business losses if the property it devoted significant time to developing was released to the public and its rivals. While it is true that Cannata would be harmed by being prohibited from continuing to develop hardware and software, he would not be harmed by being prohibited from using HPT's proprietary intellectual property in doing so, material that he has no right to access in the first place. Third, a TRO is also in the public's interest, as the public has a strong interest in seeing holders of intellectual property have their rights respected and not infringed upon. *Ferring B.V. v. Apotex, Inc.*, 2014 WL 1379758, at *5 (D. Nev. Apr. 7, 2014). Additionally, the public encompasses employees of HPT who are not involved with this litigation; their positions would likely be affected by their company having its key information released to the public.

Finally, HPT has demonstrated that it is likely to succeed on the merits of its complaint. Its primary contention is that Cannata improperly transferred HPT's proprietary intellectual property to Sykes-Bonnett and others both before and during his negotiations to leave the company. (*See* ECF No. 1). As stated above, the text messages demonstrate that Cannata gave Sykes-Bonnett HPT documents, source code, and devices, which the latter then used to develop his own product. Given that Cannata stated that he did not "hack" HPT[2] and it is highly unlikely that HPT would continue to give him access to its intellectual property following his exit, the only logical conclusion is that he transferred the intellectual property to Sykes-Bonnett prior to his removal. This would support HPT's claims that Cannata violated the contract he signed prior to exiting.

Although the Court will grant HPT's application for a TRO, it will not grant all the relief requested. Specifically, the Court will deny, without prejudice, HPT's request to force Cannata to disclose all communications between him, Sykes-Bonnett, Martinson, and related entities, and its request that Cannata and his associates turn over all electronic storage devices and other physical

---

[2] (ECF No. 24-3 at 12).

hardware that may contain HPT's proprietary intellectual property. The Court will, however, enjoin Cannata and his associates from destroying, concealing, or modifying such devices and communications until the Court reaches a decision on HPT's request.

Federal Rule of Civil Procedure 65 requires that HPT posts security in an amount the Court deems proper to protect Cannata if it is later determined that an injunction should not have been issued. Fed. R. Civ. P. 65(b). While the language of the rule is mandatory, the Court has wide discretion whether to set a bond and for how much. *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978); *Carillon Importers, LTD. v. Frank Pesce Int'l Group Limited*, 112 F.3d 1125 (11th Cir. 1997). In this case, the Court determines that a $5,000 bond is appropriate.

## IV. Conclusion and Temporary Restraining Order

IT IS THEREFORE ORDERED that HP Tuners's motion for a temporary restraining order (ECF No. 19) is **GRANTED IN PART** and **DENIED WITHOUT PREJUDICE IN PART**. Defendant Kenneth Cannata, his agents, and any persons acting in concert with him (including but not limited to Kevin Sykes-Bonnett), are **ENJOINED** from the following activities:

1. Releasing any confidential or proprietary intellectual property belonging to HP Tuners to the public;

2. Releasing or selling any products or services that have been developed using HP Tuners's proprietary code, including "the hardware device developed by [Cannata] in connection with the Syked ECU Tuning, Inc. software solution";

3. Releasing or selling any products or software based on or derived from HP Tuners's software or products;

4. Developing, planning, designing, researching, or, in any way creating any software or hardware based on or derived from HP Tuners's proprietary intellectual property;

5. Destroying, selling, concealing, or modifying any electronic storage devices, including but not limited to USB flash drives, mobile phones, servers, FTP servers, computers, hard drives, and solid-state drives that they have used since January 1, 2016;

6. Destroying, concealing, or modifying any communications received from Syked ECU Tuning, Inc., Kevin Sykes-Bonnett, and John Martinson, since January 1, 2016; and

1    7. Destroying, selling, concealing, or modifying any of HP Tuners's proprietary intellectual property that may be in their possession, including hardware devices and physical documents.

HPT is also required to post a $5,000 bond with the Clerk of Court. The parties are instructed to contact the undersigned's courtroom deputy, Jennifer Cotter (Jennifer_Cotter@nvd.uscourts.gov), to schedule a date and time for a preliminary injunction hearing.

IT IS SO ORDERED.

DATED this 24th day of April, 2019.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE