1

2

3

4

5

6

UNITED STATES DISTRICT COURT

7

DISTRICT OF NEVADA

8

\* \* \*

9

HP TUNERS, LLC,                                    Case No. 3:18-cv-00527-LRH-WGC

10

                                   Plaintiff,      ORDER

11

        v.

12

KENNETH CANNATA,

13

                                   Defendant.

14

15

16    Defendant Kenneth Cannata has filed a motion to dismiss all but one of the causes of action

17    of plaintiff HP Tuners, LLC ("HPT"). (ECF No. 10). HPT responded (ECF No. 14), and Cannata

18    timely replied (ECF No. 15). Following the close of briefing, HPT filed a motion requesting

19    permission to file a supplemental brief in opposition to Cannata's motion to dismiss. (ECF No.

20    31). For the reasons stated below, the Court grants HPT's motion to file a supplemental brief and

21    denies Cannata's motion to dismiss.

22                              **I. Factual Background and Procedural History**

23    The following facts are adduced from HPT's complaint and are presumed to be true for the

24    purpose of this order. HPT was founded by Keith Prociuk, Chris Piastri, and Cannata on December

25    31, 2003, with its principal place of business in Buffalo Grove, Illinois. (ECF No. 1 at 4). Each

26    man had a one-third ownership interest in HPT pursuant to the operating agreement signed on

27    March 25, 2004. (*Id.*) HPT describes itself as a "niche" business that provides "cost-effective

28    automotive tuning and data acquisition solutions" for both private car enthusiasts and professional

shops. (*Id.*) HPT designs and manufactures computer hardware and software for tuning and calibrating engines and transmissions in automobiles, trucks, ATVs, snowmobiles, and other vehicles. (*Id.*) A "core function" of the business is selling interfaces, such as the MPVI, which connect to the onboard computer of a vehicle and allow for individuals to use the HPT software and tune their vehicle. (*Id.*) Another "core function" of HPT is the selling of "credits," which HPT describes as the license mechanism that customers use to tune their vehicles. (*Id.*) HPT safeguards its confidential and proprietary information through the usage of computer passwords, hard drive encryption, firewalls, and rules preventing company employees from copying or transferring any of the information. (*Id.* at 6).

In January 2016, Prociuk and Piastri began to explore ways to remove Cannata from HPT after having become dissatisfied with his conduct and job performance. (ECF No. 1 at 7). They began to negotiate Cannata's exit from the company with him with the idea that they would buy out his share of the company. (*Id.*) After months of negotiations, Prociuk and Piastri agreed to purchase Cannata's stake in the company on October 20, 2016. (*Id.* at 10). Pursuant to the purchase agreement, HPT paid Cannata $6.8 million for his stake in the company, and in return, Cannata agreed to several restrictive covenants. (*Id.*) These covenants included returning all of HPT's proprietary and confidential information to HPT and destroying any related information he had in his possession, a prohibition on disclosing any confidential information to any third parties, and a non-compete clause. (*Id.* at 10–12).

Unbeknownst to Prociuk and Piastri, Cannata began to work with a rival of HPT while he was negotiating his exit from the company. On March 11, 2016, Cannata entered into an NDA with Syked ECU Tuning, Inc. ("Syked"), a direct competitor to HPT. (ECF No. 1 at 7). Also in early 2016, Cannata provided Kevin Sykes-Bonnett, one of the owners of Syked, with a flash drive containing HPT's confidential and proprietary information. (*Id.* at 7). Data on that flash drive included firmware source code for the MPVI interface and VCM Suite software, both of which HPT considers to be confidential information. (*Id.* at 8–9). Cannata also provided Sykes-Bonnett with HPT's key generator program, which allowed Sykes-Bonnett to generate application keys that provide licensing credits for third parties without having to purchase them directly from HPT.

(*Id*. at 9). Essentially, Cannata gave Sykes-Bonnett the technology to sell keys to individuals to enable them to use HPT's products, whereas ordinarily those individuals could only purchase them directly from HPT. HPT has also alleged that less than three months after executing the purchase agreement, Cannata's wife obtained an ownership interest in Syked in January 2017. (*Id*. at 13).

