**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| HP TUNERS, LLC, | Case No. 3:18-cv-00527-LRH-WGC |
| Plaintiff, | **ORDER** |
| vs. | |
| KENNETH CANNATA, | |
| Defendant. | |

Plaintiff HP Tuners, LLC ("HPT" or "Plaintiff") filed a *Motion for Order Compelling Defendant's Discovery Responses, Deposition, and Forensic Examination of Electronically Stored Information* ("Motion to Compel") (ECF No. 49). Defendant Kenneth Cannata ("Defendant") filed an Opposition to the Motion to Compel (ECF No. 51) and HPT replied (ECF No. 53). The Court held a hearing on the Motion to Compel on February 25, 2020. Andrew Bleiman, Esq. and Elizabeth High, Esq. appeared on behalf of Plaintiff. Bart Larsen, Esq. appeared telephonically on behalf of Defendant. For the reasons stated on the record at the hearing and as set forth below, the Court grants in part and denies in part without prejudice HPT's Motion to Compel.

**Discussion**

**A.   Defendant's Deposition**

Plaintiff requested in its Motion that the Court compel Defendant to give his deposition within thirty (30) days. Defendant argued that he has never refused to appear for a deposition.

1

Plaintiff is ordered to set a date and time to depose Defendant on no less than 14 days' written notice. In light of the ongoing Covid-19 pandemic and Defendant's medical concerns, Plaintiff shall make reasonable accommodations to avoid exposing Defendant to potential sources of infection in connection with his deposition. Defendant is admonished that he shall be subject to Rule 37 sanctions as set forth more fully below should he fail to cooperate with scheduling a deposition or fail to appear for his scheduled deposition.

### B.     Forensic Examination of Defendant's Computers and Devices

Plaintiff requested in its Motion that the Court compel Defendant to submit to a third-party forensic examination of electronically stored information on his computers and devices, including but not limited to all phones, laptops or other personal devices (including any storage devices such as a network attached storage system) and any computer hardware, monitors and other peripherals capable of storing data in Defendant's possession, custody or control, or which he has used at any time since January 1, 2016 as well as all versions of any cable or hardware device developed for use with Syked ECU Tuning, Inc.'s software. Defendant replied that he does not possess all of the requested computers and devices as certain computers and devices were previously delivered to Plaintiff, but that to the extent he does possess the requested computers and devices, he is willing to produce certain hardware devices in his possession for inspection by a third party if the parties are able to reach an agreement to reasonably limit the scope of the examination.

In light of Plaintiff's compelling interest, the relevancy of the electronic discovery to this suit, and Defendant's agreement to forensic examination, Plaintiff has demonstrated good cause to grant the request for a third-party forensic examination of the sources requested by Plaintiff. The procedure for conducting the requested discovery and forensic analysis shall be as follows:

(1)   Defendant shall make available, provide access and otherwise tender the following for forensic analysis and data recovery to be conducted by a forensics firm identified by Plaintiff (the "Forensic Examiner"): (a) all computers, laptops, computer hardware, phones, servers, FTP servers, hard drives, backup devices, thumb drives, backup media, USB sticks, flash drives, zip drives, tape drives, floppy disks, SD cards, storage media, optical disks (such as DVDs and CDs), cloud-based servers (hosted by third parties), cloud storage services, DropBox (or equivalent online storage accounts for backup, storage and transmission of

electronically stored information), electronic mail accounts, and all other personal devices (including any storage devices) and any computer hardware, monitors and other peripherals in Defendant's possession, custody or control, which Defendant has used to create or store Electronically Stored Information at any time since January 1, 2016 (collectively referred to as "Defendant's Electronic Devices"); and (b) all versions of any cable or hardware device developed by Defendant for use with Syked ECU Tuning, Inc.'s software and any HP Tuners MPVIs in his possession, custody or control; (c) any and all firmware, software and source code (including all source control, changelogs and/or the history of all modifications to such firmware, software, and source code) in Defendant's possession, custody or control related to automotive tuning software, hardware and/or products developed or sold by Plaintiff or Syked ECU Tuning, Inc; and (d) access to all the information contained in the described devices and services, including providing all required account information (e.g. account names, passwords, devices used in multi-factor authentication systems).

(2) The time frame for the forensic analysis and data recovery will encompass the period January 1, 2016 to present.

(3) The Forensic Examiner identified by Plaintiff that will be used to conduct the data recovery and forensic analysis is <u>Exponent, Inc.</u>

(4) The Forensic Examiner must agree in writing with both Plaintiff and Defendant to be bound by the terms of this Order prior to the commencement of their services.

