Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Eq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
E-Mail: blarsen@shea.law
          kwyant@shea.law

*Attorneys for Defendant*
*KENNETH CANNATA*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company;<br><br>                    Plaintiff,<br><br>          vs.<br><br>KENNETH CANNATA,<br><br>                    Defendants. | CASE NO. 3:18-CV-00527-LRH-WGC<br><br>**NOTICE OF CORRECTED IMAGE/DOCUMENT FOR CANNATA'S RESPONSE TO PLAINTIFF'S MOTION FOR WRIT OF ATTACHMENT [ECF NO. 86]** |

Defendant Kenneth Cannata ("Cannata"), by and through its counsel of record, hereby gives notice of the corrected image/document that is to replace Cannata's Response to Plaintiff's Motion for Writ of Attachment [ECF No. 86]. The corrected document to replace ECF No. 86 is attached hereto as **Exhibit A**.

DATED this 17 day of December, 2020.

SHEA LARSEN

/s/ *Bart K. Larsen, Esq.*
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
*Attorneys for Kenneth Cannata*

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2020, I electronically transmitted the foregoing **NOTICE OF CORRECTED IMAGE/DOCUMENT FOR CANNATA'S RESPONSE TO PLAINTIFF'S MOTION FOR WRIT OF ATTACHMENT [ECF NO. 86]** to the Office of the Clerk of the United States District Court, District of Nevada, using the CM/ECF System, for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants listed for this matter.

By: /s/ *Bart K. Larsen, Esq.*

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

# EXHIBIT A

Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Email: blarsen@shea.law
       kwyant@shea.law

*Attorneys for Defendant*
*KENNETH CANNATA*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company;<br><br>    Plaintiff,<br><br>vs.<br><br>KENNETH CANNATA,<br><br>    Defendants. | CASE NO. 3:18-CV-00527-LRH-WGC<br><br>**DEFENDANT KENNETH CANNATA'S OPPOSITION TO PLAINTIFF'S MOTION FOR PREJUDGMENT WRIT OF ATTACHMENT** |

Defendant Kenneth Cannata ("Cannata") hereby files his Opposition (the "Opposition") to Plaintiff HP Tuners, LLC's ("HPT") Motion for Prejudgment Writ of Attachment [ECF No. 81] (the "Motion"). This Opposition is supported by the Declaration of Kenneth Cannata filed in support hereof (the "Cannata Declaration"), the papers and pleadings on file herein, the following Memorandum of Points and Authorities, the attached exhibits, and any oral argument this Court may entertain on the Motion.

DATED this 15th day of December 2020.

SHEA LARSEN

/s/ *Bart K. Larsen, Esq.*
Bart K. Larsen, Esq.
Nevada Bar No. 8538
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134

*Attorneys for Kenneth Cannata*

- 1 -

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

By way of its Motion, HPT seeks to effectively freeze all Cannata's assets by requesting a prejudgment writ of attachment against Cannata's financial accounts, his home where he resides with his wife and two young children, and a separate parcel of real property.  This would leave Cannata unable to pay for day-to-day living expenses, unable to support his family, and unable to pay attorney and expert witness fees necessary to defend this case.  It would effectively deprive Cannata of his property without due process and before any judgment in this case is ever rendered. Despite seeking such a harsh and extreme remedy, the only evidence provided in support of HPT's Motion is a self-serving and conclusory declaration from its lead counsel in this matter, Andrew Bleiman, Esq.

Moreover, the entire premise of the Motion – that Cannata is supposedly "no longer handling is own finances and affairs" – is completely false.  While it true that Cannata suffered a serious medical emergency in March 2020 that required that he be hospitalized for several weeks and left him unable to participate in this action for several months, he has since fully recovered.  Cannata is no longer required to take any medication and is no longer under any doctor's order restricting his activities.  Cannata is in full control of his personal financial affairs.  As such, HPT's justification for seeking a prejudgment writ simply does not exist.

Nevada courts routinely hold that a conclusory declaration such as the one presented here cannot support the granting of the extreme remedy of prejudgment attachment.  For this reason alone, HPT's unsupported Motion should be denied.  Moreover, despite seeking to effectively bankrupt Cannata, the Motion fails to comply with the various statutory requirements imposed by NRS Chapter 31 which govern prejudgment remedies such as the one sought here.  Indeed, the Motion fails to: (1) establish any probable validity of success on the merits of any of HPTs' twelve claims for relief asserted, or (2) provide any valid extraordinary circumstances which would necessitate the award of such an extreme remedy.  Without doing so, HPT is not entitled to the extraordinarily harsh relief it seeks.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

HPT's Motion should also be denied because it seeks to attach property owned by parties not present in this action; fails to acknowledge various exempt assets it seeks to attach; relies on a declaration offered in violation of Nevada's Rules of Professional Conduct, Rule 3.7; and further is prejudicial in timing and nature because HPT has effectively stonewalled Cannata and his counsel from obtaining wholly relevant discovery in this matter and have not provided Cannata the opportunity to rebut the expert reports served on or about November 20, 2020 to which rebuttal reports are due on January 8, 2021.  Additionally, the Motion should be denied because it fails to acknowledge the requirement that HPT post a bond more than the amount seeking to be attached. HPT must meet a very a high burden to establish it is entitled to such an extreme remedy.  HPT has failed to meet that burden in all the respects listed above.  For these reasons, HPT's Motion should be denied.

## II.   STATEMENT OF RELEVANT FACTS

### A.   Cannata's Separation from HP Tuners, LLC

1.   Prior to approximately October 2016, Cannata was a one-third member and owner of HPT, which was organized as a Nevada limited liability company on or about December 31, 2003 by me, Keith Prociuk ("Prociuk"), and Chris Piastri ("Piastri").[1]

2.   Due to various disagreements regarding the operation and management of HPT, Cannata requested in or around July 2015 that Prociuk and Piastri, who were also each one-third members and owners of HPT, buy out his interest in HPT for fair market value, which h then estimated to be approximately $8 million, pursuant to a Buy Sell Agreement that they had previously entered into as members of HPT.[2]

3.   Prociuk and Piastri agreed to purchase Cannata's interest in HPT for fair market value, but Prociuk and Piastri disagreed with Cannata's fair market value estimate, claiming instead that the fair market value of Cannata's interest in HPT was far less than $8 million.[3]

4.   Cannata continued to negotiate with Prociuk and Piastri concerning the sale of his

---

[1] Cannata Declaration, ¶ 2.

