Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Eq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
E-Mail: blarsen@shea.law
          kwyant@shea.law

*Attorneys for Defendant*
*KENNETH CANNATA*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company;<br><br>        Plaintiff,<br><br>    vs.<br><br>KENNETH CANNATA,<br><br>        Defendants. | CASE NO. 3:18-CV-00527-LRH-WGC<br><br>**NOTICE OF CORRECTED IMAGE/DOCUMENT FOR DECLARATION OF KENNETH CANNATA IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR PREJUDGMENT WRIT OF ATTACHMENT [ECF NO. 87]** |

Defendant Kenneth Cannata ("Cannata"), by and through its counsel of record, hereby gives notice of the corrected image/document that is to replace the Declaration of Kenneth Cannata in Support of Opposition to Plaintiff's Motion for Prejudgment Writ of Attachment [ECF No. 87]. The corrected document to replace ECF No. 87 is attached hereto as **Exhibit A**.

DATED this 17 day of December, 2020.

SHEA LARSEN

/s/ *Bart K. Larsen, Esq.*
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
*Attorneys for Kenneth Cannata*

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2020, I electronically transmitted the foregoing **NOTICE OF CORRECTED IMAGE/DOCUMENT FOR DECLARATION OF KENNETH CANNATA IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR PREJUDGMENT WRIT OF ATTACHMENT [ECF NO. 87]** to the Office of the Clerk of the United States District Court, District of Nevada, using the CM/ECF System, for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants listed for this matter.

By: _/s/ Bart K. Larsen, Esq._

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

- 2 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

# EXHIBIT A

1  Bart K. Larsen, Esq.
   Nevada Bar No. 8538
2  Kyle M. Wyant, Esq.
   Nevada Bar No. 14652
3  **SHEA LARSEN**
   1731 Village Center Circle, Suite 150
4  Las Vegas, Nevada 89134
   Telephone: (702) 471-7432
5  Fax: (702) 926-9683
   Email:    blarsen@shea.law
6             kwyant@shea.law

7  *Attorneys for Defendant*
   *Kenneth Cannata*
8

9

10                 **UNITED STATES DISTRICT COURT**

11                      **DISTRICT OF NEVADA**

                              **\*\*\***
12

13  HP TUNERS, LLC,                    | Case No. 3:18-cv-00527-LRH-WGC

14                         Plaintiff,  | **DECLARATION OF KENNETH**
                                        | **CANNATA IN SUPPORT OF**
15        vs.                           | **OPPOSITION TO PLAINTIFF'S MOTION**
                                        | **FOR PREJUDGMENT WRIT OF**
16  KENNETH CANNATA,                    | **ATTACHMENT**

17                        Defendant.

18        I, Kenneth Cannata, hereby declare as follows:

19        1.      I am over the age of 18, of sound mind and fully capable of making this declaration.

20  I submit that this declaration is based on personal knowledge, following a reasonable investigation

21  into the statements appearing below. If called upon as a witness, I could and would competently

22  testify to the truth of each statement herein.

23        2.      Prior to approximately October of 2016, I was a one-third member and owner of

24  Plaintiff HP Tuners, LLC ("HPT"), which was organized as a Nevada limited liability company on

25  or about December 31, 2003 by me, Keith Prociuk ("Prociuk"), and Chris Piastri ("Piastri").

26        3.      Due to various disagreements regarding the operation and management of HPT, I

27  requested in or around July 2015 that Prociuk and Piastri, who were also each one-third members

28  and owners of HPT, buy out my interest in HPT for fair market value, which I then estimated to be

                                     - 1 -

1   approximately $8 million, pursuant to a Buy Sell Agreement that we had previously entered into as

2   members of HPT.

3       4.      Prociuk and Piastri agreed to purchase my interest in HPT for fair market value, but

4   Prociuk and Piastri disagreed with my estimate of the fair market value of HPT, claiming that the

5   fair market value of my interest in HPT was far less than $8 million.

6       5.      I continued to negotiate with Prociuk and Piastri concerning the sale of my

7   membership interest in HPT during the following months, but we were unable to come to an

8   agreement during 2015 regarding the fair market value of my interest in HPT.



