MARKS & KLEIN
Andrew P. Bleiman, Esq.
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062
Telephone: (312) 206-5162
E-mail: andrew@marksklein.com

LEE HIGH, LTD.
Cecilia Lee, Esq.
Nevada Bar No. 3344
Elizabeth High, Esq.
Nevada Bar No. 10082
448 Ridge Street
Reno, Nevada 89501
Telephone: 775.499.5712
Email: c.lee@lee-high.com
Email: e.high@lee-high.com

Attorneys for Plaintiff HP Tuners, LLC

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company, <br><br>      Plaintiff, <br><br> vs. <br><br> KENNETH CANNATA, <br><br>      Defendant. | CASE NO.  3:18-cv-00527-LRH-WGC <br><br> **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PREJUDGMENT WRIT OF ATTACHMENT** <br><br> **ORAL ARGUMENT REQUESTED** |

Plaintiff HP TUNERS, LLC, a Nevada limited liability company ("HPT"), for its reply brief in further support of its Motion for a Prejudgment Writ of Attachment against Defendant KENNETH CANNATA ("Cannata"), states as follows:

///

///

# INTRODUCTION

Plaintiff HPT initiated this action as a result of Defendant Cannata's willful misappropriation of HPT's intellectual property despite and subsequent to HPT's payment to him of $6,800,000.00 for his interest in HPT. On April 24, 2019, this Court entered a temporary restraining order against Cannata, which subsequently was converted by agreement to a preliminary injunction. (ECF 25 & 28). As a basis for the injunction, this Court held:

> HPT has demonstrated that it is likely to succeed on the merits of its complaint. Its primary contention is that Cannata improperly transferred HPT's proprietary intellectual property to [Kevin] Sykes-Bonnett and others both before and during his negotiations to leave the company. (*See* ECF No. 1). As stated above, the text messages demonstrate that Cannata gave Sykes-Bonnett HPT documents, source code, and devices, which the latter then used to develop his own product. Given that Cannata stated that he did not "hack" HPT [ECF No. 24-3, at 12] and it is highly unlikely that HPT would continue to give him access to its intellectual property following his exit, the only logical conclusion is that he transferred the intellectual property to Sykes-Bonnett prior to his removal. This would support HPT's claims that Cannata violated the contract he signed prior to exiting.

(ECF No. 25, at 4). Cannata was duly enjoined from multiple activities involving any and all confidential and proprietary intellectual property belonging to HPT, including prohibitions on his destruction, concealment, or modification of electronic storage devices, hardware devices, communications, and documents. (Id., at 5-6).

At issue now is Cannata's conduct with $6,800,000 he swindled from HPT. He took those funds while simultaneously thumbing his nose at his promises he made in consideration therefor, leaving no doubt he will go to any lengths to insulate the monies he has deceitfully obtained. Complicating matters, Cannata's counsel represented to this Court that Cannata was "not able to speak and will not be able to participate in discovery for some time, if at all." (Id.). As recently as August 11, 2020, Cannata's counsel represented to the Court that "Mr. Cannata's medical condition continues to improve. Mr. Cannata is not able to travel but can participate in discovery and can produce the requested devices for forensic examination by Plaintiff's

1  expert(s)." (ECF No. 78). In short, HPT had and continues to have serious and warranted concerns regarding Cannata's disbursement of HPT's funds.

HPT's assertion that Cannata may not be in control of his own finances is neither "unfounded suspicion" nor "conjecture,"[1] but rather, results purely from Cannata's own representations about his condition. Cannata's health, compounded with his devious history of activities as acknowledged by the Court in the TRO and preliminary injunction, provide serious and legitimate bases for the extraordinary circumstances for a prejudgment writ of attachment, with notice and hearing, pursuant to N.R.S. §31.013(3). (ECF No. 81). The Motion is based on the TRO, preliminary injunction, Cannata's admissions, and a factual and litigation history encompassing more than Cannata's disingenuous claim that his health condition in 2020 is the "one basis, and one basis only" for the Motion. (ECF No. 86, at 12).

