Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Email: blarsen@shea.law
        kwyant@shea.law

*Attorneys for Defendant*
*KENNETH CANNATA*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company;<br><br>               Plaintiff,<br><br>    vs.<br><br>KENNETH CANNATA,<br><br>         Defendants. | CASE NO. 3:18-CV-00527-LRH-WGC<br><br>**DEFENDANT KENNETH CANNATA'S OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS** |

Defendant Kenneth Cannata ("Cannata") hereby files his Opposition (the "Opposition") to Plaintiff HP Tuners, LLC's ("HPT") Motion for Sanctions [ECF No. 110] (the "Motion"). This Opposition is supported by the Declaration of Kenneth Cannata attached hereto (the "Cannata Declaration"), the papers and pleadings on file herein, the following Memorandum of Points and Authorities, the attached exhibits, and any oral argument this Court may entertain on the Motion.

DATED this 15th day of June 2021.

                                 **SHEA LARSEN**

                                 */s/ Bart K. Larsen, Esq.*
                                 Bart K. Larsen, Esq.
                                 Nevada Bar No. 8538
                                 1731 Village Center Circle, Suite 150
                                 Las Vegas, Nevada 89134

                                 *Attorneys for Kenneth Cannata*

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   INTRODUCTION

The timing of HPT's Motion can only be considered suspect at best.  Indeed, by way of its Motion, HPT is complaining of denials contained in Cannata's answer filed on or about August 29, 2019, and Cannata's discovery responses served in June 2019.  HPT's Motion is simply another improper attempt by HPT to distract the Court and Cannata's counsel from the pressing issues at hand, specifically, the upcoming dispositive motion deadline set for June 30, 2021.

Much like many of HPT's filings in this matter, HPT's Motion is overzealous in its attempt to cast Cannata as the villain based on alleged misstatements in Cannata's answer [ECF No. 45] and his discovery responses served in this matter.[1]  The Motion is rife with speculation and assumptions as to Cannata's state of mind and makes virtually no effort to explain the perceived deficiencies HPT contends exist with respect to Cannata's answer or discovery responses or the specific legal basis on which HPT seeks sanctions.  Instead, HPT leaves it to Cannata and the Court to piece together the puzzle the Motion presents.  Moreover, the Motion ignores HPT's unclean hands and highly questionable conduct in delaying by nearly two years the production of highly relevant documents it obtained from third party – the same documents it now accuses Cannata of having failed to produce – and failing to adhere to this Court's order regarding the examination of Cannata's electronic devices.

The Motion seeks sanctions against Cannata[2] under (1) FRCP 11(c); (2) FRCP 26; (3) FRCP 37; (4) 28 U.S.C. § 1927; and (5) the Court's inherent power.  Yet, the Motion fails to carry HPT's

---

[1] HPT has previously engaged in filings that, under the standard asserted in the Motion, would subject HPT to sanctions.  For example, HPT filed a motion for a prejudgment writ of attachment [ECF No. 81] seeking to attach substantially all of Cannata's assets based on HPT's unsupported assumption that Cannata was not in control of his financial affairs.  Indeed, HPT seemingly made no effort whatsoever to investigate this claim before asserting it to this Court.  In fact, Cannata's counsel advised HPT's counsel just days before the motion was filed that Cannata had recovered from the medical issues from which he suffered in early 2020.  After being informed that HPT was entirely incorrect in its conclusory assumptions, the Court denied HPT's baseless motion.  *See* ECF No. 92.

[2] Although the Motion is unclear and unsupported in many aspects, the Motion plainly states that it is seeking sanctions against Cannata only, not Cannata's counsel.  *See* ECF No. 110, pp. 3, 18-19 (using phrases like "Defendant's conduct" or "Defendant's failure" as well as statements such as "the full extent of sanctions available under the Federal Rules of Civil Procedure should be assessed against Defendant Cannata…" while omitting any reference to Cannata's "attorney" or "counsel" therein).

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

burden of proof with respect to any of the arguments it raises – many of which are plainly in applicable to the facts at hand.  Cannata acted in good faith and based on the information available to him and his counsel at the time he responded to HPT's complaint and discovery requests. Moreover, to the extent that any of Cannata's responses were inaccurate or required clarification or correction after being placed in proper context through Cannata's deposition, Cannata has taken action to amend and supplement those responses.  As such, and for the reasons addressed more fully herein, the Motion must be denied.

## II.   STATEMENT OF RELEVANT FACTS

### A. Cannata's Separation from HP Tuners, LLC

1.     Prior to approximately October 2016, Cannata was a one-third member and owner of HPT, which was organized as a Nevada limited liability company on or about December 31, 2003, by Cannata, Keith Prociuk ("Prociuk"), and Chris Piastri ("Piastri").[3]

2.     Due to various disagreements regarding the operation and management of HPT, Cannata requested in or around July 2015 that Prociuk and Piastri, who were also each one-third members and owners of HPT, buy out his interest in HPT for fair market value, which he then estimated to be approximately $8 million, under a Buy-Sell Agreement that they had previously entered into as members of HPT.[4]

3.     Prociuk and Piastri agreed to purchase Cannata's interest in HPT for fair market value, but Prociuk and Piastri disagreed with Cannata's fair market value estimate, claiming instead that the fair market value of Cannata's interest in HPT was far less than $8 million.[5]

4.     Cannata continued to negotiate with Prociuk and Piastri concerning the sale of his membership interest in HPT during the following months, but they were unable to come to an agreement during 2015 regarding the fair market value of Cannata's interest in HPT.[6]

5.     In January 2016, in a wrongful attempt to force Cannata to sell his interest in HPT

[3] Cannata Declaration, ¶ 2.
[4] *Id.*, ¶ 3.
[5] *Id.*, ¶ 4.
[6] *Id.*, ¶ 5.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1   for less than market value, Prociuk and Piastri secretly adopted a written consent as members of

2   HPT under which they unilaterally changed the terms of their own employment by HPT to the

3   exclusion and substantial detriment of Cannata.[7]  Prociuk and Piastri's objective in taking such

