MARKS & KLEIN
Andrew P. Bleiman, Esq.
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062
Telephone: (312) 206-5162
E-mail: andrew@marksklein.com

FLETCHER & LEE
Elizabeth Fletcher, Esq.
Nevada Bar No. 10082
Cecilia Lee, Esq.
Nevada Bar No. 3344
448 Ridge Street
Reno, Nevada 89501
Telephone:  775.324.1011
Email: efletcher@fletcherlawgroup.com
Email: clee@fletcherlawgroup.com

Attorneys for Plaintiff HP Tuners, LLC

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company,<br><br>                    Plaintiff,<br><br>     vs.<br><br>KENNETH CANNATA,<br><br>                    Defendant. | Case No. 3:18-cv-00527-LRH-WGC<br><br>**PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR SANCTIONS**<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiff HP TUNERS, LLC, a Nevada limited liability company ("HPT" or "Plaintiff"), for its Reply Brief in Further Support of Motion for Sanctions pursuant to Federal Rules of Civil Procedure 11(c), 26(g), and 37, and 28 U.S.C. §1927 (Dkt. 110), against Defendant KENNETH CANNATA ("Defendant" or "Cannata") and in support thereof, states as follows:

1

# INTRODUCTION

Despite Defendant's efforts, no amount of weaving, dodging, deflection or misdirection can avoid the simple fact presented by HPT herein – both prior to and since the onset of this litigation, Defendant engaged in a calculated and intentional pattern of deceit, misrepresentation and fraud concerning his misconduct and misappropriation of HPT's trade secrets and confidential and proprietary intellectual property.  Cannata denied such misconduct in his answer, discovery and responses to requests for admission but then, finally, only after the depth of his deception was exposed, did Cannata begin to come clean.  In particular, at his deposition on March 11, 2021, Cannata admitted to the following misconduct:

    1)    Cannata shared and disseminated HPT's source code, key generator and other confidential and proprietary trade secret information with third parties both while he was an owner of HPT and after HPT purchased his interests in the business for $6.8M.  (Deposition of Kenneth Cannata, Dkt. 112 (filed under seal) ("Cannata Tr."), at 29-31, 87-88, 108, 137-38, 170, 174, 177-79, 181, 201-03, 226, 246-47, 249-50, 251-58, 308-10, 370).

    2)    During negotiations with HPT concerning the purchase of his interests, Cannata concealed the fact that – while he was an owner of HPT – he shared and disseminated HPT's source code, key generator and other confidential and proprietary trade secret information with third parties.  (Cannata Tr., at 29-31, 87, 108, 113-14, 121, 130-31, 134-35, 149, 159-60, 166-68, 174, 191-92, 212-13, 235-36, 249-50, 252).

    3)    Cannata worked with, assisted, provided services for and consulted with third parties in express violation of the restrictive covenants set forth in the Membership Interest Purchase Agreement ("MIPA").  (Cannata Tr., at 167, 219, 226-30, 232-38, 240-243, 245-47, 249, 251-59, 261-62, 264, 267-69, 284, 295-97, 308-10).

    4)    Cannata retained confidential and proprietary intellectual property of HPT (including source code files, the key generator, an MPVI administrative interface and other confidential and proprietary intellectual property of HPT) after execution of the MIPA in express violation of the provision of the MIPA which obligated Cannata to return all such items to HPT.

(Cannata Tr., at 86-88, 245-58, 308-10, 386, 437).

5) Cannata shared and disseminated HPT's source code, key generator and other confidential and proprietary documents, information and materials of HPT after execution of the MIPA in express violation of the confidentiality provisions set forth therein. (Cannata Tr., at 29-31, 86-88, 174, 245-58, 308-10).

