1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

HP TUNERS, LLC,

                              Plaintiff,

    v.

KENNETH CANNATA,

                            Defendant.

Case No. 3:18-cv-00527-LRH-WGC

ORDER

    Before the Court are competing motions for partial summary judgment. The first was filed by Plaintiff HP Tuners, LLC ("HPT") on June 30, 2021. ECF No. 119. The second was filed by Defendant Kenneth Cannata ("Cannata") also on June 30, 2021. ECF No. 124 (128-s).[1] The parties responded and replied to each motion. In addition, HPT filed a motion to strike (ECF No. 142) aspects of Cannata's motion for partial summary judgment. Cannata filed a response (ECF No. 147), to which HPT replied (ECF No. 148). For the reasons articulated in this Order, the Court now grants in part and denies in part the parties' motions.

**I.    BACKGROUND**

    HPT is a Nevada limited liability company founded by Keith Prociuk ("Prociuk"), Chris Piastri ("Piastri"), and Cannata on December 31, 2003, with its principal place of business in

---

[1] Cannata filed portions of his briefing and attached exhibits under seal. Due to the nature of the sealed material, the Court grants the parties' requests to seal much of the information contained within the briefing (ECF Nos. 111, 127, 145, 152). While the Court would prefer to keep all the sealed information confidential, some of it is necessary to resolve the pending motions. The Court will therefore include some information unredacted in this Order where appropriate. The Court recognizes that the parties have privacy interests in the confidential information, but the public has even greater interest in the reasoning behind the Court's Order today. The Court will refer to the sealed pleadings with an "-s" designation and, for clarity, will cite to the sealed document for certain citations.

Buffalo Grove, Illinois. ECF No. 1 at 4. On or about March 25, 2004, HPT adopted a written operating agreement (the "Operating Agreement"), which was signed by all three founding members. Based on the Operating Agreement, each member had one-third ownership interest in HPT signed on March 25, 2004. *Id.* The Operating Agreement further stated that it is governed by Nevada law. ECF No. 1-1 at 2. Additionally, in March 2008, Cannata, Prociuk, and Piastri entered into a Buy Sell Agreement (the "Buy Sell Agreement") that provided, among other things, ways to calculate the purchase price of a member's interest in HPT as well as actions that required unanimous member approval. ECF No. 1-2.

As far as its business, HPT describes itself as a "niche" company that provides "cost effective automotive tuning and data acquisition solutions" for both private car enthusiasts and professional shops. *Id.* HPT designs and manufactures computer hardware and software for tuning and calibrating engines and transmissions in automobiles, trucks, ATVs, snowmobiles, and other vehicles. *Id.* A "core function" of the business is to sell interfaces, such as the Multi Point Vehicle Inspection ("MPVI")[2], which connect to the onboard computer of a vehicle and allow for individuals to use the HPT software and tune their vehicle. *Id.* HPT also sells "credits," which HPT describes as the license mechanism that customers use to tune their vehicles. *Id.* The sale and distribution of credits via "application keys," is a fundamental component of HPT's business. *Id.* at 9. The application keys are generated by the "key generator," which HPT describes as, "the single most valuable piece of intellectual property that [it] possesses." *Id.* HPT safeguards its confidential and proprietary information through the usage of computer passwords, hard drive encryption, firewalls, and rules preventing company employees from copying or transferring any of the information. *Id.* at 6.

In 2014, Cannata became aware of an individual named Kevin Sykes-Bonnett ("Sykes-Bonnett"), who is a principal of Syked ECU Tuning, LLC ("Syked")—a competitor of HPT. ECF No. 128-s at 6. Sykes-Bonnett had information, including software and code relating to Chrysler, Jeep, and Dodge vehicles that were not supported by HPT's software at the time. *Id.* In early 2015,

---

[2] The MPVI is a comprehensive assessment of, among other things, tire wear, remaining engine oil life, brakes, wiper blades, glass condition, battery condition, and fluid levels.

Cannata reached out to Sykes-Bonnett to discuss purchasing this information from Sykes-Bonnett to be used by HPT in expanding its supported vehicle lineup. *Id.* Cannata delivered a $5,000 check to Sykes-Bonnett in March 2015 and received a copy of the technical information that HPT sought. *Id.* at 7.

By 2015, disagreements had arisen between Cannata and the other members of HPT. During a July 2015 management meeting, Prociuk and Piastri requested that Cannata agree to amend the Buy Sell Agreement to increase the threshold for transactions requiring unanimous member approval from $100,000 to $200,000 and to exempt transactions relating to hiring and compensating employees from such threshold. ECF No. 128-s at 7–8. Around July 20, 2015, each member signed an amendment to the Buy Sell Agreement to that effect. *Id.* In Cannata's mind, this was part of a unilateral plot to terminate him without cause. *Id.* In January 2016, Prociuk and Piastri adopted a written consent as members of HPT through which Cannata's role in the management and control of HPT significantly decreased. *Id.*

Afterwards, in or around February 2016, Prociuk and Piastri initiated discussions with Cannata about buying him out of his membership interest in HPT. ECF No. 112 at 25, 31, 108. After months of negotiations, Prociuk and Piastri agreed to purchase Cannata's stake in the company on October 20, 2016. ECF No. 1-2; ECF No. 112 at 191–205, 213–219. Pursuant to the Membership Interest Purchase Agreement (the "Purchase Agreement"), HPT paid Cannata $6.8 million for his stake in the company, and in return, Cannata agreed to several restrictive covenants. ECF No. 1-2. These covenants included returning all of HPT's proprietary and confidential information to HPT and destroying any related information he had in his possession, a prohibition on disclosing any confidential information to any third parties, and a non-compete clause. *Id.* at 11–13.

While negotiating his exit from HPT, on March 11, 2016, Cannata entered into a non-disclosure agreement (the "NDA") with Syked. ECF No. 1 at 7; ECF No. 125 at 9. After entering into the NDA, Cannata emailed Syked certain source code files related to HPT's VCM Suite, including, among other things, an administrative version of VCM Suite 2.23, and a USB thumb drive that included a copy of HPT's key generator. ECF No. 128-s at 10. Subsequent to the sale of

3

Cannata's interest in HPT, Cannata's wife obtained an ownership interest in Syked in January 2017. ECF No. 112 at 237, 241-42, 266, 284, 317-19, 334-36, 381-82.

