MARKS & KLEIN, LLP
Andrew P. Bleiman, Esq.
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062
Telephone: (312) 206-5162
E-mail:  andrew@marksklein.com

FLETCHER & LEE
Elizabeth Fletcher, Esq.
Nevada Bar No. 10082
Cecilia Lee, Esq.
Nevada Bar No. 3344
448 Ridge Street
Reno, Nevada 89501
775-324-1011
email:efletcher@fletcherlawgroup.com
email:clee@fletcherlawgroup.com

Attorneys for Plaintiff HP Tuners, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> KENNETH CANNATA, <br><br> Defendant. | CASE NO.  3:18-cv-00527-LRH-CSD <br><br> **PLAINTIFF HP TUNERS, LLC'S SUR-REPLY IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON FIRST CAUSE OF ACTION** |

Plaintiff HP TUNERS, LLC, a Nevada limited liability company ("HPT" or "Plaintiff"), for its Sur-Reply in Further Support of Motion for Summary Judgment on First Cause of Action states as follows:

On February 24, 2022, the Court issued an Order ruling on the parties' competing motions for partial summary judgment ("MSJ Order"). *See* ECF No. 157. In doing so, however, the Court reserved judgment on said motions as to Plaintiff's First Cause of Action for breach of fiduciary duty and afforded HPT the opportunity "to submit a sur-reply on the discrete issue of whether the software and information Cannata shared with Sykes-Bonnett constituted derivative versions of HPT's IP identified in the Operating Agreement." *Id.* at 24.

Despite Cannata's assertions to the contrary, the Court was unequivocal that Plaintiff HPT has demonstrated an absence of genuine issue of material fact that Cannata owed a fiduciary duty under the Operating Agreement to HPT as it related to its intellectual property. *Id*. at 11 (*citing Klein v. Freedom Strategic Partners*, LLC, 595 F.Supp.2d 1152, 1162 (D. Nev. 2009)). Yet, the Court sought this Sur-Reply from HPT to address a newly raised contention contained in Cannata's Reply in Support of Motion for Partial Summary Judgment (the "Cannata Reply"), in which Cannata – for the first time – made the argument that the software he admittedly shared with Kevin Sykes-Bonnett ("Sykes-Bonnett") was not derivative of the original "Technology" contributed by the members and, thus, did not fall under the definitions of "Technology" or "Additional Technology" to be HPT's protected IP. *See* ECF No. 150, at 12-13 (*citing* Operating Agreement, §§4.1, 4.2, Ex. A). Indeed, Cannata argues that HPT has failed to prove that the information he shared with Sykes-Bonnett qualifies as "Technology" under the Operating Agreement. *Id*. More specifically, Cannata's claim is that "while §4.2 to the Operating Agreement gives HPT rights in 'derivative works,' HPT has failed to show that any of these subsequent versions of software/hardware/firmware are derivative works, which has a strict test in the Ninth Circuit." *Id*. (*citing Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir. 1994)).

It should be noted first that Cannata's argument is misleading. Section 4.2 is not limited to derivative works; rather, "Additional Technology" contractually includes "improvements,

enhancements, [and] derivative works to the Technology." *Compare* Operating Agreement, §4.2 *with* Operating Agreement, §4.1. Second, Cannata's citation to *Apple Computer*, absent any pinpoint citation, gives no indication as to what the "strict test in the Ninth Circuit" is and how it would apply to this case. *See* ECF No. 150, at 12. Regardless, however, Cannata's argument is actually undermined by the Ninth Circuit in *Apple Computer*, wherein it stated that the lower court's reading of 17 U.S.C. §103(b) was "too restrictive," and that in addition to a defendant being held liable for infringement if he copied some original expression that was added by the derivative works, liability may be found for copying material which appears in both the derivative work and underlying work. *See Apple Computer*, 35 F.3d at 1447-48. Nonetheless, *Apple Computer* is inapposite in the context of this case insofar as the definition of "derivative works" therein is derived from specific reference to a license agreement in that case. *Id.* at 1440.

