1
2
3
4
5
6
7
8
9
10
11
12

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company, | Case No. 3:18-cv-00527-LRH-CSD |
| Plaintiff, | **JOINT PRETRIAL ORDER** |
| vs. | |
| KENNETH CANNATA, | |
| Defendant. | |

Pursuant to the parties' Joint Discovery Plan and Scheduling Order (ECF Nos. 16 and 17), Fed. R. Civ. P. 26(a)(3), Local Rule 26-1(b)(5) and (6), and the Court's Minute Order entered on February 25, 2022 (ECF No. 159), Plaintiff HP Tuners, LLC ("HP Tuners" or "Plaintiff") and Defendant Kenneth Cannata ("Cannata" or "Defendant") (together, the "Parties"), by and through their respective counsel, hereby submit the Joint Pretrial Order.  This Joint Pretrial Order is timely filed.

Trial counsel for the parties are:

**For Plaintiff HP Tuners, LLC:**

Andrew P. Bleiman, Esq.
MARKS & KLEIN
1363 Shermer Road, Suite 318
Northbrook, Illinois 60062
Telephone: (312) 206-5162
Email: andrew@marksklein.com

Elizabeth Fletcher, Esq.
FLETCHER & LEE
448 Ridge Street
Reno, Nevada 89501
Telephone: 775.324.1011
Email: efletcher@fletcherlawgroup.com

**For Defendant Kenneth Cannata:**

Bart K. Larsen, Esq.
SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: 702-471-7432
Email: blarsen@shea.law

After pretrial proceedings in this case,

IT IS ORDERED:

## I.     NATURE OF THE ACTION

This is an action brought by Plaintiff HPT against Defendant Cannata for: (i) breach of fiduciary duty; (ii) fraud; (iii) violation of the Computer Fraud and Abuse Act ("CFAA") arising under 18 U.S.C. §1030; (iv) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836 et seq.; (v) violation of the Copyright Act ("DMCA") arising under 17 U.S.C. § 1201(a)(1)(A); (vi) misappropriation of trade secrets arising under the Nevada Uniform Trade Secrets Act, NRS Chapter 600A; (vii) violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 et. seq.; (viiii) unfair competition under the Nevada Deceptive Trade Practices Act, NRS 598; (ix) unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS

505/1 et. seq.; (x) breach of contract; (xi) tortious interference with prospective economic relations; and (xii) conversion.  (ECF No. 1, ¶8).

In December 2003, Keith Prociuk ("Prociuk") and Chris Piastri ("Piastri") joined with Cannata to form HPT as its Members, with each contributing intellectual property consisting primarily of computer hardware and software they intended to use for automotive tuning.  (ECF No. 1, at ¶¶ 13, 16-28; ECF No. 1-1, at 2-3, 11-12).   Prociuk, Piastri, and Cannata adopted a written operating agreement for HPT on March 25, 2004 in which they defined the  intellectual property contributed to HPT as the "Technology." (ECF No. 1-1, at §4.1).  HPT asserts it owns improvements and derivative works based on the Members' original intellectual property contributions, defined in the Operating Agreement as "Additional Technology."  (*Id.*, at §4.2).

In March 2008, Prociuk, Piastri, and Cannata executed a Buy Sell Agreement (amended July 20, 2015).  (ECF No. 1-3).   The Buy Sell Agreement prescribed different methods for calculating the purchase price of an HPT member's interest under different circumstances, including that if a member was terminated for cause, the purchase price for his interest would be one-third of the book value of the company.

In or around late 2015, Cannata, Prociuk and Piastri engaged in discussions regarding the purchase Cannata's 1/3 membership interest in HPT but were unable to reach an agreement. Shortly thereafter, Cannata engaged in communications with Kevin Sykes-Bonnett ("Sykes-Bonnett") and John Martinson ("Martinson"), the principals of Syked ECU Tuning Incorporated ("Syked"). Without the knowledge of Prociuk or Piastri, Cannata executed a Non-Disclosure Agreement with "Syked Tuning Software LLC".  Thereafter, Cannata transferred a flash drive containing certain HPT files and other files and information of HPT to Sykes-Bonnett, including its "key generator" tool (with its algorithm, application, and source code).

On October 20, 2016, the HPT Members executed a Membership Interest Purchase Agreement (the "Purchase Agreement"), pursuant to which Cannata agreed to accept $6.46 million for the sale of his membership interest in HPT and $340,000 for his interest in an entity that owned

the property where HPT was located.  (ECF No. 1-2; Cannata Tr., ECF No. 112, at 191-205, 213-219).  The Purchase Agreement defined "Proprietary Information" (ECF No. 1-2, at §1.1) and generally required Cannata to deliver and destroy, and not to disclose HPT's Proprietary Information. (ECF No. 1-2, at §6.3).  The Purchase Agreement further required Cannata, for a period of 18 months, not to compete with HPT.  (*Id*., at §6.4).

