Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Email: blarsen@shea.law
        kwyant@shea.law

*Attorneys for Defendant*
*Kenneth Cannata*

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company;<br><br>           Plaintiff,<br><br>     vs.<br><br>KENNETH CANNATA,<br><br>           Defendants. | CASE NO. 3:18-CV-00527-LRH-WGC<br><br>**DEFENDANT KENNETH CANNATA'S MOTION IN LIMINE TO PRECLUDE ANY REFERENCE TO DEVELOPMENT COSTS INCURRED BY HP TUNERS, LLC FOR ALLEGED TRADE SECRETS** |

        Defendant Kenneth Cannata ("Cannata") hereby files this *Motion in Limine to Preclude Any Reference to Development Costs Incurred by HP Tuners, LLC for Alleged Trade Secrets* (the "Motion"). This Motion is supported by the papers and pleadings on file herein, the following Memorandum of Points and Authorities, any exhibits attached hereto, and any oral argument this Court may entertain on the Motion.

        DATED this 30th day of December 2022.

                                SHEA LARSEN

                                /s/ *Bart K. Larsen, Esq.*
                                Bart K. Larsen, Esq.
                                Nevada Bar No. 8538
                                Kyle M. Wyant, Esq.
                                Nevada Bar No. 14652
                                1731 Village Center Circle, Suite 150
                                Las Vegas, Nevada 89134

                                *Attorneys for Kenneth Cannata*

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

- 1 -

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

The purpose of this Motion in limine is to ensure that HP Tuners, LLC ("HPT") and its agents and witnesses abide by this Court's ruling that "HPT can only seek to recover development costs that Cannata saved by misappropriating HPT's trade secrets—not how much the trade secrets actually cost to develop."[1]  Cannata reasonably believes that HPT will attempt to introduce the speculative development costs of HPT in developing its "trade secrets"[2] set forth in HPT's proffered expert John Bone's report (the "Bone Report").  Indeed, Mr. Bone bases his entirety of calculations of damages (which were disclosed for the first time via his report and not in accordance with FRCP 26(a)) regarding misappropriation of trade secrets **on HPT's development costs**.[3]  Throughout, Mr. Bone states that his calculations are based on "plaintiff's cost to develop the misappropriated information" and "HPT's cost to develop the misappropriated information."[4] Mr. Bone's calculations of alleged avoided costs by Cannata are identical to the development costs he derives from speculative estimates provided by HPT for events that occurred back in 2004.

While Mr. Bone's report is entirely speculative and should be stricken in its entirety,[5] HPT cannot simply try to avoid this Court's findings by using development costs and rebranding the same as avoided costs.  This is especially true considering that even Mr. Bone states that Cannata could have developed this information on his own and because the allegedly misappropriated code was not taken wholesale but rather utilized for review by Kevin Sykes-Bonnett ("Sykes-Bonnett") in developing his already existing code and HPT has admittedly performed no comparative review of its alleged trade secrets to the allegedly infringing code of Sykes-Bonnett.[6] To allow HPT to simply

---

[1] *See* Motion for Partial Summary Judgment Order [ECF No. 157], 18:17-19.

[2] *See id.* at 17:18-22 (acknowledging that HPT has failed to identify how its software and firmware constitute trade secrets under the law).

[3] *See* Bone Report, submitted with Cannata's Motion for Partial Summary Judgment [ECF No. 124] as Exhibit N.

[4] *Id.* at ¶¶ 45-46.

[5] This is the subject of another Motion in Limine from Cannata and will not be briefed in full herein.

[6] *See* HPT's Supplemental Responses to Cannata's Second Set of Interrogatories, submitted with Cannata's Motion for Partial Summary Judgment [ECF No. 124] as Exhibit S ("Moreover, a full comparison of Syked ECU's code against HPT's code has not been performed…consequently, the nature and extent of the similarities between the

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

repackage development costs as avoided costs would go against this Court's ruling as well as the cases provided for herein.

