Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Email: blarsen@shea.law
       kwyant@shea.law

*Attorneys for Defendant
Kenneth Cannata*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| HP TUNERS, LLC, a Nevada limited liability company;<br><br>Plaintiff,<br><br>vs.<br><br>KENNETH CANNATA,<br><br>Defendants. | CASE NO. 3:18-CV-00527-LRH-WGC<br><br>**DEFENDANT KENNETH CANNATA'S MOTION IN LIMINE TO DISQUALIFY AND EXCLUDE TESTIMONY FROM PLAINTIFF'S PROPOSED EXPERT ELIZABETH GROVES** |

Defendant Kenneth Cannata ("Cannata") hereby files this *Motion in Limine to Disqualify and Exclude Testimony from Plaintiff's Proposed Expert Elizabeth Groves* (the "Motion"). This Motion is supported by the papers and pleadings on file herein, the following Memorandum of Points and Authorities, any exhibits attached hereto, and any oral argument this Court may entertain on the Motion.

DATED this 30th day of December 2022.

                                                **SHEA LARSEN**

                                                /s/ *Bart K. Larsen, Esq.*
                                                Bart K. Larsen, Esq.
                                                Nevada Bar No. 8538
                                                Kyle M. Wyant, Esq.
                                                Nevada Bar No. 14652
                                                1731 Village Center Circle, Suite 150
                                                Las Vegas, Nevada 89134

                                                *Attorneys for Kenneth Cannata*

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

The purpose of this Motion in limine is to disqualify and preclude HP Tuners, LLC's ("HPT") proposed expert Elizabeth Groves ("Ms. Groves") from testifying at trial. As this Court is aware, FRE 702 requires that a proposed expert testify on matters "within the reasonable confines of his subject area." *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 839 (9th Cir. 2011). The Ninth Circuit has routinely upheld the disqualification of proposed experts who lack specific expertise, notwithstanding their general expertise. *See, e.g.*, *Ralston-Purina Co. v. Bertie*, 541 F.2d 13633, 1364 (9th Cir. 1976) (affirming disqualification of putative expert because they failed to establish expertise in relevant area at issue in the litigation).

Here, HPT has asserted claims against Cannata based on HPT's allegations that Cannata misappropriated and disclosed HPT's alleged source code relating to the automobile tuning industry to a competitor in the automobile tuning industry and that the competitor has incorporated HPT's alleged source code into the competitor's products. However, Ms. Groves admittedly does not have experience in the automotive industry, let alone the tuning of automobiles. Nor does Ms. Groves have any educational experience relating to software design or development or code comparison. Instead, Ms. Groves sole educational experience is comprised of degrees in physics, which is nothing like software analysis or code comparison for automobile tuning technology. Further, Ms. Groves has not made any publications, presentations, or other expertise in any field, let alone the automotive tuning field, since 2013. Nor has Ms. Groves ever been qualified as an expert in any case. Moreover, Ms. Groves admitted during her deposition that she lacks experience in this field, has only a general understanding of the technology at issue, and does not know whether the code at issue is actually the property of HPT. Simply, Ms. Groves is not qualified to testify in this matter and should be precluded from doing so as an expert because she will not assist the factfinder and has no relevant experience necessary to apply to the facts of this case.

///

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

## II.     BRIEF FACTUAL BACKGROUND[1]

1. HPT is a Nevada limited liability company founded by Prociuk, Piastri, and Cannata on or about December 21, 2003.

2. HPT is in the business of developing and selling software and hardware that allows car enthusiasts and automotive shops to alter or tune vehicle performance parameters.

3. Starting in or around 2004, Cannata, Prociuk, and Piastri worked together to develop the initial version HPT's software and a hardware device that allowed a user to connect a computer to a vehicle and to access and change the manufacturer's factory settings for the vehicle. Cannata was primarily responsible for the development of the hardware device, which was initially known as the Version 1 interface. Prociuk and Piastri were primarily responsible for the development of HPT's software, which was known as the VCM Suite version 1.0

4. Cannata subsequently designed and developed a newer hardware interface that became known as the MPVI. The MPVI was released to market in 2006 or 2007 along with VCM Suite version 2.0, which was developed by Prociuk and Piastri using, in many instances, code from third-party sources, including proprietary automobile manufacturer encryption keys HPT purchased from third parties and used to gain access to and reprogram vehicle computer systems as well as information HPT obtained by reverse engineering or hacking products offered for sale by its competitors.

5. As newer versions of the software (VCM Suite) were released to the public, HPT would cease development on the older versions of the software. VCM Suite 2.24 was released in early 2013 and, as such, all development of VCM Suite 2.23 ceased as of May 2013.