HPT first learned of Cannata's actions in August 2018 and filed this lawsuit thereafter, alleging several causes of actions: (1) breach of a fiduciary duty; (2) fraud; (3) violation of the Computer Fraud and Abuse Act (18 U.S.C. §1030); (4) violation of the Defendant Trade Secrets Act (18 U.S.C. §1836); (5) violation of the Copyright Act (17 U.S.C. §1201(A)(1)(A)); (6) a violation of the Nevada Uniform Trade Secrets Act; (7) a violation of the Illinois Trade Secrets Act; (8) unfair competition under the Nevada Deceptive Trade Practices Act; (9) unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act; (10) common law breach of contract; (11) tortious interference with prospective contractual or economic relations, and (12) conversion. Before the Court is Cannata's motion to dismiss all of HPT's claims except its claim for breach of contract (ECF No. 10) and HPT's motion to file a supplemental brief (ECF No. 31).

## II. Legal Standard

Cannata seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss for failure to state a claim, a complaint must satisfy Federal Rule of Civil Procedure 8(a)(2)'s notice pleading standard. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; a pleading, however, that offers " 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' " will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 667 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual

content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *Id*. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id*.

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Iqbal*, 556 U.S. at 667. Even so, "bare assertions. . .amount[ing] to nothing more than a formulaic recitation of the elements of a. . .claim. . .are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 681) (brackets in original) (internal quotation marks omitted). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 556 U.S. at 681.) "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id*.

### III. Discussion

### A. HPT's Motion to File Supplemental Brief

Following the close of briefing, HPT submitted a motion requesting permission to file a supplemental brief in opposition to Cannata's motion to dismiss. (ECF No. 31). The substance of the brief is essentially that discovery in this case has revealed that Cannata used a secret email address during his negotiations with Prociuk and Piastri to communicate confidential HPT information to Sykes-Bonnett. (*Id*. at 2). Cannata did not file a response to HPT's motion. Pursuant to Local Rule 7.2(d), the failure of a party to file points and authorities in response to any motion, except for a motion for summary judgment or attorney's fees, constitutes consent to the granting of the motion. Accordingly, the Court will grant HPT's motion to supplement. HPT has also filed a motion to seal an attachment to its motion to supplement. (ECF No. 33). Cannata did not file a

response to that motion either, so pursuant to Local Rule 7.2(d), the Court will grant that motion as well.[1]

### B. Choice of Law

In its response to Cannata's motion to dismiss, HPT raises the issue of what law should govern each claim within its complaint. HPT argues that for its first two fiduciary duty-related claims (breach of a fiduciary duty and fraud), Nevada law should apply. (ECF No. 14 at 13–15). As for the remainder of its claims premised on validity of a release clause contained within the purchase agreement, HPT argues that Illinois law should govern with respect to the state law causes of action and "federal common law" should govern with respect to the federal causes of action. (*Id*. at 15). Cannata agrees that HPT's first two fiduciary-related claims should be governed under Nevada law (ECF No. 10 at 2), but it also asserts that Nevada law should also apply to the rest of HPT's causes of action (*Id*. at 19).

As to HPT's first claim for breach of a fiduciary duty, the Court will apply Nevada law. In a federal question action where the federal court is exercising supplemental jurisdiction over state law claims (such as the fiduciary claims here), the federal court applies the choice of law rules of the forum state. *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996). Nevada generally follows the Restatement (Second) of Conflict of Laws to resolve choice of law questions involving contracts. *Progressive Gulf Ins. Co. v. Faehnrich*, 327 P.3d 1061, 1063 (Nev. 2014). §309 of the Restatement states that the "local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation…except where, with respect to the particular issue, some other state has a more significant relationship…to the parties and the transaction, in which event the local law of the other state will be applied." RESTATEMENT (SECOND) OF CONFLICTS OF LAW §309. Nevada also recognizes the "internal affairs doctrine," which provides that the law of the state of incorporation governs liabilities of officers or directors to the corporation and its shareholders. *In re Sagent*

---

[1] Also pending before the Court is HPT's motion to seal its motion for a temporary restraining order and preliminary injunction. (ECF No. 23). The Court granted HPT's request for a temporary restraining order on April 24, 2019, and the parties subsequently entered a stipulation for a preliminary injunction the following month. (ECF No. 28). Because Cannata did not respond to HPT's motion to seal, under LR 7.2(d), the Court will grant the motion to seal.