(5) Defendant shall make available to the Forensic Examiner within fourteen (14) calendar days after the entry of this Order or such other time as the parties may agree at a mutually agreeable location within 50 miles of Reno, Nevada all devices identified in paragraph 1. In light of the ongoing Covid-19 pandemic and Defendant's medical concerns, Plaintiff shall make reasonable accommodations to avoid exposing Defendant to potential sources of infection in connection with the production copying of Electronic Devices.

(6) The Forensic Examiner shall make a mirror image of Defendant's Electronic Devices produced by Defendant but shall not retain possession of Defendant's Electronic Devices or any other hardware or device produced by Defendant. The forensic images shall be retained by the Forensic Examiner until such time as the court or both parties request the destruction of the forensic image files. The Forensic Examiner will maintain all mirrored images and do so in the strictest confidence, and not disclose any information obtained to any person, including the parties and their counsel, except as expressly allowed by court order.

(7) The Forensic Examiner will recover the Electronically Stored Information, Communications and Documents from Defendant's Electronic Devices pursuant to the search terms set forth in <u>Exhibit A</u> hereto.

(8) The Forensic Examiner shall also be permitted to review, inspect and analyze: (a) all versions of any cable or hardware device developed by Defendant for use with Syked ECU Tuning, Inc.'s software and any HP Tuners MPVIs in Defendant's possession, custody or control; and (b) any and all firmware, software and source code (including all source control, changelogs and/or the history of all modifications to such firmware, software, and source code) in Defendant's possession, custody or control related to automotive tuning software, hardware and/or products developed or sold by Plaintiff or Syked ECU Tuning, Inc.[1]

(9) The Forensic Examiner also will conduct a search or run other appropriate programs to determine whether any Electronically Stored Information, Communications and Documents have been deleted, destroyed, altered, or otherwise compromised since January 1, 2016, and whether any programs have been installed that would alter, destroy, erase, modify, or otherwise compromise any portion of each computer or its contents as of the date of the inspection and examination. The Forensic Examiner also will be permitted to conduct such search efforts as are necessary to form an opinion as to whether any procedures were put into place to preserve Electronically Stored Information, Communications and Documents as of the date of the inspection and examination.

(10) The recovery of Communications will include all Communications in any form whatsoever including, but not limited to, deleted emails and text messages, forwarded emails and text messages, copied ("cc") and blind-copied ("bcc") emails and text messages and draft emails and text messages. The recovery of Electronically Stored Information, Communications and Documents will include all Electronically Stored Information, Communications and Documents including drafts, multiple versions, and final versions.

(11) The Forensic Examiner will securely maintain the original data recovered in order to establish a chain of custody.

(12) The Forensic Examiner will produce a copy of the recovered data to Defendant's counsel of record, if any; if Defendant does not have counsel, the copy shall be produced to Defendant.

(13) Defendant's counsel of record, if any, or Defendant, if Defendant does not have counsel, will review the data to identify any privileged or personal Communications and Documents that Defendant seeks to withhold from document production.

(14) Within twenty-one (21) days of obtaining the recovered data from the Forensic Examiner, Defendant's counsel of record, if any, or Defendant, if Defendant does not have counsel, shall prepare and provide to counsel for Plaintiff a log of privileged or personal Communications and Documents ("Privileged and Personal Communications and Documents Log") protected against disclosure by a relevant legal privilege and include the identity of the email, the sender and recipient (and

---

[1] All capitalized terms not specifically defined in this Order are as defined in Exhibit A.

4

any individuals identified in the "cc" and "bcc" fields), the date sent, the nature of the privilege, a general description of the Communication or Document and the basis for asserting the privilege.

(15) Together with the Privileged and Personal Communications and Documents Log, Defendant shall produce (within twenty-one (21) days after obtaining the recovered data from the Forensic Examiner) all Communications and Documents recovered by the Forensic Examiner, which are not identified on the Logs.

(16) If any document attachment to a Communication is identified through the discovery of a Communication, and such document was opened, saved from, detached or otherwise transferred or reproduced on the hard-drive of Defendant's Electronic Devices, such attachment shall be produced or the Forensic Examiner shall be given access to Defendant's Electronic Devices to conduct further data recovery in order to obtain such document(s).

(17) If any document is identified by the Forensic Examiner as being opened, saved, altered, transferred or reproduced and it falls within the scope of the request, such document must be produced by the Forensic Examiner and handled by Defendant's counsel, if any, or the Defendant in the same manner as though it was a Communication.

(18) If Plaintiff disagrees with the assertion of any privileges, the parties shall submit to the Court the disputed Communications, Documents and Logs for the Court to view *in camera* and determine whether the Documents must be produced.

(19) The Forensic Examiner's costs shall be borne by Plaintiff.