[2] *Id.*, ¶ 3.

[3] *Id.*, ¶ 4.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

membership interest in HPT during the following months, but they were unable to come to an
agreement during 2015 regarding the fair market value of Cannata's interest in HPT.[4]

5. ████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████

██  ████████████████████████████████

██  ████████████████████████████████████████

██  ████████████████████████████████████████

████████████

██  ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████

██  ██████████████████████████

██  ████████████████████████████████

██  ██████████████████████████████

██  ████████████████████████████████████████

██  ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

7. Prociuk and Piastri's objective in unilaterally taking such actions was to increase

HPT's expenses and reduce its net income to the point where Cannata would receive no distributions

---

[4] *Id.*, ¶ 5.

[5] *Id.*, ¶ 6. ████████████████████████████████████

[6] *Id.*, ¶ 7.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

as a one-third member and owner of HPT and, with no salary or other source of income, would be forced to sell his interest in HPT for less than fair market value.[7]

8.      Cannata did not go into business with Syked ECU Tuning, Inc. ("Syked") in February 2016 as HPT alleges in its Motion.  Cannata discussed a potential business relationship with Kevin Sykes-Bonnett ("Sykes-Bonnett"), who is a principal of Syked, around that time but only because he was on the brink of being wrongfully forced out of HPT.  If not for Prociuk and Piastri's wrongful attempts to force him out of HPT, Cannata would not have considered any potential business relationship with Sykes-Bonnett at that time.[8]

9.      Notwithstanding their attempts to force him out of the company, Cannata eventually reached an agreement with Prociuk and Piastri to sell his membership interest in HPT and entered into a Membership Interest Purchase Agreement on or about October 20, 2016 under which he subsequently received approximately $6,460,000 in consideration for such sale.[9]

10.      Cannata did not enter into any business arrangement of any kind with Syked or Sykes-Bonnett prior to the sale of his membership interest in HPT.[10]

**B.      The Wrongful Conduct of Sykes-Bonnett**

11.      For reasons Cannata explained in a declaration filed in a separate case pending between HPT and Syked in the U.S. District Court for the Western District of Washington[11] (the "Washington Case"), he provided a thumb drive to Sykes-Bonnett that contained a copy of HPT's "key generator."[12]

12.      Sykes-Bonnett subsequently misused HPT's key generator to sell fraudulent credits that could be used in connection with HPT's software and hardware.  Cannata did not provide the key generator to Sykes-Bonnett for that purpose, was not involved in any way in Sykes-Bonnett's

---

[7] *Id.*, ¶ 8.

[8] *Id.*, ¶ 9.

[9] *Id.*, ¶ 10.

[10] *Id.*, ¶ 11.

[11] *HP Tuners, LLC v. Kevin Sykes-Bonnett, Syked ECU Tuning Inc. and John Martinson*, Case No. 3:17-cv-05760-BHS.

[12] Cannata Declaration, ¶ 12.  A true and correct copy of that declaration is attached hereto as Exhibit B.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

fraudulent sale of such credits, and did not receive any income or otherwise benefit as a result of Sykes-Bonnett's fraudulent sale of such credits.[13]

13.    Sykes-Bonnett also subsequently posted a "hacked" version of HPT's software on the internet for download that could be used to make use of HPT's software and hardware without purchasing credits from HPT.  Cannata was not involved in any way in Sykes-Bonnett "hacking" HPT's software or in his posting such software on the internet, and he did not receive any income or otherwise benefit from such actions.  Sykes-Bonnett did not use any information Cannata provided to "hack" HPT's software.[14]

14.    During the time that Cannata was associated with HPT, several similar "hacked" versions of HPT's software were known to exist that were not attributable to Sykes-Bonnett.[15]

15.    During the time Cannata was associated with HPT, HPT had the ability to identify and remotely disable "hacked" versions of its software to stop such software from being used without purchasing credits from HPT.  As such, the posting of "hacked" versions of HPT's software posed little risk of disrupting HPT's sales.[16]

**C.    The Development of the Eliminator Cable**

16.    After his separation from HPT, Cannata developed a data cable for use in vehicle performance tuning applications in connection with pre-existing software developed by Syked (the "Eliminator Cable").[17]

17.    The Syked software was developed prior to 2016 and was not based in any way on any similar software developed by HPT.[18]

18.    Cannata did not develop the Eliminator Cable using any confidential or proprietary information that belongs to HPT, and the Eliminator Cable does not incorporate any such

---

[13] *Id.*, ¶ 13.

[14] *Id.*, ¶ 14.

[15] *Id.*, ¶ 15.

[16] *Id.*, ¶ 16.

[17] *Id.*, ¶ 17.

[18] *Id.*, ¶ 18.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1    confidential or proprietary information in its design or function.[19]

2        19.    Any similarities that exist between the firmware for the Eliminator Cable and the

3    firmware for HPT's MPVI cable are due strictly to the fact that firmware for both cables includes or

4    is based on code obtained from third parties that allows both cables to access the automobile engine

5    control units ("ECUs") of various automobile manufacturers.  HPT did not develop and has no

6    proprietary interest in such code, which was developed by and belongs to the automobile

7    manufacturers.[20]

8        20.    Cannata developed the firmware for both the Eliminator Cable and HPT's MPVI

9    cable using his independent knowledge and expertise as a programmer, which he developed over the

10   course of his career prior to his association with HPT.  There was absolutely no need for Cannata to

11   copy or use any of HPT's confidential or proprietary information in the development of the

12   Eliminator Cable as he already possessed the knowledge and expertise needed to do so.[21]

13       21.    No more than a dozen Eliminator Cables were sold before Cannata voluntarily agreed

14   to suspend sales of the Eliminator Cable in May 2019 pending the resolution of this lawsuit.[22]

15       22.    Cannata actions in connection with the development of the Eliminator Cable did not

16   cause HPT to lose any material number of sales or suffer any other material damages.[23]

17   **D.    Cannata's Health**

18       23.    On March 3, 2020, Cannata suffered a serious medical emergency that required that

19   he be hospitalized for several weeks and left him unable to materially participate in this case for

20   several months.[24]

21       24.    However, after several months of medical treatment and physical therapy, Cannata

22   has recovered from this medical emergency.  Cannata is no longer required to take any medication

23

24   [19] *Id.*, ¶ 19.