1  ██████████████████████████████████████████████████████

2  ███████████████████████████████████

3      8.    I am informed and believe that Prociuk and Piastri's objective in taking such actions

4  was to increase HPT's expenses and reduce its net income to the point where I would receive no

5  distributions as a one-third member and owner of HPT and would be forced to sell my interest in

6  HPT for less than fair market value.

7      9.    I did not go into business with Syked ECU Tuning, Inc. ("Syked") in February 2016

8  as HPT alleges in its Motion.  I discussed a potential business relationship with Kevin Sykes-Bonnett

9  ("Sykes-Bonnett"), who is a principal of Syked, around that time but only because I was on the brink

10  of being wrongfully forced out of HPT.  If not for Prociuk and Piastri's wrongful attempts to force

11  me out of HPT, I would not have considered any potential business relationship with Sykes-Bonnett

12  at that time.

13      10.    Notwithstanding their attempts to force me out of the company, I eventually reached

14  an agreement with Prociuk and Piastri to sell my membership interest in HPT and entered into a

15  Membership Interest Purchase Agreement on or about October 20, 2016 under which I subsequently

16  received approximately $6,460,000 in consideration for such sale.

17      11.    I did not enter into any business arrangement of any kind with Syked or Sykes-

18  Bonnett prior to the sale of my membership interest in HPT.

19      12.    For reasons I explained in a declaration filed in a separate case pending between HPT

20  and Syked in the U.S. District Court for the Western District of Washington, I provided a thumb

21  drive to Sykes-Bonnett that contained a copy of HPT's "key generator."  A true and correct copy of

22  that declaration is attached hereto as Exhibit B.

23      13.    I am informed and believe that Sykes-Bonnett subsequently misused HPT's key

24  generator to sell fraudulent credits that could be used in connection with HPT's software and

25  hardware.  I did not provide the key generator to Sykes-Bonnett for that purpose, was not involved

26  in any way in Sykes-Bonnett's fraudulent sale of such credits, and did not receive any income or

27  otherwise benefit as a result of Sykes-Bonnett's fraudulent sale of such credits.

28      14.    I am informed and believe that Sykes-Bonnett also subsequently posted a "hacked"

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

- 3 -

1  version of HPT's software on the internet for download that could be used to make use of HPT's

2  software and hardware without purchasing credits from HPT.  I was not involved in any way in

3  Sykes-Bonnett "hacking" HPT's software or in his posting such software on the internet, and I did

4  not receive any income or otherwise benefit from such actions.  To the best of my knowledge, Sykes-

5  Bonnett did not use any information I provided to "hack" HPT's software.

6       15.    During the time that I was associated with HPT, several similar "hacked" versions

7  of HPT's software were known to exist that are not attributable to Sykes-Bonnett.

8       16.    During the time I was associated with HPT, HPT had the ability to identify and

9  remotely disable "hacked" versions of its software to stop such software from being used without

10  purchasing credits from HPT.  As such, the posting of "hacked" versions of HPT's software posed

11  little risk of disrupting HPT's sales.

12       17.    After my separation from HPT, I developed a data cable for use in vehicle

13  performance tuning applications in connection with pre-existing software developed by Syked (the

14  "Eliminator Cable").

15       18.    I am informed and believe that Syked software was developed prior to 2016 and was

16  not based in any way on any similar software developed by HPT.

17       19.    The Eliminator Cable was not developed using any confidential or proprietary

18  information that belongs to HPT and does not incorporate any such confidential or proprietary

19  information in its design or function.

20       20.    Any similarities that exist between the firmware for the Eliminator Cable and the

21  firmware for HPT's MPVI cable are due strictly to the fact that such firmware includes or is based

22  on code obtained from third parties that allows both cables to access the automobile engine control

23  units ("ECUs") of various automobile manufacturers.  HPT did not develop and has no proprietary

24  interest in such code, which was developed by and belongs to the automobile manufacturers.

25       21.    I developed the firmware for both the Eliminator Cable and HPT's MPVI cable using

26  my independent knowledge and expertise as a programmer, which I developed over the course of

27  my career prior to my association with HPT.  There was absolutely no need for me to copy or use

28  any of HPT's confidential or proprietary information in the development of the Eliminator Cable as

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

- 4 -

I already possessed the knowledge and expertise needed to do so.

22.     No more than a dozen Eliminator Cables were sold before I voluntarily agreed to suspend sales of the Eliminator Cable in May 2019 pending the resolution of this lawsuit.