The matter of Cannata's health, as set forth in Plaintiff's Motion for Prejudgment Writ of Attachment ("Motion"), is derived entirely from his own representations to this Court. Curiously, however, Cannata now claims that HPT's relaying of Cannata's own representations is "completely false". (ECF No. 86, at 2). Cannata's latest iteration that "he has since fully recovered," is no longer under medical restrictions, and that he is in full control of his financial affairs is a novel representation to this Court and seemingly in direct response to the specter of the present Motion. (Id.) This was never previously communicated to HPT or this Court, and Cannata's attempt to project this knowledge upon HPT or its counsel is rather unseemly (Id., at 7-8, ¶¶23-26).

In the simplest terms and as at times corroborated by this Court, Cannata cannot be trusted. Considering this in conjunction with Cannata's health condition, it is improbable that absent a prejudgment writ of attachment that HPT will be able to reach the property of Cannata by execution if, and after, a judgment has been entered. See N.R.S. §31.013(3).

///

---

[1] ECF No. 86, at 12.

# ARGUMENT

**A. Extraordinary Circumstances Exist for a Prejudgment Writ of Attachment of Cannata's Assets and HPT's Claims in Support Thereof Have "Probable Validity"**

Cannata's Opposition to Plaintiff's Motion for Prejudgment Writ of Attachment ("Response" or "Cannata's Response") devotes significant argument to the proposition that HPT can neither support the "probable validity" of its claims nor has a likelihood of success on the merits thereof. (ECF No. 86, at 2, 10-12, 16-21).[2] However, this Court already determined HPT's likelihood of success on the merits. (ECF No. 25). Moreover, Cannata stipulated to a preliminary injunction, tacitly admitting it was unable to challenge this conclusion. (ECF No. 28).[3] As such, Cannata cannot now reargue this issue.

Moreover, to the extent this Court considers Cannata's position on the merits, it is without merit. Cannata has both then and now made explicit admissions concerning his malfeasance further supporting HPT's claims, the existent extraordinary circumstances justifying attachment, and the prior injunction. (ECF No. 87, at ¶¶12, 17, 19, 21).[4] Namely, Cannata:

- Concedes that he provided a thumb drive to Sykes-Bonnett that contained a copy of HPT's "key generator" (Cannata Decl., at ¶12). This is significant. HPT's key generator is the single most valuable piece of intellectual property that HPT possesses. (ECF No. 1, at ¶¶43-47). Protecting its secrecy was critical because it is the tool that generates the overwhelming majority of user licenses for HPT's automotive tuning products and is the security control for substantially all of HPT's revenues. (Id, at ¶48).

- Concedes that – despite his non-compete covenants in the Purchase Agreement given in consideration for his receipt of $6,800,000, whereby he was prohibited from being in the automotive tuning industry – after his separation from HPT, he

---

[2] *Citing Blastrac, N.A. v. Concrete Solutions & Supply*, 678 F.Supp.2d 1001 (C.D. Cal. 2010); *Coombs v. Heers*, 366 F.Supp. 851 (D. Nev. 1973); *Sanad v. Bernini, Inc.*, 2007 U.S. Dist. LEXIS 73331 (D. Nev. Sept. 28, 2007); *Triad Sys. Corp. v. Southeastern Express Co.*, 1994 U.S. Dist. LEXIS 5390 (N.D. Cal. Mar. 18, 1994).

[3] *Infra*, at 2.

[4] Declaration of Kenneth Cannata in Support of Opposition to Plaintiff's Motion for Prejudgment Writ of Attachment ("Cannata Decl.").

> developed a data cable for use in vehicle performance tuning applications in connection with pre-existing software developed by HPT's competitor (the "<u>Eliminator Cable</u>"). (Cannata Decl., at ¶17).

- Makes the false assertion that the Eliminator Cable "was not developed using any confidential or proprietary information that belongs to HPT and does not incorporate any such confidential or proprietary information in its design or function." (Cannata Decl., at ¶19). However, HPT's expert has rendered opinions in this case which refute Cannata's claims.

- Admits that he developed the same firmware for both HPT's MPVI cable and the Eliminator Cable for HPT's competitor.

(Cannata Decl., at ¶21).