4   actions was to increase HPT's expenses and reduce its net income to the point where Cannata would

5   receive no distributions as a one-third member and owner of HPT and, with no salary, would be

6   forced to sell his interest in HPT for less than fair market value.[8]

7       6.   In or around February 2016, Cannata began discussing a potential business

8   relationship with Kevin Sykes-Bonnett ("Sykes-Bonnett"), who is a principal of Syked ECU Tuning,

9   LLC ("Syked"), but only because he was on the brink of being wrongfully forced out of HPT without

10   any certainty as to whether he would ever be paid for his ownership interest.  At the time Cannata

11   began discussing a potential business relationship with Sykes-Bonnet, no agreement restricted

12   Cannata's ability to explore business opportunities with other parties.  If not for Prociuk and Piastri's

13   wrongful attempts to force him out of HPT, Cannata would not have discussed any potential business

14   relationship with Sykes-Bonnett at that time.[9]

15       7.   On or about March 11, 2016, Cannata entered into a Mutual Nondisclosure

16   Agreement with Syked Tuning Software, LLC in an attempt to protect the confidentiality of any

17   information disclosed to Sykes-Bonnet in connection with our discussions.  He did not otherwise

18   enter into any formal business arrangement of any kind with Syked ECU or Sykes-Bonnett prior to

19   the sale of his membership interest in HPT.[10]

20   **B. The Wrongful Conduct of Sykes-Bonnett**

21       8.   For reasons Cannata explained in a declaration filed in a separate case pending

22   between HPT and Syked in the U.S. District Court for the Western District of Washington[11] (the

23

24   [7] *Id.*, ¶ 6.  A true and correct copy of this written consent is on file in this action as Exhibit A to ECF No. 87.  Moreover, the specific actions taken by Prociuk and Piastri are described in detail in ECF No. 87, which was filed under seal.

25   [8] *Id.*, ¶ 7.

26   [9] *Id.*, ¶ 8.

27   [10] *Id.*, ¶ 9.

28   [11] *HP Tuners, LLC v. Kevin Sykes-Bonnett, Syked ECU Tuning Inc. and John Martinson*, Case No. 3:17-cv-05760-BHS.

1   "Washington Case"), he provided a thumb drive to Sykes-Bonnett that contained a copy of HPT's

2   "key generator."[12]

3        9.    Sykes-Bonnett subsequently misused HPT's key generator to sell fraudulent credits

4   that could be used in connection with HPT's software and hardware.  Cannata did not provide the

5   key generator to Sykes-Bonnett for that purpose, was not involved in any way in Sykes-Bonnett's

6   fraudulent sale of such credits, and did not receive any income or otherwise benefit as a result of

7   Sykes-Bonnett's fraudulent sale of such credits.[13]

8        10.    Sykes-Bonnett also subsequently posted a "hacked" version of HPT's software on

9   the internet for download that could be used to make use of HPT's software and hardware without

10   purchasing credits from HPT.  Cannata was not involved in any way in Sykes-Bonnett's "hacking"

11   of HPT's software or in his posting such software on the internet, and he did not receive any income

12   or otherwise benefit from such actions.  Sykes-Bonnett did not use any information Cannata

13   provided to "hack" HPT's software.[14]

14        11.    Other, similar "hacked" versions of HPT's software that are not attributable to

15   Sykes-Bonnett have also been made publicly available by unknown parties since 2016.  Cannata had

16   no involvement whatsoever in the posting of those "hacked" versions of HPT's software.[15]

17   **C.  Cannata Has Participated in Discovery in Good Faith While HPT Has Not.**

18        12.    Cannata served his initial responses to HPT's requests for admission, interrogatories,

19   and requests for production of documents on June 14, 2019.[16]  Concurrent with the service of such

20   responses, Cannata produced more than 600 pages of email communications (excluding

21   attachments) he exchanged with Sykes-Bonnett and another individual associated with Syked ECU,

22   John Martinson ("Martinson").[17]  Additionally, Cannata's wife had previously produced more than

---

[12] Cannata Declaration, ¶ 10.  A true and correct copy of the declaration filed in the Washington Case is on file in this action as Exhibit B to ECF No. 87.

[13] Id., ¶ 11.

[14] Id., ¶ 12.

[15] Id., ¶ 13.

[16] Copies of such responses are on file in this action as ECF Nos. 110-1, 110-2, and 110-4, respectively.

[17] Additionally, in response to HPT's request that Cannata produce "[a]ll phones, laptops or other personal devices (including any storage devices) and any computer hardware, monitors and other peripherals in your possession,

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

125 pages of emails she had exchanged with Sykes-Bonnett and Martinson along with other documents in response to a subpoena served in connection with the Washington Case.

13.     Thereafter, Cannata repeatedly supplemented his discovery responses as additional information became available regarding the basis for HPT's claims against him.[18]

14.     Notwithstanding Cannata's efforts to supplement his discovery responses, a discovery dispute arose between HPT and Cannata that resulted in HPT filing a motion to compel discovery on or about December 20, 2019 [ECF No. 49].

15.     Although Cannata opposed certain aspects of HPT's motion to compel[19], he did not object to HPT's request that he produce electronic devices for examination.  In fact, Cannata never opposed HPT's request that his electronic devices be produced for examination.[20]

16.     The Court held a hearing on HPT's motion to compel on February 25, 2020 during which it established parameters for the production and examination of Cannata's electronic devices, ordered Cannata to appear for a deposition on reasonable notice (to which Cannata had never objected), ordered that Cannata supplement three of his interrogatory responses and one of his responses to HPT's requests for production of documents, and denied the remaining relief requested in HPT's motion to compel.[21]

17.     Due to a serious medical emergency suffered by Cannata in early March 2020, this case was stayed for several months following the February 25, 2020 hearing.[22]  As such, the Court's order granting, in part, and denying, in part, the motion to compel [ECF No. 80] was not entered until August 20, 2020.  Thereafter, Cannata supplemented his discovery responses as ordered.[23]

---

custody or control, or which you have used at any time since January 1, 2016", Cannata responded that he would produce his devices for inspection by a third party at HPT's expense.  *See* ECF No. 110-4, pp. 8-9.