Defendant's pattern of fraud, misrepresentation and deception in connection with filed and served pleadings, discovery materials and requests for admission in this case runs afoul of the Federal Rules of Civil Procedure and flies in the face of the rules which are designed to promote disclosure, transparency, candor and the efficient administration of justice. As set forth in his Opposition, Defendant would have this Court believe that he was confused, did not understand common industry language or otherwise misunderstood or did not comprehend the allegations which were being made against him. However, Defendant did not suddenly remember or recall his misdeeds at deposition when pressed on these issues almost three years after this litigation commenced. Rather, at all times, he knew exactly what he did but he believed it would not be discovered. He filed a misleading and deceptive answer to Complaint, and then submitted false responses to discovery and requests for admission while withholding substantially incriminating evidence in discovery. Specifically, Defendant's emails and text messages with Kevin Sykes-Bonnett unequivocally establish his liability on the claims asserted. It is telling that, to date, Defendant himself has still never produced these communications.

Defendant's protestations of innocence, confusion, misunderstanding or mistake are manufactured and baseless. Similarly, his claim of "no harm, no foul" and that his egregious misconduct can be remedied by further amended pleadings and discovery responses are unfounded and miss the mark. The denial of sanctions here would set a dangerous precedent and encourage litigants to flout the rules and engage in a pattern of deception if that party believed it is possible to benefit from their misconduct not being discovered, or that later discovery would not result in any repercussions. Likewise, a mere slap on the wrist would embolden others to deceptively mislead if they risked little or no punishment and could simply amend pleadings and discovery

once the fraud and deception is exposed.

As detailed in HPT's motion, Cannata repeatedly lied and concealed his misconduct because he thought it would never be discovered by HPT. Through no help by him, HPT nevertheless found out about it. Only when confronted with the inescapable fact that his opponent independently learned of the matters he had hid, did Cannata's admissions flow. Cannata's tardy, eleventh hour confessional and attempt to remedy his fraud by filing amended pleadings and discovery responses is insufficient and ignores the blatant disregard for the Federal Rules of Civil Procedure and the enormous amount of work, money and independent investigation that HPT should never have had to undertake had Defendant not lied from the outset.

For this reason, and to deter repetition of his conduct and of those similarly situated, the full extent of sanctions available under the Federal Rules of Civil Procedure should be assessed against Defendant Cannata. These available sanctions include, but are not limited to, entry of a default judgment against Defendant Cannata, payment of a penalty to the Court, and payment to the movant HPT of reasonable attorney's fees and expenses resulting from his violations. *See* Fed. R. Civ. P. 11(c)(4), Fed. R. Civ. P. 26(g)(3), Fed R. Civ. P. 37(b)-(c).

**RESPONSE TO DEFENDANT'S STATEMENT OF ALLEGED RELEVANT FACTS**

Defendant included a purported "Statement of Relevant Facts" in response to the Motion for Sanctions. However, the alleged facts (primarily based on a self-serving Declaration of Kenneth Cannata) are wholly irrelevant to the pending motion and fail to serve as justification for the deception and fraud engaged in by Defendant. Here, the conduct of HPT (as inaccurately alleged by Defendant and unsupported by the record) is not at issue. To the contrary, Cannata's misconduct is. Simply put, at the time the Complaint was filed in this matter and at all times thereafter, it is indisputable Cannata knew that: (1) he shared trade secrets and confidential and proprietary information (including source code files, communications protocol documents and the key generator) with a third party, (2) he was providing services for and assisting another person and company in a substantially similar business to the business of HPT, and (3) he had concealed that information from HPT. His suggestions otherwise in response to the Motion for Sanctions are

simply preposterous and unwittingly reveal additional evidence of his deceptive and fraudulent misconduct.

Similarly, Defendant's claims concerning good faith participation in discovery are substantially overstated. While Defendant did produce some limited communications demonstrating his relationship and work with Syked ECU Tuning, Inc. after the buyout in violation of the express restrictions set forth in the MIPA, substantially all of his highly incriminating emails and text messages with Mr. Sykes-Bonnett are conspicuously absent from his production. These communications, which Defendant concealed, demonstrate his misappropriation and dissemination of HPT's trade secrets and other confidential and proprietary intellectual property. Even to this day, Defendant has still not produced any of these emails or texts, claiming that he no longer has possession of them (which claims are suspect given Defendant's credibility as demonstrated by his pattern of deceptive conduct and misrepresentations).