HPT first learned of Cannata's alleged misconduct in August 2018 and filed this lawsuit thereafter, alleging several causes of actions: (1) breach of fiduciary duty; (2) fraud; (3) violation of the Computer Fraud and Abuse Act (18 U.S.C. §1030); (4) violation of the Defend Trade Secrets Act ("DTSA") (18 U.S.C. §1836); (5) violation of the Copyright Act (17 U.S.C. §1201(A)(1)(A)); (6) a violation of the Nevada Uniform Trade Secrets Act; (7) a violation of the Illinois Trade Secrets Act; (8) unfair competition under the Nevada Deceptive Trade Practices Act; (9) unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act; (10) common law breach of contract; (11) tortious interference with prospective contractual or economic relations, and (12) conversion. According to HPT, if it had learned or been advised that Cannata had shared HPT's confidential and proprietary information, Cannata would have been terminated for cause pursuant to the Buy Sell Agreement and not have paid Cannata more than his one-third interest in the book value of HPT. ECF No. 120 at 5. HPT, relying on the report of its expert, John R. Bone ("Bone"), presents to the Court its calculations for damages for Cannata's alleged misconduct. ECF No. 130-s at 80–167.

## II.    LEGAL STANDARD

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the

moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)); *see also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient" to establish a genuine dispute; "there must be evidence on which the jury could reasonably find for the [party]." *Id.* at 252.[3]

## III.   DISCUSSION

### A. HPT's motion to strike paragraphs of Cannata's "Statement of Relevant Facts/Procedural Background" contained within his motion for partial summary judgment is granted in part and denied in part.

Before reaching the merits of the parties' motions for summary judgment, the Court will first address HPT's motion to strike paragraphs contained within Cannata's motion for partial summary judgment. In its motion, HPT asks the Court to exclude multiple paragraphs of Cannata's

---

[3] The parties spend great lengths disputing the applicable legal standard for Cannata's motion for partial summary judgment because he does not bear the burden of persuasion at trial. *Compare* ECF No. 143 at 6 ("…Cannata's Motion falls considerably short of his requisite burden of demonstrating 'the absence of any issue of material fact' warranting summary disposition in his favor.") *with* ECF No. 150 at 7 ("Cannata's Motion met his burden by pointing out the lack of evidence to support the necessary elements of HPT's claims, including duty, damages, and intent among other."). Despite HPT's arguments to the contrary, Cannata has identified the correct legal standard and the Court will conduct its analysis accordingly. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000) ("A moving party without the ultimate burden of persuasion at trial … has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. … In order to carry its burden of production, the moving party must produce either evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.").

"Statement of Relevant Facts/Procedural Background." ECF No. 142. More specifically, HPT claims that Cannata failed to list material facts related to his motion, and, instead, "alleged 'relevant' facts and procedural background, which are non-material facts regarding non-issues, and which do not bear directly on the legal issues raised by the motion." *Id.* at 3. These improper "relevant" facts, according to HPT, are as follows:

- Paragraphs 1–3: concerning the history and formation of HPT and how the parties met.

- Paragraphs 5–7: outlining the Buy Sell Agreement and the respective ownership interest of each party.

- Paragraphs 8–16: describing HPT's business and products.

- Paragraphs 17–34, 37, 38: relating to Cannata's communications and dealings with Kevin Sykes-Bonnett and Cannata's framing of the circumstances surrounding his exit from HPT; specifically, the amendment of the Buy Sell Agreement.

- Paragraphs 39–42: outlining the conduct of Syked and the separate legal action filed in Washington.

- Paragraphs 43–47: procedural background relating to discovery issues.

In response, Cannata contends that the facts contained within his motion for partial summary judgment are largely the same as in HPT's motion, and even if they are not, they are all still material to his summary judgment arguments.

LR 56-1 provides:

> Motions for summary judgment and responses thereto must include a concise statement setting forth each fact *material* to the disposition of the motion that the party claims is or is not genuinely in issue, citing particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission, or other evidence on which the party relies. The statement of facts will be counted toward the applicable page limit in LR 7-3.

LR 56-1 (emphasis added). Courts in this district routinely decline to reach the merits of arguments made in connection with summary judgment filings that contain no statements of undisputed material facts as required by LR 56–1. *See, e.g.*, *Joe Hand Promotions, Inc. v. Steak*, 2014 WL 1304723 at *2 (D. Nev. Mar. 31, 2014); *Engel v. Siroky*, 2014 WL 585769 at *2 (D.

Nev. Feb. 14, 2014); *Spitzmesser v. Tate Snyder Kimsey Architects, Ltd.*, 2011 WL 2552606 at \*3–\*4 (D. Nev. June 27, 2011). Moreover, irrelevant factual disputes do not affect the outcome of a summary judgment motion. *United States of America v. Kapp*, 564 F.3d 1103, 1114 (9th Cir. 2008) (summary judgment for government in tax case affirmed because disputed facts concerning defendant's discussions with government officials, interactions with IRS attorney's, and reliance on advice of his own counsel were not material, in that they would not entitle defendant to good faith defense).

As recounted in the legal standard above, a "material fact" is a fact "that *might* affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248 (emphasis added). So here, the inquiry becomes whether or not the disputed paragraphs of factual material in Cannata's motion might affect the outcome of the issues raised in his motion for partial summary judgment. Those issues pertain to HPT's claims of: (1) breach of fiduciary duty; (2) fraud; (3) violation of the Computer Fraud and Abuse Act (18 U.S.C. §1030); (4) violation of the Defend Trade Secrets Act (18 U.S.C. §1836); (5) violation of the Copyright Act (17 U.S.C. §1201(A)(1)(A)); (6) a violation of the Nevada Uniform Trade Secrets Act; and (7) a violation of the Illinois Trade Secrets Act.

The Court is satisfied that paragraphs 1–3, 5–7, 8–16, 17–19, 23–26, and 37–38 contain material facts related to the issues raised by Cannata in his motion for partial summary judgment. More specifically, paragraphs 1–3 provide background information regarding the formation of HPT and the Operating Agreement. This information is implicated in all of HPT's claims. Paragraphs 5–7 describe the terms of the Buy Sell Agreement which provides objective context surrounding Cannata's departure from HPT. Paragraphs 8–16 contain detailed information regarding HPT's products and are material to some of the claims raised by HPT and disputed by Cannata, such as alleged violations of the relevant trade secret statutory schemes. Paragraphs 17–19 describe Cannata's initial introduction, relationship, and agreement with Kevin Sykes-Bonnett, which are material to HPT's claims of breach of fiduciary duty and fraud. Paragraphs 23–26 relate to some of Cannata's arguments surrounding damages as they describe the amendment of the Buy Sell Agreement and the implications that had on Cannata's control of HPT. Paragraphs 37–38 are

material as they describe the Purchase Agreement and subsequent payout which bears directly on the issue of damages in this case. Accordingly, the Court finds these facts are material to the disposition of Cannata's motion and denies HPT's motion to strike as it relates to paragraphs 1–3, 5–7, 8–16, 17–19, 23–26, and 37–38.[4]