The actual definition of "derivative work" is a work based upon one or more preexisting works that recasts, transforms, or adapts the preexisting work. *See* 17 U.S.C. §101; *see also U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1015-16 (9th Cir. 2012). Software source code is subject to copyright protection. *See JustMed, Inc. v. Byce*, 600 F.3d 1118, 1125 n.3 (9th Cir. 2010). Under 17 U.S.C. §201(a), a copyright ownership "vests initially in the author or authors of the work," which is generally the creator of the copyrighted work. 17 U.S.C. §201(a); *see also Cmty. For Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). A copyright owner has the exclusive right to prepare and authorize preparation of derivative works based upon the copyrighted work. *See* 17 U.S.C. §106(2).

As a member of HPT, and as the Court discussed, Cannata had a duty to act for HPT's benefit and ensure the legal protection of, and assist in every way with, protection of HPT's intellectual property rights. In addition, per Section 4.2 of the Operating Agreement, HPT owned all of the "improvements, enhancements, [and] derivative works to the Technology."

Therefore, pursuant to Section 4.1 and 4.2, Cannata's duties and obligations extended to the "Technology" and all "improvements, enhancements, [and] derivative works to the Technology." As such, Cannata's contention that his obligations to protect the Company's Technology only extended to the initial "Technology" contributed and not to any improvements, enhancements or derivations of the "Technology" is simply non-sensical and baseless.

Cannata's claim also conflates the issue of "derivative works" in connection with a copyright analysis with Cannata's contractual obligations under the Operating Agreement, which are clear and unequivocal. Contrary to Cannata's claims, Cannata's contractual obligations to protect HPT's intellectual property extends to any improvements or enhancements to the "Technology" as well as derivative works to the "Technology."

Here, the "Technology" contributed by Mr. Prociuk in connection with the Operating Agreement is detailed on Attachment A to the Operating Agreement and included the "VCM Suite Software." *See* ECF No. 1-1, at Attachment A; *see also* Declaration of Keith Prociuk attached hereto as Exhibit A. The "Technology" contributed by Cannata and Mr. Piastri is similarly detailed on Attachment A. *See* ECF No. 1-1, at Attachment A. Specifically, Cannata contributed a hardware device and firmware with various features. *Id*. Likewise, Mr. Piastri contributed certain algorithms, routines and verification methods. *Id*.

Merriam-Webster's Dictionary defines "improve" as "to enhance in value or quality: make better." *See* https://www.merriam-webster.com/dictionary/improving. Merriam-Webster's Dictionary defines "enhance" as "to increase or improve in value, quality, desirability or attractiveness." *See* https://www.merriam-webster.com/dictionary/enhancement?src=search-dict-box. Merriam-Webster's Dictionary defines "derivative" as "having parts that originate from another source: made up of or marked by derived elements." *See* https://www.merriam-webster.com/dictionary/derivative.

Cannata's vague claim in the Cannata Reply (based on one sentence on page 26, lines 10-12, of Mr. Prociuk's deposition testimony, which is attached as Exhibit R to ECF No. 150) that the software, information and other Company intellectual property shared by Cannata was not "derivative" of the "Technology" work is misplaced.  First, the claim ignores that the software and information shared by Cannata was not only derivative of the "Technology" but also that it constituted improvements and/or enhancements to the "Technology" that he had an obligation to protect pursuant to the Operating Agreement.  Contrary to Cannata's suggestion, the subsequent development of the tool, hardware and firmware, which took thousands of hours over the course of several years (as Mr. Prociuk detailed in his deposition) does not means that it does *not* constitute improvements or enhancements to the "Technology," that it was *not* derivative of the "Technology" or that it was *not* made up of or marked by derived elements.  *See* Ex. A.

As detailed in the deposition of Keith Prociuk (page 26), at the time of the execution of the Operating Agreement, HPT offered products for sale, including an editor, scanner and a piece of hardware that would allow a user to communicate with an on-board computer of a vehicle. *See* Ex. A.  The "Technology" contributed by the members in connection with the Operating Agreement was designed to communicate with, read, flash, scan and edit the on-board computer of a vehicle.  *Id*.  Subsequent to the execution of the Operating Agreement, over the years, the Company modified, enhanced and improved upon the Technology, including the VCM Suite Software, the hardware device, the firmware, the algorithms, routines and verification methods (among other things), to improve, adapt, transform, enhance, make better and otherwise increase the quality of the manner in which the software and hardware was able to communicate with, read, flash, scan and edit the on-board computer of a vehicle.  *Id*.  While the source code has been rewritten from scratch several times over the years, in many cases, the derived works were influenced, or even direct recreations of, the "Technology" as can be seen in the following examples from the VCM Suite Software written by Mr. Prociuk.  *Id*.