The relief sought by Plaintiff includes: an award of damages in excess of $6,800,000.00 for Defendant's breaches of contract and fiduciary duties, and for fraud; an award of damages for tortious interference with prospective economic relations, for unfair competition, and conversion; compensatory damages; exemplary damages for Defendant's willful misappropriation; statutory damages pursuant to NRS 598 (Nevada) and 815 ILCS 505/1 (Illinois) for unfair competition; an accounting, disgorgement of Defendant's profits and/or statutory damages for Defendant's misappropriation of confidential and proprietary trade secrets pursuant to 18 U.S.C. §1030 (CFAA), 18 U.S.C. §1836 et seq. (DTSA), NRS Chapter 600A (Nevada), and 765 ILCS 1065/1 et seq. (Illinois); enjoining Defendant from using misappropriated trade secrets pursuant to statute; a declaratory judgment that Defendant's conduct was a violation of 18 U.S.C. 1030 (a)(4) (CFAA), and damages pursuant to same; enjoining Defendant from accessing Plaintiff HPT's computers; preliminary and permanent injunctive relief as to Defendant's access of Plaintiff's confidential information, to order the return of Plaintiff's property, to enjoin the use, access, and/or distribution, and order the return of HPT's key generator program and tool, enjoin any release of source code, enjoin Defendant's sale of any competitive software of products, or any sale or release to third parties of products using HPT's proprietary code, or derived from HPT's software or products, to enjoin any and all activities in which Defendant designs or creates any software or products which use, rely upon, or disclose HPT's proprietary or trade secret information; prejudgment and post-judgment interest; and, statutory costs and expenses, including reasonable attorneys' fees.

Defendant Cannata has denied many of the material allegations of the Complaint.

On February 24, 2022, the Court granted summary judgment: in favor of Plaintiff HPT for

its Tenth Cause of Action for breach of contract (but not as to damages); in favor of Defendant Cannata as to the Third Cause of Action brought under the Computer Fraud and Abuse Act (CFAA); and reserved judgment on the parties' motions for summary judgment as to Plaintiff's First Cause of Action for breach of fiduciary duty, with a ruling pending after additional briefing. (Dkt. 157, at 24-25).

## II.    STATEMENT OF JURISDICTION/VENUE

This Court has subject matter jurisdiction for the CFAA, DTSA and DMCA claims pursuant to 28 U.S.C. §1331.  This Court has supplemental jurisdiction for the state law claims pursuant to 28 U.S.C. §1367.  Complaint (Docket No. 1) ¶11; Answer (Docket No. 45) ¶11.

Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) in that Defendant is a resident of the state in which the district is located and a substantial part of the events or omissions giving rise the claims asserted in the Complaint occurred in this Judicial District. Complaint (Docket No. 1) ¶12; Answer (Docket No. 45) ¶12.

## III.    ADMITTED FACTS

The following facts are admitted by the parties and require no proof:

1.  In December 2003, Prociuk, Piastri and Cannata formed HPT, with each contributing intellectual property consisting primarily of computer hardware and software designed for automotive tuning.

2.  HPT adopted a written operating agreement on March 25, 2004.

3.  The Operating Agreement appointed Cannata as the President, CFO, and Secretary of HPT.

4.  Plaintiff HPT designs and manufactures computer hardware and software for tuning and calibrating engines and transmissions in automobiles, trucks, ATVs, snowmobiles, and other vehicles.

5.  HPT sells interfaces such as the MPVI, which connects to the onboard computer of vehicles and, with the HPT software allows for vehicle tuning.

6.  HPT sells credits as its license mechanism for customers to use for vehicle tuning, and

the credits are sold and distributed by means of "application keys".

7. HPT's application keys are generated by the "key generator".

8. Section 4.1 of the Operating Agreement provides as follows:

> 4.1 **Intellectual Property.**  In exchange for his membership interests, each member has contributed and assigned to the Company the intellectual property described on Exhibit A ("Technology"). Each member hereby agrees to assist the Company in any reasonable manner to obtain for the Company's benefit legal protection for the Technology and will execute, when requested, any lawful documents deemed necessary by the Company to carry out the purposes of the Technology assignment. Each member will further assist the Company in every way to enforce its rights in the Technology, testifying in any suit or proceeding involving any of the Technology or by executing any documents deemed necessary by the Company.

9. Section 4.2 of the Operating Agreement provides as follows:

> 4.2 **Additional Technology.**  Each Member also grants the Company all of his rights, titles and interest in and to improvements, enhancements, derivative works to the Technology.

10. In March 2008, Cannata, Prociuk, and Piastri entered into a Buy Sell Agreement that provided, among other things, ways to calculate the purchase price of a member's interest in HPT in various instances, such as a voluntary member withdrawal, the death of a member, or the termination of a member for cause.

11. In 2014, Defendant Cannata became aware of Sykes-Bonnett.

12. HPT's Buy Sell Agreement was amended on July 20, 2015.

13. In or around late 2015, Cannata, Prociuk and Piastri engaged in discussions regarding the purchase Cannata's 1/3 membership interest in HPT.

14. Soon thereafter, Cannata engaged in communications with Sykes-Bonnett and Martinson, the principals of Syked.

15. Without the knowledge of Prociuk or Piastri, Cannata executed a Non-Disclosure Agreement with Syked Tuning Software, LLC.

16. Thereafter, Cannata transferred a flash drive containing certain HPT files and other

6

files and information of HPT to Sykes-Bonnett, including its "key generator" tool (with its algorithm, application, and source code).

17. Prior to October 20, 2016, Cannata also shared various source code files, communication protocol documents and an administrative version of HPT's VCM Suite 2.23 with Sykes-Bonnett.

18. Prior to October 20, 2016, Prociuk and Piastri were unaware Cannata had shared certain HPT source code files, HPT's "key generator, communication protocol documents", and an administrative version of HPT's VCM Suite 2.23 with Sykes-Bonnett.

19. On or about October 20, 2016, Cannata executed the Membership Interest Purchase Agreement (the "Purchase Agreement"), agreeing to accept $6,460,000 for the sale of his membership interest in HPT

20. Cannata received an additional $340,000 for the sale of his interest in the entity that owned the real property where HPT's offices were located.

21. The Purchase Agreement, defined "Proprietary Information" as "all confidential and proprietary information of the Company."