## II.    BRIEF FACTUAL BACKGROUND[7]

1.    HPT is a Nevada limited liability company founded by Prociuk, Piastri, and Cannata on or about December 21, 2003.

2.    HPT is in the business of developing and selling software and hardware that allows car enthusiasts and automotive shops to alter or tune vehicle performance parameters.

3.    Starting in or around 2004, Cannata, Prociuk, and Piastri worked together to develop the initial version HPT's software and a hardware device that allowed a user to connect a computer to a vehicle and to access and change the manufacturer's factory settings for the vehicle.  Cannata was primarily responsible for the development of the hardware device, which was initially known as the Version 1 interface.  Prociuk and Piastri were primarily responsible for the development of HPT's software, which was known as the VCM Suite version 1.0

4.    Cannata subsequently designed and developed a newer hardware interface that became known as the MPVI.  The MPVI was released to market in 2006 or 2007 along with VCM Suite version 2.0, which was developed by Prociuk and Piastri using, in many instances, code from third-party sources, including proprietary automobile manufacturer encryption keys HPT purchased from third parties and used to gain access to and reprogram vehicle computer systems as well as information HPT obtained by reverse engineering or hacking products offered for sale by its competitors.

5.    As newer versions of the software (VCM Suite) were released to the public, HPT would cease development on the older versions of the software. VCM Suite 2.24 was released in early 2013 and, as such, all development of VCM Suite 2.23 ceased as of May 2013.

6.    By 2015, disagreements had arisen between Cannata and the other members of HPT. Ultimately, HPT purchased Cannata's stake in the company on October 20, 2016 through a

---

software developed by HPT and the Syked ECU software…***is not known***.").

[7] A full recitation of the relevant facts involved in this proceeding can be found at Cannata's Motion for Partial Summary Judgment [ECF No. 124].

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Membership Interest Purchase Agreement (the "Purchase Agreement").  However, prior to his interest being purchased, Cannata began discussing a potential business relationship with Kevin Sykes-Bonnett ("Sykes-Bonnett") and Syked Tuning Software, LLC ("Syked Tuning") in the event that Cannata was forced out of HPT.

7.     Prior to executing the Purchase Agreement, Cannata sent certain source code files of older, outdated technology (some of which that was publicly available on HPT's website) to Sykes-Bonnett.  Cannata believed that he was authorized to do so based on his one-third ownership interest of HPT, his management position, the publicly available nature of the information, as well as repayment for Sykes-Bonnett's provision of code from Chrysler, Jeep, and Dodge based on a prior agreement between HPT and Sykes-Bonnett.

8.     Subsequently, HPT initiated the above-captioned lawsuit asserting, among other things, that Cannata provided HPT's trade secrets to Sykes-Bonnett in violation of HPT's Operating Agreement.

9.     During discovery in this matter, HPT retained a proffered expert—Elizabeth Groves, Ph.D.—who engaged in analyzing computer code used in the MPVI and developed by Cannata and comparing the same to a competing hardware tuning cable developed by Syked Tuning.  In total, Ms. Groves compared 42 files utilized by the Syked Tuning hardware cable to 142 files utilized by the MPVI.

10.    No other code comparison was performed by any expert in this matter and no other code comparison was disclosed pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(ii) before discovery closed in this matter.  Indeed, HPT admits that it has not performed any such analysis regarding HPT's software code and the allegedly infringing and misappropriated code.[8]

11.    On or about November 20, 2020, Plaintiff proffered a report from its supposed Expert Mr. Bone in which Mr. Bone states that he based his damage calculations entirely on "the full value

---

[8] *See* HPT's Supplemental Responses to Cannata's Second Set of Interrogatories, submitted with Cannata's Motion for Partial Summary Judgment [ECF No. 124] as Exhibit S ("Moreover, a full comparison of Syked ECU's code against HPT's code has not been performed…consequently, the nature and extent of the similarities between the software developed by HPT and the Syked ECU software…*is not known*.").