6. By 2015, disagreements had arisen between Cannata and the other members of HPT. Ultimately, HPT purchased Cannata's stake in the company on October 20, 2016 through a Membership Interest Purchase Agreement (the "Purchase Agreement"). However, prior to his interest being purchased, Cannata began discussing a potential business relationship with Kevin

---

[1] A full recitation of the relevant facts involved in this proceeding can be found at Cannata's Motion for Partial Summary Judgment [ECF No. 124].

Sykes-Bonnett ("Sykes-Bonnett") and Syked Tuning Software, LLC ("Syked Tuning") in the event that Cannata was forced out of HPT.

7.   Prior to executing the Purchase Agreement, Cannata sent certain source code files of older, outdated technology (some of which that was publicly available on HPT's website) to Sykes-Bonnett. Cannata believed that he was authorized to do so based on his one-third ownership interest of HPT, his management position, the publicly available nature of the information, as well as repayment for Sykes-Bonnett's provision of code from Chrysler, Jeep, and Dodge based on a prior agreement between HPT and Sykes-Bonnett.

8.   Subsequently, HPT initiated the above-captioned lawsuit asserting, among other things, that Cannata provided HPT's trade secrets to Sykes-Bonnett in violation of HPT's Operating Agreement.

9.   During discovery in this matter, HPT retained a proffered expert—Elizabeth Groves, Ph.D.—who engaged in analyzing computer code used in the MPVI and developed by Cannata and comparing the same to a competing hardware tuning cable developed by Syked Tuning. In total, Ms. Groves compared 42 files utilized by the Syked Tuning hardware cable to 142 files utilized by the MPVI.

10.  No other code comparison was performed by any expert in this matter and no other code comparison was disclosed pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(ii) before discovery closed in this matter. Indeed, HPT admits that it has not performed any such analysis regarding HPT's software code and the allegedly infringing and misappropriated code.[2]

11.  Ms. Groves, through here report, admits that she has educational experience and degrees in the field of physics, and has no educational experience in the software analysis or automotive field.[3]

---

[2] *See* HPT's Supplemental Responses to Cannata's Second Set of Interrogatories, submitted with Cannata's Motion for Partial Summary Judgment [ECF No. 124] as Exhibit S ("Moreover, a full comparison of Syked ECU's code against HPT's code has not been performed…consequently, the nature and extent of the similarities between the software developed by HPT and the Syked ECU software…*is not known*.").

[3] *See* Report of Elizabeth Groves, attached hereto as Exhibit 1.

12. Ms. Groves curriculum vitae also states that she has not been involved in the publication of any papers on software code comparison or the automotive industry, nor has she engaged in any talks or peer reviewed articles regarding software code, computer code, or the automotive industry.[4]

13. During Ms. Groves deposition, she testified that she had extremely limited experience as an expert, stating that she had only ever written a single report as an expert witness and has never been formally qualified as an expert witness for trial.[5]

14. She also testified that she was hired primarily to conduct a forensic analysis and review of whether Cannata had access to HPT alleged proprietary information as well as the hardware at issue, not review computer code and do a comparison.[6]

15. Ms. Groves also testified that she had never does not have any experience writing code for automotive software.[7]

16. Ms. Groves also testified that she has no experience in tuning automotives and that she only engaged in reading automotive codes approximately one time 15 years ago.[8]

17. Ms. Groves further testified that she did not analyze the firmware associated with the hardware at issue.[9]

18. Ms. Groves further testified that she has not connected the software at issue with the hardware or any vehicle to test the same.[10]

19. Ms. Groves also testified that she did not perform a comparison of any of the software code in the specific files at issue and that she did not do an "exhaustive analysis" besides looking at the folder names.[11]

---

[4] *Id.*

[5] *See* Deposition of Elizabeth Groves, p. 18, attached hereto as Exhibit 2.

[6] *Id.* at p. 25.

[7] *Id.* at p. 28.

[8] *Id.* at pp. 41-45.

[9] *Id.* at p. 46.

[10] *Id.* at pp. 47-48.

[11] *Id.* at pp. 62-63.