*Technology, Inc., Derivative Litigation*, 278 F.Supp.2d 1079, 1086 (N.D. Cal. 2003) (citing *Shaffer v. Heitner*, 433 U.S. 186, 215 (1977)); Nᴇᴠ. Rᴇᴠ. Sᴛᴀᴛ. §78.012. HPT is a limited liability company incorporated in Nevada with a principal place of business in Illinois, so therefore, based on §309 and the internal affairs doctrine, Nevada law governs the fiduciary claim.

As to the second claim for fraud, the Court finds that Illinois law governs. The "Fraud and Misrepresentation" section of the Second Restatement of Conflicts of Law states that "when the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties," unless another state has more significant relationship to the action and parties. Rᴇsᴛᴀᴛᴇᴍᴇɴᴛ (Sᴇᴄᴏɴᴅ) ᴏғ Cᴏɴғʟɪᴄᴛs ᴏғ Lᴀᴡ §148. As HPT states within its response to Cannata's motion, not only does HPT have its principal place of business in Illinois, but it is the state where Cannata allegedly committed the fraud, where HPT suffered its injury, and where it continues to suffer from the injury. (ECF No. 14 at 14). The fact that the material misrepresentations were allegedly made solely in Illinois points to that state having a much stronger connection to this claim than Nevada. As such, Illinois law will apply to HPT's second cause of action for fraud.

Turning to the claims premised on the release within the purchase agreement (all claims other than 1, 2, and 10), the Court finds that Illinois law governs the non-federal claims. Within the purchase agreement, the parties included a choice of law provision providing that Illinois law would govern the contract. (ECF No. 1-2 at 29). So long as the parties "acted in good faith and not to evade the law of the real situs of the contract," Nevada allows parties "within broad limits to choose the law that will determine the validity and effect of their contract." *Id*. at 1064 (quoting *Ferdie Sievers & Lake Tahoe Land Co. v. Diversified Mortgage Investors*, 603 P.2d 270, 273 (Nev. 1979)). Considering that the purchase agreement was signed in Illinois involving an Illinois company and the fact that Cannata has not put forward any argument demonstrating that the provision is somehow invalid, the Court sees no reason not to honor the choice of law provision within the purchase agreement. As to the federal statutory claims, it is axiomatic that federal law

governs, especially when there is a question of whether a plaintiff has voluntarily waived those claims. *U.S. v. Northrop Corp.*, 59 F.3d 953, 960 (9th Cir. 1995).

### C. Cannata's Motion to Dismiss

#### 1. Fiduciary Claim (Claim 1)

Cannata requests dismissal of HPT's first claim for breach of a fiduciary duty because under Nevada law, there is no fiduciary duty imposed by statute or common law on members of LLCs. (ECF No. 10 at 6). And because no language within HPT's operating agreement imposed any fiduciary duties on its members, Cannata cannot be held liable for any alleged breach of said duties. (*Id*. at 7–8). On the other hand, HPT argues that language in the operating agreement instructing the members and managers to act "for [HPT's] benefit" and "assist [HPT] in every way" imposed fiduciary duties on Cannata and the other members of the company. (ECF No. 14 at 3; ECF No. 1-1 at 5).[2]

Under Nevada law, a member or manager of an LLC will be liable for breach of a fiduciary duty when: (1) a fiduciary duty exists; (2) the duty is breached, and (3) the breach proximately caused the damages alleged. *Klein v. Freedom Strategic Partners, LLC*, 595 F.Supp.2d 1152, 1162 (D. Nev. 2009). Unlike many states, Nevada does not impose any statutory fiduciary duties on members of LLCs. *In re Plyam*, 530 B.R. 456, 472 (9th Cir. B.A.P. 2015) ("Unlike California, Nevada does not have a statute equating the fiduciary duties of a manager in a limited liability company context to those of a partner in a partnership."). Instead, Nevada allows the members of LLCs to decide whether to impose fiduciary duties on themselves through their operating agreement. *JPMorgan Chase Bank, N.A. v. KB Home*, 632 F.Supp.2d 1013, 1025–26 (D. Nev. 2009); NEV. REV. STAT. §86.286. This could be by express language in the operating agreement or through language that has a similar effect. In Nevada, a "fiduciary relationship is deemed to exist when one party is bound to act for the benefit of the other party. Such a relationship imposes a