C.  **Written Discovery**

The Plaintiff requested in the Motion to Compel that this Court order (1) a complete production of email and text communications, arguing that Defendant had not produced, among other things, secret emails, missing attachments and links, financials, or Drop Box contents had not produced any text messages at all; (2) the production of emails from Defendant's somethingnew1892@yahoo.com address; (3) the Defendant to answer Interrogatories for which supplementation has been requested but never provided; and (4) the Defendant to supplement his responses to Plaintiff's Requests for Admission regarding the return of certain property to Plaintiff by a particular date.

The Defendant generally replied that he asserted appropriate objections to discovery requests in his discovery responses, that he cannot produce texts, emails or documents that he does

not possess or have access to and that some of the requested information is confidential and proprietary information owned by the Defendant.

The Court noted on the record that it does not favorably receive boilerplate objections and stated that it would not acknowledge certain of Defendant's boilerplate objections. The Court further noted on the record that it cannot and will not order Defendant to produce documents that he does not possess or have access to. With respect to certain of Plaintiff's specific requests, the Court ordered as follows:

### i. **Interrogatories**

Defendant shall produce a copy of the software or electronically stored information described in Interrogatory 4, including but not limited to the administrative copy of the VCM software within fourteen (14) days after the entry of this Order.

Defendant shall further supplement his responses to Interrogatory Nos. 2 – 4 to:

2) Identify all Documents (including but not limited to electronically stored information) which evidence, refer or relate to HPT's source code, software, programming, products and/or credits which have been in Your possession, custody or control at any time on or after October 21, 2016.

3) Identify all Documents (including but not limited to electronically stored information) which evidence refer or relate to HPT's interfaces, source code, designs, schematics, program files, software, firmware or other intellectual property of HPT which have been in Your possession, custody or control at any time on or after October 21, 2016.

4) Identify all Documents (including but not limited to electronically stored information) relating to HPT's MPVI which have been in Your possession, custody or control at any time on or after October 21, 2016

In connection with these Interrogatories, Defendant is ordered to provide complete answers to Interrogatory Nos. 2, 3 and 4 and responsive information as to what was possessed at any time

on and after October 21, 2016. The supplemental answers shall be provided within fourteen (14) days after the entry of this Order.

Plaintiff's request that the Court compel Defendant to supplement his responses to Interrogatories Nos. 5 and 6 is denied without prejudice.

### ii. Requests for Admissions

Plaintiff's request that the Court compel Defendant to supplement his responses to Requests for Admission Nos. 17, 18, 19, 27, 30 and 33 is denied without prejudice.

### iii. Requests for Production of Documents

Plaintiff's requests regarding Requests for Production of Documents Nos. 1 – 5 was resolved pursuant to the Court's ruling on the forensic examination of hardware and software.

The parties shall meet and confer to discuss clarification of Requests for Production of Documents Nos. 25 and 26.

Within fourteen (14) days after the entry of this Order, Defendant shall supplement his response to Request for Production of Documents No. 44 related to whether Defendant was paid for services performed, information or technology during the stated time period.

Plaintiff's remaining requests contained in the Motion to Compel to Requests for Production of Documents are denied without prejudice.

**D.** **Removal of Defendant's "Highly Confidential" Designations**

Plaintiff requested in its Motion that the Court compel Defendant to remove all "Highly Confidential" designations from Documents. Defendant replied that the "Highly Confidential" designations are appropriate.

Pursuant to *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. 12-cv-2582, 2012 U.S. Dist. LEXIS 176891, at * 4 (N.D. Cal., Dec. 13, 2012), the burden is on the objecting party to prove with particularity to each document that a confidentiality designation is appropriate. Here, the Defendant has not yet carried his burden of proof that the "Highly Confidential" designations on responsive documents are appropriate.

Plaintiff's Motion to Compel as it relates to Defendant's "Highly Confidential" designations is granted. Defendant shall remove the "Highly Confidential" designations from all documents; however, Defendant may file, under seal, a motion to retain the confidentiality designations on or before September 21, 2020. Plaintiff's response, if any, may also be filed under seal.

### E.  Scheduling Order and Discovery Deadlines

Given that the Court has separately granted the Defendant's counsel's Motion to Withdraw, the deadlines previously set forth in the scheduling order are hereby modified and extended as follows:

| | |
|---|---|
| Discovery Cut-off: | **January 29, 2021** |
| Initial Expert Disclosure: | **November 20, 2020** |
| Rebuttal Expert Disclosure: | **December 18, 2020** |
| Dispositive Motions: | **February 26, 2021** |
| Joint Pre-trial Order: | **March 26, 2021** |

In the event that dispositive motions are filed, the deadline for filing the proposed joint pretrial order shall be suspended until thirty (30) days after the Court issues an Order ruling on the dispositive motions or further court order.