25   [20] *Id.*, ¶ 20.

     [21] *Id.*, ¶ 21.

26   [22] *Id.*, ¶ 22.

27   [23] *Id.*, ¶ 23.

28   [24] *Id.*, ¶ 24.

1    and is no longer subject to any doctor's order limiting his activities.[25]

2         25.    Cannata is fully in control of and competent to handle his own financial affairs.  No

3    other person is in control of or responsible for the handling of his personal finances.[26]

4         26.    HPT's counsel had no reasonable basis to believe Cannata was not in control of his

5    personal finances at the time HPT's Motion was filed.  In fact, on November 30, 2020, Cannata's

6    undersigned counsel, Bart K. Larsen, spoke with HPT's lead counsel, Andrew P. Bleiman, by

7    telephone to discuss various discovery matters, including the scheduling of Cannata's deposition.

8    During this call, Cannata's undersigned counsel advised HPT's lead counsel that Cannata no longer

9    has any difficulty communicating and seemed to have fully recovered.

10   **E.    HPT's Obstruction of Discovery**

11        27.    On November 20, 2020, HPT disclosed an expert report indicating that HPT is

12   seeking over $15 million in highly speculative damages against Cannata.  HPT designated this report

13   as "Highly Confidential – Attorneys' Eyes Only" notwithstanding the fact that the report is a near-

14   wholesale duplication of the damages HPT has publicly claimed against Syked and Sykes-Bonnett

15   in the Washington Case.

16        28.    On that same date, HPT disclosed a separate expert report related to the examination

17   of Cannata's hard drives and electronic devices that it also designated as "Highly Confidential –

18   Attorneys' Eyes Only" despite the fact it relates almost exclusively to the contents of Cannata's own

19   hard drives and electronic devices.

20        29.     Despite multiple requests that the "Highly Confidential – Attorneys' Eyes Only"

21   designation be removed from these reports to facilitate the preparation of rebuttal reports by experts

22   engaged by Cannata, HPT has failed to provide any definite response.

23        30.    Moreover, these reports are based in part on HPT's experts' review of declarations,

24   depositions, and other materials exchanged in discovery in the Washington Action.  Cannata

25   requested that HPT produce such materials in this action more than 18 months ago and has made

26

27   [25] *Id.*, ¶ 25.

28   [26] *Id.*, ¶ 26.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

several efforts to meet and confer with HPT's counsel regarding the production of these materials.

31.     As a result, and despite multiple efforts to meet and confer with HPT's counsel regarding these matters, Cannata anticipates it will be necessary to file a motion to compel HPT to produce these documents and others.

## III.     LEGAL ARGUMENT

### A.     HPT Has Not Met the High Burden Necessary to Obtain the Harsh Remedy of a Prejudgment Writ of Attachment.

"The remedy by attachment is a harsh one." *O'Neil v. N.Y. & Silver Peak Min. Co.*, 3 Nev. 141, 147 (1867).  "Because attachment is a harsh remedy, as the debtor loses some control of its property without the protection of a full adjudication, the provisions related thereto should be strictly construed" against the applicant.  *In re S. Cal. Plastics, Inc.*, 165 F.3d 1243, 1248 (9th Cir. 1999) (citations omitted); *see also Blastrac, N.A. v. Concrete Solutions & Supply*, 678 F. Supp. 2d 1001, 1104 (C.D. Cal. 2010).  "A prejudgment attachment of property…will only be appropriate under extraordinary circumstances or when legal remedies are shown to be inadequate and the right to recover is clear."  *In re Murray Indus. Inc.*, 105 B.R. 96, 99 (Bankr. M.D. Fla. 1989).  "The burden is on the applicant to establish each element necessary for an attachment order by a preponderance of the evidence."  *Blastrac*, 678 F. Supp. 2d at 1004-05.

Fed. R. Civ. P. 64 allows parties in federal court to invoke the remedial provisions of the law of the state in which the federal court is located.  *Id.* at 1004.  Thus, here, Nevada law provides the rules governing HPT's Motion.  In Nevada, a prejudgment writ of attachment is only available in certain actions.  Here, the only statute the Motion cites in support of its request for a prejudgment writ of attachment is NRS 31.013(3).  *See* Motion, 12:10.

NRS 31.013(3) only allows the issuance of a prejudgment writ of attachment if "the court finds that extraordinary circumstances exist which will make it improbable for the plaintiff to reach the property of defendant by execution after the judgment has been entered."  Put differently, the burden is on the moving party to establish that: (1) extraordinary circumstances exist and (2) those extraordinary circumstances will make it improbable for HPT to reach defendant's property in the

SHEA LARSEN

1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

- 9 -

event a judgment is entered.   Additionally, a party seeking a prejudgment writ of attachment must also comply with NRS 31.020's affidavit requirements, which requires that a party:

> (a)  Set forth clearly the nature of the plaintiff's claim for relief and that the same is valid.
>
> (b)  Set forth the amount which the affiant believes the plaintiff is entitled to recover from the defendant, and if there is more than one HPT or more than one defendant, the amount the affiant believes each HPT is entitled to recover or the amount that the plaintiff is entitled to recover from each defendant.
>
> (c)  Describe in reasonable and clear detail all the facts which show the existence of any one of the grounds for an attachment without notice to the defendant.
>
> (d)  Describe in reasonable detail the money or property sought to be attached and the location thereof if known.
>
> (e)  If the property sought to be attached is other than money, set forth to the best knowledge and information of the affiant, the value of such property less any prior liens or encumbrances.
>
> (f)  Name all third persons upon whom a writ of garnishment in aid of the writ of attachment will be served.
>
> (g)  In an action upon a foreign judgment attach a copy of the judgment to the affidavit for attachment as an exhibit.
>
> (h)  State whether, to the best information and belief of the affiant, the money or property sought to be attached is exempt from execution.