23.     My actions in connection with the development of the Eliminator Cable did not cause HPT to lose any material number of sales or suffer any other material damages.

24.     On March 3, 2020, I suffered a serious medical emergency that required that I be hospitalized for several weeks and left me unable to materially participate in this case for several months.

25.     However, after several months of medical treatment and physical therapy, I have recovered from this medical emergency.  I am no longer required to take any medication and am no longer subject to any doctor's order limiting my activities.

26.     I am fully in control of and competent to handle my own financial affairs.  No other person is in control of or responsible for the handling of my personal finances.

27.     I declare under penalty of perjury under the laws of the United States of America that all statements made herein of my own knowledge are true and that all statements made herein on information and belief are believed to be true.

DATED this 15th day of December 2020.

/s/ *Kenneth Cannata*
KENNETH CANNATA

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to FRCP 5(b), I hereby certify that I am an employee of the law firm of Shea Larsen, and on December 15, 2020 I served a copy of the foregoing DECLARATION OF KENNETH CANNATA IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR PREJUDGMENT WRIT OF ATTACHMENT via the Court's Notice of Electronic Filing to all persons listed on the United States District Court CM/ECF Confirmation Sheet.

By: /s/ *Bart K. Larsen, Esq.*

- 6 -

# EXHIBIT A

**EXHIBIT B**

THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company, | ) ) ) |
| Plaintiff, | ) No. 3:17-cv-05760 BHS ) |
| vs. | ) **DECLARATION OF KEN CANNATA** ) **IN SUPPORT OF DEFENDANTS'** ) **OPPOSITION TO PLAINTIFF'S** |
| KEVIN SYKES-BONNETT and SYKED ECU TUNING INCORPORATED, a Washington corporation, | ) **EMERGENCY MOTION FOR** ) **TEMPORARY RESTRAINING** ) **ORDER** ) |
| Defendants. | ) ) ) |

I, Ken Cannata, hereby declare as follows:

1.    I am over the age of 18, of sound mind and fully capable of making this declaration. I submit that this declaration is based on personal knowledge, following a reasonable investigation into the statements appearing below. If called upon as a witness, I could and would competently testify to the truth of each statement herein.

2.    In about 2003, together with Keith Prociuk and Chris Piastri, I co-founded the entity that later became HP Tuners ("HPT"). HPT started as an open source project, originally called DX Software ("DX"), with the purpose of developing a way to reprogram automotive the electronic controllers for cars, commonly referred to as Engine Control Units or ECUs.

3.    Reprogramming a car's ECU is a sensitive operation and requires an intimate knowledge of the inner workings of the car's "brain" or computer. In a very brief explanation, a

DECLARATION OF KEN CANNATA IN OPPOSITION TO
PLAINTIFF'S RENEWED MOTION FOR TRO - 1
3:17-cv-05760 BHS
131191.0001

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

handheld device or cable is plugged into an ODB-II connector on the car, which provides access to the firmware stored in the ECU. Then, the handheld device or cable causes a replacement firmware to overwrite any preexisting firmware within the ECU. This process is called "flashing" a new ROM (firmware) to the ECU.

4.      The existing ECU firmware or ROM, which originally comes from the automotive manufacturer, is highly precise and must cooperate with nearly every other electronic component of the car. For those reasons and others, flashing a new ROM into an ECU has a very high potential to render the ECU useless (referred to as "bricking an ECU") if the replacement firmware is not precisely programmed for the specific target ECU.

5.      Because flashing new ECU firmware requires such careful accuracy, much must be known about the particular ECU being flashed, such as exactly what parameters, codes, and firmware may be changed to avoid bricking the ECU. It is to address the need for such extensive and elaborate technical information that HPT's predecessor entity (DX) was created.

6.      While operating as an open source project between 2003 and 2004, HPT (then DX) invited the entire tuning community to participate in the DX project by providing whatever technical documentation and files the community members had that described the intricacies of various ECUs for existing cars. In some instances, community members were able to provide "A2L files" which are copies of the actual mapping files for parameters as originally developed by the automotive manufacturers.

7.      HPT (as DX) encouraged the entire tuning community to actively reverse engineer every automotive manufacturer's ECUs to build a database of knowledge and technology that could be used to create reliable and safe ECU firmware files. Very many members of the tuning community participated in the DX project based on HPT's promise that the information would remain free and open source, for use by everyone at no charge.