The cases relied upon by Cannata are similarly inapposite to his arguments and in fact support HPT's position. For example, Cannata cites to *Coombs v. Heers* for the proposition that before issuing a writ of attachment, if the Court determines, after considering all evidence presented at the hearing, that "plaintiff's underlying claim against the defendant is 'probably valid it shall order the clerk to issue a writ of attachment.'" (ECF No. 86, at 10 *citing Coombs*, 366 F.Supp. at 853). In *Coombs*, the plaintiffs "established an adequate showing of facts to sustain this Court's finding of a probable validity of plaintiffs' underlying claim" and the Court therefore granted plaintiff's motion to attach defendants' property. *Coombs*, 366 F. Supp. at 853.

This is akin to the instant case wherein this Court has previously determined, and Cannata stipulated to, a finding that Plaintiff HPT's claims have probable validity, and the facts in support are overwhelming and uncontested. (ECF Nos. 25, 28). Indeed, here, the Court also entered a TRO and a preliminary injunction that remains in force, further warranting a writ of attachment. Writs of attachment more commonly issued when, as in this case, the Court has made findings to support an entry of a preliminary injunction or in instances where a defendant's egregious conduct has been admitted to and/or otherwise found. *See, e.g., Sun World, Inc. v. Olivarria*, 144 F.R.D. 384, 1992 U.S. Dist. LEXIS 20847 (E.D. Cal. May 26, 1992).

Cannata's Response claims that "in *Blastrac*, the plaintiff was denied a prejudgment writ of attachment … because it did not effectively address defendant's defense" that plaintiff had failed to perform under the subject contract. (ECF No. 86, at 11). Putting aside that *Blastrac* analyzed Colorado and California law as opposed to the pertinent Nevada statute, the California District Court in that case concluded that the plaintiff had not shown that its "own alleged breaches did not excuse [defendant's] performance under the Agreement, [thus plaintiff] has not demonstrated that it is more likely than not" to obtain judgment. *Blastrac*, 678 F.Supp.2d at 1006. There was no prior finding in *Blastrac*, as is the case here, that the plaintiff had "*demonstrated that it is likely to succeed on the merits of its complaint.*" Here, the Court found that "the only logical conclusion is that [Cannata] transferred the intellectual property to Sykes-Bonnett prior to his removal. *This would support HPT's claims that Cannata violated the contract* he signed prior to exiting." (ECF No. 25, at 4) (emphasis supplied).

In *Sanad v. Bernini, Inc.*, which Cannata cites as analogous and controlling, there was similarly no indication that the Court had previously analyzed or opined that the plaintiff was likely to succeed on the merits. (*Contrast* ECF No. 25, at 4 *with Sanad*, 2007 U.S. Dist. LEXIS 73331 (D. Nev. Sept. 28, 2007)). The Court in *Sanad* concluded instead that it did not have "grounds to issue an order attaching Defendant's property based on a generalized conclusion that it is a dishonest or racist business." *Sanad*, 2007 U.S. Dist. LEXIS at *11. The attempt to characterize *Sanad* as equivalent is hollow. The record and prior findings in this case are not the same as in *Sanad*, where that plaintiff's application for a writ did not "set forth factual information that would reasonably demonstrate that their claims are valid" and consisted only of "generalized allegations." Id, at *5.

Cannata calls the case of *Cleverly v. Ballantyne* "analogous to the case at hand." (ECF No. 86, at 13 *citing Cleverly v. Ballantyne*, 2013 U.S. Dist. LEXIS 206405 (D. Nev. Sept. 20, 2013). While true that the fact pattern in Cleverly involved a purchase and sale of a business owner's interest along with non-compete provisions and that plaintiff sought a writ of attachment

based on alleged "extraordinary circumstances," once again the cited case had no prior TRO or preliminary injunction. Moreover, the alleged basis for the writ in *Cleverly* was that the defendant had sold his business to a foreign company, putting the assets out of reach when, in fact, the alleged sale never occurred. Based on those faulty representations, the Court found "that extraordinary circumstances do not exist that would warrant a prejudgment writ of attachment under NRS §13.013(3)." *Cleverly,* 2013 U.S. Dist. LEXIS at **7-8. Despite Cannata's characterization, the writ application in the present case is not based merely on an erroneous or conclusory affidavit, but upon *Cannata's own representations to the Court and his stipulation* as to the Court's TRO findings. (*Compare* ECF Nos. 25, 72, 73, 75, 78 *with* ECF No. 81; *contrast* ECF No. 86, at 13 *with* ECF Nos. 25, 72, 73, 75, 78, 81).