[18] Cannata's first supplemental responses to HPT's requests for production of documents were served on August 29, 2019.  *See* Exhibit 1 attached hereto.  Cannata's first supplemental responses to HPT's requests for admission were served on September 10, 2019. *See* Exhibit 2 attached hereto.  Cannata's first supplemental responses to HPT's interrogatories were served on September 11, 2019. *See* Exhibit 3 attached hereto.

[19] *See* ECF No. 51.

[20] *See* ECF No. 110-4, pp. 8-9.

[21] *See* ECF No. 80, pp. 2, 7-8.

[22] *See* ECF No. 72.

[23] Cannata's second supplemental responses to HPT's interrogatories were served on September 3, 2020.  *See* ECF

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

18.     On or about September 24, 2020, Cannata met with a consultant hired by HPT in Reno, Nevada and produced his iPhone, laptop, and desktop computer for copying in accordance with the Court's order [ECF No. 80].  Cannata also provided the consultant with the passcodes for those devices and all other information the consultant requested.[24]

19.     The Court's order regarding the motion to compel [ECF No. 80] established procedures for the examination of the data copied from Cannata's devices.  Under those procedures, HPT's consultant was to search the data for specific terms identified in the order and then produce all data matching such search terms to Cannata's counsel for review to remove privileged information and prepare a privilege log before releasing the data to HPT's counsel.[25]

20.     Instead of adhering to the Court's order, HPT unilaterally elected to forgo the procedures established for searching and reviewing Cannata's data and proceeded to use it in the preparation of HPT's expert witness reports.  HPT did not produce a copy of such data to Cannata until December 31, 2020 – approximately a week before Cannata's expert witness reports were due.

21.     On November 20, 2020, HPT disclosed an expert witness report indicating for the first time in two years of litigation that HPT is seeking over $15 million in highly speculative damages against Cannata.  In yet another attempt to obstruct Cannata's ability to conduct discovery, HPT designated this report as "Highly Confidential – Attorneys' Eyes Only" even though the report is a near-wholesale duplication of the damages HPT has publicly claimed against Syked ECU and Sykes-Bonnett in the Washington Case in or around April 2019.

22.     On that same date, HPT disclosed a separate expert report related to the examination of Cannata's hard drives and electronic devices that is also designated as "Highly Confidential – Attorneys' Eyes Only" despite the fact it relates almost exclusively to the contents of Cannata's own electronic devices.

23.     Despite multiple requests that the "Highly Confidential – Attorneys' Eyes Only"

---

No. 110-3.  Cannata's second supplemental responses to HPT's requests for production of documents were served on September 3, 2020.  *See* Exhibit 4 attached hereto.

[24] Cannata Declaration, ¶ 28.

[25] *See* ECF No. 80, pp. 2-5.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

designation be removed from these reports to facilitate the preparation of rebuttal reports by experts engaged by Cannata, HPT refused to remove the improper "Highly Confidential – Attorneys' Eyes Only" designation from its expert reports.  Moreover, HPT's reports are based in part on HPT's experts' review of declarations, depositions, and other materials exchanged in discovery in the Washington Case.

24.   Beginning in May 2019, Cannata repeatedly requested that HPT produce discovery materials exchanged in the Washington Case.[26]  In February 2021, after multiple efforts to meet and confer with HPT's counsel regarding the production of the materials from the Washington Case[27], HPT finally produced dozens of previously undisclosed emails, including for the first time emails from the somethingnew1892@yahoo.com email account, and thousands of previously undisclosed text messages that HPT received from Sykes-Bonnett in discovery in the Washington Case nearly two years earlier in or around May 2019.[28]

25.   Cannata was deposed on March 11, 2021.  Nearly two months later, on May 5, 2021, HPT's counsel wrote to Cannata's counsel requesting that Cannata supplement certain discovery responses that HPT deemed inaccurate in light of Cannata's deposition testimony.  Shortly thereafter, Cannata voluntarily supplemented several of his discovery responses to address inconsistencies between those responses and his deposition testimony.[29]

---

[26] *See* HPT's response to Cannata's first set of requests for production of documents attached hereto as Exhibit 5, p. 2.

[27] Such meet and confer efforts are described, in part, in Cannata's motion to compel filed on March 24, 2021 [ECF No. 106].

[28] HPT filed some of the text message in question under seal at ECF No. 24 on April 23, 2019 and filed one of the emails in question under seal at ECF No. 32 (although the filed version is largely illegible) on June 19, 2019. Nonetheless, HPT withheld production of roughly a dozen other emails from the somethingnew1892@yahoo.com email account and thousands of other text messages it received from Sykes-Bonnett (as well as hundreds of other documents) until February 19, 2021 – approximately a month before the close of discovery.

These are largely the same communications that HPT complains in its Motion were not produced by Cannata.  Had HPT timely produced the communications it received from Sykes Bonnet when first requested by Cannata in 2019, such documents would have greatly clarified the basis for HPT's claims against Cannata and would have significantly increased the ability of Cannata's counsel to effectively assist Cannata in responding to HPT's complaint and discovery requests.  HPT has only itself to blame for any expense it incurred as a result of its own failure to timely produce these highly relevant documents.

[29] Cannata's third supplemental responses to HPT's interrogatories were served on May 26, 2021.  *See* Exhibit 6 attached hereto.  Cannata's second supplemental responses to HPT's requests for production of documents were served on May 26, 2021.  *See* Exhibit 7 attached hereto.

- 8 -

26.     In response to HPT's May 5, 2021 letter, Cannata further requested that HPT consent to his filing of an amended answer to address any perceived inconsistencies between his initial answer and his deposition testimony.  HPT refused to consent and instead directed Cannata to file a motion for leave to file an amended answer.