Finally, Defendant's allegations concerning HPT's failure to cooperate with discovery are not only unsupported, but entirely irrelevant in the context of this Motion. For example, Defendant contends that HPT failed to produce documents produced by Kevin Sykes-Bonnett, John Martinson, Syked ECU Tuning, Inc. and Syked Performance Engineering, LLC in the litigation pending in the United States District Court for the Western District of Washington. However, a Protective Order governing the confidentiality of the referenced documents and communications was entered in the United States District Court for the Western District of Washington on May 21, 2018; thus, Plaintiff HPT was ***prohibited from producing the documents and communications*** produced by Kevin Sykes-Bonnett, John Martinson, Syked ECU Tuning, Inc. and Syked Performance Engineering, LLC. Moreover, Defendant's contention is utterly ridiculous because: (a) as the text messages and emails produced by Kevin Sykes-Bonnett, John Martinson, Syked ECU Tuning, Inc. and Syked Performance Engineering, LLC demonstrate, Defendant was working with, assisting and communicating with Kevin Sykes-Bonnett, John Martinson, Syked ECU Tuning, Inc. and Syked Performance Engineering, LLC throughout these proceedings and in continuous communication with them at all times; and (b) there was nothing preventing or

prohibiting Defendant from seeking the documents and communications pursuant to a subpoena. HPT issued subpoenas to Kevin Sykes-Bonnett, John Martinson, Syked ECU Tuning, Inc. and Syked Performance Engineering, LLC for said production and had been seeking compliance with the same since that time. (*See* Dkts. 55, 56, 57 and 58). Defendant's attempt to divert the Court's focus from his own misconduct by casting unfounded aspersions relating to HPT's conduct in discovery should be ignored.

## ARGUMENT

### A. 28 U.S.C. §1927 APPLIES AND SANCTIONS SHOULD BE ENTERED AGAINST DEFENDANT'S COUNSEL

Contrary to Defendant's claim, this motion does seek sanctions against Defendant and/or his counsel to the extent that counsel engaged in the misconduct by failing to properly prepare, investigate and file pleadings and discovery materials and in light of the fact that such misleading and deceptive pleadings, responses to requests for admission and discovery materials were prepared, filed and served herein. As Defendant concedes, the request for sanctions under 28 U.S.C. §1927, which relates to sanctions against counsel, was clearly and unequivocally articulated in Plaintiff's motion.

Here, Defendant and counsel should not have filed pleadings, responded to requests for admission or provided discovery responses denying misappropriation of HPT's trade secrets, particularly in light of Defendant's sworn Declaration dated August 20, 2018, which was filed in the the Western District of Washington more than two months before this action was filed. In that Declaration, Defendant admitted to providing the flash drive containing the key generator to Mr. Sykes-Bonnett. Likewise, at all times, Defendant knew of the nature and extent of his work with, services for and assistance to a competitive business. Yet, Defendant repeatedly prepared and asserted denials of any misconduct in filed and served documents.

Based on Defendant's deposition testimony, some of the most egregious examples of denied allegations which were materially false, deceptive and/or misleading are the following:

- Paragraph 39 – Defendant denied that he concealed and never disclosed to HPT

that he had executed the Syked NDA or that he was exploring a business opportunity with Syked ECU Tuning, Inc. at any time. (*Contrast* Dkt. 1, at ¶39 *with* Dkt. 45, at ¶39).

- Paragraph 40 – Aside from the key generator, Defendant denied that sometime in early 2016, without HPT's authorization, Defendant provided Kevin Sykes-Bonnett, one of the owners of Syked ECU Tuning, Inc., and possibly others, with a Flash Drive containing HPT's confidential and proprietary information. (*Contrast* Dkt. 1, at ¶40 *with* Dkt. 45, at ¶40).

- Paragraph 41 – Defendant denied that he shared source code files, descriptive documents and folders with third parties. (*Contrast* Dkt. 1, at ¶41 *with* Dkt. 45, at ¶41).