However, the Court is not satisfied that paragraphs 20–22, 27–32, 39–42, and 43–47 contain material facts related to the issues raised by Cannata in his motion for partial summary judgment. Specifically, paragraphs 20–22, 27–32 describe, in detail, Cannata's belief that Prociuk and Piastri conspired to oust him from HPT. Aside from the argumentative nature of these paragraphs, they do not list material facts in relation to HPT's claims and merely serve to add a subjective context to the disposition of the motion. *See John Bordynuik Inc. v. JBI, Inc.*, 2015 WL 153439, *3 (D. Nev. 2015) (finding that a defendant's statement of facts was "frequently argumentative and in no way distinguish[ed] undisputed fact from disputed contention."). Paragraphs 39–42 describe the wrongful conduct of Syked and HPT's subsequent lawsuit in the Western District of Washington. While that information is helpful insofar as it updates the Court regarding a non-party in this case, it does nothing to affect the outcome of the issues raised in his motion. Paragraphs 43–47 are largely argumentative, and detail alleged discovery issues that are only tangentially related to issues raised in Cannata's motion. Consequently, the Court finds that these facts are immaterial to the disposition of Cannata's motion and grants HPT's motion to strike as it relates to paragraphs 20–22, 27–32, and 43–47.

**B.  HPT's motion for partial summary judgment on its first, second, fourth, sixth, seventh, tenth, and twelfth causes of action (ECF No. 119) is granted in part and denied in part. Cannata's motion for partial summary judgment on the same causes of action (ECF No. 124 (128-s)) is denied.**

HPT's motion seeks partial summary judgment on multiple claims based on its belief that Cannata admitted to his misconduct during discovery. ECF No. 119 at 2. First, HPT seeks

---

[4] If the Court were to deny its motion to strike, HPT requested leave to add additional facts to its response to Cannata's motion for partial summary judgment. The Court will deny this request as all disputed material facts necessary to resolve Cannata's motion for partial summary judgment are obvious from the motion(s) and briefing. *See Riggs Marketing Inc. v. Mitchell*, 993 F.Supp. 1301, 1304 (D. Nev. 1997) (finding compliance with LR 56-1 when all the material facts are obvious from the motion and attached evidence). The Court does not deny this request, as argued by Cannata, because of page limits imposed by LR 7-3.

summary judgment on its first cause of action for Cannata's alleged breach of fiduciary duty for working with, assisting, and providing services for a competitor of HPT while Cannata was an owner of HPT. Second, HPT seeks summary judgment on its second cause of action because Cannata allegedly defrauded HPT during buyout negotiations for his interest in HPT. Third, HPT seeks summary judgment on its fourth, sixth, and seventh causes of action because Cannata allegedly misappropriated trade secrets under the relevant statutory schemes. Lastly, HPT seeks summary judgment on its tenth and twelfth causes of action because Cannata allegedly breached the Purchase Agreement. Cannata, in his motion for partial summary judgment, argues that HPT has failed to put forth sufficient evidence demonstrating an absence of material fact as to each claim, as well as prove non-speculative damages.

The Court will address each cause of action raised in HPT's motion for partial summary judgment, and Cannata's responses and arguments in his own motion for partial summary judgment, in turn.

1.  The Court reserves judgment on HPT's and Cannata's motions for partial summary judgment on the first cause of action for breach of fiduciary duty.

HPT's first cause of action requests this Court find that Cannata breached his fiduciary duty when he, as an owner of HPT, worked with, assisted, and provided services for Syked—a competitor of HPT. ECF No. 119. In response, and in his motion for partial summary judgment, Cannata argues that: (1) HPT has failed to put forth any evidence that he owed a fiduciary duty; (2) HPT cannot establish as a matter of law that Cannata owed a fiduciary duty; and (3) even if a fiduciary duty existed, genuine issues of material fact preclude summary judgment. *See* ECF Nos. 146; 124 (128-s).

Under Nevada law, a member or manager of an LLC will be liable for breach of a fiduciary duty when: (1) a fiduciary duty exists; (2) the duty is breached, and (3) the breach proximately caused the damages alleged. *Klein v. Freedom Strategic Partners, LLC*, 595 F.Supp.2d 1152, 1162 (D. Nev. 2009). Unlike many states, Nevada does not impose any statutory fiduciary duties on members of LLCs. *In re Plyam*, 530 B.R. 456, 472 (9th Cir. B.A.P. 2015) ("Unlike California,

9

Nevada does not have a statute equating the fiduciary duties of a manager in a limited liability company context to those of a partner in a partnership."). Instead, Nevada allows the members of LLCs to decide whether to impose fiduciary duties on themselves through their operating agreement. *JPMorgan Chase Bank, N.A. v. KB Home*, 632 F.Supp.2d 1013, 1025–26 (D. Nev. 2009); NEV. REV. STAT. §86.286. This could be by express language in the operating agreement or through language that has a similar effect. In Nevada, a "fiduciary relationship is deemed to exist when one party is bound to act for the benefit of the other party. Such a relationship imposes a duty of utmost good faith." *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 880–81 (9th Cir. 2007) (quoting *Hoopes v. Hammargren*, 725 P.2d 238, 242 (Nev. 1986)). Thus, if Cannata owed any fiduciary duty to HPT, such a duty must be stated within the Operating Agreement.

Citing the "law of the case doctrine," HPT relies on this Court's previous ruling on Cannata's motion to dismiss (the "MTD Order"), to establish that a fiduciary duty exists under the first prong of the test. *Klein*, 595 F.Supp.2d. at 1162. In the MTD Order, this Court held that the Operating Agreement established a fiduciary duty among the HPT members to, at minimum, protect its intellectual property ("IP"). ECF No. 44 at 8.[5] The law of the case doctrine provides that "'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018) (quoting *Musacchio v. United States*, 577 U.S. 237 (2016)). However, the Ninth Circuit has clarified that "[t]he law of the case doctrine does not preclude a court from reassessing its own legal rulings in the same case." *Id.* Rather, it applies where an issue has been decided by a higher court or where the court has entered a final decree or judgment. *Id.* at 1042–

---

[5] This Court determined that:

> After reviewing the operating agreement and relevant caselaw, the Court finds that the operating agreement imposed a fiduciary duty upon its members. The operating agreement states, in relevant part, as follows:
>
> Each member hereby agrees to assist [HPT] in any reasonable manner to obtain for [HPT's] benefit legal protection for the [intellectual property] and will execute, when requested, any lawful documents deemed necessary by [HPT] to carry out the purposes of the [intellectual property] assignment. Each member will further assist [HPT] in every way to enforce its rights in the [intellectual property], testifying in any suit or proceeding involving any of the [intellectual property] or by executing any documents deemed necessary by [HPT].