PLAINTIFF'S SUR-REPLY IN FURTHER SUPPORT OF
MOTION FOR SUMMARY JUDGMENT ON FIRST CAUSE OF
ACTION - page 5

For example, the following is an excerpt of code that was contributed as part of the "Technology":

```
'Test Device Present
MSComm1.output = Chr(&H44) & Chr(&H6C) & Chr(&HFE) & Chr(&HF1) & Chr(&H3F)
```

*See* Ex. A.  Yet, here is the derived work that existed in the code shared by Cannata:

```
// Test Device Present
byte[] output2 = { 0x6C, 0xFE, 0xF0, 0x3F };
```

*See* Ex. A.

The following is another piece of code that was contributed by Mr. Prociuk as part of the "Technology":

```
If key_hi = &H35 Then lblStatus.Caption = "Security Codes Denied - Invalid Authorization Code"
If key_hi = &H36 Then lblStatus.Caption = "Security Codes Denied - Exceeded Number of Attempts"
If key_hi = &H37 Then lblStatus.Caption = "Security Codes Denied - Requred Delay not Expired"
```

And here is the derived work that existed in the code shared by Cannata:

```
if (Byte_Lo == 0x35) { lblStatus.Text = "Security Codes Denied - Invalid Authorization Code"; }
if (Byte_Lo == 0x36) { lblStatus.Text = "Security Codes Denied - Exceeded Number of Attempts"; }
if (Byte_Lo == 0x37) { lblStatus.Text = "Security Codes Denied - Required Delay not Expired"; }
```

A third example is contained in the following piece of code that was contributed as part of the "Technology":

```
'Return to normal mode
MSComm1.output = Chr(&H4) & Chr(&H6C) & Chr(&HFE) & Chr(&HF1) & Chr(&H20)
```

Yet, here is the derived work that existed in the code shared by Cannata:

```
// Return to normal mode
byte[] output2 = { 0x6C, 0xFE, 0xF1, 0x20 };
```

In this case, there is no genuine issue of material fact that the software and information shared by Cannata constituted either improvements, enhancements and/or derivative works to the Technology owned by the Company, and which Cannata was obligated to protect. *See* Ex. A. As detailed above, Mr. Prociuk improved, enhanced and created the VCM Suite Software. The code shared by Cannata was made up of and derived from the initial "Technology" contributed in connection with the Operating Agreement. These facts are indisputable by Cannata as he expressly testified at deposition that he "had no part in development of the VCM Suite." *See* ECF No. 112, Cannata Tr., at 77. Similarly, while the tools, hardware and firmware were written from "scratch," the VCM Suite Software, the hardware device, the firmware, the algorithms, routines and verification methods were made up of and derived from the initial "Technology" contributed by the members.

In sum, it is patently clear that when he shared the software and information with Sykes-Bonnett, Cannata violated his fiduciary duties to protect HPT's intellectual property. *See* Ex. A. For all the reasons set forth herein, there is no genuine issue of material fact with respect to Cannata's liability for breaching his fiduciary duty to Plaintiff HPT on the First Cause of Action.

Dated this 10th day of March, 2022.

        MARKS & KLEIN

        /s/ Andrew P. Bleiman, Esq.
        ANDREW P. BLEIMAN, ESQ.

        FLETCHER & LEE

        /s/ Elizabeth Fletcher, Esq.
        ELIZABETH FLETCHER, ESQ.
        Attorneys for Plaintiff HP Tuners, LLC

**INDEX OF EXHIBITS**

| Exhibit | Description | Page Count |
|---|---|---|
| A | Declaration of Keith Prociuk in Support of Plaintiff's Sur-Reply in Further Support of Motion for Summary Judgment on First Cause of Action | 4 |

# CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify under penalty of perjury that I am an employee of FLETCHER & LEE, 448 Ridge Street, Reno, Nevada 89501, and that on March 10, 2022, I served **PLAINTIFF HP TUNERS, LLC'S SUR-REPLY IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON FIRST CAUSE OF ACTION** via the Court's Notice of Electronic Filing to all those persons listed on the United States District Court CM/ECF Confirmation Sheet.

DATED this 10th day of March, 2022.

/s/ Elizabeth Dendary, CP
ELIZABETH DENDARY, CP
Certified Paralegal