22. The Purchase Agreement required Cannata to "deliver to HPT the software, hardware, firmware, source codes, designs, schematics and other such information" in his possession, and also to "destroy any and all copies of Proprietary Information" in his possession.

23. Cannata retained possession of certain HPT source code files and information of HPT after execution of the Purchase Agreement.

24. The Purchase Agreement required Cannata to keep HPT's "Proprietary Information" confidential and not to disclose it.

25. The Purchase Agreement prohibited Cannata from competing, directly or indirectly, with HPT for a period of 18 months.

26. Cannata disclosed certain HPT source code files and information to Sykes-Bonnett after the execution of the Purchase Agreement.

27. Cannata communicated with Sykes-Bonnett and Martinson within 18 months after the execution of the Purchase Agreement regarding the development of a hardware product intended for use with automotive tuning software developed by Sykes-Bonnett and Martinson.

28. Cannata did not disclose to Prociuk or Piastri prior to executing the Purchase Agreement on or about October 20, 2016 that he had previously shared certain HPT source code files, the HPT "key generator", or an administrative version of the VCM Suite 2.23 software with Sykes-Bonnett.

29. Cannata did not disclose to Prociuk or Piastri that his wife obtained an ownership interest in Syked within 90 days after the execution of the Purchase Agreement.

30. Section 12 of the Buy-Sell Agreement entitled "Termination of Services" provides as follows:

> Notwithstanding any other provision in this Agreement, in the event a Member's services with the LLC is terminated for "Cause" (which is defined to mean any act that is materially injurious to the LLC or intended to benefit the Member at the expense of the LLC), then the remaining Members and the LLC shall have the purchase rights set forth in Section 6.1 except that the valuation on which the LLC and/or the Remaining Members shall purchase the terminated Member's interest shall be no more than the lesser of book value or the value set forth in Section 5.4 of this Agreement.

## IV.    FACTS NOT ADMITTED BUT WILL NOT BE CONTESTED BY EVIDENCE

The following facts, though not admitted, will not be contested at trial by evidence to the contrary:

None.

## V.    ISSUES OF FACT TO BE TRIED

The following are issues of fact to be tried and determined at trial:

1. Damages as to all of Plaintiff HPT's claims for relief (except for Plaintiff's Third Cause of Action claiming violation of the CFAA, as to which summary judgment has been granted in favor of Defendant Cannata).

**A.  First Claim for Relief – Breach of Fiduciary Duty[1]**

2. Whether Defendant Cannata breached his fiduciary duty that he owed to Plaintiff.

3. Whether Defendant Cannata's breach of fiduciary duty owed from Cannata to Plaintiff proximately caused damages.

**B.  Second Claim for Relief – Fraud**

4. Whether Defendant Cannata concealed material fact(s) from Plaintiff under circumstances that created a duty to speak.

5. Whether Defendant Cannata intended to induce false beliefs of Plaintiff by his alleged concealment of material fact(s).

6. Whether Plaintiff could not have discovered the truth of material fact(s) concealed by Defendant Cannata through its own reasonable inquiry or inspection, or whether Plaintiff was prevented from discovering said truth.

7. Whether Plaintiff justifiably relied upon Defendant Cannata's alleged silence as a representation that concealed material fact(s) did not exist.

8. Whether information allegedly concealed from Plaintiff by Defendant Cannata was such that Plaintiff HPT would have acted differently had it known the concealed fact(s).

9. Did Plaintiff HPT's reliance on not knowing material fact(s) allegedly concealed by Defendant Cannata, if any, result in damages to Plaintiff.

**C.  Fourth Claim for Relief – Violation of the Defend Trade Secrets Act, 18 U.S.C. §1836, *et seq.* ("DTSA")**

10. Whether Plaintiff HPT possessed valuable trade secret(s), as "trade secret(s)" are defined by 18 U.S.C. § 1839.

11. Whether Plaintiff HPT can establish the existence of any trade secret.

12. Whether Defendant Cannata misappropriated Plaintiff's trade secrets, if any, through unlawful acquisition, use, or disclosure, pursuant to the definitions of 18 U.SC. §1839.

---

[1] The Court's determination as to summary judgment on this claim for relief is pending.

13. Whether Defendant Cannata's alleged misappropriation of Plaintiff's trade secrets, if any, was in breach of an express or implied contractual obligation of Cannata's under a duty not to disclose same.

**D.  Fifth Claim for Relief – Violation of the Copyright Act, 17 U.S.C. §1201(A)(1)(a)**

14. Whether Plaintiff HPT was the copyright owner of works.

15. Whether Defendant Cannata decrypted any encrypted work of Plaintiff HPT without Plaintiff's authority, thus constituting direct circumvention of a technological measure that effectively controlled access to a copyrighted work.

16. Whether Defendant Cannata was authorized to circumvent technological measures which controlled access to Plaintiff's copyrighted works.

17. Whether Defendant Cannata's alleged circumvention of HPT's technological measures, if any, was willful.

18. Whether Defendant Cannata's alleged circumvention of HPT's technological measures, if any, was for private commercial gain.

19. Whether Defendant Cannata's alleged circumvention of HPT's technological measures, if any, caused HPT to incur damages.

**E.  Sixth Claim for Relief – Violation of the Nevada Uniform Trade Secrets Act, NRS Chapter 600A ("NTSA")**

20. Whether Plaintiff HPT can establish the existence of any trade secret.

21. Whether information Defendant Cannata accessed or obtained from Plaintiff HPT constituted a valuable trade secret.

22. Whether Defendant Cannata's alleged use, disclosure, or nondisclosure of HPT's trade secrets, if any, constituted a "misappropriation" as defined by the NTSA.