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

of the misappropriated information and trade secrets" and used "HPT's cost to develop" as a measure of damages.[9]

12.     For example, Mr. Bone calculates that the "cost to develop the VCM Editor source code version 2.23 amounted to approximately $3.9 million," "the cost to develop and maintain the MPVI Firmware amounted to approximately $190,000," and that "cost to develop and maintain the MPVI Hardware and Hardware Schematics was approximately $59,000."[10]  Mr. Bone then simply adds these development costs and re-labels them as "avoided costs."[11]

13.     The calculations of HPT's development costs were not based on any personal knowledge of Mr. Bone, but rather came from estimates of hours that HPT believes its employees spent on development back in 2004-2013.[12]

14.     Indeed, Mr. Bone relied entirely on a document entitled "HPT Development Time Estimates.xlsx" that was a self-serving document developed by HPT as to events that occurred approximately fifteen years prior to Mr. Bone's report.[13]

15.     Mr. Bone's report does not take into account any technological advances in coding software, nor does it take into account the software already developed by Sykes-Bonnett as no comparison has even been performed.

16.     HPT does not dispute that it never lost access to its software, firmware, or hardware, nor was it prevented from utilizing the same.

17.     On or about February 24, 2022, the Court ruled in the parties competing Motions for Partial Summary Judgment (the "MPSJ Order").[14]

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

---

[9] *See* Bone Report, submitted with Cannata's Motion for Partial Summary Judgment [ECF No. 124], ¶¶ 45-45, as Exhibit N.

[10] *Id.* at ¶¶ 49-51.

[11] *Id.* at ¶ 52.

[12] *Id.* at ¶ 48 ("As such, there are no records I can review to determine the amount of time that was spent developing the information that is alleged to have been misappropriated by Cannata.").

[13] *Id.*

[14] *See* ECF No. 157.

18.     In the MPSJ Order, this Court, based on briefing provided to it by the parties, ruled that "HPT can only seek to recover development costs that Cannata saved by misappropriating HPT's trade secrets—not how much the trade secrets actually cost to develop."[15]

19.     At no point did HPT ever provide a supplemental report from Mr. Bone, and as such, Mr. Bone's report is in direct violation with this Court's holdings and this Court should preclude any reference to saved development costs as it previously ruled.

## III.   LEGAL ARGUMENT

### A.  Legal Standard for Motions in Limine

A motion in limine is a procedural device to request that certain inadmissible evidence not be referred to or offered at trial. *Gonzales v. Shotgun Nev. Invs., LLC*, No. 2:13-cv-00931, 2017 U.S. Dist. LEXIS 23052, *8 (D. Nev. Feb. 17, 2017); *see also United States v.* Heller, 551 F.3d 1108, 1111-12 (9th Cir. 2009). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 569 U.S. 38, 41 n.4 (1980). Despite judges having broad discretion when ruling on motions in limine, such motions should be granted when potential evidence to be offered will be prejudicial or inadmissible. *See Gonzales*, 2017 U.S. Dist. LEXIS at * 8.

### B.  As this Court Already Acknowledged, HPT's Alleged Cost of Development Is Not an Appropriate Measure of Damages.

It cannot be disputed that Mr. Bone simply calculated HPT's cost to develop based on estimates provided to him by HPT that were outside of his own personal knowledge with no way to verify the same.[16] It further cannot be disputed that Mr. Bone also takes HPT's costs to develop and rebrands them as "avoided costs" without any analysis.[17] Indeed, Mr. Bone's report concedes that he cannot put into specifics Cannata's experience in developing the software, hardware, and

---

[15] *Id.* at 18:17-19.

[16] *See* Bone Report, submitted with Cannata's Motion for Partial Summary Judgment [ECF No. 124], ¶¶ 45-51, as Exhibit N.

[17] *Compare id.* at ¶¶ 49-51 *with* ¶ 52.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

firmware[18] nor did he take into account any comparative analysis between HPT's allegedly protected trade secrets and the infringing product from Syked ECU because no analysis was ever performed.[19] In other words, Mr. Bone basis his entire calculations on what this Court already stated was improper—development costs incurred by HPT.[20]  Any reference to these saved development costs must be precluded based on this Court's prior ruling.[21]  Moreover, at no point has HPT ever asserted that it was prevented from using or could not use the allegedly misappropriated software, hardware, and firmware at issue.  Rather, HPT had access to its software and continued to make new versions beyond the version that was allegedly misappropriated.