20. Ms. Groves also admitted that HPT's alleged trade secrets and property includes source code from third parties, including Superchips, but that she is unaware of which files actually belong to which parties.[12]

21. Ms. Groves was also questioned about Cannata's expert report prepared by Mr. Gianturco and admitted that she has no reason to disagree with numerous parts of Cannata's expert report which supports that Cannata is not liable to HPT for any alleged trade secret misappropriation or copying.[13]

22. Ms. Groves testified that she did not undertake any effort to determine what code belonged to third-party automobile companies, such as Ford, rather than HPT.[14]

23. Ms. Groves also testified that she did not have an understanding of the similarities in functionality between HPT's allegedly owned hardware (the MPVI) and the competing cable developed by Syked Tuning.[15]

24. Ms. Groves further testified that she has no familiarity with the software developed by Syked Tuning.[16]

### III. LEGAL ARGUMENT

#### A. Legal Standard for Motions in Limine

A motion in limine is a procedural device to request that certain inadmissible evidence not be referred to or offered at trial. *Gonzales v. Shotgun Nev. Invs., LLC*, No. 2:13-cv-00931, 2017 U.S. Dist. LEXIS 23052, *8 (D. Nev. Feb. 17, 2017); *see also United States v.* Heller, 551 F.3d 1108, 1111-12 (9th Cir. 2009). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 569 U.S. 38, 41 n.4 (1980). Despite judges having broad discretion when ruling on motions in limine, such motions should be granted when

---

[12] *Id.* at pp. 78-80.

[13] *Id.* at p. 88.

[14] *Id.*

[15] *Id.* at pp. 109-110.

[16] *Id.* at p. 115.

- 6 -

potential evidence to be offered will be prejudicial or inadmissible. *See Gonzales*, 2017 U.S. Dist. LEXIS at * 8.

### B. Legal Standard for Expert Testimony.

FRE 702 governs the admissibility of expert testimony and only permits the presentation of "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Under Rule 702, two preliminary determinations must be made by the court: (1) whether the expert testimony could assist the trier of fact and (2) whether the alleged expert is properly qualified to give the testimony sought. *Class B. Ltd. Partner Comm. v. Sampson (In re GFI Commer. Mortg. LLP)*, 2013 U.S. Dist. LEXIS 124046 (N.D. Cal. Aug. 29, 2013). FRE 702 requires that a proposed expert testify on matters "within the reasonable confines of his subject area." *Avila*, 633 F.3d at 839. The Ninth Circuit has routinely upheld the disqualification of proposed expert who lack specific expertise, notwithstanding their general expertise. *See, e.g.*, *Ralston-Purina Co.*, 541 F.2d at 1364; *Ambe v. Air France, S.A.*, 2021 U.S. Dist. LEXIS 150196 (C.D. Cal. Aug. 10, 2021) (disqualifying an expert in part based on lack of experience, training, and personal knowledge of the industry).

For expert testimony to be considered remotely admissible, the witness must be sufficiently qualified as an expert by knowledge, skill, experience, training, or education, it must be useful to the trier of fact, and "(1) the testimony [must be] based upon sufficient facts or data, (2) the testimony [must be] the product of reliable principles and methods, and (3) the witness [must have] applied the principles and methods reliable to the facts of this case." FRE 702. The Supreme Court has described judges as "gatekeepers of evidence." *Daubert v. Merrell Dow Pharms*, 509 U.S. 579, 597 (1993). If an expert's testimony fails to be either based upon sufficient facts or data, fails to be the product of reliable principles, or fails to be relevant to the facts at hand, the testimony should be excluded. *See, e.g.*, *United States v. Scholl*, 166 F.3d 964, 971 (9th Cir. 1999).

The relevance test under FRE 702 is higher than the standard for bare relevance. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 n. 17 (9th Cir. 1995) ("*Daubert II*"). Indeed, district courts must exclude proffered testimony "unless they are convinced that it speaks clearly and directly

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

to an issue in dispute in the case, and that it will not mislead the jury." *Id.* The test for reliability requires that the expert's methods be adequately explained and that methods are grounded in science and the Ninth Circuit has "held that [o]ne very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Clausen v. M/V New Carissa*, 399 F.3d 1049, 1056 (9th Cir. 2003). "If the testimony is not based on independent research then what is required is proof that the research and analysis supporting the proffered conclusions have been subjected to normal scientific scrutiny through peer review and publication." *Id.* (citing *Daubert II*, 43 F.3d at 1317). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 1467-47 (1997).

The party proffering an expert bears the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. *Joinder*, 522 U.S. at 144; *Domingo v. T.K.M.D.* 289 F.3d 600, 607 (9th Cir. 2002). No separate evidentiary hearing is required. *United States v. Alatorre*, 222 F.3d 1098, 1102 (9th Cir. 2002). Here, Ms. Groves cannot be qualified as an expert in automotive software or software comparison based on her lack of experience, education, and post-graduate activities. As such, the Motion should be granted.