---

[2] As a general rule, a district court cannot consider any material beyond the pleadings in ruling on a 12(b)(6) motion to dismiss. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The Court may, however, consider material "properly submitted as part of the complaint" on a motion to dismiss without converting it into a motion for summary judgment. *Id.* Here, HPT attached both the operating agreement and purchase agreement to the complaint against Cannata. (ECF Nos. 1-1, 1-2, 1-3). The Court can therefore consider those documents in deciding Cannata's motion to dismiss without converting it into a motion for summary judgment.

duty of utmost good faith." *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 880–81 (9th Cir. 2007) (quoting *Hoopes v. Hammargren*, 725 P.2d 238, 242 (Nev. 1986)). Thus, if Cannata owed any fiduciary duty to HPT, such a duty must be stated within the operating agreement.

After reviewing the operating agreement and relevant caselaw, the Court finds that the operating agreement imposed a fiduciary duty upon its members. The operating agreement states, in relevant part, as follows:

> Each member hereby agrees to assist [HPT] in any reasonable manner to obtain for [HPT's] benefit legal protection for the [intellectual property] and will execute, when requested, any lawful documents deemed necessary by [HPT] to carry out the purposes of the [intellectual property] assignment. Each member will further assist [HPT] in every way to enforce its rights in the [intellectual property], testifying in any suit or proceeding involving any of the [intellectual property] or by executing any documents deemed necessary by [HPT]

(ECF No. 1-1 at 5). The operating agreement mandated that each member was required to assist the company "in every way" in protecting its intellectual property rights, which is the most important commodity HPT has. (ECF no. 1 at 5–6). The Court interprets this language as imposing the fiduciary duty of good faith on the members of HPT because they are tasked with doing whatever is necessary to protect HPT's intellectual property rights. A member bound by the duty of good faith would violate that duty if he, for instance, gave important property belonging to the LLC to another entity without the LLC's knowledge or consent. Here, HPT has alleged that Cannata transferred HPT's intellectual property to Syked and Sykes-Bonnett without HPT's permission which, if true, would be a violation of the duty of good faith he owed to HPT. (ECF No 1 at 7–8). Therefore, the Court will not dismiss this claim.

<u>2. Fraud Claim (Claim 2)</u>

Relatedly, Cannata also requests dismissal of HPT's second claim for common law fraud. Based on the parties' briefing and the allegations contained under HPT's claim for fraud, the Court will construe HPT's second claim as one for fraudulent concealment. To be successful under Illinois law for a claim of fraudulent concealment, a plaintiff must demonstrate: (1) the defendant concealed a material fact under circumstances that created a duty to disclose; (2) the defendant intended to induce a false belief; (3) the plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection,

and justifiably relied upon the defendant's silence as a representation that the fact did not exist; (4) the concealed information was such that the plaintiff would have acted differently had he or she been aware of it, and (5) the plaintiff's reliance resulted in damages. *Abazari v. Rosalind Franklin University of Medicine and Science*, 40 N.E.3d 264, 274 (Ill. App. 2015).[3] The information at issue must relate to an existing or past state of affairs – "projections of future events" generally cannot support a claim of fraud. *Id*. A party has a duty to disclose material facts to another when a fiduciary relationship exists between them. *Linkepic Inc. v. Vyasil, LLC*, 370 F.Supp.3d 906, 917 (N.D. Ill. 2019).