By agreeing to this order, no party waives its rights or objections to the discovery sought herein.

**Defendant is hereby cautioned that should he fail to cooperate with Plaintiff to reschedule his deposition in a timely manner, to attend his deposition, to produce the emails, text messages, documents, communications, computers and other electronic devices as set forth in this Order or to supplement his discovery responses as set forth in this Order, he will be subject to sanctions pursuant to Federal Rule of Civil Procedure 37, which shall include but will not be limited to the Court striking Defendant's Answer and entering a default judgment against Defendant.**

**Defendant is further cautioned that to the extent it is discovered that emails, text**

**messages, communications, documents and electronically stored information on Defendant's computer or devices or the computers and/or devices themselves have been altered, destroyed, erased, modified, or otherwise compromised in any way to prevent the discovery of relevant evidence, the Court will view this information disfavorably and will entertain a motion for spoliation filed by the Plaintiff.**

## II. Conclusion

IT IS THEREFORE ORDERED that plaintiff HP Tuners' Motion to Compel (ECF No. 49) is **GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE** as set forth herein.

IT IS SO ORDERED.
DATED this 20th day of August, 2020.

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT A

# DEFINITIONS

"Communication," whether in the singular or plural, means any discussion, conversation, conference, meeting or exchange of documents between or among persons, whether in person, by telephone, in writing or otherwise, and shall include electronic mail communications and text messages.

"Document," whether in the singular or plural, means every draft, original or non-identical copy (whether different from the original by reason of notations made on such copy or otherwise), regardless of location, of every tangible item or object in Your possession, custody or control (or in the possession, custody or control of Your attorneys), however, and by whomever prepared, produced, reproduced, disseminated, or made in any form, including, but not limited to, the following: letters, minutes, correspondence, electronic communications (in native and hard copy format), e-mail, text message, electronic message, electronic communication, instant message, direct message, facsimiles, notes or summaries or conversations, inter- and intra-office memoranda, contracts, agreements, desk calendars, appointment books, diaries, books, manuals, bulletins, circulars, catalogues, charts, transcripts, reports, studies, evaluations, analyses, graphs, worksheets, notices, notes, notebooks, journals, statistical records, maps, surveys, drawings, blueprints, opinion letters, newsletters, press releases, brochures, booklets, flyers, sketches, data sheets, data compilations, computer data sheets, photographs, movie film, videotape, sound recordings, microfilm, microfiche and any other written, printed, typed, recorded or graphic matter from which information can be obtained or can be translated through detection devices in a reasonably useable form, including electronic mail or data stored electronically.  Any alterations, notes, comments or other material contained thereon or attached thereto not included in any original or other copies shall be deemed a separate document within the foregoing definition.  All drafts and non-identical copies are to be separately identified.

"Electronically Stored Information" means any documents or electronically stored information including but not limited to including writings, drawings, graphs, charts, photographs,

sound recordings, images, source code, software, firmware, electronic communications and other data or data compilations stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

**SEARCH TERMS**

- Hpt
- Hptuner
- "HP Tuner"
- "hpt credit"
- discounthptunercredits@mail.com
- somethingnew1892@yahoo.com
- fhptuners@yahoo.com
- cable
- Decompile
- deconstruct
- "reverse engineer"
- reverse
- "disassemble"
- "firmware"
- "firmware hack"
- "HP Tuners Decryptor"
- "HPT Cloned Cable"
- "HPT Cracked software"
- "HPT Resources DB2_26_2017"

- KeyGenWindows
- License
- licTransfer
- MPVI
- "key generator"
- "eliminator"
- Parameter
- Convention
- TeamViewer
- "Team Viewer"
- Team-Viewer
- Tim
- Milliken
- Chris
- Christopher
- Breton
- Jean
- "Breton-Jean"
- Gilvach
- Sykes-Bonnett
- Kevin
- Syked
- Syked ECU
- Syked Performance
- John

- Martinson
- Keith
- Prociuk
- Chris
- Piastri
- Interface
- Handheld
- "Source code"
- Source
- Washington
- "Purchase Agreement"
- Non-compete
- Compete
- Shares
- Ownership
- FTP
- Server
- Fhpt
- Somethingnew1892
- Flash drive
- Whitaker
- "Lane Powell"
- Phil
- Mann
- "Mann Law Group"
- SEMA
- NDA
- Non-disclosure
- Programming
- Schematic

- "Application key"
- Key
- Credit
- VCM
- Suite
- "VCM Suite"
- Admin
- "Key Generator Tool"
- PCM
- "PCM Tools"
- Harness
- KJC
- appkey
- keygen