NRS 31.020(1).  "A conclusory affidavit, however, provides no basis for a court to issue a writ of attachment."  *Paramount Ins. Inc. v. Rayson & Smitley*, 86 Nev. 644, 472 P.2d 530, 534 (1970). Moreover, when a party is seeking a writ of attachment to property, the affidavit "must not be merely conclusory and must contain an opinion of value by a witness qualified to express such an opinion." *Id.*

Further, the applicant must establish that the party seeking the writ has a probable validity of succeeding on its underlying claims.  *See* NRS 31.026.  To establish the probable validity of the underlying claim(s), "the court must consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation." *Blastrac*, 678 F. Supp. 2d at 1005; *see also Coombs v. Heers*, 366 F. Supp. 851, 853 (D. Nev. 1973) (acknowledging the identical California statute and adopting the California Court of Appeals' interpretation).  California

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

- 10 -

has adopted a statute stating that to establish "probable validity," the plaintiff must show it is more likely than not that it will obtain a judgment against the defendant.  Cal. Civ. Proc. Code § 481.190; *see also Blastrac*, 678 F. Supp. 2d at 1005.  The plaintiff must also show that the defenses raised are "less than fifty percent likely to succeed."  *Id.*

In *Blastrac*, the plaintiff was denied a prejudgment writ of attachment at least partially because it did not effectively address defendant's defense that HPT failed to perform under the subject contract. *Id.* at 1007. In *Sanad v. Bernini, Inc.*, No. 2:07-cv-00587-PMP-GWF, 2007 WL 2891436 (D. Nev. Sept. 28, 2007), the plaintiff, arguing the extraordinary circumstances basis for a writ of attachment from NRS 31.013(3), alleged in its supporting affidavit that there were "strong suggestions" that the defendant was going to dispose of or conceal money or property based on the closure of one of three stores. *Id* at *2. The defendant provided justification for the closed store, which the plaintiff failed to refute. *Id.* at *3. The Court did not bother to issue an order to show cause why a writ of attachment should not issue, but denied the application outright based on the plaintiff's failure to refute the justification. *Id.*

In addition, the plaintiff must file a bond in an amount not less than the amount of the plaintiff's claim or the value of the property to be attached.  *See* NRS 31.030(1).  The bond must be payable to the defendant in the event that HPT dismisses the action or defendant is found not liable for the amount claimed.  *Id.*  The bond must cover all costs awarded to defendant and "all damages which the defendant may sustain by reason of the attachment including attorney's fees, not exceeding the sum specified in the undertaking."  *Id.*  Importantly, an abuse of process claim may arise when the value of the attached property exceeds the amount of the alleged debt. *See Nev. Credit Rating Bureau, Inc. v. Williams*, 88 Nev. 601, 606, 503 P.2d 9, 13 (1972).

Here, HPT has not met its burden to establish sufficient legal grounds for a prejudgment writ of attachment.  As such, this harsh remedy should not issue.  HPT has failed to address numerous aspects of the foregoing statutory authority in Nevada, including failing to acknowledge the bond requirement, failing to put forth anything but a conclusory affidavit of counsel in this matter, and by failing to establish that HPT has a probable validity of success on its claims.  Moreover, HPT's

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1  supposed fear that Cannata's medical condition will prevent him from controlling his own personal

2  finances – the entire premise of HPT's Motion – is unfounded and entirely incorrect.  As such, there

3  are no extraordinary circumstances present, and in addition to the reasons above, HPT cannot meet

4  the high burden needed to procure such a harsh remedy here.  HPT's Motion should be denied in its

5  entirety.

6  **B.  No Extraordinary Circumstances Exist that Could Justify Granting a Pre-Judgment Writ of Attachment Under NRS 31.013(3).**

7

8  HPT's Motion asserts one basis, and one basis only, for the extreme remedy of a prejudgment

9  writ of attachment – HPT's unfounded suspicion that Cannata is no longer in control of his own

10  personal finances.  Based on this conjecture, the Motion seeks a prejudgment writ pursuant to NRS

11  31.013(3), which provides that a court may grant a prejudgment writ of attachment only in a situation

12  where "the court finds that extraordinary circumstances exist which will make it improbable for the

13  plaintiff to reach the property of the defendant by execution after the judgment has been entered."

14  Here, HPT's Motion argues that a prejudgment writ of attachment is warranted based on Cannata's

15  "deteriorated medical condition" which HPT alleges makes it "seem[] improbable that Defendant

16  Cannata is currently able to direct and control his assets."[27]  HPT further asserts that it is this medical

17  condition that gives HPT "a legitimate and supportable belief that_the [sic] custody, control, and

18  disposition of Defendant Cannata's assets that would be used to satisfy a potential judgment in this

19  case are presently jeopardized."[28]  HPT classifies this as the "extraordinary circumstances" which

20  support the prejudgment writ of attachment.[29]  Yet, HPT offers no evidence whatsoever of Cannata's

21  current health and makes no effort at all to explain how Cannata's supposedly impaired health would

22  put his assets in jeopardy.

23  Furthermore, HPT knows that its claims regarding Cannata's current health are, at best,

24  misleading.  As recently as November 30, 2020 – the day before the Motion was filed – Cannata's

25  undersigned counsel advised HPT's lead counsel that Cannata will be available for deposition in

26  ───────────────

[27] Motion, 12:16, 18-20.

27  [28] *Id.* at 11:6-9.

28  [29] *Id.* at 11:9.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

January 2021, that Cannata has no longer has any difficulty communicating by telephone, and that Cannata seems to have fully recovered from the medical emergency that occurred in March. Additionally, the Cannata Declaration confirms that HPT's claimed concerns regarding Cannata's health are entirely unfounded. After several months of medical treatment and physical therapy, Cannata has recovered from the medical emergency referenced in the Motion.[30] Cannata is no longer required to take any medication and is no longer subject to any doctor's order limiting his activities.[31] Cannata is fully in control of and competent to handle his own financial affairs. No other person is in control of or responsible for the handling of his personal finances.[32] As such, HPT's allegations regarding the "extraordinary circumstances" relating to Cannata's health are simply incorrect. HPT is not entitled to any shortcut to recovery based on Cannata's health or for any other reason.

In a case analogous to the situation at hand, this Court refused to grant a Motion for a prejudgment writ of attachment. *See Cleverley v. Ballantyne*, No. 2:12-cv-00444-GMN-GWF, 2013 U.S. Dist. LEXIS 206405, *5 (D. Nev. Sept. 20, 2013). In *Cleverley*, a plaintiff sought a prejudgment writ of attachment from this court based in part on NRS 31.013(3), alleging that defendant Ballantyne sold an entity, Allsite, thereby effectively rendering all the corporation's assets out of reach. *Id.* at *7. However, in opposing the motion for prejudgment writ, the defendant put forth a declaration stating that the entity sold was a separate and unrelated company and that Allsite's assets were still present to recover against in the event HPT was successful. *Id.* The Court denied HPT's motion, stating "that extraordinary circumstances do not exist that would warrant a prejudgment writ of attachment under NRS 31.013(3)." *Id.* at *8.