8.      Sometime in 2004 or 2005, HPT betrayed the DX community and closed the open source DX project. By then, HPT had received a sufficient amount of donated technical

DECLARATION OF KEN CANNATA IN OPPOSITION TO
PLAINTIFF'S RENEWED MOTION FOR TRO - 2
3:17-cv-05760 BHS
131191.0001

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON  98111-9402
206.223.7000 FAX: 206.223.7107

information from the community that HPT decided to commercialize it. It was then that HPT launched a commercial product and began selling access to the hard work and contributions of the entire community, right back to that very same community despite its earlier commitment to remain an open source project.

9. During my tenure at HPT, I worked initially, as did the entire community, on reverse engineering ECUs and other controllers for various cars. In addition, as the industry matured, I and the rest of the HPT engineering department began reverse engineering the software and hardware products of other companies in the community.

10. There are countless examples of HPT's efforts to reverse engineer the products of its competitors as it alleges was done by Syked Tuning. But to demonstrate one obvious example, Exhibit 1-J to HPT's motion (Dkt 62-2, page 19) shows a screen capture of one dialog of the HPT PCM_Tools software that was developed while I was at HPT. A field is visible in that screen capture in which a user can choose from among a few types of hardware cables with which to use the HPT software. One such option is labeled "Carputing," which relates to a handheld tuning device developed by the Carputing company. The existence of that option is because the engineering department at HPT hacked the Carputing hardware device specifically to reverse engineer the communication interface of that hardware device so that the HPT software could be used with it. This was done without the authorization of Carputing.

11. The entire time I was with HPT, the engineering department was constantly attempting to reverse engineer the products of its competitors, such as SCT, EFI Live, Diablo, Carputing, and more. Because the entire industry is founded on the notion of hacking the ECUs of automotive makers, hacking and reverse engineering is the routine method of doing business for HPT as well as all the other companies in the industry.

12. In addition to hacking the products of other competitors, it is also very common in the industry to purchase the technical documentation and files from others. For instance, I am aware that while I was with the company, HPT acquired from various automotive manufacturers

DECLARATION OF KEN CANNATA IN OPPOSITION TO
PLAINTIFF'S RENEWED MOTION FOR TRO - 3
3:17-cv-05760 BHS
131191.0001

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

(such as General Motors and Holden) source code and software tools that were proprietary to those automotive manufacturers for use by HPT in reverse engineering the ECUs of those manufacturers.

13.     Through the course of my duties at HPT, I came to learn about Kevin Sykes-Bonnett and his work with Dodge/Chrysler/Jeep (collectively "Dodge") cars and trucks.   In response to posts he had made on an online forum discussing HPT products, HPT reached out to him about possibly acquiring technical documents from him.  Specifically, Eric Brooks of HPT contacted him in late 2014 and put him in touch with me.

14.      HPT reached out to Kevin for the purpose of acquiring certain confidential information we knew had had but which HPT did not.  Kevin and I reached a deal in or about February 2015 for Kevin to provide HPT with certain technical documents pertaining to certain models of Dodge and GM vehicles.  We reached a deal whereby HPT would pay $5,000 to Kevin and provide him with an HPT interface cable pre-installed with fifty credits for him to use in his tuning business.

15.     I met Kevin in about the middle of March of 2015 in California.  At that meeting, I personally delivered a check made payable by HPT to Kevin in the amount of $5,000.  We did not provide Kevin with the promised interface cable at that time.  Kevin provided HPT with several valuable technical documents which HPT then used in its business.  The HPT interface cable was to be shipped to Kevin.

16.     Because of the quality of the technical documents we received from Kevin, the relationship between HPT and Kevin continued for some time. This relationship continued until well into 2016, maybe even to the end of 2016.  Over that time, individuals at HPT attempted to acquire several additional technical documents for various makes and models of cars, including Ford and GM models.

17.     However, HPT had reneged on its promise to provide Kevin with an HPT interface cable with fifty pre-installed credits.  Instead, HPT finally delivered an interface cable

DECLARATION OF KEN CANNATA IN OPPOSITION TO
PLAINTIFF'S RENEWED MOTION FOR TRO - 4
3:17-cv-05760 BHS
131191.0001

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON  98111-9402
206.223.7000 FAX: 206.223.7107

about six months later than promised, roughly September of 2015, and then with only eight (not fifty) pre-installed credits. Kevin continued to demand the additional credits that he had been promised, but HPT initially refused. Kevin would not accept that he had been shorted forty-two credits and would continually demand them each time HPT reached out to him for additional technical information.