As previously determined by the Court and as buttressed by Cannata's own admissions, there already has been a consideration of "the relative merits of the positions of the respective parties and … a determination of the probable outcome of the litigation." (*Cf.* ECF No. 86, at 10). Cannata now runs the fool's errand of a revisionist argument setting forth that Plaintiff HPT cannot show that it is more likely than not to succeed on its claims. (ECF No. 86, at 16-21, fn. 36). In doing so, he either inadvertently or in bad faith ignores this Court's prior TRO findings, his own stipulation to entry of a preliminary injunction, and/or his sworn admissions. (*Cf.* ECF Nos. 25, 28, 87, at ¶¶12, 17, 19, 21). Cannata's new argument alleging that HPT is unlikely to succeed on the merits should, thus, not be considered. Plaintiff HPT does have a probable validity of succeeding on its underlying claims at the hearing on this Motion. *See* NRS 31.026.

**B. Defendant Cannata Makes Hyperbolic Arguments About Due Process and Bond That Are Entirely Disassociated From The Statute Because Plaintiff Proceeds Pursuant To NRS 31.013(3) Which Requires Notice and A Hearing.**

Cannata argues that the remedy of attachment is a harsh one, and that doing so would deprive him of due process and effectively bankrupt him. (ECF No. 86, at 2, 9-12). Although Chapter 31 of the Nevada Revised Statutes does provide means for seeking a writ of attachment *without notice and hearing*, Plaintiff HPT did not proceed under those statutes. (ECF No. 81).

In this case, Cannata has been notified and is afforded both briefing and a hearing insofar as Plaintiff's Motion was made pursuant to NRS §31.013(3) which states that:

> The court may *after notice and hearing*, order the clerk to issue a writ of attachment … (3) In any other case where the court finds that extraordinary circumstances exist which will make it improbable for the plaintiff to reach the property of the defendant by execution after the judgment has been entered.

N.R.S. §31.013(3) (emphasis supplied).

Cannata's own citation to NRS 31.026, entitled "Procedure when notice and hearing required: Hearing" show his acknowledgment that he will be afforded a hearing. (ECF No. 86, *citing* N.R.S. §31.026, *Blastrac*, 678 F.Supp.2d at 1005, *and Coombs*, 366 F.Supp. at 853). Assertions that prejudgment attachment is unduly extreme and would deprive Cannata of due process are simply inaccurate and hyperbolic.

Moreover, Cannata's arguments regarding any bond Plaintiff must file (ECF No. 86, at 11) are simply not yet ripe. Cannata cites to N.R.S. §31.030(1) and the case of *Nevada Credit Rating Bureau, Inc. v. Williams*, 88 Nev. 601, 606, 503 P.2d 9, 13 (1972) in support of alleged bond requirements imposed on the Plaintiff. (Id.) In both instances, however, the bond requirement does not apply unless and until the Court actually seeks to issue a writ of attachment. *See, e.g. Bermuda Road Properties, LLC v. Ecological Steel Systems, Inc.*, 2012 U.S. Dist. LEXIS 180212 (D. Nev. Dec. 19, 2012). The statutory provision is specific that:

> The court, *in its order for attachment, shall require* a written undertaking on the part of the plaintiff payable in lawful money of the United States in a sum not less than the amount claimed by the plaintiff or the value of the property to be attached, whichever is less, with two or more sureties to the effect that if the plaintiff dismiss such action or if the defendant recover judgment the plaintiff will pay in lawful money of the United States all costs that may be awarded to the defendant, and all damages which the defendant may sustain by reason of the attachment including attorney's fees, not exceeding the sum specified in the undertaking.