## III.   HPT'S MOTION FOR SANCTIONS SHOULD BE DENIED

HPT's Motion seeks sanctions against Cannata only under (1) FRCP 11(c); (2) FRCP 26; (3) FRCP 37; (4) 28 U.S.C. § 1927; and (5) the Court's inherent power.  To be clear, there is nothing in the Motion requesting sanctions against Cannata's counsel; rather, all the sanctions sought are against Cannata himself.  This is an important distinction as some of the sanctioning rules and statutes relied upon by the Motion apply only in situations where attorney misconduct is at issue.  In any event, HPT is not entitled to sanctions under any of the five avenues it puts forth in its Motion based on the reasons described more fully below.

### A.     28 U.S.C. § 1927 Is Inapplicable Here.

Rather than provide analysis under each of the rules or statutes raised in the Motion, the Motion simply lays out several avenues it claims apply here to Cannata's actions.  One of those avenues is 28 U.S.C. § 1927.  However, nowhere in the Motion does HPT acknowledge the truth of 28 U.S.C. § 1927—that it is not available as an avenue for sanctioning parties; rather, it is only applicable to sanctions against attorneys.  Indeed, the express language of 28 U.S.C. § 1927 states:

> ***Any attorney or other person admitted to conduct cases*** in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

(emphasis supplied); *see also, e.g.*, *Zaldivar v. City of L.A.*, 780 F.2d 823 (9th Cir. 1986) ("Sanctions under section 1927 may be imposed only against attorneys, and not parties….") (negative treatment on other grounds); *United States EEOC v. Marquez Bros. Int'l, Inc.*, No. 1:17-cv-44, 2018 U.S. Dist. LEXIS 106798, *37 at n. 5 (E.D. Cal. June 26, 2018).  "Awards of attorneys' fees under 28 U.S.C. § 1927 are not frequently made." *R. Prasad Indus. v. Flat Irons Envtl. Solutions Corp.*, No. cv-12-

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

- 9 -

08261, 2014 U.S. Dist. LEXIS 133560, *11 (D. Ariz. Sept. 23, 2014).   Here, the Motion seeks sanctions only against Cannata for his conduct.   As such, Section 1927 is entirely inapplicable.

Even if the Motion could be construed to seek sanctions against Cannata's counsel, the Motion does not meet the high standard necessary to justify sanctions.   "Section 1927 sanctions must be supported by a finding of subjective bad faith." *Id.*   "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purposes of harassing an opponent.   In the Ninth Circuit, section 1927 authorizes sanctions only for the multiplication of proceedings, it applies only to unnecessary filings and tactics once the lawsuit has begun." *Id.* at *12.   Here, no evidence has been presented as to the subjective bad faith of Cannata's counsel.   Moreover, there is no evidence that Cannata's counsel ever multiplied the proceedings, made unnecessary filings, or engaged in any other improper conduct.   Thus, HPT's request for sanctions under 28 U.S.C. § 1927 is unwarranted and must be denied.

**B.**      **HPT Is Not Entitled to Sanctions Pursuant to FRCP 11.**

As an initial matter, HPT's Motion cannot be granted to the extent it seeks Rule 11 sanctions relating to Cannata's discovery responses.   *See* FRCP 11(d) ("Inapplicability to Discovery:  This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37.").   HPT's Motion is not clear as to what rules or statutes HPT contends apply to what allegedly sanctionable conduct as the Motion simply lumps HPT's unsupported allegations together and makes no effort to tie any specific action or statement by Cannata to any specific relief.

Additionally, HPT's Motion cannot be granted as it relates to FRCP 11 because HPT failed to comply with the safe harbor provisions therein.   Rule 11(c)(2), the safe harbor provision, provides:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

"The Ninth Circuit strictly construes the safe harbor requirements of [Rule 11], and considers the rule's specific procedural requirements to be mandatory." *Smith v. J.P. Morgan Chase Bank*, 2013

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

- 10 -

U.S. Dist. LEXIS 207673, *22-23 (D. Nev. Mar. 22, 2013) (denying a motion for sanctions under Rule 11 because a party did not strictly comply with the requirements by failing to provide the to-be-sanctioned party with a "file-ready motion for sanctions twenty-one days prior to filing to motions for sanctions."). Here, Plaintiff did not comply with these strict provisions. Indeed, HPT's counsel reached out and provided a rough draft of a motion for sanctions on or about May 5, 2021, by way of email, which Cannata's counsel immediately reviewed.[30]   After review, Cannata's counsel responded to HPT's counsel on or about May 26, 2021 and not only provided supplemental discovery responses but also informed HPT's counsel that Cannata was prepared to file an amended answer provided that HPT consent to him doing so in accordance with FRCP 15(a). Despite Cannata's efforts, HPT pressed forward with the filing of the Motion in which it fails to acknowledge Cannata supplemented his discovery responses or his request to amend his answer.[31]

At a minimum, HPT's request for sanctions under Rule 11 is premature. Rule 11 sanctions, if awarded, are typically determined at the end of litigation. *See* FRCP 11 Advisory Committee Note (1983 Amendment). Court's typically refuse to depart from this rule, especially because such a request seeks the Court to make substantial factual and legal determinations based on a limited record before it. *See United Specialty Ins. Co. v. Dorn Homes, Inc.*, No. CV-18-08092, 2020 U.S. Dist. LEXIS 2501619, *6-8 (D. Ariz. Jan. 9, 2020) (collecting cases and denying a Motion for Rule 11 Sanctions as premature). Here, the deadline for summary judgment motions and other dispositive motions is June 30, 2021, and no trial date has been set.

## C.   Sanctions Under FRCP 37(c) Are Similarly Unwarranted.

Although HPT's Motion fails to apply FRCP 37(c) to any specific conduct alleged on the part of Cannata, HPT's Motion raises Rule 37(c)(1) and Rule 37(c)(2) in passing. *See* Motion, pp. 13-14. Neither of these provisions applies here. As such, the Motion should be denied.

---

[30] HPT's counsel also sent a letter in which HPT demanded that Cannata consent to a default judgment or file an amended answer seemingly admitting everything contained in the Complaint [ECF No. 1]. Such an unreasonable demand only goes to show that HPT is not interested in litigating this matter, but simply wants Cannata to acquiesce to a judgment.