- Paragraph 42 – Defendant denied that he shared folders and files from HPT VCM Suite software with third parties. (*Contrast* Dkt. 1, at ¶42 *with* Dkt. 45, at ¶42).

- Paragraph 44 – Defendant denied that the key generator algorithm, application and source code is confidential and proprietary information of HPT and not owned by Defendant. (*Contrast* Dkt. 1, at ¶44 *with* Dkt. 45, at ¶44).

- Paragraph 51 – Defendant denied that prior to the execution of the Purchase Agreement, Defendant also worked with and provided services for Syked ECU Tuning, Inc. while he was an owner and member of HPT. (*Contrast* Dkt. 1, at ¶51 *with* Dkt. 45, at ¶51).

- Paragraph 53 – Defendant denied that at no time during the discussions and negotiations concerning the purchase and sale of Defendant's membership interest in HPT did Defendant advise, notify, communicate or disclose to HPT that Defendant was working with, consulting for, assisting, developing products or software with or otherwise communicating with any competitors of HPT for the purpose of competing with the business of HPT. (*Contrast* Dkt. 1, at ¶53 *with* Dkt. 45, at ¶53).

- Paragraph 54 – Defendant denied that he concealed and failed to disclose that he was working with, consulting for, assisting, developing products or software with or otherwise communicating with any competitors of HPT for the purpose of competing with the business of HPT. (*Contrast* Dkt. 1, at ¶54 *with* Dkt. 45, at ¶54).

- Paragraph 93 – Defendant denied that he concealed and never disclosed to HPT that

he was working with, consulting for, assisting, developing products or software with or otherwise communicating with any competitors of HPT at any time prior to October 20, 2016. (*Contrast* Dkt. 1, at ¶93 *with* Dkt. 45, at ¶93).

- Paragraph 97 – Defendant denied that he concealed the disclosure of all of this information [*i.e.*, that he had shared and disseminated HPT's confidential and proprietary intellectual property] from HPT in connection with the negotiations and discussion concerning the acquisition of Defendant's membership interest in HPT in order to elicit a higher purchase for his interest. (*Contrast* Dkt. 1, at ¶97 *with* Dkt. 45, at ¶97).

- Paragraphs 117 and 140 – Aside from the key generator, Defendant denied that, without authorization by HPT, Defendant provided third parties with copies of and access to the confidential and proprietary intellectual property, including its confidential and proprietary source code and key generator program and tool. (*Contrast* Dkt. 1, at ¶¶117, 140 *with* Dkt. 45, at ¶¶117, 140).

- Paragraphs 145 and 157 – Defendant denied that he misappropriated HPT's trade secrets by providing HPT's confidential and proprietary intellectual property to third parties without authorization. (*Contrast* Dkt. 1, at ¶¶145, 157 *with* Dkt. 45, at ¶¶145, 157).

- Paragraph 193 – Defendant denied that he failed and refused to return property belonging to HPT, including HPT's confidential and proprietary intellectual property, documents and information. (*Contrast* Dkt. 1, at ¶193 *with* Dkt. 45, at ¶193).

Here, sanctions are available under 28 U.S.C. §1927 and should be imposed against Defendant and/or counsel. Counsel should not have permitted pleadings to be filed denying misappropriation and dissemination of HPT's intellectual property where Defendant had already admitted to disseminating the key generator to Mr. Sykes-Bonnett in a filed, sworn Declaration several months before this action was even filed. Such conduct could and should have been discovered through reasonable inquiry, diligence and investigation. Instead, believing that the information would never be discovered, Defendant and counsel denied material allegations which should have been admitted and otherwise filed a pleading which was materially false, deceptive

and/or misleading.

By virtue of this misconduct, counsel has multiplied the proceedings in a vexatious and unreasonable manner, and has caused a substantial increase in the cost of proceedings. *See Oracle United States v. Rimini St.*, 2021 U.S. Dist. LEXIS 62496, at *68-69 (D. Nev. March 31, 2021). For these reasons, sanctions should be entered against counsel for Defendant pursuant to 28 U.S.C. §1927.