1    43. Neither circumstance is present here, and this Court is free to revisit its previous ruling on the

2    MTD Order regarding Cannata's alleged fiduciary duty.

3         Nevertheless, the Court finds no reason to alter the conclusion reached in the MTD Order

4    despite Cannata's repeated arguments to the contrary. The Court, after reviewing the parties'

5    arguments and relevant caselaw, still finds that, although Nevada does not impose a fiduciary duty

6    on co-members of an LLC, § 4.1 of the Operating Agreement imposed a fiduciary duty on Cannata

7    because each member of HPT was required to assist the company "in every way" to enforce its

8    rights as it relates to its IP. *See* ECF No. 44, at 8 (citing ECF No. 1-1, at 5). Cannata, citing a string

9    of unpublished, out-of-district cases, argues HPT cannot rely on the MTD Order as evidence of a

10   fiduciary duty in his motion for summary judgment because there exist differing legal standards.

11   *See* ECF Nos. 144 at 13; 150 at 8–9. While true, courts routinely reach different conclusions at the

12   summary judgment stage than at the motion to dismiss stage, nothing revealed in discovery in this

13   case has changed the legal conclusion reached in the MTD Order.[6] Accordingly, HPT has

14   demonstrated an absence of genuine issue of material fact that Cannata owed a fiduciary duty

15   under the Operating Agreement to HPT as it related to its IP. *Klein*, 595 F.Supp.2d. at 1162.

16        Turning to the second prong of breach, HPT argues it met its burden because Cannata has

17   "admitted he breached his fiduciary to HPT by not protecting HPT's highly confidential trade

18   secrets and failing to assist (and indeed, hindering) HPT's ability to protect the same." ECF No.

19   119 at 9. Specifically, HPT points to Cannata's Amended Answer (ECF No. 114) which contains

20   admissions that: (1) Cannata provided Kevin Sykes-Bonnett and/or Syked with a flash drive

21   containing confidential information, files, and other materials which were protected property of

22   HPT; (2) that Cannata provided to Syked the ability to create "keys" via a proprietary key generator

23   program to access HPT's highly confidential, proprietary software without a license to do so; and

---

[6] In his reply, Cannata cites to various cases in support of his claim that parties cannot rely on conclusions reached in a prior motion to dismiss order as evidence in their motion for summary judgment. *See, e.g.*, *Black v. Correa*, No. 07-00299, 2008 U.S. Dist. LEXIS 64220, *26-28 (D. Haw. Aug. 18, 2008); *Norton v. Arpaio*, No. CV-15-00087, 2019 U.S. Dist. LEXIS 169855, *8 (D. Ariz. Sept. 30, 2019); *Manuel v. Malone*, No. 7:10-CV-4-FL, 2013 U.S. Dist. LEXIS 146866, *16–18 (E.D.N.C. Oct. 10, 2013); *Pinder v. Skero*, 375 F.Supp.3d 725, 736 (S.D. Tex. 2019). However, in each case, the court reached that conclusion because the party bringing the motion for summary judgment relied on evidence presumed to be true under the motion to dismiss standard. Not where, as here, HPT relies on a legal conclusion that remains uncontroverted by evidence revealed in discovery.

(3) that Cannata withheld HPT or his (former) co-members the intentional disclosure and transmission of the flash drive containing confidential business information and trade secrets.[7] As evidence, HPT cites to portions of Cannata's deposition transcript that support these admissions.[8]

Cannata maintains that he did not breach his fiduciary duty to HPT because he had a subjective belief that he was allowed to share the IP with Sykes-Bonnett. Responding to HPT's citation to the deposition transcripts, Cannata argues that "nowhere in the pages cited does [he] state that he owed a fiduciary duty of confidentiality." ECF No. 150 at 11. As evidence, Cannata cites the portions of his deposition transcript in which he stated he was within his rights under the Operating Agreement to share the confidential and proprietary information of the company to Sykes-Bonnett. ECF No. 144 at 36. Subjective belief aside, the evidence does demonstrate that Cannata did share software and technology created and used by HPT with Sykes-Bonnett which could constitute breach of his fiduciary duty. However, in his reply to his motion for partial summary judgment, Cannata, for the first time, argues that HPT has not shown that the software and information shared with Sykes-Bonnett qualifies as HPT's protectable IP. Specifically, citing the Operating Agreement's definition of "intellectual property" and a snippet of Prociuk's deposition testimony, Cannata maintains that the software he shared with Sykes-Bonnett was an updated, non-derivative version of HPT's software and information. ECF No. 150 at 12–13.

As noted by Cannata in his briefing, where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond. *See Crandall v. Starbucks Corp.*, 249 F.Supp.3d 1087, 1104 (N.D. Cal. 2017) ("[C]ourts typically do not consider new evidence first submitted in a reply brief because the opposing party has no opportunity to respond to it.") (citing to *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996)). Thus, until additional briefing is concluded on the new issue raised in Cannata's reply, the Court reserves judgment as to whether Cannata breached his fiduciary duty. HPT shall have fourteen days from the entry of this order to file a sur-reply on the discrete issue of whether the software and information Cannata shared with Sykes-Bonnett

---

[7] ECF No. 114 ¶¶ 2, 3, 4, 40–44, 53.
[8] *See* ECF No. 112, at 29-31, 87-88, 108, 113-14, 121, 130-31, 134-35, 137-38, 149, 159-60, 166-68, 170, 174, 177-79, 181, 191-92, 201-03, 212-13, 226, 235-36, 246-47, 249- 50, 251-58, 308-10, 370.

12

constituted derivative versions of HPT's IP identified in the Operating Agreement. Accordingly, the Court reserves judgment on HPT's and Cannata's motions for partial summary judgment as to the first cause of action.

Lastly, genuine issues of material fact exist as to the exact value of damages alleged. Summary judgment is appropriate on the issue of damages if the evidence presented is such that the jury would be left to "speculation or guesswork in determining the amount of damages to award." *Weinberg v. Whatcom Cnty.*, 241 F.3d 746, 751 (9th Cir. 2001). If the parties have "no expert witnesses or designated documents providing competent evidence from which a jury could fairly estimate damages," summary judgment may be granted. *Id.* Summary judgment has been granted on the issue of damages where, for example, the only evidence was found in studies excluded by the trial court. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 808 (9th Cir. 1988).