23. Whether Defendant Cannata misappropriated HPT's trade secrets, if any, in breach of an express or implied contractual obligation.

24. Whether Cannata's misappropriation of HPT's trade secrets, if any, caused HPT to incur damages.

**F.  Seventh Claim for Relief – Violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.* ("ITSA")**

25. Whether Plaintiff HPT can establish the existence of any trade secret

26. Whether information Defendant Cannata allegedly accessed or obtained from Plaintiff HPT constituted trade secret(s).

27. Whether Defendant Cannata's alleged appropriation of HPT's trade secret(s) was through improper acquisition, disclosure, or use.

28. Whether Cannata's alleged misappropriation of HPT's trade secrets, if any, caused HPT to incur damages.

**G.  Eighth Claim for Relief – Unfair Competition under the Nevada Deceptive Trade Practices Act, NRS Chapter 598 ("NDTPA")**

29. Whether Defendant Cannata's alleged conduct constitutes a "deceptive trade practice" as defined by NRS §598.0915.

30. Whether Defendant Cannata's alleged actions were privileged or justified.

31. Whether Defendant Cannata's alleged conduct deceived the public and violated the public interest.

32. Whether Cannata's alleged conduct caused HPT to incur damages.

**H.  Ninth Claim for Relief – Unfair Competition under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.**

33. Whether Defendant Cannata's alleged conduct by passing off HPT's credits and keys as authentic products and offerings of HPT, used or employed any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of any material fact(s) with the intent that others rely on the concealment, suppression, or omissions of such material fact(s).  (See 815 ILCS 505/2)

34. Whether Defendant Cannata's alleged conduct constituted unfair competition.  (See

815 ILCS 505/2).

35. Whether Defendant Cannata's alleged actions were privileged or justified.

36. Whether Defendant Cannata's alleged conduct by passing off HPT's credits and keys as authentic products and offerings of HPT deceived the public and violated the public interest.

37. Whether Cannata's alleged conduct caused HPT to incur damages.

**I. Eleventh Claim for Relief – Tortious Interference with Prospective Contractual or Economic Relations**

38. Whether HPT maintains valid business relationships with vendors, resellers, and/or customers.

39. Whether HPT had a reasonable expectation that its valid business relationships would continue without disruption by any of Defendant Cannata's conduct.

40. Whether Defendant Cannata had knowledge of HPT's business relationships and reasonable expectations regarding the same.

41. Whether Cannata was involved in the solicitation of vendors, customers, or suppliers of HPT to purchase license keys.

42. Whether Cannata was involved with HPT competitor(s) to develop products using HPT's confidential or proprietary information.

43. Whether Cannata was involved with altering or manipulating HPT interfaces to allow such interfaces to be used without the need to purchase authorized credits from HPT.

44. Whether Cannata was involved in the sale or providing to third parties license keys or any HPT software containing licensing.

45. Whether Cannata was involved in providing HPT's confidential or proprietary intellectual property to third parties.

46. Whether Cannata interfered with HPT's business relationships with vendors, resellers, and/or customers.

47. Whether Defendant Cannata's alleged conduct caused HPT to incur damages.

**J.  Twelfth Claim for Relief - Conversion**

48. Whether Cannata has wrongfully exerted dominion or control over property belonging to HPT inconsistent with his rights (or lack thereof) in such property.

49. Whether Cannata has intentionally exerted dominion or control over property belonging to HPT inconsistent with his rights (or lack thereof) in such property.

50. Whether Cannata has failed or refused to return property belonging to HPT.

51. Whether Cannata has failed to return HPT property belonging to HPT which constituted HPT's confidential and proprietary intellectual property, documents, and information.

52. Whether Cannata's dominion or control over HPT's property and failure to return same caused HPT to incur damages.

## VI.   ISSUES OF LAW TO BE TRIED

None except to the extent any of the foregoing issues of fact is determined to be an issue of law.

## VII.   EXHIBITS AND DEPOSITIONS

**A.  The following exhibits are stipulated into evidence in this case and may be so marked by the clerk:**

As to the following additional exhibits, the parties have reached the stipulations stated:

The Parties agree (aside from the below exceptions) that exhibits 1 - 12, 24 - 27, and 87 - 91 as identified in the Joint Trial Exhibit List attached hereto as Exhibit 1 will be admissible.  The Parties reserve all rights to object to the remaining exhibits identified in the Joint Trial Exhibit List and any additional exhibits that may be

designated by the parties.

The Parties agree that they may designate additional, demonstrative or summary exhibits in advance of trial.

**B.  As to the following exhibits, the party against whom the same will be offered objections to their admission on the grounds stated:**

See Exhibit 1 (Joint Trial Exhibit List).

**C.  The parties intend to present electronic evidence for purposes of deliberations, including videos.**

**D.  Depositions**

(1)  Plaintiff HPT may offer the following depositions:

- Deposition of Chris Piastri taken March 22, 2021

- Deposition of Bobbie Cannata taken 04/10/2019

- Deposition of Kevin Sykes-Bonnett taken May 16, 2019

- Plaintiff will supplement this disclosure in advance of trial.

(2)  Defendant Cannata may/will offer the following depositions:

- Deposition of Chris Piastri taken March 22, 2021

- Deposition of Keith Prociuk taken March 17, 2021

- Deposition of Kevin Sykes-Bonnett taken September 25, 2018

- Deposition of Kevin Sykes-Bonnett taken May 16, 2019

- Defendant will supplement this disclosure in advance of trial.