As has been widely accepted across the country, development costs are not the appropriate measure of damages for unjust enrichment claims associated with trade secrets misappropriation when the plaintiff has not suffered any loss or use of its product. *See, e.g.*, *Oracle Corp. V. SAP AG*, 734 F.Supp.2d 956, 970 (N.D. Cal. 2010) ("Plaintiffs cannot recover 'saved development costs' for alleged unjust enrichment, where plaintiffs retained their right to use, distribute, license, and profit from the software and support materials at issue.").  As stated in *Oracle*, "[i]t would ***not be equitable, logical, or legally permissible to award plaintiffs the full replacement value of property that they never lost or gave away***." *Id.* (emphasis supplied). *E.J. Brooks Co. v. Cambridge Sec. Seals*, 105 N.E. 3d 301 (Ct. App. N.Y. 2018) ("We agree that damages in trade secret actions must be measured by the losses incurred by the plaintiff, and that damages ***may not be based on the infringer's avoided development costs***.") (emphasis supplied); *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, No. 14-cv-748, 2016 U.S. Dist. LEXIS 50157, *6 (W.D. Wisc. Apr. 14, 2016) ("The measure of damages under unjust enrichment is limited to the value of the benefit conferred on the defendant; any costs the plaintiff may have incurred are generally irrelevant" and precluding a plaintiff from presenting

---

[18] *Id.* at ¶ 51.

[19] *See* HPT's Supplemental Responses to Cannata's Second Set of Interrogatories, submitted with Cannata's Motion for Partial Summary Judgment [ECF No. 124] as Exhibit S ("Moreover, a full comparison of Syked ECU's code against HPT's code has not been performed…consequently, the nature and extent of the similarities between the software developed by HPT and the Syked ECU software…***is not known***.").

[20] *See* ECF No. 157 at 18:17-19.

[21] HPT previously argued that this Court's prior rulings fell under the "law of the case doctrine" and should be precluded from arguing that this Court's prior rulings somehow are not binding.  *See* ECF No 157, 10:11-13.

the same to a jury) (citing *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 477 (7th Cir. 2009)).  Here, the Court should grant the Motion and simply enforce the rule it has already announced—that the alleged development costs of HPT are not a permissible measure of damages.[22]

## III.   CONCLUSION

Based on the foregoing and this Court's prior rulings, HPT, as well as its agents and proffered experts (if allowed to testify), must be precluded from any reference to HPT's incurred development costs associated with the allegedly misappropriated trade secrets (which have not been substantively identified).

DATED this 30th day of December 2022.

SHEA LARSEN

/s/ *Bart K. Larsen, Esq.*
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134

*Attorneys for Kenneth Cannata*

---

[22] This is especially true considering the entirely speculative nature of Mr. Bone's calculations, which are the subject of Cannata's Motion in Limine to Disqualify and/or Exclude Testimony from Mr. Bone, which is incorporated fully herein.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**CERTIFICATE OF MEET & CONFER CONFERENCE**

Pursuant to LR 16-3(a), the undersigned counsel certifies that counsel for the parties met and conferred on December 29, 2022 in an effort to resolve the subject matter of Defendant's motions in limine without court action. The parties were unable to resolve the issues contained herein in a mutually agreeable manner.

DATED this 30th day of December 2022.

SHEA LARSEN

/s/ *Bart K. Larsen, Esq.*
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134

*Attorneys for Kenneth Cannata*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2022, I electronically transmitted the foregoing **DEFENDANT KENNETH CANNATA'S MOTION IN LIMINE TO PRECLUDE ANY REFERENCE TO DEVELOPMENT COSTS INCURRED BY HP TUNERS, LLC FOR ALLEGED TRADE SECRETS** to the Office of the Clerk of the United States District Court, District of Nevada, using the CM/ECF System, for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants listed for this matter.

By: /s/ *Bart K. Larsen, Esq.*

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

- 9 -