### C. HPT Cannot Meet its Burden of Establishing that Ms. Groves Satisfies the *Daubert* Requirements.

FRE 702 requires that a proffered expert testify on matters within the reasonable confines of his subject area. *Avila*, 633 F.3d at 839 (9th Cir. 2011). The proffering party bears the burden of showing that the expert possesses the knowledge, skill, experience, training and education that qualifies the purported expert to give such opinions. *Thomas v. Newton Int'l Etners.*, 42 F.3d 1266, 1269 (9th Cir. 1994); *see Ambe*, 2012 U.S. Dist. LEXIS 150196 at *11 (disqualifying a purported expert because they have no experience in the industry for which they claim to be an expert).

Here, Ms. Groves admits that she does not have any degree in software analysis or code comparison.[17] Indeed, Ms. Groves educational background is in physics only.[18] Further, none of Ms. Groves' publications or public talks deal with the software comparison or the automotive industry, and she has not engaged in such publications or talks since 2013.[19] Nor has Ms. Groves ever been qualified as an expert for trial.[20]

Moreover, she admits that she never reviewed automobile code prior to her engagement with HPT and has not developed or written any automobile code.[21] Ms. Groves has no to very limited tuning experience and did not review the firmware or software at issue.[22] She also did not connect the vehicle to the software via the hardware.[23] She further testified that she has no reason to disagree with numerous conclusions of Cannata's expert Mr. Gianturco who ultimately concludes that Cannata engaged in no copying of automotive code.[24] Simply, Ms. Groves is not qualified in the field of automotive software or code comparison. *See, e.g.*, *Avila*, 633 F.3d at 839 (9th Cir. 2011); *Thomas v. Newton Int'l Etners.*, 42 F.3d 1266, 1269 (9th Cir. 1994); *see Ambe*, 2012 U.S. Dist. LEXIS 150196 at *11 (disqualifying a purported expert because they have no experience in the industry for which they claim to be an expert). Ms. Groves should be excluded not only based on these reasons but based on the fact that the software industry and automotive industry is a rapidly changing field and Ms. Groves has no recent experience with the same. *See, e.g.*, *Andrews v. Metro N. Commuter R.R.*, 882 F.2d 705 (2d Cir. 1989) (finding that an expert was improperly qualified as such by the district court when he had only a few experiences relevant to the subject matter at issue).

---

[17] *See* Report of Elizabeth Groves, attached hereto as <u>Exhibit 1</u>.
[18] *Id.*
[19] *Id.*
[20] *See* Deposition of Elizabeth Groves, p. 17, attached hereto as <u>Exhibit 2</u>.
[21] *Id.* at pp. 25-28,
[22] *Id.* at pp. 46, 48.
[23] *Id.* at p. 48.
[24] *Id.* at pp. 85-86.

### III. CONCLUSION

Based on the foregoing and this Court's prior rulings, Ms. Groves should be precluded from testifying regarding any software comparison or automotive tuning code as a result of her limited to non-existent experience in said fields, especially considering her lack of education and the fact she has never been qualified as an expert in any matter.

DATED this 30th day of December 2022.

SHEA LARSEN

/s/ *Bart K. Larsen, Esq.*
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134

*Attorneys for Kenneth Cannata*

### CERTIFICATE OF MEET & CONFER CONFERENCE

Pursuant to LR 16-3(a), the undersigned counsel certifies that counsel for the parties met and conferred on December 29, 2022 in an effort to resolve the subject matter of Defendant's motions in limine without court action. The parties were unable to resolve the issues contained herein in a mutually agreeable manner.

DATED this 30th day of December 2022.

SHEA LARSEN

/s/ *Bart K. Larsen, Esq.*
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134

*Attorneys for Kenneth Cannata*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2022, I electronically transmitted the foregoing **DEFENDANT KENNETH CANNATA'S MOTION IN LIMINE TO DISQUALIFY AND EXCLUDE TESTIMONY FROM PLAINTIFF'S PROPOSED EXPERT ELIZABETH GROVES** to the Office of the Clerk of the United States District Court, District of Nevada, using the CM/ECF System, for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants listed for this matter.

By: /s/ *Bart K. Larsen, Esq.*

# EXHIBIT 1

# To <u>Motion in Limine to Disqualify and Exclude Testimony from Plaintiff's Proposed Expert Elizabeth Groves</u>

## Report of Elizbaeth Groves

## FILED UNDER SEAL

# EXHIBIT 2

# To <u>Motion in Limine to Disqualify and Exclude Testimony from Plaintiff's Proposed Expert Elizabeth Groves</u>

**Deposition Transcript of Elizabeth Groves**

**FILED UNDER SEAL**