Here, HPT has alleged that while Cannata was negotiating his buyout from the company, he was secretly providing third parties with HPT's confidential and proprietary intellectual property along with helping those third parties develop similar technology. (ECF No. 1 at 16). If true, this would certainly constitute a fact material to the buyout negotiations. Cannata was under a duty to disclose any material facts to HPT because, as the Court found in the previous section, he owed HPT a fiduciary duty to act in good faith by way of the operating agreement. The facts alleged also sufficiently demonstrate that Cannata intentionally withheld this information from HPT to negotiate a better purchase price; had he not concealed these facts, HPT asserts, it would not have paid him the amount it did for his share in the company. (*Id*. at 16–17). Finally, HPT has alleged that it had no reason to believe Cannata was double-dealing, and based on the facts within the complaint, there was no way for it to know of his connection to Syked or Sykes-Bonnett. (*Id*. at 17). The allegations within the complaint are sufficient to meet the pleading standards and put Cannata on notice of the claim against him, and the Court will accordingly deny his motion to dismiss on this ground.

///

---

[3] The parties briefed this issue under the assumption that Nevada law would govern. This is a non-issue here because the elements for fraudulent concealment under Nevada law are essentially identical to the requirements in Illinois: (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would have acted differently if she had known of the concealed or suppressed fact; and (5) the plaintiff sustained damages as a result of the concealment or suppression. *Nevada Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1415 (D. Nev. 1995).

### 3. Waiver in the Purchase Agreement

Cannata finally requests dismissal of nearly all of HPT's remaining claims,[4] arguing that as a condition of the purchase agreement, HPT waived any potential legal claims that it may have had against him. Specifically, Cannata relies on §7.1(b) of the purchase agreement, which provides:

> Company Release. From and after the Closing, [HPT] shall release and forever discharge, and shall cause each of its Affiliates, successors, and assigns (collectively with [HPT], the "Company Releasors") to release and forever discharge [Cannata] and its Affiliates, agents, representatives, successors, and assigns from any and all claims, obligations, liabilities, and cause of action of any kind (whether at law or in equity and including claims in tort or for breach of contract or breach of warranty), known or unknown fixed or contingent, that any of the Company Releasors previously had or may have had, now has or may have, or may in the future have that in any way arises out of or relates to (i) the formation documents, operating agreement, limited liability company agreement or similar agreement or other governance documents of [HPT] applicable to [Cannata] or (ii) the Purchased Interest (collectively, the "Company Released Claims") provided, however the Company Released Claims shall exclude claims arising out of fraud or willful misrepresentation, or claims arising as a result or any breach of this Agreement. [HPT] herby represents and warrants to [Cannata] that none of the Company Released Claims have been assigned or otherwise transferred to any third party.

(ECF No. 1-2 at 17–18) (emphasis in original). Cannata argues that this broad waiver precludes most of HPT's claims because "none of the remaining claims [are] based on fraud, intentional misrepresentation, and or breach of the Purchase Agreement." (ECF No. 10 at 19). In response, HPT accuses Cannata of fraudulent conduct, arguing that such conduct is expressly excluded from the general release contained within the purchase agreement. HPT emphasizes the following language from §7.1(b) of the purchase agreement: "[t]he Company Released Claims shall exclude claims arising out of fraud or willful misrepresentation, or claims arising as a result of any breach of this agreement." (ECF No. 1-2 at 18; ECF No. 14 at 5). HPT further argues that because Cannata breached his contractual duties under the purchase agreement,[5] all claims arising from breaches of that agreement are related to Cannata's fraud and that the exception in the release makes the release

---

[4] Specifically, these are HPT's third, fourth, fifth, sixth, seventh, eighth, ninth, eleventh, and twelfth claims for relief.

[5] HPT alleges that Cannata breached §6.1(c) of the purchase agreement, which provided that Cannata would "permanently expunge" from his computer devices "all information containing or reflecting any Intellectual Property or Proprietary information" of HPT, and §6.4(a), which provided that Cannata would refrain from participating in the business of a competitor. (See ECF No. 1-2 at 15–17; ECF No. 14 at 6).

10

inapplicable to all other claims in this case. (ECF No. 14 at 6). The Court will address the release issue separately for both the federal and state law claims implicated.