Here, like the plaintiff in *Cleverly* who had a jumped to an incorrect conclusion regarding the facts on which its motion was based, HPT is plainly wrong in claiming that Cannata's health is currently impaired or is in any way likely to prevent HPT from recovering on any judgment it may ultimately obtain. Like this Court found in *Cleverly*, the Court here should find that HPT's incorrect assumptions cannot carry the day of showing that "extraordinary circumstances" exist as is required

---

[30] Cannata Declaration, ¶ 25.

[31] *Id.*, ¶ 26.

[32] *Id.*, ¶ 27.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

by NRS 31.013(3).  As it was HPT's burden to establish that extraordinary circumstances existed, the Motion should be denied in its entirety.

### C.     HPT's Motion Is Not Supported by Relevant Evidence.

The Motion fails to establish the existence of any extraordinary circumstances here that might warrant the extraordinarily harsh remedy HPT seeks and fails to present any relevant evidence in support HPT's request.  Indeed, the Motion should be denied because: (1) HPT's sole evidence – a conclusory declaration offered by counsel – is insufficient to meet the high burden applicable here; (2) HPT's counsel's conclusory declaration should be stricken as a matter of law based on its violation of Rule of Professional Conduct 3.7; and (3) HPT has not and cannot establish that it is likely to prevail in this litigation.

### 1.     *HPT's Counsel's Declaration Is Conclusory and Insufficient to Meet the Burden Imposed by Nevada's Prejudgment Remedy Statutes.*

The only "evidence" offered in support of HPT's Motion is a conclusory declaration from its lead counsel, Andrew P. Bleiman.  *See* ECF No. 82.  The entirety of the evidence HPT provides in support of its Motion is found in a single paragraph of this declaration:

> The facts showing the existence for grounds for a prejudgment writ of attachment with notice to Defendant Cannata derived from his past conduct willfully deceiving HPT and transferring HPT's property in violation of agreements, along with Defendant Cannata's representations to the Court about his dire medical emergency and health condition which have left him significantly incapacitated, in need of full-time nursing care, and unable to speak or meaningfully participate in discovery in this case. (Dkts. 72-73).[33]

Not only is this declaration entirely incorrect with regard to its claims concerning Cannata's current health – HPT's sole basis for seeking a prejudgment writ of attachment (*see supra* Part III(B)) – but such a declaration cannot be considered anything but conclusory in nature as it does not provide this Court with any meaningful analysis of HPT's probability of success on the merits of its claims.

This Court has previously stated that "[a] merely conclusory affidavit provides no basis for a court to issue a writ of attachment."  *Cleverley*, 2013 U.S. Dist. LEXIS 206405 at *5.  The Nevada Supreme Court has held similarly interpreting NRS Chapter 31 and prejudgment writ applications.  *See Paramount Ins.*, 85 Nev. at 650, 472 P.2d at 534 (affirming the ruling from the trial court

---

[33] Declaration of Andrew P. Bleiman, Esq., at ¶ 5 [ECF No. 82].

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

reversing the issuance of a writ of attachment based on conclusory affidavits). Here, a barebones declaration like the one presented in support of HPT's Motion is insufficient to establish probable validity of success on the merits. Parties cannot be allowed to obtain prejudgment writs based on conclusory and unsupported affidavits because the harm suffered by the party whose property is attached is extreme. Granting a Motion on such conclusory statements would allow litigants to effectively freeze an opponent's assets, inhibiting the ability to pay ordinary living expenses as well as legal fees and costs necessary to continued litigation, with little to no evidence. Nevada courts generally disfavor prejudgment writs and subject requests for the same to strict scrutiny to ensure that sufficient evidence is provided to satisfy the statutory requirements for prejudgment relief. *See Blastrac*, 678 F. Supp. 2d at 1004-05. HPT's Motion does not survive this analysis. As such, it must be denied.

### 2. *HPT's Sole Evidence – the Declaration from Lead Counsel – Is Improper and Should Be Stricken.*

For the reasons set forth above, the Bleiman Declaration should be disregarded entirely due to its' conclusory nature. It should also be stricken because it violates Nevada's Rule of Professional Conduct 3.7 ("Rule 3.7"), which states:

> Rule 3.7.   Lawyer as Witness.
>    (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>        (1) The testimony relates to an uncontested issue;
>        (2) The testimony relates to the nature and value of legal services rendered in the case; or
>        (3) Disqualification of the lawyer would work substantial hardship on the client.
>    (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Rule 3.7 is clear on its face and states that a lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless one of the three exceptions is shown. Here, no exception applies. The Motion and the issues therein are contested; the testimony in lead counsel's declaration [ECF No. 82] does not deal with the nature or value of legal services; and disqualification of the lawyer would not work substantial hardship on HPT because Nevada counsel still is retained and present.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

This is not a situation where counsel is providing a declaration as to meet-and-confer efforts or discussions with opposing counsel.  Rather, counsel's declaration provides the sole evidence in support of HPT's Motion through which HPT seeks to satisfy the statutory requirements of NRS Chapter 31.  Courts have found that similar actions violate Rule 3.7.  *See, e.g.*, *Tavilla v. Cephalon, Inc.*, No. CV-11-00270-PHX-DGC, 2012 U.S. Dist. LEXIS 138935, at *7-11 (D. Ariz. Sept. 26, 2012) (granting a motion to disqualify under Rule 3.7 because the only evidence supporting an opposition to summary judgment was an affidavit from counsel for the party filing the opposition); *Whitted v. General Motors Corp.*, 58 F.3d 1200 (7th Cir. 1995) (affirming the district court's striking of an affidavit from counsel submitted with an opposition to a motion from summary judgment because "an attorney should not act both as a witness and an advocate in the same proceeding…").

### 3.  *HPT Has Provided No Evidence of Its Alleged Damages.*

HPT claims it sustained over $15 million in damages but provides absolutely no evidence in support of this claim or any explanation of how it arrived at this grossly inflated figure.  Cannata denies that he caused HPT to incur any material damages.[34]  Even if the Court ultimately grants judgment in HPT's favor against Cannata on one or more of the claims asserted in the Complaint, there is no basis under the Motion for the Court to conclude that HPT would be entitled to damages of $15 million, $6.8 million, or anything remotely close to those figures.  For example, HPT's claimed damages resulting from Sykes-Bonnett's wrongful sale of fraudulent credits amounts to just $190,000.[35]  Without credible evidence of the damages suffered by HPT, which is entirely absent from the Motion, the Court cannot grant the extreme relief requested by HPT of effectively freezing $6.8 million of Cannata's assets.

### D.   **HPT Cannot Show that It is More Likely than Not to Succeed on Its Claims.**[36]

HPT has filed the following claims against Cannata: (i) breach of fiduciary duty; (ii) fraud; (iii) violation of the Computer Fraud and Abuse Act ("CFAA") arising under 18 U.S.C. §1030; (iv)

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

---

[34] Cannata Declaration, ¶ 23.

[35] *See* HPT's Trial Brief filed in the Washington Case [ECF No. 217], p. 16.

[36] As HPT made no effort to establish a likelihood of success on the merits of its claims through the Motion, this Opposition is not intended and should not be construed as the totality of all defenses Cannata may assert in response to HPT's claims in this action.  Rather, it is intended to demonstrate that HPT has failed to meet its burden of establishing probable success on the merits of its claims and the complexity of the legal issues and factual disputes

violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836 et seq.; (v) violation of the Copyright Act ("DMCA") arising under 17 U.S.C. § 1201(a)(1)(A); (vi) misappropriation of trade secrets arising under the Nevada Uniform Trade Secrets Act, NRS Chapter 600A; (vii) violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 et seq.; (viii) unfair competition under the Nevada Deceptive Trade Practices Act, NRS Chapter 598; (ix) unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.; (x) breach of contract; (xi) tortious interference with prospective economic relations; and (xii) conversion. Complaint, at ¶ 8 [ECF No. 1].

All of these claims arise out of HPT's allegations that Cannata "used, misappropriated, disclosed and disseminated HPT's confidential and proprietary intellectual property, including but not limited to HPT's proprietary source code, key generator program, hardware design documents, hardware schematics and other proprietary files." *Id.* at ¶ 4. Put differently, all of these claims arise out of intellectual property and trade secret allegations. However, HPT has not and cannot establish that: (1) it is the owner of said intellectual property; (2) that the intellectual property at issue is entitled to protection; or (3) that the source code and intellectual property at issue is substantially similar to HPT's source code. Without establishing these necessary elements, as well as others relating to HPT's trade secret allegations, HPT cannot prevail on its claims against Cannata. Because the Motion has failed to even acknowledge these issues, it has not carried the high burden necessary to establish probable success on the merits.

### 1. *HPT Cannot Establish It Is Entitled to Copyright Protection Relating to the Software at Issue.*

Copyright of software programs and source codes is a nuanced and technical area of law, filled with many tests and requirements that must be established before any HPT can be successful on a copyright infringement or related intellectual property claim. Generally, to succeed on any copyright infringement claim, a plaintiff must show that it is (1) the owner of the allegedly infringed upon work, and (2) copying of the ***protected elements*** of the work by defendant. *See Dropzonems,*

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

that have been raised in this case. Moreover, discovery is continuing. Cannata reserves the right to respond to any further argument HPT may attempt to make with respect to the merits of its claims in connection with this Motion.

1    *LLC v. Cockayne*, No. 3:16-cv-02348-YY, 2019 U.S. Dist. LEXIS 225681, *33-34 (D. Or. Sept. 12,

2    2019).

3        "Not all copyrighted works are entitled to the same level of protection.  A copyright does not

4    protect an idea, but only the expression of the idea."  *Triad Sys. Corp. v. Southeastern Express Co.*,

5    No. C 92-1539-FMS, 1994 U.S. Dist. LEXIS 5390, *35 (N.D. Cal. Mar. 18, 1994).  "In no case does

6    copyright protection for an original work of authorship extend to any idea, procedure, process,

7    system, method of operation, concept, principle, or discovery, regardless of the form in which it is

8    described, explained, illustrated or embodied in such work."  17 U.S.C. § 102(b).

9        The Ninth Circuit has set forth the following process for considering infringement claims

10   relating to computer programs, software, or source code:

> (1) The plaintiff must identify the *source(s)* of the alleged similarity between his
> work and the defendant's work.
>
> (2) Using analytic dissection, and, if necessary, expert testimony, the court must
> determine whether any of the allegedly similar features are protected by copyright.
> … [U]nprotectable ideas must be separated from potentially protectable expression;
> to that expression, the court must then apply the relevant limiting doctrines in the
> context of the particular medium involved, through the eyes of the ordinary
> consumer of that product.
>
> (3) Having dissected the alleged similarities and considered the range of possible
> expression, the court must define the scope of the plaintiff's copyright . . .

19   *El-Sedfy v. WhatsApp Inc.*, No. 16-cv-04056-JCS, 2016 U.S. Dist. LEXIS 150760, at *14-15 (N.D.

20   Cal. Oct. 31, 2016) (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir.

21   1994)).

22       Here, despite Cannata specifically requesting through discovery more than 18 months ago

23   that HPT identify the intellectual property it claims has been infringed upon, HPT has not identified

24   the specific sources of the alleged similarity between its software and source code and the software

25   and source code developed by Syked ECU.  Instead, HPT objected to Cannata's request on the

26   grounds of relevance, overbreadth, and undue burden.  As such, HPT has not met its obligations

27   under the first step of the analysis applicable here as outlined in *El-Sedfy* and *Apple Computer*.

28   Additionally, to the extent HPT is claiming infringement of the non-literal components of the source

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

- 18 -

code (i.e., operation of the software, visual and audible components, etc.) HPT is required to have an expert who will provide an analysis of the "three-part Abstraction-Filtration-Comparison test." *See Vendavo, Inc. v. Price f(x) AG*, No 17-CV-06930-RS, 2019 U.S. Dist. LEXIS 76387, at *15-17 (N.D. Cal. May 6, 2019). This requires the court to dissect the allegedly copied program into specific abstractions, then separate protectable expression from non-protectable expression, and lastly compare whether any of the protected expression was copied. *Id.* HPT has failed to provide any evidence on this point.

Similarly, HPT cannot and has not shown that it is the owner of the source code it seeks to protect. One of HPT's officers, Prociuk, was deposed in the Washington Case or about April 24, 2019. This deposition transcript was filed as ECF No. 196-2 in the Washington Case.[37] Therein, Prociuk testified:

1. HPT originated from a "PCM hacking forum" that Prociuk hosted through which he and others attempted to "hack" automobile powertrain control modules ("PCMs") and ECUs.[38]

2. Prociuk's "hacking" consisted of attempts to reverse engineer components of PCMs and ECUs of various automobile manufacturers, and he believed such "hacking" to be entirely legal.[39]

3. Prociuk's intent in reaching out to Cannata and Piastri to form HPT was to create an open source, free product, a software and hardware solution, that could be used to tune automobiles.[40]

4. Prociuk involved Cannata in creating HPT due to Cannata's reputation for developing hardware.[41]

---

[37] A copy of this transcript (the "Prociuk Transcript") is publicly available through PACER on the court's docket as ECF No. 196-2 in the Washington Case.

[38] Prociuk Transcript, pp. 8-13.

[39] *Id.*, pp. 28-29.

[40] *Id.*, pp. 30-33.

[41] *Id.*, p. 31.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

5. Recreating an automobile manufacturer's source code from an ECU does not violate any of HPT's rights.[42]

All of the foregoing undercuts HPT's allegations that it holds any proprietary rights in the software at issue. To the extent that portions of HPT's software include source code taken from automobile manufacturers or other third parties, HPT cannot claim ownership in the same. *See Dropzonems*, No. 3:16-cv-02348-YY, 2019 U.S. Dist. LEXIS 225681 at *33-34 and *40 ("HPT cannot have trade secrets in source code that, by definition, is not a secret" and also stating that source code obtained from third parties and open-source packages and used in derivative works is not copyrightable).

Here, Cannata will confirm Prociuk's testimony in the Washington Action. HPT, through the process of reverse engineering, used source code and other intellectual property belonging to the automobile manufacturers and other third parties to develop the software at issue here. As acknowledged in *Dropzonems*, HPT cannot claim ownership over any of these "borrowed" lines of code because HPT is not the author of the same. Rather, the car manufacturers and third parties are the owners and authors. Thus, not only has HPT failed to establish what sources of alleged similarity exist as required under *Apple Computer*, but HPT similarly has not established that it is the owner of each and every line of source code or intellectual property at issue.

Even if HPT could establish the following, HPT has put forth no evidence to satisfy the Ninth Circuit's test as to the second factor of the *Apple Computer* analysis. The second factor of the *Apple Computer* analysis requires separation of any protected code from unprotected code, and then determine if the protected code is substantially similar to the allegedly infringing code. *See Vendavo, Inc. v. Price f(x) AG*, No 17-CV-06930-RS, 2019 U.S. Dist. LEXIS 76387, at *15-17 (N.D. Cal. May 6, 2019). This requires expert testimony to assist the court in establishing what lines of code are protected and which ones are not. *See Dropzonems*, No. 3:16-cv-02348-YY, 2019 U.S. Dist. LEXIS 225681 at *33-34 and *40 (granting summary judgment on a copyright infringement claim when the plaintiff failed to put forth an expert who separated the protected lines from the

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

---

[42] *Id.*, pp. 78-80.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1   unprotected lines and similarly failed to engage in the abstraction-filtration-comparison analysis).

2   Here, HPT has put forth no expert to show what lines of code are protected and which are not and

3   has similarly failed to put forth any expert testimony relevant to the abstraction-filtration-comparison

4   analysis.   As such, HPT is unlikely to succeed on any of its claims sounding in copyright

5   infringement.

6           **2.**   ***HPT Cannot Establish that Cannata Made Use of Its Trade Secrets.***

7           As stated above, any source code obtained by HPT from third parties (automobile

8   manufacturers, Motorola, etc.) cannot be deemed a trade secret.   *See Dropzonems*, No. 3:16-cv-

9   02348-YY, 2019 U.S. Dist. LEXIS 225681 at *33-34 and *40 ("HPT cannot have trade secrets in

10  source code that, by definition, is not a secret.").   HPT has simply failed to distinguish or provide

11  relevant discovery as to what source code it obtained from what sources.

12          Additionally, "a plaintiff seeking relief for misappropriation of trade secrets must identify

13  the trade secrets and carry the burden of showing that they exist." *Id.* at *24.   "A person claiming

14  rights in trade secret bears the burden of defining the information for which protection is sought with

15  ***sufficient definiteness***." *Id.* (citing *Restatement (Third) of Unfair Competition*, § 39, comment (d)).

16  Ninth Circuit courts require that a plaintiff meet this sufficient definiteness requirement. *Id.* at *29.

17  In fact, the Ninth Circuit has affirmed dismissal of trade secret claims at the summary judgment

18  stage when a plaintiff "failed to carry its burden of identifying for the court exactly what dimensions

19  and tolerances it claims as trade secrets." *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161 (9th

20  Cir. 1998).   Here, HPT has not identified the specific and particular trade secrets it claims were

21  misappropriated.   As such, HPT cannot show it has a probable validity of success on its claims

22  relying on the existence of a trade secret.

23      **E.**   **HPT's Motion Improperly Seeks to Attach Assets of Nonparties to this Lawsuit**
24          **and Fails to Acknowledge the Exempt Status of Numerous Assets Sought to be Attached.**

25          HPT's Motion amounts to an abuse of process because it seeks to attach property of parties

26  not currently present in this action. *See Nev. Credit Rating Bureau, Inc.*, 88 Nev. at 606, 503 P.2d

27  at 13 (stating that an abuse of process claim may arise when the value of the attached property

28

exceeds the amount of the alleged debt).   By way of its Motion, HPT seeks to not only attach "$6,800,000 which is held on account in various checking, savings, investment, brokerage and other accounts," but also seeks to attach real property commonly known as 16455 Bonnie Lane, Reno, Nevada 89511 (APN 047-021-02) (the "Bonnie Lane Property") and real property commonly known as 820 Piney Creek Road, Reno, Nevada 89511 (APN 047-021-33) (the "Piney Creek Property"). *See* Declaration of Andrew Bleiman, Esq., ¶ 6 [ECF No. 82].

However, even a cursory review of the property records for the Bonnie Lane Property and the Piney Creek Property shows that Cannata is not the titled owner of these properties.  Indeed, the Bonnie Lane Property is owned by the Kenneth J. Cannata Trust and the Piney Creek Property is owned by the Cannata Trust – neither of which is a party to this action.  HPT's Motion fails to articulate any ground by which it can attach the property of nonparties to this litigation.  As such, HPT's Motion should be denied because it is supported only by a conclusory declaration that is based on the untrue premise that Cannata's health and ability to control his own finances is impaired.[43]

Additionally, NRS 31.020(1)(h) requires that the Motion for prejudgment writ of attachment be supported with statements regarding whether the property sought is exempt from execution. HPT's Motion and supporting declaration fail to apply Nevada's exemption statutes to the property that it seeks to attach.  For example, the declaration states that it is seeking to attach $6.8 million in accounts, including investment and brokerage accounts.  *See* Declaration of Andrew P. Bleiman, Esq., ¶ 6 [ECF No. 82].  However, it fails to address or even acknowledge NRS 21.090, which lists what property is exempt from execution, including but not limited to money held in individual retirement accounts and brokerage accounts.  NRS 21.090(r).  Additionally, there is a $10,000

---

[43] Also, HPT's Declaration in Support fails to provide how the valuation of these properties was determined as stated in the declaration.  To be valid, the declaration must come from a witness qualified to express such an opinion.  As Andrew Bleimann, Esq. does not assert he is a real estate expert, and does not have personal knowledge regarding the properties he attempts to value, his statements as to value, his statements are irrelevant.  *See Paramount Ins. Inc. v. Rayson & Smitley*, 86 Nev. 644, 472 P.2d 530, 534 (1970) (stating that when a party is seeking a writ of attachment to property, the affidavit "must not be merely conclusory and must contain an opinion of value by a witness qualified to express such an opinion.").

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

- 22 -

1    catchall exemption included in subsection (z).  Rather than comply with its obligations under NRS

2    31.020(1)(h), the Motion fails to even acknowledge the existence of these exemptions.

3    **F.    The Timing of HPT's Motion Is Prejudicial.**

4         While the Motion should be denied because it is unsupported and fails to meet its high

5    standard applicable to the relief requested, the Motion should also be denied at a minimum based on

6    the prejudicial timing of the filing of the same.  As this Court is aware, discovery in this matter was

7    stayed and corresponding deadlines extended based on the medical emergency Cannata suffered

8    earlier this year.  *See* ECF No. 78.  This pushed the deadline for expert disclosures and rebuttal

9    experts back to November 20, 2020 and December 18, 2020, respectively.[44]  On or about November

10   20, 2020, HPT served two expert reports on Cannata's counsel.  Only days later, this Motion was

11   filed.  To the extent that HPT seeks to rely on any information outlined in these expert reports,

12   Cannata and his counsel must be provided the opportunity to have a rebuttal expert provide a report

13   and respond accordingly.

14        HPT's timing of this Motion is suspect at best, especially considering the outstanding

15   discovery issues relating to written discovery served on HPT.  HPT has still not provided meaningful

16   responses to a majority of the written discovery requests propounded by Cannata.  Until Cannata is

17   provided with full access to all relevant discovery materials and is provided with sufficient time to

18   review the same and enlist rebuttal expert assistance, HPT's Motion should not be granted because

19   to do so would deprive Cannata with his constitutional due process rights to fair notice and hearing.

20   *See Connecticut v. Doehr*, 501 U.S. 1, 10-11 (1991) (finding that prejudgment writ remedies

21   "undoubtedly involve state action substantial enough to implicate the Due Process Clause.").  There

22   would be no prejudice to HPT in denying the Motion to provide Cannata with time to complete

23   pending discovery and ensure he has access with all relevant information necessary to defend against

24   such a Motion.

25

26

27

28

---

[44] The parties recent filed a joint motion requesting that the rebuttal expert disclosure deadline be extended through January 8, 2020 [ECF No. 83], which was approved by the Court on December 15, 2020 [ECF No. 84].

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**G.** **In the Event the Court Grants the Motion, HPT Must Post a Significant Bond to Secure Damages that Defendants May Suffer as a Result of an Improper Attachment.**

As shown above, HPT is not entitled to the harsh remedy of prejudgment writ of attachment in this case. Additionally, HPT's Motion should be denied for the sole reason that it fails to comply with each one of Nevada's statutory requirements prior to obtaining any prejudgment writ of attachment, including HPT's requirement to post a bond. *See In re S. Cal. Plastics, Inc.*, 165 F.3d at 1248 ("Because attachment is a harsh remedy, as the debtor loses some control of its property without the protection of a full adjudication, the provisions related thereto should be strictly construed" against the applicant) (citations omitted). Notably absent from HPT's Motion is any discussion of the bond that it would be required to post before a writ may issue.

Indeed, a plaintiff ***must*** post a bond in an amount not less than the amount of the plaintiff's claim or the value of the property to be attached, whichever is less. NRS 31.030(1). The amount must also include attorneys' fees and costs. *Id.* Here, HPT has asked to attach over $8 million in assets and real property. *See* Declaration of Andrew P. Bleiman, Esq., at ¶6 [ECF No. 82]. Should the Motion be granted (despite its significant legal and procedural and factual infirmities), HPT must post a bond in excess of $8 million to include Cannata's attorneys' fees, costs, and damages that will undoubtedly be suffered by prohibiting Cannata from engaging in the day-to-day use of his funds to pay bills and other necessary expenses.

**IV.** **CONCLUSION**

Based on the foregoing, Cannata respectfully requests that the Court deny HPT's Motion.

DATED this 15th day of December 2020.

SHEA LARSEN

/s/ *Bart K. Larsen, Esq.*
Bart K. Larsen, Esq.
Nevada Bar No. 8538
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134

*Attorneys for Kenneth Cannata*

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2020, I electronically transmitted the foregoing DEFENDANT KENNETH CANNATA'S OPPOSITION TO PLAINTIFF'S MOTION FOR PREJUDGMENT WRIT OF ATTACHMENT to the Office of the Clerk of the United States District Court, District of Nevada, using the CM/ECF System, for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants listed for this matter.

By: /s/ *Bart K. Larsen, Esq.*