18.     At some point in 2016, I became frustrated that Kevin had not yet been provided the credits he had been promised and that he would not let it go. So to appease him, I provided him with a USB drive that included a so-called key generator that would enable him to generate credits himself for HPT's interface cable. In doing so, I authorized him to use that key generator to provide a reasonable number of credits for himself.

19.     I did not view this as a breach of protocol because it was well known to everyone at HPT that its software had been cracked numerous times, that it was just a part of doing business in this industry, and that HPT was making so much money that any attempt to stop those efforts was not worth the trouble of doing so. I did, however, make it known to Kevin that he should not spread around the fact that he had that USB drive.

20.     My ownership interest in HPT was bought out October of 2016. Sometime after that, I began using my personal knowledge and skill to help develop a new hardware cable for the purpose of tuning cars. I knew from experience that developing a superior hardware cable essentially from scratch takes a long time.

21.     HPT erroneously alleges that a PCM harness for and E38 controller is somehow proprietary to HPT. In fact, that device is nothing but a simple wiring cable with pinouts specific to the E38 controller. And contrary to HPT's motion, I am the person who created that device, not Keith Prociuk. And also contrary to HPT's motion, that device is not proprietary to HPT. Attached as Cannata Exhibit 1 is a screen capture of the Speartech website offering to sell that product to the public. There is nothing about that product which is proprietary to anyone.

DECLARATION OF KEN CANNATA IN OPPOSITION TO
PLAINTIFF'S RENEWED MOTION FOR TRO - 5
3:17-cv-05760 BHS
131191.0001

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON  98111-9402
206.223.7000 FAX: 206.223.7107

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 20, 2018.

_____

Ken Cannata

DECLARATION OF KEN CANNATA IN OPPOSITION TO
PLAINTIFF'S RENEWED MOTION FOR TRO - 6
3:17-cv-05760 BHS

131191.0001

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON  98111-9402
206.223.7000 FAX: 206.223.7107

1

2

## CERTIFICATE OF SERVICE

3     I hereby certify that on the date indicated below, I electronically filed the above with the

4  Clerk of the Court using the CM/ECF system.  In accordance with their ECF registration

5  agreement and the Court's ruling, the Clerk of the Court will send email notification of such

6  filing to the following persons:

7

8

**Attorneys for Plaintiff HP TUNERS, LLC**          ☑  by **CM/ECF**
                                                     ☐  by **Electronic Mail**
Stephen G. Leatham, WSBA No. 15572                   ☐  by **Facsimile Transmission**
Heurlin, Potter, Jahn, Leatham, Holtmann &           ☐  by **First Class Mail**
Stoker, P.S.                                         ☐  by **Hand Delivery**
211 E. McLoughlin Boulevard, Suite 100               ☐  by **Overnight Delivery**
Vancouver, WA  98663
Phone:  (360) 750-7547
Facsimile:  (360) 750-7548
Email:  sgl@hpl-law.com

9

10

11

12

13

**Attorneys for Plaintiff HP TUNERS, LLC**          ☑  by **CM/ECF**
                                                     ☐  by **Electronic Mail**
Andrew P. Bleiman (*pro hac vice* admitted)          ☐  by **Facsimile Transmission**
Marks & Klein                                        ☐  by **First Class Mail**
1363 Shermer Road, Suite 318                         ☐  by **Hand Delivery**
Northbrook, IL  60062                                ☐  by **Overnight Delivery**
Phone:  (312) 206-5162
Email:  andrew@marksklein.com

14

15

16

17

18

19     Executed on August 20, 2018, at Seattle, Washington.

20

21                                          *s/John Whitaker*
                                            John Whitaker
22

23

24

25

26

27

DECLARATION OF KEN CANNATA IN OPPOSITION TO
PLAINTIFF'S RENEWED MOTION FOR TRO - 7
3:17-cv-05760 BHS

131191.0001

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON  98111-9402
206.223.7000 FAX: 206.223.7107

**Cannata - Exhibit 1**


**E38 Harness available on Speartech Website**