N.R.S. §31.030(1) (emphasis supplied)

Similarly, N.R.S. §31.028 sets forth the requisite contents of an order for attachment. *See* N.R.S. §31.028. Its express wording is that "the court or judge issuing any order for attachment with or without notice shall set forth in the order … 4. The amount for which the attachment will issue. 5. The amount of security which must be given by the plaintiff before the writ will issue …". *Id*. The issue of a bond is one which arises if and when, after notice and hearing, an order for attachment actually issues.

Likewise, Cannata's contentions of impropriety concerning the nature of the property to be attached should be tested with limited, expedited discovery concerning Cannata's assets. Indeed, HPT should be permitted to assess Cannata's vague, generalized contentions concerning his assets. To that end, HPT respectfully requests expedited, limited discovery on the precise issue of Cannata's assets.

### C. Defendant Cannata's Attack on Plaintiff's NRS 31.020(2) Declaration Supporting an Application for a Writ of Attachment with Notice to Defendant is Misplaced.

All applications to the court for an order directing the clerk to issue a writ of attachment *with notice to the defendant* shall be accompanied by an affidavit setting forth that any one of the enumerated grounds contained in N.R.S. §31.020(1)(a)-(h) exists. *See* N.R.S. §31.020(2) (emphasis supplied). When applications are made to the Court for an order directing the clerk to issue a writ of attachment without notice to the defendant, the affidavit must be "of the plaintiff or any other person having personal knowledge of the facts constituting one or more of the grounds for attachment". An application in the case of notice and a hearing, however, simply "shall be accompanied by an affidavit … show[ing] the existence of any one of the grounds for attachment with notice." *Contrast* N.R.S. §31.020(2) *with* N.R.S. §31.020(1). Great strictness is not required in setting out the facts to authorize the issuance of the attachment, and the affiant is only required to swear to his belief in the existence of certain main facts, and to state the subordinate facts on which that belief is founded (and may be founded on information derived from others). *See Bowers v. Beck*, 2 Nev. 139 (Nev. 1866).

Accordingly, Plaintiff's Motion seeking issuance of a writ of attachment with notice was accompanied by the Declaration of Andrew P. Bleiman, Esq. Pursuant to N.R.S. §31.020 in Support of Plaintiff's Motion for Writ of Attachment ("<u>Bleiman Declaration</u>").  The Bleiman Declaration complies with the requirements of N.R.S. 31.020(2) and properly contains facts within his personal knowledge, facts culled from the pleadings of public record, and subordinate facts upon his "information and belief" based on due diligence.  (ECF No. 82).  As such, the significant energy which the Cannata Response devotes to attacking the Bleiman Declaration is misplaced, irrelevant, and inconsistent with Nevada law.

## CONCLUSION

WHEREFORE, HP TUNERS, LLC, for the reasons set forth herein and in Plaintiff's Motion for a Prejudgment Writ of Attachment against Defendant, KENNETH CANNATA, respectfully prays for an order the clerk of court issue a writ of attachment in accordance with N.R.S. §31.013, and for any other relief which this Honorable Court deems necessary and appropriate.

DATED this 22nd day of December, 2020.

                    Respectfully submitted,

                    <u>*s/ Andrew P. Bleiman*          </u>
                    Attorneys for HP Tuners, LLC

MARKS & KLEIN
Andrew P. Bleiman, Esq.
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062
Telephone:  (312) 206-5162
E-mail:  andrew@marksklein.com

LEE HIGH, LTD.
Cecilia Lee, Esq.
Nevada Bar No. 3344
Elizabeth High, Esq.
Nevada Bar No. 10082
448 Ridge Street
Reno, Nevada 89501
Telephone:  775.499.5712
Email: c.lee@lee-high.com
Email: e.high@lee-high.com
Attorneys for Plaintiff HP Tuners, LLC

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify under penalty of perjury that I am an employee of Lee High, Ltd., 448 Ridge Street, Reno, Nevada 89501, and that on December 22, 2020, I served copies of <u>PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PREJUDGMENT WRIT OF ATTACHMENT</u> via the Court's Notice of Electronic Filing to all those persons listed on the United States District Court CM/ECF Confirmation Sheet.

DATED this 22nd day of December, 2020.

/s/ Elizabeth Dendary, CP
ELIZABETH DENDARY, CP
Certified Paralegal