[31] The Motion also fails to strictly comply with Rule 11 because it does not describe specifically what conduct allegedly violates Rule 11. *See* Rule 11(c).

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1.   _Sanctions Under FRCP 37(c)(1) Are Unwarranted_

Sanctions are not available under FRCP 37(c)(1) if the failure to produce documentation or information or witnesses was substantially justified or harmless. _See_ FRCP 37(c)(1). Here, HPT's sole complaint regarding failure to disclose seemingly deals with Cannata's failure to provide certain text messages and emails exchanged between Cannata and Sykes-Bonnett. _See_ Motion, p. 11. FRCP 37(c)(1) states:

> _Failure to Disclose or Supplement._ If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

There are two very important provisions here that HPT's Motion fails to acknowledge and are both fatal to HPT's request for sanctions under Rule 37(c)(1). First, Rule 37(c)(1) only applies to information required to be provided under Rule 26(a) or (e). Rule 26(a) does not apply here because it relates solely to initial disclosures that are not at issue here. Even if they were, Rule 26(a)(ii) states that the only things that must be disclosed are documents that a party may use "to support its claims or defenses." The emails and text messages which HPT takes issue with would not be used to support Cannata's defenses and disclosure pursuant to initial disclosure obligations were not required.

Rule 26(e) applies to supplementing discovery responses, which is the likely statutory authority upon which the Motion relies.[32] However, the Motion fails to acknowledge that Cannata supplemented his discovery responses on multiple occasions during this litigation. More importantly, Cannata supplemented his discovery responses after receiving notification from HPT's counsel regarding the alleged Rule 11 violations, and the supplemental discovery responses were served on May 26, 2021 within the 21-day safe harbor provision of FRCP 11 and nearly a week before HPT's Motion was filed. Thus, neither Cannata nor his counsel violated Rule 26(a) or Rule 26(e). Therefore, sanctions under FRCP 37(c)(1) are inappropriate.

Second, sanctions may not be awarded if the failure to supplement was substantially justified or is harmless. Turning first to the Motion's allegations regarding the failure to produce text

---

[32] The Motion fails to clarify this point. Instead, it leaves it to Cannata and the Court to guess at the basis on which HPT seeks case-ending sanctions.

1   messages and emails, Cannata was unable to produce this information because he no longer had

2   access to the same at the time the lawsuit was filed.[33]  This Court already recognized on the record

3   that "it cannot and will not order Defendant to produce documents that he does not possess or have

4   access to."  *See* ECF No. 80, p. 6.  Cannata cannot produce what he does not have access to.  This

5   includes emails sent and received from the somethingnew1892@yahoo.com email address, which

6   Cannata is unable to access and has not used since early 2017.[34]

7            Further, Cannata's inability to produce emails and texts that he could not access has not

8   caused any harm to Plaintiff.  HPT obtained the emails and texts Cannata exchanged with Sykes-

9   Bonnett in discovery in the Washington Case in or around May 2019 – nearly two years before HPT

10  produced those emails and texts to Cannata in discovery this action in February 2021.  Duplicative

11  production of those records by Cannata would have been of no assistance. On the other hand, had

12  HPT timely produced the communications in question to Cannata when first requested in 2019, such

13  documents would have greatly clarified the basis for HPT's claims against Cannata at an early stage

14  in this case and would have significantly increased the ability of Cannata's counsel to effectively

15  assist Cannata in responding to HPT's discovery requests.   Instead, HPT concealed those

16  communications until the final few weeks of discovery.  Not surprisingly, HPT has provided no

17  evidence that its fees or costs in this matter increased as a result of Cannata's inability to produce

18  documents that HPT already had in its possession.  To the extent it actually incurred any additional

19  expense, HPT has only itself to blame for its own failure to timely produce these highly relevant

20  documents when they became available.

21           In short, Cannata has supplemented his discovery responses in good faith on multiple

22  occasions as additional information became available regarding HPT's claims against him.  His

23  inability to produce documents to which he has no access that HPT independently obtained from

24  another source in 2019 does not justify sanctions under FRCP 37(c)(1).

25

26

27  [33] Cannata Declaration, ¶¶ 22-27.

28  [34] *Id.*, ¶ 24.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

2.     _Sanctions Under FRCP 37(c)(2) Are Similarly Unwarranted_

The Motion also seeks sanctions under FRCP 37(c)(2). Rule 37(c)(2) applies only to requests for admission and as such, only issues relating to Cannata's responses thereto are relevant to this analysis. Rule 37(c)(2) allows for the award of attorneys' fees and expenses incurred in proving a denial to a request for admission to be true only if: (1) the request was not objectionable under Rule 36(a); (2) the admission was of substantial importance; (3) the party failing to admit had a reasonable ground to believe it may prevail on the matter; and (4) there was other good reason for failure to admit.

Here, the Motion places Requests No. 13, 22-24, and 28-33 at issue.[35] _See_ Motion, p. 9. Taking them in order, Cannata's response to request 13 was proper based on the vagueness of the Request. First, HPT's requests for admission contained only three definitions: "You", "HPT" and "and/or." Request 13 asks Cannata to admit that he provided Sykes-Bonnet with "technical and/or confidential information relating to HPT's MPVI." "Technical and/or confidential information" is not a defined term. This term does not have a common meeting, and Cannata raised an objection concerning the vagueness of using this in his initial and supplemental responses. Moreover, Cannata developed the MPVI while he was an owner of HPT using his independent knowledge and expertise as well as publicly available code and resources developed by third parties.[36] At the time of Cannata's initial response to this request, it was unclear what, if any, aspect of the MPVI remained confidential and proprietary to HPT. Even so, Cannata admitted in his initial response that he discussed technical information related to the MPVI with Sykes-Bonnett. This is all he could admit at the time based on the vagueness of the request. As such, this is good cause for denial. Cannata had reasonable grounds to believe that any information he provided was not confidential at the time of his initial responses.

The same reasoning applies to requests for admission 22-24. All of these requests asked that Cannata admit he possessed or provided to Sykes-Bonnett "HPT's source code files." Again, this

[35] It should be noted that this Court already denied HPT's request for supplementation to requests for admission 17-19, 27, 30, and 33. _See_ ECF No. 80, p. 7.

[36] Cannata Declaration, ¶¶ 18-19.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1   phrase is not defined and, at the time of his responses, Cannata was unsure of what was encompassed

2   in the phrase "source code files" as he later testified during his deposition.[37]  In other words, Cannata

3   answered requests 22-24 in good faith to the best of his ability at the time and based on his memory

4   from 2016.  Any issues raised in the Motion regarding the same can only be attributed to HPT's

5   vagueness in drafting its requests for admission.[38]  *See* 8A Charles Alan Wright and Arthur R.

6   Miller, *Federal Practice and Procedure* § 2290, at 710, n.9 (1994) ("court[s] should consider [an

7   objection] a 'good reason' for failure to admit and hold that it falls within condition (4) of Rule

8   37(c)").  Furthermore, with reference to request 23, Cannata did not possess any of "HPT's source

9   code files" at the time he initially responded to these requests in June 2019, and HPT has produced

10   no evidence to the contrary.  With regard to request 24, which requested that Cannata admit that he

11   had "HPT's source code files" in his possession on or after October 21, 2016, Cannata acknowledged

12   in his first supplemental responses served on September 10, 2019 that he was unsure when such files

13   were deleted or returned to HPT and that those files may have remained in his possession after

14   October 21, 2016.

15           Requests for admissions 28-33 suffer from the same issues – vagueness in HPT's drafting.

16   These requests seek admissions relating to "communication protocol documents" and "firmware

17   documents."  These phrases are not easily identifiable and are simply too vague for Cannata to admit

18   to wholesale without understanding HPT's intent.  When provided with additional context for these

19   requests during his deposition, Cannata responded accordingly.  With respect to requests 29 and 32,

20   which requested that Cannata admit he possessed HPT's "communication protocol documents" and

---

[37] *See* ECF No. 112, pp. 74-75, ll. 17-4 (Cannata testified he was unsure whether the source code for the VCM Suite was publicly available); pp. 76-77, ll. 5-1 (Cannata testified the VCM Suite included source code obtained from third parties that was not proprietary to HPT); p. 77, ll. 21-22 (Cannata testified he was not involved in the development of the VCM Suite); p. 78, ll. 8-25 (Cannata testified he did not write the source code for the VCM Suite or other HPT files); p. 128, ll. 10-25 (Cannata testified that he did not know the function of the HPT file cMPVI.cs); p. 129, ll. 3-8 (Cannata testified he did not know the history of the development of the HPT file cMPVI.cs); p. 132, ll. 20-25; (Cannata testified that he was not involved in writing the HPT file frmTable.cs and did not know its function) pp. 133, ll. 6-25(Cannata testified that he did not know whether the HPT file frmTable.cs included code that belonged to third parties that was not proprietary to HPT); p. 192, ll. 13-18 (Cannata testified that he was unsure who developed HPT file CVehicle.cs and did not know its function).

[38] Again, had HPT timely produced the emails and text messages it received from Sykes-Bonnett in discovery in the Washington case, such documents would have provided substantial clarity to the basis for HPT's request for admissions and greatly increased the ability of Cannata's counsel to assist Cannata in responding to such requests.

1  "firmware documents", Cannata denies that he possessed such documents at the time of his initial

2  responses in June 2019.  With respect to requests 30 and 33, which requested that Cannata admit he

3  possessed such documents on or after October 21, 2016, Cannata acknowledged in his first

4  supplemental responses served on September 10, 2019 that he was unsure when such documents

5  were deleted or returned to HPT and that those documents may have remained in his possession after

6  October 21, 2016.  With respect to request 31, which requests that Cannata admit having given

7  "firmware documents" to Sykes-Bonnett, Cannata testified in his deposition that he did not provide

8  the MPVI firmware to Sykes-Bonnett.[39]  Cannata's responses to these requests were not in any way

9  improper or incompatible with Cannata's deposition testimony.

10      "Because requests for admission also clarify which issues are genuinely contested, where

11  issues in dispute are requested to be admitted, *a denial is a perfectly reasonable response*."  *White*

12  *v. Baca*, No. cv 13-3401, 2017 U.S. Dist. LEXIS 233409, *6 (C.D. Cal. July 26, 2017) (emphasis

13  supplied).  Here, the requests for admission were answer appropriately and to the best of Cannata's

14  ability given the vagueness of the requests.  Moreover, Cannata appropriately supplemented his

15  responses to these requests when additional information became available.  The Motion should be

16  denied.

17      **D.   Sanctions Under the Court's Inherent Power Are Similarly Improper.**

18      Although courts have the inherent power to sanction conduct, it should be used sparingly.

19  Moreover, "sanctions imposed under the district court's inherent authority require a bad faith

20  finding."  *MGA Entm't Inc. v. Nat'l Prods.*, No. CV 10-07083, 2012 U.S. Dist. LEXIS 131614, *7-

21  8 (C.D. Cal. Sept. 14, 2012).  "A party demonstrates bad faith by delaying or disrupting the litigation

22  or hampering enforcement of a court order."  *Id.*  Here, the Motion contains no allegations that a

23  court order was affected by any of the allegations relating to Cannata's discovery responses or

24  statements contained in the pleading.  Additionally, the litigation itself was not delayed for any

25  reason other than COVID-19 and Cannata's illness during this period.  The Motion contains no

26  evidence that the litigation was delayed or disrupted by failure to produce texts and emails because

27

28  ───────────────────
    [39] *See* ECF No. 112, pp. 32, ll. 9-16.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1    HPT received those communications in the Washington Case in or around May 2019.

2    Moreover, everything that HPT complains of in its Motion – the alleged failure to produce

3    text messages and emails, the alleged failure to provide proper responses to HPT's interrogatories,

4    requests for admission, and requests for production, and the alleged deficiencies in Cannata's

5    Answer – are easily explained. There is no evidence Cannata acted in bad faith in responding to

6    HPT's written discovery or its Complaint.

7    Cannata's responses and objections to HPT's requests for admission and the reasonableness

8    of the same have been addressed above.  Turning to the Motion's allegations relating to requests for

9    production 1, 2, 3, 8, 11, 16, 20-24, 29-42, Cannata was unable to produce any documents relating

10   to the same at the time he initially responded in June 2019.   What Cannata did have was produced;

11   in fact, Cannata produced more than 600 pages of email communications with Sykes-Bonnett and

12   others.  Moreover, Cannata's wife had previously produced an additional 125 pages of emails and

13   other documents in response to a subpoena issued in connection with the Washington Case.  Cannata

14   did not have access to or the ability to produce the emails and text messages HPT separately obtained

15   from Sykes-Bonnett in the Washingon case.  This Court already recognized that it would not require

16   Cannata to produce information or documents to which he had no access or control [ECF No. 80].

17   Thus, because Cannata was unable to produce the documents complained of, Cannata cannot be

18   considered to have acted in bad faith.  *See Lopez v. Flores*, No. 1:08-cv-01975, 2013 U.S. Dist.

19   LEXIS 76237, *23-24 (E.D. Cal. May 30, 2013) (denying a request for sanctions because, despite a

20   plaintiff's belief that other documents should have been in defendant's control, the fact that

21   defendant did not have the documents in his possession or control precluded a bad faith finding).

22   Finally, Cannata provided his iPhone, laptop, and desktop computer to HPT's forensic expert for

23   examination in September 2020 per this Court's order.   HPT and its expert failed to comply with

24   the protocol contained in the court order as they did not search for terms or provide Cannata's

25   counsel any chance to review the results; however, nothing has been produced which would suggest

26   that Cannata had possession of and intentionally failed to produce any communication or other

27   document sought by HPT.

28

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Looking to the denials in Cannata's answer as referenced in the Motion (¶¶ 2-4, 6-7, 36, 39, 41-42, 44, 51, 53-56, 66, 70-80), Cannata's denial of the same were entirely proper.  Specifically, the denials to ¶¶ 2-4 and 6-7 were proper because each of these paragraphs used the phrases "confidential" or "proprietary" or "intellectual property of HPT" as well as "competitor."  Cannata admitted that he provided information to another individual but did not believe at the time the answer was filed that the information was confidential, proprietary, or intellectual property owned by HPT and did not believe Sykes-Bonnet to be a competitor[40] and thus denied the same.  Cannata's denials of ¶¶ 44, 56, 66, 70, 75, 77, and 79 are appropriate for the same reason.  Cannata's denial of ¶ 80 is also appropriate because it speculates as to what HPT would have done, which is something Cannata cannot confirm or deny.  Cannata's denials of ¶¶ 36 and 39 were proper because the agreement in question executed was not with "Syked ECU Tuning, Inc." but rather with "Syked Tuning Software, LLC" as was acknowledged to HPT in Cannata's initial response to request for admission 5.  Cannata's denials of ¶¶ 41 and 42 were also proper because neither HPT nor Cannata has been able to identify the specific folders and files on the flash drive provided to Sykes-Bonnett.

Cannata's denial of ¶¶ 51, 53, 54, and 55 are all proper for several reasons: (1) Cannata did not consider Syked ECU to be a direct competitor of HPT in 2016 because Syked ECU worked almost exclusively on Dodge vehicles in 2016 while HPT focused almost exclusively on GM vehicles and provided few, if any, products for Dodge vehicles and (2) the phrases used in these paragraphs, such as "consulting for," "assisting," and "developing products", do not lend themselves to easily identifiable definitions and are vague as a result of HPT's drafting.  Cannata did not receive payment for anything related to Syked ECU; thus, consulting or developing were reasonably deniable terms.  Moreover, Cannata did admit in response to ¶ 55 (as well as elsewhere) that he did not disclose to HPT until August 2018 that he provided certain information "related to HPT to Sykes-Bonnet in early 2016."  *See* ECF No. 45.  The remaining paragraphs referenced in the Motion are easily explained.  Cannata's denial of ¶ 71 was proper because Cannata has not engaged in these

---

[40] *See* ECF No. 112, pp.120, ll. 6-10 (Cannata testified that he did not view Syked ECU as a competitor to HPT because Syked ECU serviced Dodge vehicles and HPT offered "almost nothing" related to Dodge vehicles); p. 197, ll 7-23 (Cannata testified Syked ECU was not a competitor); p. 198, ll 2-7.

SHEA LARSEN

1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1    types of acts.  Cannata's denial of ¶ 72 was proper because Cannata did not participate in selling

2    licenses.  Cannata's denial of ¶ 73 was proper because Cannata did not sell or attempt to sell cloned

3    HPT interfaces with hacked credits.  Cannata's denial of ¶ 74 was proper because he did not

4    manipulate anything to "unkill" interfaces.  Cannata's denial of ¶ 75 was proper because it is unclear

5    what HPT's intellectual property rights are.  Finally, Cannata's denial of ¶ 76 is proper because

6    Cannata did not generate fraudulent licenses.

7         The only remaining issue from the Motion is whether Cannata acted in bad faith regarding

8    his interrogatory responses and objections.  The Motion takes issue with Cannata's responses to

9    interrogatories 2-4 wherein Cannata initially stated (1) that he had in his possession an administrative

10   version of HPT's VCM Suite software and (2) that to the best of his knowledge and recollection, all

11   confidential and proprietary information and documents of HPT were deleted or returned to HPT

12   upon the sale of his membership interest, which Cannata did not view as being complete until he

13   received the final payment for such sale in January 2017.  Moreover, in September 2020, Cannata

14   supplemented his responses to these interrogatories to clarify that he was unsure when certain items

15   were deleted or returned to HPT and to acknowledge many of HPT's confidential and proprietary

16   documents remained in his possession or control after October 21, 2016.[41]  With respect to

17   interrogatory 5, HPT takes issue with the fact that Cannata did not include the

18   somethingnew1892@yahoo.com email address in his initial response.  That omission, however, is

19   explained by the fact that it accounted for roughly a dozen of the hundreds of emails Cannata

20   exchanged with Sykes-Bonnett after January 1, 2016, and Cannata did not recall having used that

21   email account to communicate with Sykes-Bonnett at the time of his initial responses to HPT's

22   interrogatories.[42]  When it was brought to his attention that he had used that email address to

23   communication with Sykes-Bonnett, Cannata promptly supplemented his response to state as much

24   on September 11, 2019.[43]  Cannata made good faith efforts to respond to HPT's discovery responses

25

26   [41] HPT's complaints concerning Cannata's responses to interrogatories 2-4 were previously raised and adjudicated by the Court in connection with HPT's motion to compel discovery.  *See* ECF No. 80.

27   [42] Cannata Declaration, ¶¶ 22-24.

28   [43] *See* Exhibit 3 attached hereto, p. 4.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1  appropriately supplemented his discovery responses several times as new information became

2  available.[44] HPT cannot say the same with respect to its responses to Cannata's discovery requests.

3       Lastly, HPT's Motion should be denied because of HPT's unreasonable delay in bringing

4  the same. "Unreasonable delay may render [a sanctions] motion untimely." *MGA Entm't Inc.*, 2012

5  U.S. Dist. LEXIS 131614 at *10-11. "Courts have also found that unreasonable delay in filing a

6  motion for sanctions under the court's inherent powers may render the request untimely." *Id.*

7  (collecting cases for the same). As noted herein, HPT obtained the emails and text messages it

8  complains Cannata failed to disclose through discovery in the Washington Case in or around May

9  2019. HPT has had Cannata's initial discovery responses since June 2019. HPT waited two years

10  to address this issue. Additionally, HPT did not raise these issues to Cannata's counsel until May 5,

11  2021 and, after review, Cannata's counsel immediately supplemented Cannata's discovery

12  responses. The Motion cannot be considered timely and should be denied.

13  **E.    The Extreme Sanction of Dismissal or Striking of an Answer Is Not Warranted.**

14       Not only should the Motion be denied for the reasons addressed above, but the Motion should

15  also be denied based on the extreme result it seeks – the striking of Cannata's Answer [ECF No. 45]

16  and entry of default against him. This Court has previously acknowledged the rare and extreme

17  nature of a sanction in the form of striking a party's answer. *See Smith*, 2013 U.S. Dist. LEXIS at

18  *23-24 ("Dismissal of a case or the striking of an answer is – to put it mildly – a harsh penalty for

19  violations of discovery orders, and it is one that is very sparingly used."). The Ninth Circuit has

20  established five guidelines to consider when determining whether to refuse to strike an answer:

21      Because the sanction of dismissal is such a harsh penalty, the district court must
22      weigh five factors before imposing dismissal: (1) the public's interest in expeditious
    resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of
    prejudice to the party seeking sanctions; (4) the public policy favoring disposition
23      of cases on their merits; and (5) the availability of less drastic sanctions.

24  *Id.* at *10-11. "[T]he key factors are prejudice and the availability of lesser sanctions." *Id.* (finding

25  that despite certain documents not being produced under FRCP 26 and despite arguments relating to

26

27  [44] Additionally, although the Motion mentions FRCP 26(g) but contains no analysis regarding the same, Rule 26(g)
does not apply here because none of the disclosures or discovery responses were provided for any improper purpose
28  or to cause delay; rather, these responses were provided based on the information and documents available at the time.

the failure to disclose information through discovery responses, the harsh sanction of striking an answer was not warranted).  Here, the Motion contains no such analysis of any of these factors, and as such, HPT cannot be considered to have carried its burden.

Looking to the most important factors first – the risk of prejudice to the party seeking sanctions and availability of less drastic sanctions – both of these factors weigh against the striking of Cannata's Answer.  First, as is shown above, HPT cannot establish that it suffered any prejudice whatsoever based on Cannata's inability to provide text messages and emails because HPT obtained those documents through discovery in the Washington Case before receiving Cannata's initial discovery responses.  Moreover, the Motion acknowledges the existence of less drastic sanctions and, as such, the Motion concedes this factor.  Thus, the two most important factors weigh against striking Cannata's Answer.

Additionally, public policy favoring the disposition of cases on their merits weighs against striking Cannata's Answer because to do so would completely undercut this policy.  Simply striking his answer would only result in this case not being heard on its merits.  The first factor – the public's interest in expeditious resolution of litigation – is either a nonfactor here or weighs in favor of refusing to grant the Motion.  This case was filed in November 2018 and has been pending for less than three years, despite Cannata filing a motion to dismiss that was not decided until almost ten months after the case was filed and despite being a complex case involving intellectual property and trade secret issues.  Moreover, Cannata's health concerns and difficulties arising from the ongoing COVID-19 pandemic precluded this case from progressing any faster.  All of the above factors weigh in favor of denying the Motion's request for sanctions in the form of striking Cannata's Answer.  Accordingly, the Motion, which fails to undertake any analysis of these factors at all, must be denied.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1

## IV.     CONCLUSION

2          Based on the foregoing, Cannata respectfully requests that the Court deny HPT's Motion in

3   its entirety.

4          DATED this 15th day of June 2021.

5                                                          **SHEA LARSEN**

6                                                          /s/ *Bart K. Larsen, Esq.*
                                                           Bart K. Larsen, Esq.
7                                                          Nevada Bar No. 8538
                                                           Kyle M. Wyant, Esq.
8                                                          Nevada Bar No. 14652
                                                           1731 Village Center Circle, Suite 150
9                                                          Las Vegas, Nevada 89134
                                                           *Attorneys for Kenneth Cannata*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1

### CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2021, I electronically transmitted the foregoing **DEFENDANT KENNETH CANNATA'S OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS** to the Office of the Clerk of the United States District Court, District of Nevada, using the CM/ECF System, for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants listed for this matter.

By: /s/ *Bart K. Larsen, Esq.*

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28