**B.     SANCTIONS ARE APPROPRIATE UNDER FRCP 11**

Similarly, Defendant's deceptive, false and/or misleading answer as detailed above supports the imposition of sanctions under FRCP 11 because Defendant's denials asserted in the answer were neither reasonable nor appropriate. *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1130 (9th Cir. 2002); *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.3d 1531, 1537 (9th Cir. 1986); *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 522, 549-50 (1991); *Oracle United States*, 2021 U.S. Dist. LEXIS at *67-68.

Here, Defendant's answer was improper and needlessly increased the cost of litigation. Any reasonable factual investigation and adequate legal search should have easily demonstrated that the denials set forth in the answer were both frivolous and unwarranted in violation of Fed R. Civ. P. 11(b). Consequently, the full extent of sanctions under Fed R. Civ. P. 11 are available and should be entered.

Further, Defendant's claims concerning HPT's alleged failure to adhere to Fed R. Civ. P. 11 are unfounded. On May 5, 2021, counsel for HPT provided a Rule 11 letter and copy of the Rule 11 motion (including all exhibits) to be filed to counsel for Defendant. A copy of the May 5, 2021 letter including the Motion for Sanctions and exhibits is attached hereto as **Exhibit A**. Following expiration of the 21-day safe harbor period, HPT filed the motion for sanctions on June 1, 2021. Defendant's offer to amend discovery responses and/or the answer fails to remedy the sanctionable misconduct herein. Likewise, the motion for sanctions is not premature in that the record already unequivocally establishes Defendant's egregious misconduct in connection with the pleadings filed in this case and and Rule 11 Motions for Sanctions can be filed at any time

during the proceedings. *See Matter of Yagman*, 796 F.2d 1165, 1182-1184 (9th Cir. 1986) (the timeliness of a Rule 11 motion depends upon the particular circumstances of the case and judicial discretion as to whether the purposes of Rule 11 will be served); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) (sanctions may be imposed during, and even after a case has been resolved).

### C.   SANCTIONS UNDER FRCP 37 ARE ALSO APPROPRIATE

Defendant's arguments concerning the inapplicability of Fed. R. Civ. P. 37 are similarly without merit. Here, Defendant's failure and refusal to produce documentation, information or witnesses was not substantially justified or harmless as Defendant contends. To the contrary, Defendant has failed and refused to produce highly relevant documents, information and discovery materials on the grounds that he allegedly did not possess such discovery materials.

Defendant further compounded the issue by fraudulently and deceptively providing false, dishonest and misleading responses to requests for admission. For example, in response to Requests for Admission, despite Defendant's later admissions at deposition, among other things, Defendant asserted the following false, misleading and deceptive responses:

- Request 13 – Defendant denied that he provided Kevin Sykes-Bonnett with technical and/or confidential information relating to HPT's MPVI. (Dkt. 110-1, at 6).

- Request 15 – Defendant denied that he possessed technical and/or confidential information relating to HPT's MPVI in his possession at any time on or after October 21, 2016. (Id. at 7).

- Request 22 – Defendant denied that he provided Kevin Sykes-Bonnett with one or more of HPT's source code files. (Id. at 9).

- Request 24 – Defendant denied that he had one or more of HPT's source code files in his possession at any time on or after October 21, 2016. (Id. at 10).

- Request 28 – Defendant denied that he provided Kevin Sykes-Bonnett with one or more of HPT's MPVI communication protocol documents. (Id. at 11).

- Request 31 – Defendant denied that he provided Kevin Sykes-Bonnett with one or

more of HPT's firmware documents.  (Id. at 12).

Federal Rule of Civil Procedure 37(c)(2) provides that where a party fails to admit something in response to a request for admission and the requesting party later proves the matter to be true, the requesting party may move for sanctions in the amount of "the reasonable expenses, including attorney's fees, incurred in making that proof." See Fed. R. Civ. P. 37(c)(2)(A)-(D). Defendant's denials were false, fraudulent and deceptive and Defendant should be sanctioned pursuant to Rule 37.

### D.  DEFENDANT SHOULD BE SANCTIONED UNDER THE COURT'S INHERENT POWER TO SANCTION

Defendant's pattern of misconduct warrants the imposition of sanctions pursuant to this Court's inherent powers.  As detailed in the Motion for Sanctions and herein, Defendant engaged in a fraud on the Court and Plaintiff by virtue of his misleading, false and deceptive answers, responses to discovery and responses to requests for admission until he finally admitted to the misconduct at deposition.  HPT has clearly and convincingly demonstrated that Defendant set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.  *Huntley v. City of Carlin*, 2014 U.S. Dist. LEXIS 113573, at *5-6 (D. Nev. August 15, 2014); *see also Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989).

In sum, Defendant engaged in willful and deliberately deceptive practices which are not peripheral to the case, but rather go to core material issues.  His efforts have been intended to unfairly hamper the presentation of Plaintiff HPT's claims.  In several instances, Cannata repeatedly and continuously lied about and concealed (but ultimately admitted to) his own communications.  He did so knowingly, and in bad faith, in the hope that this evidence may never come to light, and he could avoid accountability for his bad acts.  Failure to impose sanctions would incentivize litigants to engage in similar misconduct and would establish a dangerous precedent.  Accordingly, Defendant should be subject to terminating damages and/or such other

sanctions as this Court deems necessary and appropriate.

## CONCLUSION

In consideration of the foregoing, this Court should GRANT HP Tuners' Motion for Sanctions.

WHEREFORE, Plaintiff HP TUNERS LLC respectfully prays for the imposition of sanctions against Defendant, KENNETH CANNATA, as follows:

(a) Entry of default judgment against Defendant, Kenneth Cannata.

(b) An order directing payment to Plaintiff of part or all of the reasonable attorney's fees and other expenses directly resulting from Defendant's violation, pursuant to Federal Rule of Civil Procedure 11(c), based on Defendant's false pleadings;

(c) An order to satisfy the excess costs, expenses, and attorneys' fees reasonably incurred by Plaintiff as a result of Defendant's conduct, pursuant to 28 U.S.C. §1927;

(d) An order pursuant to Federal Rule of Civil Procedure 37(c)(1) requiring Defendant's payment of Plaintiff's reasonable expenses, including attorney's fees and other appropriate sanctions, including any of the orders listed in Federal Rule of Civil Procedure 37(b)(2)(A)(i)-(vi), caused by Defendant's failure to make or supplement required disclosures of information;

(e) An order pursuant to Federal Rule of Civil Procedure 37(c)(2) requiring Defendant's payment of Plaintiff's reasonable expenses, including attorney's fees, incurred in making the proof of truth for what Defendant previously denied or failed to admit in response to Plaintiff's request for admission; and,

///

///

///

(f)     Such other and further relief as this Court deems necessary and appropriate.

DATED this 22nd day of June, 2021.

          MARKS & KLEIN

          /s/ Andrew P. Bleiman, Esq.
          ANDREW P. BLEIMAN, ESQ.

          FLETCHER & LEE

          /s/ Elizabeth Fletcher, Esq.
          ELIZABETH FLETCHER, ESQ.
          CECILIA LEE, ESQ.

          Attorneys for Plaintiff HP Tuners, LLC

**INDEX OF EXHIBITS**

| Exhibit | Description | Page Count |
|---|---|---|
| A | Counsel's May 5, 2021 Letter including the Motion for Sanctions and exhibits | 102 pages |

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b) and Local Rule IC 4-1, I certify under penalty of perjury that I am an employee of Fletcher & Lee, 448 Ridge Street, Reno, Nevada 89501, and that on June 22, 2021, I served the **PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR SANCTIONS** via the Court's Notice of Electronic Filing to all those persons registered with the United States District Court to receive service electronically for the above-captioned matter.

DATED this 22nd day of June, 2021.

/s/ Elizabeth Dendary, CP
ELIZABETH DENDARY, CP
Certified Paralegal