HPT relying on Bone's expert report, maintains that, but for Cannata's breach of fiduciary duty, it would not have compensated $6.8 million for Cannata's shares of the business, and that HPT will suffer lost profits in the amount of $4,360,000 over the next five years as a result of Sykes-Bonnet posting of a hacked version of the VCM Suite software. ECF No. 130-s at 80–167. HPT argues, if it knew of Cannata's conduct, it would have terminated Cannata for cause under the Buy Sell Agreement and purchased his interest in the company for the estimated book value. Cannata contends that the damages estimated by HPT are speculative because the damages fail to consider that: (1) he was already terminated without cause in January of 2016, and therefore could not have been terminated for cause; (2) Bone's expert report relies on improper balance sheets; (3) Bone's expert report relies on outdated dates to extrapolate lost profits; and (4) Bone's expert report does not consider the value of HPT's intellectual property. ECF No. 128 at 29. Still, HPT has submitted a precise estimate of its damages as calculated in Bone's expert report, and the concrete numbers provided prevent a jury from "speculation or guesswork" in determining the amount of damages to award. Cannata ultimately contests the reliability of the method of calculation, but such determinations are left best to the finder of fact and are not appropriate for summary judgment. Accordingly, the Court denies both HPT's and Cannata's motions for partial summary judgment on this ground.

1
2

        2.  <u>The Court denies both HPT's and Cannata's motions on the second cause of action</u>
           <u>for fraudulent concealment as there exist genuine issues of material fact.</u>

3
4
5
6
7
8

     HPT next argues there is no material fact in dispute that Cannata defrauded, via concealment, HPT during buyout negotiations. Specifically, HPT maintains that, through documentary evidence and testimonial admissions, Cannata secretly provided Syked with HPT's highly confidential IP and concealed this information while negotiating a $6.8 million buyout from HPT. In response, Cannata argues that HPT cannot put forth any evidence that Cannata actively concealed or engaged in deceptive conduct when entering into the Purchase Agreement.

9
10
11
12
13
14
15
16
17
18
19
20

     To be successful under Illinois law for a claim of fraudulent concealment, a plaintiff must demonstrate: (1) the defendant concealed a material fact under circumstances that created a duty to disclose; (2) the defendant intended to induce a false belief; (3) the plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the defendant's silence as a representation that the fact did not exist; (4) the concealed information was such that the plaintiff would have acted differently had he or she been aware of it, and (5) the plaintiff's reliance resulted in damages. *Abazari v. Rosalind Franklin University of Medicine and Science*, 40 N.E.3d 264, 274 (Ill. App. 2015). The information at issue must relate to an existing or past state of affairs – "projections of future events" generally cannot support a claim of fraud. *Id*. A party has a duty to disclose material facts to another when a fiduciary relationship exists between them. *Linkepic Inc. v. Vyasil, LLC*, 370 F.Supp.3d 906, 917 (N.D. Ill. 2019).

21
22
23
24
25

     As to the first element, this Court has already held that, under § 4.1 of the Operating Agreement, Cannata had a fiduciary duty to HPT and its co-members as it related to its IP. *See* ECF No. 44 at 8. Accordingly, the Court finds that Cannata did have a duty to disclose material facts related to his negotiations and dealings with Syked. *Linkepic Inc.*, 370 F.Supp.3d at 917 (finding that a duty to disclose "can arise from a fiduciary relationship between the parties.").

26
27
28

     Concerning the second and third elements, triable issues of fact exist as to (1) whether or not Cannata had the requisite intent to fraudulently conceal his negotiations and dealings with Syked; and (2) whether HPT was justified in relying on Cannata's silence as a representation that

he was not sharing information with competitors. Both parties have presented evidence which may lead reasonable minds to reach differing conclusions regarding each of the elements. For example, HPT argues that Cannata used a secret email account as opposed to his HPT email to share the confidential information and proprietary information of HPT with a third party. ECF No. 142 at 12. In addition, HPT contends that at no time during the negotiations of the buyout did Cannata ever advise Prociuk, Piastri or anyone at HPT that he had shared confidential and proprietary information of HPT with a third party. *Id.* However, Cannata points out that the "secret email account" used was not created to conceal anything from HPT, but rather was an account he used for dating sites after his wife passed away. ECF No. 150 at 14. Cannata also maintains that he did not disclose his dealings with Syked because he had a subjective belief that he was permitted to share the information. *Id.* From this evidence, there is an issue of fact as to whether Cannata had the requisite intent to induce a false belief and whether HPT was justified in relying on Cannata's silence as to his dealings with Syked.

As to the fourth element, there are no triable issues of fact as to whether the concealed information was such that HPT would have acted differently during buyout negotiations had it been aware of it. Prociuk, in his declaration, made clear that "[i]f HPT had learned or been advised that Cannata had shared HPT's confidential and proprietary trade secret information, Cannata would have been terminated for cause pursuant to the Buy Sell Agreement immediately at that time." ECF No. 120 at 5. Cannata presents no evidence in either his response or motion for partial summary judgment that is in dispute with Prociuk's contention as to how HPT would have reacted. Rather, Cannata focuses on his loss of managerial control—not ownership—of HPT before the buyout negotiations even began. ECF No. 146-s at 20.

Lastly, the Court finds, for the reasons articulated above, that summary judgment for damages is inappropriate at this time. *See* damages discussion *supra* Section III.B.1

Because there exist genuine issues of material fact as to fraudulent concealment, the Court will deny both HPT's and Cannata's motions for partial summary judgment as to the second cause of action.

1

2

3.  <u>The Court denies HPT's motion on its fourth, sixth, and seventh causes of action for misappropriation of trade secrets.</u>

3

4

HPT also moves for summary judgment on its misappropriation of trade secrets claims—the fourth, sixth, and seventh causes of action. Count IV alleges that Cannata violated the Defend Trade Secrets Act ("DTSA"), Count VI alleges that Cannata violated the Nevada Uniform Trade Secrets Act ("NUTSA"), and Count VII alleges that Cannata violated the Illinois Trade Secrets Act ("ITSA").

5

6

7

8

Statutory law defines a "trade secret" as "information" such as "program devices, formulas...processes, procedures, programs, or codes…" that "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information…" *See* 18 U.S.C. § 1839(3). In order to state a claim for trade secret misappropriation, HPT must allege: (1) HPT possessed a valuable trade secret; (2) Cannata misappropriated the trade secret through unlawful acquisition, use, or disclosure of the trade secret; and (3) the misappropriation was made in breach of an express or implied contract or by a party with a duty not to disclose. *See* 18 U.S.C. § 1839; *see also Physician's Surrogacy, Inc. v. German*, No. 17-cv-718-MMA, 2018 U.S. Dist. LEXIS 16261 (S.D. Cal. Jan. 31, 2018); *Switch Ltd. v. Fairfax*, No. 2:17-cv-02651-GMN-VCF, 2018 U.S. Dist. LEXIS 148818 (D. Nev. Aug. 30, 2018).[9]

9

10

11

12

13

14

15

16

17

18

19

In his response to HPT's motion, Cannata asserts that HPT's motion must fail because HPT did not adequately identify its purported trade secrets. A plaintiff asserting a misappropriation of trade secrets claim must identify their purported trade secrets with sufficient detail and precision. *See Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998) (the plaintiff bears the burden of "describe[ing] the subject matter of the trade secret with sufficient particularity" (citation omitted). This requirement is necessary in order to allow a fact finder "to separate [the alleged

20

21

22

23

24

25

26

27

28

---

[9] Under both the NUTSA and ITSA, misappropriation of trade secrets is proven similarly. *See Switch Ltd. v. Fairfax*, No: 2:17- cv-02651-GMN-VCF, 2018 U.S. Dist. LEXIS 148818, *10 (D. Nev. Aug. 30, 2018) (NUTSA); *Property Rights Law Group, P.C. v. Lynch*, No. 13-00273 SOM/RLP, U.S. Dist. LEXIS 127330, *7 (D. Haw. Sept. 6, 2013) (ITSA).

1   trade secrets] from matters of general knowledge in the trade or of special knowledge of those

2   persons…skilled in a trade." *Imax*, 152 F.3d at 1164–65.

3          Here, HPT cites to Cannata's deposition in which he admits to sharing various information

4   and software owned by HPT—that it endeavored to maintain secret—with Syked. ECF No. 119 at

5   16. Specifically, Cannata admits to sharing with Syked the VCM Suite Source Code, other

6   "confidential and proprietary source code," cMPVI.cs, frmTable.cs, eController.cs, cFlashData.cs,

7   cVehicle.cs, and "HPT's MPVI." *See* ECF No. 112 at 74–76, 86–88, 130–37, 245–54, 444–45.

8   Cannata also admits that all of those files and information were intended by HPT to remain

9   confidential. *Id.* Based on this evidence, HPT seeks summary judgment under the relevant

10  statutory schemes.

11         However, HPT's identification of its alleged trade secrets is incomplete. First, HPT omits

12  to identify why each particular trade secret, not just the name of the file, is "separate…from matters

13  of general knowledge in the trade or of special knowledge of those persons…skilled in the trade."

14  *Imax*, 152 F.3d at 1165. Nor has HPT established that any specific trade secret identified has

15  independent economic value. To establish independent value, a plaintiff must show that the trade

16  secret is "sufficiently valuable and secret to afford an actual or potential economic advantage over

17  others" who do not possess the information. *See Religious Tech. Center v. Netcom On-line*

18  *Commc'n Servs., Inc.*, 923 F.Supp. 1231, 1252–53 (N.D. Cal. 1995). HPT provides no evidence

19  in its briefing about the value of the alleged trade secrets at issue. Accordingly, because HPT has

20  failed to demonstrate why the software and information Cannata shared with Syked constitute

21  trade secrets under the law, the Court will deny HPT's motion as to its fourth, sixth, and seventh

22  cause of action.

23         As to damages, Bone's expert report claims that Cannata has been unjustly enriched, via

24  saved development costs, to the extent of $4.2 million based on his alleged misappropriation of

25  the VCM 2.23 source code and MPVI firmware. ECF No. 130-s at 80–167. Citing cases outside

26  the relevant jurisdictions, Cannata argues, in his motion for partial summary judgment, that HPT's

27  claim for $4.2 million is not appropriate as trade secret damages may not be based on the

28  infringer's avoided development costs. *See*, *e.g.*, *E.J. Brooks Co. v. Cambridge Sec. Seals*, 105

N.E. 3d 301 (Ct. App. N.Y. 2018) ("We agree that damages in trade secret actions must be measured by the losses incurred by the plaintiff, and that damages may not be based on the infringer's avoided development costs."); *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, No. 14-cv-748, 2016 U.S. Dist. LEXIS 50157, *6 (W.D. Wisc. Apr. 14, 2016) ("The measure of damages under unjust enrichment is limited to the value of the benefit conferred on the defendant; any costs the plaintiff may have incurred are generally irrelevant" and precluding a plaintiff from presenting the same to a jury) (citing *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 477 (7th Cir. 2009)).

However, the Ninth Circuit and district courts have recognized that unjust enrichment, in the context of trade secrets damages, may be appropriate where the infringer receives a benefit as a result of their wrongdoing. *See Bourns, Inc v. Raychem Corp.*, 331 F.3d 704, 709–10 (9th Cir. 2003) (affirming $9M unjust enrichment damages award based on evidence that trade secrets cost $3M per year to develop and that defendant had saved at least 3 years of development by its misappropriation); *Oracle Corp. v. SAP AG*, 734 F.Supp.2d 956, 970 (N.D. Cal. 2010) ("…trade secret law allows recovery of saved development costs."). Specifically, a plaintiff may seek "recovery of 'development costs' saved by misappropriating, rather than developing, the trade secrets at issue." *Id.* (citing *Ajaxo, Inc. v. E*Trade Group, Inc.*, 135 Cal. App. 4th 21 (2005)). In other words, HPT can only seek to recover development costs that Cannata saved by misappropriating HPT's trade secrets—not how much the trade secrets actually cost to develop.[10] Bone's expert report contains calculations where he estimates how much associated costs Cannata avoided by misappropriating the identified confidential and proprietary information. Cannata disputes the conclusions reached in Bone's expert report because it fails to consider whether Syked actually retained a benefit from the misappropriated software, and how much technology has changed from 2004 to 2016 that would reduce the time needed to develop similar software.

---

[10] Cannata also claims that he did not "save development costs" for himself as the confidential and proprietary information was ultimately given to Syked. However, Cannata does not dispute Bone's expert report or HPT's motion for partial summary judgment that state Cannata obtained an interest in Syked when, around January 2017, his spouse purchased an ownership interest in Syked. *See* ECF No. 112 at 237, 241–42, 266, 284, 317–19, 334–36, 381–82.

To that end, because HPT has yet to sufficiently identify its trade secrets, and Cannata raises genuine issues of material facts pertaining to Bone's expert report, the Court will deny both parties' motions for partial summary judgment as to the misappropriation of trade secrets.

4. <u>The Court grants in part and denies in part HPT's motion on its tenth cause of action for breach of contract.</u>

Lastly, HPT moves for summary judgment on its tenth and twelfth causes of action for breach of contract and conversion, respectively, because Cannata allegedly breached the Purchase Agreement, resulting in damages. Specifically, HPT alleges that Cannata violated the Purchase Agreement when he: (1) retained confidential information and trade secrets which he had no right to after closing in violation of §6.1; (2) failed to return such confidential information and/or trade secrets to HPT in violation of §6.1; (3) failed to keep such confidential information and/or trade - secrets confidential and not disclose same in violation of §6.3; and (4) produced, disseminated, and otherwise transferred such highly confidential information and/or trade secrets to third parties, including HPT competitors during a period where such production, dissemination, and/or transfer was prohibited, in violation of § 6.4. ECF No. 119 at 19.

Under Illinois law,[11] to prove a breach of contract claim, the plaintiff must establish: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach by the defendant; and (4) resultant damages. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004)). In addition, a breach of contract requires an identifiable breach of a contract term. *Talbert v. Home Sav. of Am., F.A.*, 638 N.E.2d 354, 358 (Ill. App. Ct. 1994) ("A breach can only exist where a party fails to carry out a term, promise, or condition of a contract; a breach cannot result from a party's performance of a contract term.").

Here, the parties do not dispute that the Purchase Agreement constituted a valid contract, but, rather, Cannata maintains HPT did not substantially perform its obligations under the Purchase Agreement. Specifically, Cannata alleges that HPT failed to comply with §§ 3.1, 3.2, and 3.6 of

---

[11] Despite Cannata's citations to Nevada contract law, this Court previously held that HPT's contract claims are governed under Illinois law. ECF No. 44 at 5.

the Purchase Agreement when it failed to make timely payments, and it did not provide Cannata a certificate on the closing date confirming that HPT complied with its obligations. ECF No. 14. According to Cannata, HPT's alleged breach released him from his contractual obligation to return and maintain the confidentiality of HPT's confidential and proprietary information.

In Illinois, a material, uncured breach of contract presents two options for the injured party: either terminate the contract or continue performance of the contract. *Compare Susman v. Cypress Venture*, 187 N.E.2d 184, 187 (Ill. App. Ct. 1989) ("[a] party to a contract is discharged from his duty to perform where there is a material breach of the contract by the other party.") (citations omitted) *with South Beloit Electric Co. v. Lar Gar Enterprises, Inc.*, 224 N.E.2d 306, 310–11 (Ill. App. Ct. 1967) ("[w]here a contract is breached in the course of its performance, the injured party has a choice presented to him of continuing the contract or refusing to go on. If he chooses to continue performance, he has doubtless lost his right to stop performance.") (citations omitted). Despite his allegations that HPT failed to make timely payments and provide him with the requisite certificate of compliance, Cannata still accepted full payment for his interest in HPT. Under Illinois law, because he did not object to HPT's alleged breach and accepted payment, Cannata lost his right to challenge HPT's failure to perform any of its conditions precedent under the Purchase Agreement. Accordingly, Cannata's arguments to the contrary are unavailing.

With respect to the issue of breach, there is no genuine issue of material fact that Cannata breached his obligations to HPT under the Purchase Agreement. Cannata admitted that he retained in his possession confidential and proprietary information of HPT after the execution of the Purchase Agreement in violation of §6.1. ECF No. 114 at 21–22. Cannata also admitted that he provided a flash drive and source code files, containing confidential and proprietary information, to Syked without notifying HPT prior to, and after, the effective date of the Purchase Agreement in violation of §§ 6.3 and 6.4. *Id.* at 17–18. Accordingly, because there exists no genuine issue of material fact that Cannata breached §§ 6.1, 6.3, and 6.4 of the Purchase Agreement, the Court will grant HPT's motion for partial summary judgment as it pertains to liability under its breach of contract claim.

As to damages, the Court finds, for the reasons articulated above, that summary judgment for damages under the contract claim is inappropriate at this time. *See* damages discussion *supra* Section III.B.1.[12]

     5.  The Court denies HPT's motion for partial summary judgment as to the twelfth cause of action for conversion.

HPT, briefly in one sentence, without citing evidence, summarily declares that "Cannata's failure to return, and retention of, HPT's property, including its confidential and proprietary information, constitutes a conversion and gives rise to summary judgment…" ECF No. 119 at 19. Because HPT does not cite specific evidence demonstrating an absence of genuine issues of material fact as to the claim of conversion, the Court will deny its motion as to the twelfth cause of action.

**C.  Cannata's motion for partial summary judgment on HPT's third and fifth cause of action (ECF No. 124 (128-s)) is granted in part and denied in part.**

Cannata's motion seeks partial summary judgment on multiple of HPT's claims. The Court already addressed Cannata's arguments on HPT's first, second, fourth, sixth, and seventh causes of action. In addition, Cannata seeks summary judgment on HPT's third cause of action for a violation of the Computer Fraud and Abuse Act, as well as HPT's fifth cause of action for a violation of the Copyright Act. Each of Cannata's arguments, and HPT's responses, are addressed in turn

     1.  Cannata's motion for partial summary judgment as to HPT's third cause of action for a violation of the Computer Fraud and Abuse Act is granted.

Cannata moves for summary judgment as to HPT's third claim: violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. Cannata argues that HPT has failed to put

---

[12] Cannata further argues that HPT is seeking to rescind the Purchase Agreement and restore into effect the Buy Sell Agreement. If true, HPT would be barred from doing so as it has not plead recission. *See In re McCoy*, 260 B.R. 863, 869 (N.D. Ill. Bankr. 2001) ("[I]n order to rescind or reform a contract, one must plead and establish elements not alleged here."). However, HPT is not seeking recission of the Purchase Agreement, as its remedy is based on a breach of the Purchase Agreement. *See Health-Chem Corp. v. Baker*, 915 F.2d 805, 811 (2d Cir. 1990) ("When the parties to a contract enter into a new agreement that expressly supersedes the previous agreement, the previous agreement is extinguished, thereby reducing the remedy for breach to a suit on the new agreement.") (citations omitted). Specifically, HPT seeks damages based on Cannata's breach of his fiduciary duty and terms contained within the Purchase Agreement. As to how much those damages amount to, there exist genuine issues of material fact, and summary judgment is inappropriate at this juncture.

forth sufficient evidence demonstrating that Cannata accessed its protected computers without authorization and has failed to demonstrate any "damage" or "loss" as defined by § 1030(g). ECF No. 128-s at 20–21. Therefore, according to Cannata, HPT cannot establish as a matter of law the necessary elements showing Cannata accessed the computers without authorization and caused sufficient damage or loss. *Id.*

The CFAA is a federal computer fraud law that was designed "primarily to address the growing problem of computer hacking." *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012) (citing S. Rep. No. 99-432, at 9 (1986)). "The CFAA prohibits acts of computer trespass by those who are not authorized users or who exceed authorized use." *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1065 (9th Cir. 2016). Specifically, the CFAA imposes civil and criminal liability on any person who "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss." 18 U.S.C. §1030(a)(5)(C).

HPT alleges that Cannata exceeded his authorized access to its computers when he shared confidential and proprietary information with Syked, and, because of his actions, Cannata has caused damage and loss to HPT. ECF No. 143 at 13–14. In response, Cannata first argues that HPT has failed to raise any evidence that shows that he exceeded his authorized access to the relevant confidential and proprietary information. Additionally, Cannata argues that HPT's claims do not fall with the "damage" or "loss" definition in § 1030(g).

As to Cannata's authorization, Section 1030(e)(6) provides: "the term 'exceeds authorized access' means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). Critically, the Ninth Circuit has clarified that "'exceeds authorized access' in the CFAA is limited to violations of restrictions on *access* to information, and not restrictions on its *use*." *United States v. Nosal*, 676 F.3d 854, 864 (9th Cir. 2012).[13] If use restrictions were imposed, that "interpretation would transform the CFAA from an anti-hacking statute into an expansive misappropriation statute." *Id.* at 857.

---

[13] Although the *Nosal* case analyzed the criminal components of the CFAA, the Ninth Circuit held that its interpretation of "exceeds authorized access" applies to all uses of the term in the statute. *Id.* at 859.

In this case, there is no dispute that Cannata had permission to access the computers. Nevertheless, HPT maintains that Cannata violated the CFAA when he shared the confidential and proprietary information of HPT with third parties. HPT relies on Cannata's own admissions and Prociuk's testimony that he was not given authorization to share the confidential and proprietary information with third parties. ECF No. 112 at 30, 174, 192, 250; ECF No. 120, ¶ 17. However, as described above, because the Ninth Circuit follows a narrow interpretation of the term "exceeds authorized access," HPT's CFAA claim fails as it has produced no evidence that Cannata did not have permission to access the confidential and proprietary information shared with Syked. *See Nosal* 676 F.3d at 864 (holding that a former employee's accomplices who accessed information using valid credentials for improper purpose did not exceed authorized access, even though the company's use restrictions prohibited the disclosure of confidential information.). For this reason, the Court will grant Cannata's motion for partial summary judgment as to the third cause of action.

    2.  <u>Cannata's motion for partial summary judgment as to HPT's fifth cause of action for a violation of the Digital Millennium Copyright Act is denied.</u>

Cannata also moves for partial summary judgment as to HPT's fifth cause of action for a violation of the violation of the Digital Millennium Copyright Act ("the Copyright Act") (17 U.S.C. §1201(A)(1)(A). Cannata presents little to no argument as to why he is entitled to summary judgment on this claim. Cannata only maintains in his reply that HPT cannot prove damages under the Copyright Act because Bone's expert report regarding damages is unreliable, speculative, and cannot be the basis for HPT's damages allegations. ECF No. 150 at 16.

However, as previously discussed, because Cannata raises genuine issues of material fact as to the issue of damages, the Court will not grant Cannata's motion for partial summary judgment as to the fifth cause of action for a violation of the Copyright Act. *See* damages discussion *supra* Section III.B.1.

///

///

///

///

1    **IV.    CONCLUSION**

2        IT IS THEREFORE ORDERED that HPT's motion to strike (ECF No. 142) is **GRANTED**

3    **in part** and **DENIED in part**. Paragraphs 20–22, 27–32, and 43–47 of Cannata's motion for

4    partial summary judgment (ECF Nos. 124 (128-s)) are ordered stricken.

5        IT IS FURTHER ORDERED that the Court reserves judgment on Cannata's and HPT's

6    motions for partial summary judgment (ECF Nos. 119, 124 (128-s)) on the first cause of action for

7    breach of fiduciary duty. HPT shall have **14 days** to submit a sur-reply on the discrete issue of

8    whether the software and information Cannata shared with Sykes-Bonnett constituted derivative

9    versions of HPT's IP identified in the Operating Agreement.

10        IT IS FURTHER ORDERED that Cannata's and HPT's motions for partial summary

11    judgment (ECF Nos. 119, 124 (128-s)) on the second cause of action for fraudulent concealment

12    is **DENIED.**

13        IT IS FURTHER ORDERED that Cannata's and HPT's motions for partial summary

14    judgment (ECF Nos. 119, 124 (128-s)) as to the fourth, sixth, and seventh causes of action for

15    misappropriation of trade secrets is **DENIED.**

16        IT IS FURTHER ORDERED that HPT's motion for partial summary judgment (ECF Nos.

17    119) as to the tenth cause of action for breach of contract is **GRANTED in part** and **DENIED in**

18    **part**. The Court grants HPT summary judgment as to the issue of liability for breach of contract.

19    The Court denies HPT summary judgment as to damages.

20        IT IS FURTHER ORDERED that that HPT's motion for partial summary judgment (ECF

21    Nos. 119) as to the twelfth cause of action for conversion is **DENIED.**

22        IS FURTHER ORDERED that Cannata's motion for partial summary judgment (ECF No.

23    124 (128-s)) as to the third cause of action for violation of the CFAA is **GRANTED.**

24        IT IS FURTHER ORDERED that Cannata's motion for partial summary judgment (ECF

25    No. 124 (128-s)) as to the fifth cause of action for violation of the Copyright Act is **DENIED.**

26    ///

27    ///

28    ///

24

IT IS FURTHER ORDERED that the following motions to seal (ECF Nos. 111, 127, 145, 152) are **GRANTED *nunc pro tunc*.**

IT IS FURTHER ORDERED that the clerk of the court shall enter judgment accordingly.

IT IS SO ORDERED.

DATED this 24th day of February, 2022.

LARRY R. HICKS
UNITED STATES DISTRICT JUDGE