The parties have represented to each other that they expect that their deposed witnesses will be available for trial.  If any of those witnesses are not available for trial, each party reserves the right to offer absent witnesses' depositions at trial and agrees to cooperate with the service of trial subpoenas to their witnesses, if necessary.

**E. Objections to Depositions**

(1) Defendant Cannata objects to Plaintiff's depositions as follows:

Objection to the extent that any deposition testimony will be used in lieu of actual live testimony.

(2) Plaintiff HPT objects to Defendant's depositions as follows:

Objection to the extent that any deposition testimony will be used in lieu of actual live testimony.

## VIII.   WITNESSES

The following witnesses may be called by the parties at trial:

**A. Plaintiff's witnesses:**

Plaintiff may call the following witnesses at trial:

1.   Keith Prociuk

2.   Kenneth Cannata

3.   Kevin Sykes-Bonnett

4.   John R. Bone, CPA

5.   Elizabeth Groves, Ph.D.

6.   Chris Piastri

7.   John Martinson

**B. Defendant's witnesses:**

Defendant may call the following witnesses at trial:

1.   Keith Prociuk

2.   Chris Piastri

3.   Kenneth Cannata

4.   Jeremiah Grant, MBA, CVA, CLCS

5.  Mark D. Gianturco, Ph.D.

6.  Bobbie Cannata

7.  Kevin Sykes-Bonnett

8.  John Martinson

9.  Shlomo Sherman

## IX.   MOTIONS IN LIMINE TO BE FILED

**A. Plaintiff's Motions:**

1.  To exclude witnesses from the courtroom during the testimony of other witnesses pursuant to Fed. R. Evid. 615.

2.  To exclude and bar any evidence as to the financial status or wealth of any party (as irrelevant and prejudicial).

3.  To exclude and bar any evidence of settlement offers, communications, or negotiations pursuant to Fed. R. Evid. 408.

4.  To exclude and bar any evidence that the Superchips code was created by Ford, or by anyone other than HPT (on the basis of hearsay and direct contradiction of the Superchips technology definition in the subject Joint Development Agreement).

5.  To exclude and bar any evidence or claim that HPT's information or intellectual property was not theirs (on the basis of hearsay; this contention is not supported by any admissible evidence in the record).

6.  To exclude and bar any evidence as to the sales, profitability, or financial performance of HPT (as irrelevant, and any arguable probative value is outweighed by potential prejudice to HPT).

7.  To exclude and bar any evidence as to the conduct or malfeasance of third parties in the creation of fraudulent credits (as irrelevant to HPT's claims seeking damages specifically for the credits generated by Sykes-Bonnett with the key generator that Defendant Cannata provided to him).

8.  To exclude and bar any evidence whatsoever of Sykes-Bonnett conduct.

9.  To exclude and bar any evidence of any other lawsuits, including arguments addressing the malfeasance of other persons or entities by engaging in the same or similar conduct as that which is alleged against Defendant Cannata (as irrelevant to the claims asserted in this matter and whether Defendant is liable for his conduct, and pursuant to Fed. R. Evid. 403 would create unfair prejudice, and to confuse the issues and mislead jurors).

10. To exclude and bar any evidence of Plaintiff HPT's corporate transactions or mergers, or that it is not a limited liability company (pursuant to Fed. R. Evid. 401, 403).

11. To exclude and bar any evidence of negotiations or communications leading up to the MIPA, and bar any and all other evidence or argument of matters leading up to or outside of the parties' written contracts (as violative of the parol evidence rule).

12. To exclude and bar any evidence as to whether Defendant Cannata received a pecuniary benefit from his misappropriation of HPT property - namely, any claim that he was not paid money for same (irrelevant, misleading in that his wife was awarded ownership in a competitive business and prejudicial).

13. To exclude and bar any evidence or argument by Cannata that contends Cannata should have been terminated for cause based on misconduct and malfeasance in connection with Cannata's prior handling of the books and records of HPT and HPT's taxes but was not (as irrelevant).

14. To exclude and bar any attempt or argument by Defendant Cannata to introduce alternate formulas or bases for calculation of Plaintiff's damages beyond that which is already in the record or properly introduced by disclosed experts.

15. To exclude and bar all evidence and argument invoking attempted "rescission" of the MIPA and/or to reinstate the Buy-Sell Agreement (as irrelevant to any claim or defense, and to confuse the issues and mislead jurors).

**B. Defendant's Motions:**

1.  Motion to exclude any reference to any documents, communications, or other evidence

not produced during discovery.

2. To exclude witnesses from the courtroom during the testimony of other witnesses pursuant to Fed. R. Evid. 615.

3. Motion to exclude any damages not disclosed pursuant to Fed. R. Civ. P. 26(a).

4. Motion to exclude any character evidence to prove conduct pursuant to FRE 404.

5. Motion to preclude any testimony or evidence which is privileged under any applicable marital privilege or other privilege.

6. Motion to disqualify and/or exclude testimony from Plaintiff's proposed expert John Boone.

7. Motion to disqualify and/or exclude testimony from Plaintiff's proposed expert Elizabeth Groves.

8. To the extent Plaintiff's proposed experts are permitted to testify, motion to limit testimony from any of Plaintiff's proposed experts to the opinions expressed in their respective reports.

9. Motion to preclude scientific, technical, or other specialized testimony (including, but not limited to, code comparison) from Prociuk, Piastri, and any other lay person not previously disclosed as an expert witness pursuant to FRE 702.

10. Motion to preclude any assertion or claim of trade secret regarding publicly available information.

11. Motion to preclude the use of any exhibit or document listed as confidential or highly confidential without first de-designating the same.

12. Motion to exclude any reference to how much HPT's alleged "trade secrets" cost to develop as the Court has already concluded that such a damage calculation is improper.

13. To the extent that Plaintiff does not elect the proper law which applies to its claims, motion to require Plaintiff to elect its remedies prior to trial to narrow the issues for the Court and jurors to resolve.

14. Motion to exclude evidence improperly obtained by HPT through Christopher Breton-

18

Jean.

15. Motion to preclude any assertion or claim for enforcement of the Buy Sell Agreement or evidence of the "book value" of HPT as the Buy Sell Agreement was subsumed and replaced by the Membership Purchase Agreement.

## X.    TRIAL DATES

The attorneys or parties have met and jointly offer these three trial dates:

-January 23, 2023

-January 30, 2023

-February 6, 2023

It is expressly understood by the undersigned that the Court will set the trial of this matter on one of the agreed-upon dates if possible; if not, the trial will be set at the convenience of the Court's calendar.

The Parties anticipate they will stipulate to waive their respective requests for a trial by jury in this matter and to proceed with a bench trial instead.

## XI.    LENGTH OF TRIAL

It is estimated that the trial will take a total of 5-7 days.

APPROVED AS TO FORM AND CONTENT:

FLETCHER & LEE                          SHEA LARSEN

/s/ Elizabeth Fletcher, Esq.            /s/ Bart Larsen, Esq.
ELIZABETH FLETCHER, ESQ.                BART LARSEN, ESQ.
CECILIA LEE, ESQ.                       Attorney for Defendant Kenneth Cannata

MARKS & KLEIN

/s/ Andrew P. Bleiman, Esq.
ANDREW P. BLEIMAN, ESQ.
Attorneys for Plaintiff HP Tuners, LLC

## XII.    ACTION BY THE COURT

This case is set for trial on the fixed/stacked calendar for 8:30A.M., Monday, January 30, 2023.  Calendar call will be held at 1:30PM, Thursday, January 19, 2023.

This pretrial order has been approved by the parties to this action as evidenced by their signatures or the signatures of their attorneys hereon, and the order is hereby entered and will govern the trial of this case.  This order may not be amended except by court order and based upon the parties' agreement or to prevent manifest injustice.

DATED: July 6, 2022.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

**EXHIBIT 1**

**JOINT TRIAL EXHIBIT LIST**

| No. | Description | | | |
|---|---|---|---|---|
| 1 | Complaint for Injunctive Relief and Damages with All Attachments – Dkt 1 | | | |
| 2 | Cannata Answer to Complaint | | | |
| 3 | HPT First Requests for Admission to Defendant | | | |
| 4 | Cannata 1st Supp Resp to Requests for Admission | | | |
| 5 | Cannata 2nd Supp Responses to Interrogatories | | | |
| 6 | Cannata 2nd Supp Responses to Requests for Production | | | |
| 7 | Cannata Declaration – Dkt 68 | | | |
| 8 | Cannata Declaration – Dkt 87 | | | |
| 9 | 2004-03 HP Tuners Operating Agreement | | | |
| 10 | 2004-09-17 Operating Agreement Amendment | | | |
| 11 | 2008-03 Buy Sell Agreement | | | |
| 12 | 2015-07-20 Buy Sell Agreement-First Amendment | | | |
| 13 | INTENTIONALLY OMITTED | | | |
| 14 | 2016-03-23 Email Communications and NDA (Sykes-Bonnett/Martinson/Cannata) | | | |
| 15 | 2016-04-08   Fhptuners@yahoo.com/Cannata   email communications | | | |
| 16 | 2016-04-08Fhptuners@yahoo.com/Cannata   email communications | | | |
| 16A | 2016-04-08   email   attachment   (HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY) | | | |
| 17 | 2016-04-10   Fhptuners@yahoo.com/Cannata   email communications | | | |
| 18 | 2016-04-15   Fhptuners@yahoo.com/Cannata   email communications | | | |
| 19 | 2016-05-06   Fhptuners@yahoo.com/Cannata   email communications | | | |
| 20 | 2016-05-10   Fhptuners@yahoo.com/Cannata   email communications | | | |
| 21 | 2016-05-20   Fhptuners@yahoo.com/Cannata   email communications | | | |
| 22 | 2016-06-17   Fhptuners@yahoo.com/Cannata   email communications   (HIGHLY   CONFIDENTIAL   – ATTORNEYS' EYES ONLY) | | | |
| 23 | 2016-10-16Fhptuners@yahoo.com/Cannata   email communications | | | |
| 24 | 2016-10-20   HPT   Membership   Interest   Purchase | | | |

| No. | Description | | | |
|---|---|---|---|---|
| | Agreement | | | |
| 25 | 2016-10-20 HPT Assignment Agreement | | | |
| 26 | 2016-10-20 PPC Membership Interest Purchase Agreement | | | |
| 27 | 2016-10-20 PPC Assignment Agreement | | | |
| 28 | 2016-11-10   Fhptuners@yahoo.com/Cannata   email communications | | | |
| 29 | 2016-11-12Fhptuners@yahoo.com/Cannata   email communications | | | |
| 30 | 2017-01-09_Fhptuners@yahoo.com/Cannata   email communications | | | |
| 30A | 1_9_2017 email attachment AppKey.xls (HIGHLY CONFIDENTIAL - AEO) | | | |
| 30B | AppKey License Slot tab - HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY | | | |
| 30C | AppKey Ver 0 Tab - HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY | | | |
| 30D | 2017-01-09 email attachment Interface Reprogramming (HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY) | | | |
| 31 | E38 ECM_TCM Programming Harness | | | |
| 32 | e38benchtop-2T | | | |
| 33 | Bench Harness drawing | | | |
| 34 | Messages Ken Cannata S5 ken only.xlsx | | | |
| 35 | Call Log Ken Cannata S5 ken only.csv | | | |
| 36 | Text Ken Cannata S7 ken only.xlsx | | | |
| 37 | Call Log Ken Cannata S7 ken only.csv | | | |
| 38 | Cannata-Sykes Bonnett Text Messages - HPT-KC000002-235 | | | |
| 39 | Cannata-Sykes Bonnett Text Messages - HPT-KC000236 | | | |
| 40 | KSB - KC Additional Text Messages - HPT-KC002563-2583 | | | |
| 41 | KSB - KC Additional Text Messages - HPT-KC002584 | | | |
| 42 | PayPal Lani Carney - HPT-SET000300-303 | | | |
| 43 | Facebook Posts/Messages - HPT-SET000305-310 | | | |
| 44 | Facebook Post/Message - HPT-SET000351 | | | |
| 45 | Facebook Post/Message - HPT-SET000352 | | | |
| 46 | Facebook Post/Message - HPT-SET000354 | | | |
| 47 | Screenshot - HPT-SET000373 | | | |
| 48 | Screenshot - HPT-SET000374 | | | |
| 49 | Screenshot - HPT-SET000375 | | | |

| No. | Description | | | |
|-----|-------------|---|---|---|
| 50 | Ken Distributions March 1 2016 Oct 20 2016 | | | |
| 51 | Payment Records | | | |
| 52 | Subpoena Response Fhptuners – HPT-KC002602-2606 | | | |
| 53 | Yahoo Inbox Overview – HPT-KC000613 | | | |
| 54 | 2017-01-30 Email Communications – SYK0001415 | | | |
| 55 | 2017-01-30 Syked Tuning Software Shares Purchase Agreement – SYK000365-368 | | | |
| 56 | 2017-03-15 Syked ECU Buy-Sell Agreement – SYK0002019-2036 | | | |
| 57 | 2017-10-28 Email Communications (Martinson/Cannata) – Bobbie Cannata Deposition Ex. 66 | | | |
| 58 | 2018-02-02 Email Communications (Martinson/Cannata) – Bobbie Cannata Deposition Ex. 70 | | | |
| 59 | 2018-02-23 Email Communications (Martinson/Cannata) – SYK0001701 | | | |
| 60 | 2017-10-13 – Email Communications (Martinson/Cannata) – HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY | | | |
| 61 | Screenshot-Firmware Builder – HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – Email Communications | | | |
| 62 | 2017-11-08 Email Communications (Martinson/Cannata) – HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY | | | |
| 63 | Cable Responses Screen – HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY | | | |
| 64 | 2017-12-21 – Email Communications (Martinson/Cannata) – HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY | | | |
| 65 | Email Communications (Martinson/Sykes-Bonnett/Cannata) – SYK0004032 | | | |
| 66 | Draft Buy Sell - SYK0001927-37 | | | |
| 67 | Email Communications (Martinson/Sykes-Bonnett/Cannata) – SYK0004036-62 | | | |
| 68 | Email Communications (Martinson/Sykes-Bonnett/Cannata) – SYK0004064-95 | | | |
| 69 | 16-03-31 March 31, 2016 Balance Sheet – HPT-KC000551-553 | | | |
| 70 | December 2015 Book Value – HPT-KC002617-18 | | | |
| 71 | Cannata-Sykes Bonnett - Text Messages | | | |
| 72 | 2017-11-09 Communication - Syked ECU Tuning to | | | |

23

| No. | Description | | | |
|---|---|---|---|---|
| | Cannata – CAN000025 | | | |
| 73 | 2017-12-21 Communication - Cannata to John Martinson – CAN000066 | | | |
| 74 | Arrowfish Rebuttal Report 01082021.pdf | | | |
| 75 | SSVS, Appendix B, Glossary of International Business Terms[3].pdf | | | |
| 76 | HP Tuners v. Kenneth Cannata Expert Report of John Bone 11.20.2020.pdf | | | |
| 77 | Gianturco Expert Report.pdf | | | |
| 78 | Groves_Report_2002083_11-20-2020.pdf | | | |
| 79 | CW_Assembler_Manual HC12_RM_3_22_2021.pdf | | | |
| 80 | P35.pdf | | | |
| 81 | 2005-08-31 Superchips HPT Jt Dev Agmt EXECUTION COPY – HPT-KC000382-94 | | | |
| 82 | MC9S12DP256B Device User Guide V02.15 | | | |
| 83 | S12MSCANV2 Chapter 1 - Freescale's Scalable Controller Area Network - MSCAN Block Guide | | | |
| 84 | Excerpts from code with whitespace | | | |
| 85 | 2018-02-02 Email Communications (Martinson/Cannata) – Bobbie Cannata Deposition Ex. 69 | | | |
| 86 | 2019-03-11 Communication and production – Bobbie Cannata Deposition Ex. 67 | | | |
| 87 | Cannata's First Amended Answer to Complaint | | | |
| 88 | Cannata's Second Supplemental Responses to HP Tuners' First Set of Requests for Admissions | | | |
| 89 | Cannata's Third Supplemental Answers to HP Tuners' First Set of Interrogatories | | | |
| 90 | Cannata's First Supplemental Interrogatory Responses with Signed Verification | | | |
| 91 | Cannata's First Supplemental Interrogatory Responses with Signed Verification | | | |
| 92 | INTENTIONALLY OMITTED | | | |
| 93 | INTENTIONALLY OMITTED | | | |
| 94 | INTENTIONALLY OMITTED | | | |
| 95 | INTENTIONALLY OMITTED | | | |
| 96 | INTENTIONALLY OMITTED | | | |
| 97 | INTENTIONALLY OMITTED | | | |
| 98 | INTENTIONALLY OMITTED | | | |
| 99 | INTENTIONALLY OMITTED | | | |
| 100 | INTENTIONALLY OMITTED | | | |

| No. | Description | | | |
|-----|-------------|---|---|---|
| 101 | September 16, 2003 NDA – HPT-KC000240-241 | | | |
| 102 | Written Consent Form [ECF No. 125 as Exhibit F] | | | |
| 103 | Message chain between Kevin Sykes-Bonnett and Eric Brooks starting on October 22, 2014 – HPT-SET00014-298 | | | |
| 104 | January 21, 2016 letter from Kaye Scholer LLP – HPT-KC000502-512 | | | |
| 105 | February 6, 2016 Letter from Kolesar & Leatham to Kaye Scholer LLP on behalf of HPT – HPT-KC000543-550 | | | |
| 106 | February 25, 2016 Letter from Kolesar & Leatham to Kaye Scholer LLP on behalf of HPT – CAN000638 | | | |
| 107 | March 31, 2016 Hilco Valuation Report of HPT - CAN000642 | | | |
| 108 | Voicemail regarding Ken Cannata's ability to retain information for personal tuning - CAN000658 | | | |
| 109 | List of compatible vehicles for VCM Suite 2.23 from HPT website | | | |
| 110 | Defendants' Trial Brief from Washington Action [ECF No. 223 in Case 3:17-cv-05760) | | | |
| 111 | Email Chain regarding Sykes-Bonnett – HPT-SET000116-129 | | | |
| 112 | Email Chain regarding Sykes-Bonnett – HPT-SET000314-321 | | | |
| 113 | Email Chain with Gregory Gilvach – HPT-SET001022-1029 | | | |
| 114 | HPT's Responses to Cannata's First Set of Interrogatories | | | |
| 115 | HPT's Responses to Cannata's Second Set of Interrogatories | | | |
| 116 | HPT's Responses to Cannata's First Set of Requests for Production | | | |
| 117 | HPT's Responses to Cannata's Second Set of Requests for Production | | | |
| 118 | HPT's 2014 federal income tax return - CAN000636 | | | |
| 119 | HPT's 2015 federal income tax return - CAN000636 | | | |
| 120 | February 11, 2016 email from Kolesar & Leatham to Kay Scholer LLP  - CAN000622-625 | | | |
| 121 | May 30, 2016 email from Kay Scholer LLP to Kolesar & Leatham - CAN000654 | | | |
| 122 | September 19, 2016 email from Kolesar & Leatham to Kay Scholer LLP with attachments - CAN000677 | | | |

| No. | Description | | | |
|-----|-------------|---|---|---|
| 123 | September 21, 2016 email from Kay Scholer LLP to Kolesar & Leatham with attachments - CAN000678-679 | | | |
| 124 | September 30, 2016 email from Kay Scholer LLP to Kolesar & Leatham with attachments - CAN000682 | | | |
| 125 | October 3, 2016 email from Kay Scholer LLP to Kolesar & Leatham with attachments - CAN000683 | | | |
| 126 | October 6, 2016 email from Kay Scholer LLP to Kolesar & Leatham with attachments - CAN000695-698 | | | |
| 127 | October 21, 2016 email from Kolesar & Leatham to Kay Scholer LLP with attachments - CAN000743 | | | |
| 128 | October 21, 2016 email from Kay Scholer LLP to Kolesar & Leatham with attachments - CAN000758 | | | |
| 129 | October 27, 2016 email from Kolesar & Leatham to Kay Scholer LLP with attachments - CAN000767-768 | | | |
| 130 | October 27, 2016 email from Kolesar & Leatham to Kay Scholer LLP with attachments - CAN000771 | | | |
| 131 | October 28, 2016 email from Kolesar & Leatham to Kay Scholer LLP with attachments - CAN000775 | | | |
| 132 | October 28, 2016 email from Kolesar & Leatham to Kay Scholer LLP - CAN000790-794 | | | |
| 133 | October 28, 2016 email from Kolesar & Leatham to Kay Scholer LLP  - CAN000817-823 | | | |
| 134 | November 10, 2016 email from Kolesar & Leatham to Kay Scholer LLP - CAN000872-873 | | | |
| 135 | December 2, 2016 FedEx delivery confirmation - CAN000890 | | | |
| 136 | March 2004 Minutes of the Meeting of the Members of HP Tuners, LLC | | | |
| 137 | HP Tuners, LLC Unit Purchase Agreements - HPT-KC000320-332 | | | |
| 138 | HP Tuners, LLC 2008 Profit & Loss - CAN000891-893 | | | |
| 139 | Superchips License and Distribution Agreement | | | |
| 140 | Superchips Settlement Agreement | | | |
| 141 | January 5, 2015 HPT Management Meeting Minutes | | | |
| 142 | July 1, 2015 HPT Management Meeting Minutes | | | |
| 143 | August 31 2015 HPT Management Meeting Minutes | | | |
| 144 | January 8, 2016 email chain - HPT-KC000525-527 | | | |
| 145 | January 15, 2016 email chain with attachments - HPT-KC000531 | | | |
| 146 | Key Person Sponsorship, Marketing, Research & | | | |

| No. | Description | | | |
|-----|-------------|--|--|--|
|  | Development Strategy | | | |
| 147 | 2014-2015 Emails between Ken Cannata and Kevin Sykes-Bonnett | | | |
| 148 | Gregor Gilvach emails - HPT-SET000381-507 | | | |