*i. Federal Claims*

"The interpretation and validity of a [waiver] of [federal claims] is governed by federal law." *Stroman v. West Coast Grocery Co.*, 884 F.2d 458, 461 (9th Cir. 1989) (citations omitted). The Ninth Circuit has determined that enforceable releases of legal claims must be the product of a "voluntary, deliberate, and informed" waiver. *Nilsson v. City of Mesa*, 503 F.3d 947, 952 (9th Cir. 2007) (quoting *Stroman*, 884 F.2d at 462). The determination of whether a waiver is "voluntary, deliberate, and informed" is predicated upon an evaluation of the totality of the circumstances surrounding the signing of the waiver. *Id*. Furthermore, it is a well-established principal of contract law that courts will not enforce a contract, such as a release, that is the product of a material mistake, fraud, or deceit. *Morta v. Korea Ins. Corp.*, 840 F 2d 1452, 1456 (9th Cir. 1988).

HTP has alleged that Cannata wrongfully shared, provided, and disseminated its most valuable intellection property to a direct competitor. (ECF No. 1 at 1). HPT further alleges that while negotiating a purchase for his membership interest in HPT, Cannata actively concealed and failed to disclose that he was sharing HPT's intellectual property and exploring a business opportunity with a competitor. (*Id*. at 7). HTP also alleges that "but for [Cannata's] fraud and concealment…HPT would not have agreed to purchase [Cannata's] membership for more than the book value of [his] one-third interest." (*Id*. at 2). HTP correspondingly alleges that Cannata materially breached the provisions of the purchase agreement by continuing to possess and misappropriate HPT's confidential and proprietary intellectual. (*Id*. at 3). Specifically, HPT alleges, in detail, that Cannata breached various restrictive covenants contained in the purchase agreement including his agreement to return or destroy all of HPT's proprietary or confidential information, the confidentiality agreement, the non-competition agreement, and the non-solicitation agreement. (*Id*. at 10–14; ECF No. 1-2 at 15–17). These allegations plausibly suggest that while Cannata was negotiating and executing an agreement promising to not engage in certain behavior, he was in fact engaging in that behavior without HPT's knowledge or consent. His

alleged behavior falls squarely within federal law's exception for the enforceability of waivers, as it cannot be said that HPT's waiver was voluntary when it was unaware of the full extent of Cannata's actions. The Court will deny the motion to dismiss as to the federal law claims.

*ii. State Law Claims*

As discussed in the Court's choice of law analysis, the Court will apply Illinois law for the non-federal claims. "Under Illinois law, a release will not be construed to defeat a valid claim that was not contemplated by the parties at the time the agreement was executed, and general words of release are inapplicable to claims that were unknown to the releasing party." *Constr. Sys., Inc. v. FagelHaber, LLC*, 35 N.E.3d 1224, 1252 (Ill. App. 2015) (citing *Farm Bank of St. Louis v. Whitlock*, 581 N.E.2d 664 (Ill. 1991)). In fact, "no form of words, no matter how all-encompassing, will foreclose a court's scrutiny of a release or prevent a reviewing court from inquiring into the surrounding circumstances to ascertain whether it accurately reflected the parties' intention." *Id.* (quoting *Carlile v. Snap–on Tools*, 648 N.E.2d 317, 322 (Ill. App. 1995)).

Cannata's argument that HPT's complaint should be dismissed because HPT waived most of its claims for relief also fails under Illinois law. Incorporating HPT's factual allegations of Cannata's deliberate acts of concealment and wrongdoing as above, HPT alleges sufficient facts indicating that it had not contemplated possible fraud claims at the time the purchase agreement was executed and, if it had, it would not have waived them. HPT has sufficiently plead facts indicating that it did not know of Cannata's alleged behavior while it was negotiating his buyout, and as such, it was not possible for it to have contemplated possible state law claims against Cannata. The Court will deny Cannata's motion to dismiss on this ground as well.

///
///
///
///
///
///
///

12

**IV. Conclusion**

IT IS THEREFORE ORDERED that plaintiff HP Tuners's motion to file a supplemental brief (ECF No. 31) is **GRANTED**.

IT IS FURTHER ORDERED that HP Tuners's motion to seal (ECF No. 33) is **GRANTED**.

IT IS FURTHER ORDERED that HP Tuners's motion to seal (ECF No. 23) is **GRANTED**.

IT IS FURTHER ORDERED defendant Kenneth Cannata's motion to dismiss (ECF No. 10) is **DENIED**.

IT IS SO ORDERED.

DATED this 15th day of August, 2019.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE