1
2
3
4
5                              UNITED STATES DISTRICT COURT

6                                   DISTRICT OF NEVADA

7                                          * * *

8    HP TUNERS, LLC, a Nevada limited liability      Case No. 3:18-cv-00527-LRH-CSD
     company,
9                                                    ORDER
                          Plaintiff,
10
              v.
11
     KENNETH CANNATA,
12
                          Defendant.
13

14          Before the Court are a total of 18 motions in limine; 12 filed by Plaintiff HP Tuners, LLC,

15   ("HPT") (ECF Nos. 177-s, 179-s), and 6 filed by Defendant Kenneth Cannata ("Cannata") (ECF

16   Nos. 182, 183, 184, 185, 186, 188-s). The parties timely responded. Also before the Court are three

17   motions to seal exhibits; one filed by HPT (ECF No. 181) and two filed by Cannata (ECF No. 187,

18   ECF No. 199).[1] The Court grants the parties' motions to seal exhibits *nunc pro tunc*. As to the

19   _____

20   [1]    HPT motions the Court to seal the following exhibits to its motions in limine: Exhibits A
            and B to its Motion to Bar Testimony and Report of Jeremiah H. Grant (ECF No. 177-s),
21          and Exhibits A, B, C, and D to its Consolidated Motions in Limine (ECF No. 179-s).
            Cannata motions the Court to seal the following exhibits to its motion in limine: Exhibits
22          1 and 2 to its Motion to Disqualify and Exclude Testimony from Plaintiff's Proposed
            Expert Elizabeth Groves (ECF No. 188-s). Cannata also motions the Court to seal Exhibit
23          A attached to its opposition to HPT's Consolidated Motions in Limine (ECF No. 197-s).
            Due to the nature of the sealed material, the Court grants the parties' requests to seal the
24          exhibits attached to the briefings (ECF Nos. 177-s, 179-s, 188-s, and 197-s). While the
            Court would prefer to keep all the sealed information confidential, some of it is necessary
25          to resolve the pending motions. The Court will therefore include some information
            unredacted in this Order where appropriate. The Court recognizes that the parties have
26          privacy interests in the confidential information, but the public has even greater interest in
            the reasoning behind the Court's Order. For clarity, the briefings that contain sealed
27          exhibits will be denoted with an "-s" designation. *See* ECF Nos. 177-s, 179-s, 188-s, and
            197-s.
28

                                                    1

motions in limine, the Court has fully reviewed the record and for the reasons below, grants in part and denies in part these motions.

## I.      BACKGROUND

HPT is a Nevada limited liability company founded by Keith Prociuk ("Prociuk"), Chris Piastri ("Piastri"), and Cannata on December 31, 2003, with its principal place of business in Buffalo Grove, Illinois. ECF No. 1 at 4. On or about March 25, 2004, HPT adopted a written operating agreement (the "Operating Agreement"), which was signed by all three founding members. Based on the Operating Agreement, each member had one-third ownership interest in HPT as signed on March 25, 2004. *Id.* The Operating Agreement further stated that it is governed by Nevada law. ECF No. 1-1 at 2. Additionally, in March 2008, Prociuk, Piastri, and Cannata entered into a Buy Sell Agreement (the "Buy Sell Agreement") that provided, among other things, ways to calculate the purchase price of a member's interest in HPT as well as actions that required unanimous member approval. ECF No. 1-2.

As far as its business, HPT describes itself as a "niche" company that provides "cost effective automotive tuning and data acquisition solutions" for both private car enthusiasts and professional shops. *Id.* HPT designs and manufactures computer hardware and software for tuning and calibrating engines and transmissions in automobiles, trucks, ATVs, snowmobiles, and other vehicles. *Id.* A "core function" of the business is to sell interfaces, such as the Multi Point Vehicle Inspection ("MPVI"),[2] which connect to the onboard computer of a vehicle and allow for individuals to use the HPT software and tune their vehicle. *Id.* HPT also sells "credits," which HPT describes as the license mechanism that customers use to tune their vehicles. *Id.* The sale and distribution of credits via "application keys," is a fundamental component of HPT's business. *Id.* at 9. The application keys are generated by the "key generator," which HPT describes as, "the single most valuable piece of intellectual property that [it] possesses." *Id.* HPT safeguards its confidential and proprietary information through the usage of computer passwords, hard drive

---

[2]      The MPVI is a comprehensive assessment of, among other things, tire wear, remaining engine oil life, brakes, wiper blades, glass condition, battery condition, and fluid levels.

encryption, firewalls, and rules preventing company employees from copying or transferring any of the information. *Id.* at 6.

In 2014, Cannata became aware of an individual named Kevin Sykes-Bonnett ("Sykes-Bonnett"), who is a principal of Syked ECU Tuning, LLC ("Syked")—a competitor of HPT. ECF No. 128-s at 6. Sykes-Bonnett had information, including software and code relating to Chrysler, Jeep, and Dodge vehicles that were not supported by HPT's software at the time. *Id.* In early 2015, Cannata reached out to Sykes-Bonnett to discuss purchasing this information from Sykes-Bonnett to be used by HPT in expanding its supported vehicle lineup. *Id.* Cannata delivered a $5,000 check to Sykes-Bonnett in March 2015 and received a copy of the technical information that HPT sought. *Id.* at 7.

By 2015, disagreements emerged between Cannata and the other members of HPT. During a July 2015 management meeting, Prociuk and Piastri requested that Cannata agree to amend the Buy Sell Agreement to increase the threshold for transactions requiring unanimous member approval from $100,000 to $200,000 and to exempt transactions relating to hiring and compensating employees from such threshold. ECF No. 128-s at 7–8. Around July 20, 2015, each member signed an amendment to the Buy Sell Agreement to that effect. *Id.* In Cannata's mind, this was part of a unilateral plot to terminate him without cause. *Id.* In January 2016, Prociuk and Piastri adopted a written consent from members of HPT through which Cannata's role in the management and control of HPT significantly decreased. *Id.*

Afterwards, in or around February 2016, Prociuk and Piastri initiated discussions with Cannata about buying him out of his membership interest in HPT. ECF No. 112 at 25, 31, 108. After months of negotiations, Prociuk and Piastri agreed to purchase Cannata's stake in the company on October 20, 2016. ECF No. 1-2; ECF No. 112 at 191–205, 213–219. Pursuant to the Membership Interest Purchase Agreement (the "Purchase Agreement"), HPT paid Cannata $6.8 million for his stake in the company, and in return, Cannata agreed to several restrictive covenants. ECF No. 1-2. These covenants included returning all of HPT's proprietary and confidential information and destroying any related information he had in his possession, a prohibition on disclosing any confidential information to third parties, and a non-compete clause. *Id.* at 11–13.

While negotiating his exit from HPT, on March 11, 2016, Cannata entered into a non-disclosure agreement (the "NDA") with Syked. ECF No. 1 at 7; ECF No. 125 at 9. After entering into the NDA, Cannata emailed Syked certain source code files related to HPT's VCM Suite, including, among other things, an administrative version of VCM Suite 2.23, and a USB thumb drive that included a copy of HPT's key generator. ECF No. 128-s at 10. In January of 2017, after the sale of Cannata's interest in HPT, Cannata's wife obtained an ownership interest in Syked. ECF No. 112 at 237, 241-42, 266, 284, 317-19, 334-36, 381-82.

HPT first learned of Cannata's alleged misconduct in August 2018 and filed this lawsuit thereafter, alleging several causes of actions: (1) breach of fiduciary duty; (2) fraud; (3) violation of the Computer Fraud and Abuse Act ("CFAA") (18 U.S.C. §1030); (4) violation of the Defend Trade Secrets Act ("DTSA") (18 U.S.C. §1836); (5) violation of the Digital Millennium Copyright Act ("the Copyright Act") (17 U.S.C. §1201(A)(1)(A)); (6) a violation of the Nevada Uniform Trade Secrets Act; (7) a violation of the Illinois Trade Secrets Act; (8) unfair competition under the Nevada Deceptive Trade Practices Act; (9) unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act; (10) common law breach of contract; (11) tortious interference with prospective contractual or economic relations, and (12) conversion. According to HPT, if it had learned or been advised that Cannata had shared HPT's confidential and proprietary information, Cannata would have been terminated for cause pursuant to the Buy Sell Agreement and not have paid Cannata more than his one-third interest in the book value of HPT. ECF No. 120 at 5. HPT, relying on the report of its expert (the "Bone Report"), John R. Bone ("Mr. Bone"), presents to the Court its calculations for damages for Cannata's alleged misconduct. ECF No. 130-s at 80–167.

At the conclusion of summary judgment, the Court ordered the following: Cannata's and HPT's motions for partial summary judgment on the first cause of action for breach of fiduciary duty were denied; Cannata's and HPT's motions for partial summary judgment on the second cause of action for fraudulent concealment were denied; Cannata's motion for partial summary judgment as to the third cause of action for violation of the CFAA was granted; Cannata's and HPT's motions for partial summary judgment as to the fourth, sixth, and seventh causes of action

for misappropriation of trade secrets were denied; Cannata's motion for partial summary judgment as to the fifth cause of action for violation of the Copyright Act was denied; HPT's motion for partial summary judgment as to the tenth cause of action for breach of contract was granted as to liability and denied as to damages; and HPT's motion for partial summary judgment as to the twelfth cause of action for conversion was denied. *See generally*, ECF Nos. 157, 172. Within these summary judgment rulings, the Court also found that there were no issues of material fact as to some elements of certain claims, while other elements were to be determined at trial. Currently, HPT's first, second, fourth, fifth, sixth, seventh, eighth, ninth, eleventh, and twelfth causes of action remain in this matter. HPT's tenth claim for breach of contract has been decided in terms of breach but survives as to damages. ECF No. 157 at 19–21.

## II.   LEGAL STANDARD

"A motion *in limine* is used to preclude prejudicial or objectionable evidence before it is presented to the jury." Stephanie Hoit Lee & David N. Finley, *Federal Motions in Limine* § 1:1 (2018). The decision on a motion in limine is consigned to the district court's discretion— including the decision of whether to rule before trial at all. *See Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) (noting that a court may wait to resolve the evidentiary issues at trial, where the evidence can be viewed in its "proper context"). Motions in limine should not be used to resolve factual disputes or to weigh evidence, and evidence should not be excluded prior to trial unless the "evidence is clearly inadmissible on all potential grounds." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). Even then, rulings on these motions are not binding on the court, and the court may change such rulings in response to developments at trial. *See Luce v. United States*, 469 U.S. 38, 41 (1984).

Generally, all relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. The determination of whether evidence is relevant to an action or issue is expansive and inclusive. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384-87 (2008). However, the court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of" unfair prejudice, confusing the issues, and misleading the jury. Fed.

R. Evid. 403. Further, evidence may be excluded when there is a significant danger that the jury might base its decision on emotion, or when non-party events would distract reasonable jurors from the real issues in a case. *See Tennison v. Circus Circus Enterprises, Inc.*, 244 F.3d 684, 690 (9th Cir. 2001); *United States v. Layton*, 767 F.2d 549, 556 (9th Cir. 1985).

## III.    DISCUSSION

As a preliminary matter, the parties have requested a bench trial and trial will proceed accordingly. The primary purpose of a motion in limine is to permit the pre-trial resolution of evidentiary disputes without having to present potentially prejudicial evidence in front of a jury. *See Wright v. Watkins & Shepard Trucking, Inc.*, No. 2-11-CV-01575-LRH-GWF, 2016 WL 10749220, at *3 (D. Nev. Jan. 19, 2016); *see also Pinal Creek Group v. Newmont Mining Corp.*, No. CV–91–1764–PHX–DAE, 2006 WL 1766494, at * 1 (D. Ariz. June 26, 2006). In a jury-less bench trial, the rationale underlying pre-trial motions in limine does not apply because it is presumed the judge will disregard inadmissible evidence and rely only upon competent evidence. *Pinal Creek,* 2006 WL 1766494, at * 1.

"Where the gatekeeper and the factfinder are one and the same—that is, the judge—the need to make such decisions prior to hearing the testimony is lessened." *Wright*, 2016 WL 10749220, at *3 (quoting *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006)). Moreover, because "the judge rules on this evidentiary motion, in the case of a bench trial, a threshold ruling is generally superfluous." *United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009). The more prudent course in a bench trial, therefore, is to resolve evidentiary doubts in favor of admissibility. *See Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, No. 01 Civ 3796(PKL), 2004 WL 1970144, at *5 (S.D.N.Y. Sept. 3, 2004). "There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005). In the current matter, the Court will be better situated to decide many of the parties' evidentiary challenges during the bench trial. At trial, the Court will have more context and a deeper understanding of both the issues and evidence in this case.

///

///

**A.    Expert Testimony Motions in Limine**

The parties have filed multiple motions in limine dealing with expert qualification and the subject-matter and methodology of expert testimony. *See generally*, ECF Nos. 177-s, 185, 188-s). These motions are addressed below.

> 1.    HPT's motion in limine to bar testimony and report of Jeremiah H. Grant is denied without prejudice.

HPT motions the Court to bar the Expert Witness Rebuttal Report (the "Grant Report"), submitted on January 8, 2021, by Jeremiah H. Grant, MBA, CVA, CLCS ("Mr. Grant"). ECF No. 177-s at 1–2. HPT also motions the Court to preclude Cannata from calling Mr. Grant as a witness because Mr. Grant fails to meet the minimum standards for expert qualification pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). *Id.* HPT argues that Mr. Grant admits he has "no experience nor expertise in the automotive industry," that his opinions are outside the scope of his engagement, that his testimony does not provide helpful expertise or scientific knowledge, and that he offers no independent rebuttal opinions, alternative calculations, or methodologies in his report. *Id.* at 2–4.

In response, Cannata argues that Mr. Grant's experience, training, and skill qualify him as an expert. ECF No. 196 at 4. Cannata also argues that, as a rebuttal expert, Mr. Grant provides direct rebuttal opinions to the Bone Report and such rebuttal opinions and challenges to the assumptions of expert witnesses are permissible topics of rebuttal testimony. *Id.* at 5. Lastly, Cannata argues that rebuttal experts are not required to provide independent calculations, based on data, that arrive at different outcomes than those of the expert they are rebutting. *Id.*

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Expert testimony must rest on a reliable foundation and be relevant to the task at hand. *Daubert*, 509 U.S. at 597. "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). To determine the reliability of the principles and methods used, the court looks to: (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; (4) whether there are standards controlling the technique's operation; and (5) whether the theory or technique has general acceptance within the relevant scientific community. *Daubert*, 509 U.S. at 592–94. "These factors are 'meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case.'" *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014) (quoting *Primiano*, 598 F.3d at 564).

The Court's "inquiry into admissibility is a flexible one," in which the Court acts only as a gatekeeper, not a factfinder. *Pyramid Techs.,* 752 F.3d. at 813 (quotation omitted). The court's role is to "screen the jury from unreliable nonsense opinions, . . . not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (quotations omitted). In the Ninth Circuit, "under Rule 702, the trial judge is given discretion in his role as gatekeeper to decide what evidence is relevant, reliable, and helpful to the trier of fact." *Desrosiers v. Flight Int'l of Fla. Inc*., 156 F.3d 952, 961 (9th Cir. 1998).

With this background, the Court will exercise its discretion and preserve ruling on Mr. Grant's expert qualification and the admissibility of his testimony and report for trial. There is no doubt that Mr. Grant's testimony and the Grant Report are relevant to the matter before the Court, nor is there question that they rebut and challenge the findings of the Bone Report. And while HPT questions whether Mr. Grant offers any independent opinions or calculations, failure to do so would not provide sufficient grounds for exclusion. *See Laflamme v. Safeway, Inc.,* No. 3:09-CV-00514, 2010 WL 3522378, at *3 (D. Nev. Sept. 2, 2010) ("As long as defendant's rebuttal expert witnesses speak to the same subject matter the initial experts addressed and do not introduce novel arguments, their testimony is proper under Federal Rule of Civil Procedure 26(a)(2)(C) and related

8

case law from District Courts in this circuit.").

Notably, the Court is not tasked with deciding whether the Grant Report or the Bone Report is more credible, and a determination as to exclusion before a bench trial would seemingly serve that purpose. Whether a calculation technique, methodology, term definition, or opinion is better or worse than another, should be left to cross-examination and presentation of contrary evidence; it is not appropriate to exclude such expert testimony solely because methodologies differ. The Court will not conflate the question of admissibility with the weight to be given the testimony by considering the persuasiveness of competing scientific methods; those questions are for the fact finder. *See Ambrosini v. Labarraque*, 101 F.3d 129, 141 (D.C. Cir. 1996) ("By attempting to evaluate the credibility of opposing experts and the persuasiveness of competing scientific studies, the district court conflated the questions of the admissibility of expert testimony and the weight appropriately to be accorded such testimony by a fact finder.").

For these reasons, the Court denies without prejudice HPT's motion to exclude Mr. Grant's testimony and report. Moreover, the Court preserves any future ruling for trial should this issue emerge. In preserving a ruling for trial, each party is given the opportunity to qualify their experts, present relevant testimony, and make pertinent objections which will be adjudged in proper context. *See Hawthorne*, F. Supp. 1400–02 (reasoning that questions of foundation and relevancy are often best adjudged at trial where they can be "resolved in proper context," and that the "proper time to challenge the accuracy and reliability of an expert opinion is at trial.").

> 2.   Cannata's motions in limine to disqualify and exclude the testimony of John Bone and Elizabeth Groves are denied without prejudice.

Cannata motions the Court to disqualify and exclude testimony from HPT's proposed expert Mr. Bone because his opinions, testimony, and expert report rely on speculative facts and are founded in unreliable methodology. ECF No. 185 at 2. Specifically, Cannata argues that Mr. Bone did not rely on sufficient data, did not use reliable methods and principals in computing damages, and failed to apply the methods to the facts of this case. *Id*. at 8. HPT argues that Mr. Bone's testimony meets the applicable relevance and reliability standards, that he is more than qualified, and that his highly specialized knowledge will assist the trier of fact here. ECF No.

194 at 3.

Cannata also motions the Court to disqualify and exclude HPT's proposed expert Elizabeth Groves ("Ms. Groves") from testifying at trial because Ms. Groves does not meet the expert qualification standards in the fields of automobile tuning, software design, and software development. ECF No. 188-s at 2. Specifically, Cannata argues that Ms. Groves' expertise in physics will not assist the factfinder in this case. *Id*. at 2. HPT argues that Ms. Groves' knowledge, skill, experience, training, and education qualify her as an expert, and that her testimony meets the applicable relevance and reliability standards. ECF No. 195 at 3.

The Court denies Cannata's motions to disqualify and exclude testimony from HPT's proposed experts for similar reasons as those mentioned above. *See* expert qualification discussion *supra* Section III.A.1. Again, "[d]isputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony." *Grano v. Sodexo Mgmt., Inc.*, No. 3:18-CV-1818-RSH-BLM, 2023 WL 125590, at *17 (S.D. Cal. Jan. 6, 2023) (quoting *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230–31 (9th Cir. 1998)). The Court will not confuse questions of admissibility with questions of weight. Any objections to expert qualification, subject-matter, or methodology should be brought at trial where they can be adjudged in the most proper context.

Accordingly, both Cannata's motions to exclude expert testimony are denied without prejudice. The Court preserves ruling on this issue for trial. Moreover, HPT's requests for oral argument in response to Cannata's motions are denied.

### B.    Parol Evidence Rule Motions in Limine

The parties have filed two motions in limine that both deal, to an extent, with the exclusion of certain evidence because of the Purchase Agreement and the parol evidence rule. *See generally*, ECF Nos. 179-s, 183). These motions are addressed below.

///

///

///

///

1.   <u>HPT's seventh consolidated motion in limine to exclude and bar evidence as to any negotiations or commutations leading up to the Purchase Agreement as violative of the parol evidence rule is denied without prejudice.</u>

HPT motions the Court to exclude and bar any negotiations or communications that pertain to and pre-date the Purchase Agreement because such evidence would violate the parol evidence rule. ECF No. 179-s at 11. HPT anticipates that Cannata will attempt to introduce evidence "concerning corporate governance and his alleged removal from the company by [Prociuk and Piastri] that led to the parties' discussions concerning a buy-out of his interest in the company." *Id*. at 12. HPT claims that the following Purchase Agreement clause is the source of integration:

> 10.13 <u>Entire Agreement</u>. This Agreement, together with the Exhibits hereto (which are an integral part of and by this reference are hereby incorporated into this Agreement), is intended by the parties as a final expression of their agreement and intended to be a complete and exclusive statement of the agreement and understanding of the parties in respect of the subject matter contained herein and therein. [. . .] This Agreement, together with the Exhibits hereto, supersedes all prior agreements and understandings between the parties with respect to such subject matter."

*Id*. at 11. Because the Purchase Agreement is fully integrated, HPT argues that Cannata should be barred from introducing any extrinsic evidence pertaining to prior negotiations and communications on the same subject-matter. *Id*. at 12.

In response, Cannata argues that HPT motion is an unfair attempt to preclude Cannata from making any reference to the Buy Sell Agreement, while permitting HPT to reference it when favorable. ECF No. 197-s at 10. Cannata argues that a blanket ruling "prohibiting all communications" prior to Purchase Agreement would not align with the purpose of the parol evidence rule and, instead, urges the Court to wait and address any specific communications as they arise at trial. *Id*. at 11.

"The parol evidence rule will only apply to exclude extrinsic evidence if the contract at issue is integrated." *Traumann v. Southland Corp*., 842 F. Supp. 386, 390 (N.D. Cal. 1993). Integration is a question of "whether the parties intended the written instrument to be [. . .] the complete and final expression of their agreement." *Id*. Moreover, integration is a question of law for the court and includes analysis of the language of the contract as well as prior or

11

contemporaneous representations "only if they do not directly contradict the express terms of written agreement." *Id*.

Here, there is strong evidence that the parties intended to make the Purchase Agreement an integrated agreement. The language of the contract is straightforward and leaves no ambiguity as to the parties' intention for integrating the Purchase Agreement. ECF No. 183 at 33 ("This Agreement, [. . .], is intended by the parties as a final expression of their agreement" and "supersedes all prior agreements and understandings between the parties with respect to such subject matter."). As such, the Court finds that Purchase Agreement to be integrated, potentially warranting the application of the parol evidence rule.

However, a general exclusion barring Cannata from introducing "*any*" negotiations or communications leading up to the Purchase Agreement is not warranted. (emphasis added). The parol evidence rule only bars parol evidence that contradicts or varies the written agreement's terms. *Crockett & Meyers, Ltd., v. Napier, Fitzgerald & Kirkby, LLP*, 440 F.Supp.2d 1184, 1191 (D. Nev. 2006). Therefore, the parol evidence rule does not prohibit all types, or any type of evidence. For example, parol evidence "is admissible to prove a separate oral agreement regarding any matter not included in the contract or to clarify ambiguous terms so long as the evidence does not contradict the terms of the written agreement." *See Crockett & Myers,* 440 F. Supp. 2d at 1191 (quoting *Ringle v. Bruton*, 120 Nev. 82, 91 (2004)); *see also Crow–Spieker # 23 v. Robinson*, 97 Nev. 302, 305 (1981) ("the existence of a separate oral agreement as to any matter on which a written contract is silent, and which is not inconsistent with its terms, may be proven by parol [evidence]"); *State ex rel. List v. Courtesy Motors*, 95 Nev. 103, 107 (1979) (stating that parol evidence is admissible to determine intent and agreement when the written contract is ambiguous).

The Court finds that a blanket exclusion as to any evidence would be premature. Accordingly, the Court denies without prejudice HPT's motion and preserves ruling on this issue for trial. At trial, HPT will have the opportunity to challenge specific pieces of evidence that align more closely with the purpose and requirements of the parol evidence rule.

///

///

2.   <u>Cannata's motion in limine to exclude enforcement of, or reference to, the Buy Sell Agreement and its terms is denied without prejudice.</u>

Cannata motions the Court to exclude enforcement of or reference to the Buy Sell Agreement and its terms because such evidence would violate the parol evidence rule and the merger doctrine. ECF No. 183 at 3. Cannata claims that (1) the Purchase Agreement contains an integration clause, (2) the Buy Sell Agreement and the Purchase Agreement contemplate the same subject-matter, and (3) that the Purchase Agreement contemplates the purchase price of Cannata's ownership in a manner that is inconsistent with the Buy Sell Agreement. *Id*. at 6–7. HPT argues that the merger doctrine and parol evidence rule are irrelevant here because HPT is not attempting to change or modify any of the Purchase Agreement's terms, but rather use the Buy Sell Agreement to show that if HPT learned of Cannata's misconduct earlier, it would have immediately terminated him for cause pursuant to the Buy Sell Agreement and the need for the Purchase Agreement would have never existed. ECF No. 191 at 2.[3]

The Court has already found that the Purchase Agreement to be an integrated agreement. *See* parol evidence rule discussion *supra* Section III.B.1. Further, both the Purchase Agreement and the Buy Sell Agreement clearly contemplate the same subject-matter—the purchase price of a member's ownership in HPT. Cannata is correct that courts are generally inclined to apply the merger doctrine or parol evidence rule when the subsequent contract contains an integration clause. *See Traumann,* 842 F.Supp. at 390; *see also WFC Commodities Corp. v. Linnco Futures Grp., Inc*., No. 98 C 1354, 1998 WL 834374, at *3 (N.D. Ill. Nov. 25, 1998). However, among other things, the parol evidence rule requires that the two contracts at issue contain inconsistencies. *See Golden Press, Inc. v. Pac. Freeport Warehouse Co*., 97 Nev. 163, 165 (1981) (holding that the district court erred in allowing parol evidence to alter an express term in the subsequent agreement

---

[3]   At the summary judgment stage, the Court found that no triable issues of fact existed as to whether Cannata's concealment was such that HPT would have acted differently during buyout negotiations had it been aware of it. ECF No. 157 at 15. Therefore, the need for HPT to reference the Buy Sell Agreement to show it would have acted differently had it known of Cannata's concealment and misconduct is non-existent. As the Court previously held, there are no triable issues of fact regarding this element.

because the two agreements at issue had fundamental inconsistencies and therefore, the parol evidence rule should have barred the parol evidence); *see also Courtois v. Millard*, 174 Ill. App. 3d 716, 720 (1988) (reasoning the merger doctrine applied because "the inconsistencies between the two contracts evinces the conclusion that the two parties intended for the second contract to control their agreement and to supersede the first contract"); *see also Linnco Futures Grp.,* 1998 WL 834374, at *3 (reasoning that the parol evidence rule applied because "there is at least one significant inconsistency between the two sets of contracts: namely, in the forum selection clauses[.]").

Here, Cannata specifically argues the agreements are inconsistent with regard to the calculation of purchase price. ECF No. 183 at 6–7 Specifically, he argues that the Buy Sell Agreement incorporates a "Fair Market Value" calculation for purchase price, and that the Purchase Agreement does not. *Id*. While there is no mention of a "Fair Market Value" calculation for purchase price in the Purchase Agreement, Cannata's allegation does not address the Buy Sell Agreement's plain language:

> 5.3 <u>Purchase Price</u>. Except as stated otherwise in this Agreement (see Death of Member and Divorce of Member), the purchase price (the "Purchase Price") of the Withdrawing Member's Interests (whether purchased by the Remaining Members or the LLC) shall be determined either by a written agreement entered into by the parties as of the Withdrawal Date *or* according to the formula set forth in Section 5.4 [Fair Market Value].

ECF No. 183 at 41; (emphasis added). The Buy Sell Agreement clearly states that the parties may determine purchase price by either (1) a written agreement entered into by the parties, or (2) using the Fair Market Value calculation subsequently defined in the Buy Sell Agreement. The parties are given two avenues here and even Cannata admits that they exercised the first option to determine purchase price. *Id*. at 6. The Court finds that Cannata has failed to demonstrate an inconsistency between the two agreements that would warrant the application of either the parol evidence rule or the merger doctrine. However, the Court's finding on this issue does not preclude a finding at trial that an inconsistency between the two agreements exists. To that extent, the parol evidence rule may apply and if a party attempted to contradict the Purchase Agreement with such evidence, the Court may exclude it. Such instances will be dealt with accordingly at trial.

14

The Court denies without prejudice Cannata's motion to exclude enforcement or reference to the Buy Sell Agreement and preserves ruling on this issue for trial. Further, the Court denies HPT's request for oral argument on the motion.

### C.      HPT's Remaining Motions in Limine

1.      HPT's first consolidated motion in limine to exclude non-party and non-expert witnesses from the courtroom during testimony of other witnesses is granted.

HPT motions the Court to exclude all persons identified by the parties as witnesses in this matter, or whom the parties reasonably anticipate could be called as impeachment, rebuttal, or surrebuttal witnesses, from the courtroom during the testimony of any other witness. ECF No. 179- s at 2–3. HPT specifically requests that (1) parties in this matter, or the designated representatives of non-natural parties, and (2) any witness identified in the pre-trial order by the parties as experts, be exempt from this exclusion. *Id*. at 3. Cannata does not oppose this motion and agrees to the exclusion. ECF No. 197 at 3.

"At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony[.]" Fed. R. Evid. 615. The Rule does not permit the exclusions of parties who are natural persons, officers or employees of a party that are not natural persons, persons whose presence is essential to presenting a party's claim or defense, or persons authorized by statute to be present. *Id*. Here, the parties have met, conferred, and agreed that all non-party and non-expert witnesses be excluded from the courtroom during the testimony of other witnesses. ECF No. 197 at 3. Therefore, the Court grants HPT's motion; all witnesses identified by the parties, and those reasonably anticipated as impeachment, rebuttal, or surrebuttal witnesses, be excluded from the courtroom during the testimony of any other witness. Parties, designated representatives of non-natural parties, and expert witnesses that were identified by the parties as such are exempt from this exclusion.

2.      HPT's second, fifth, sixth, ninth, and eleventh consolidated motions in limine to exclude and bar pieces of evidence based on relevance, prejudice, confusion, and misleading are denied without prejudice.

In its second consolidated motion, HPT motions the Court to exclude and bar any evidence as to the financial status or wealth of any party because such evidence is not relevant to the claims

and defenses in this matter. ECF No. 179-s at 3. In response, Cannata argues that the parties'
financial status, particularly HPT's, is relevant to the alleged damages suffered by HPT. ECF No.
197-s at 3.

In its fifth consolidated motion, HPT motions the Court to exclude and bar evidence as to
HPT's sales, profitability, or financial performance because such evidence is not relevant, and
admission would create confusion and prejudice. ECF No. 179-s at 8. In response, Cannata argues
that HPT's relevancy objection is misplaced, and that HPT's profitability and financial
performance are both intricate considerations of HPT's claimed damages. ECF No. 197-s at 7.

In its sixth consolidated motion, HPT motions the Court to exclude and bar evidence as to
any alleged third-party malfeasance, including that of Mr. Sykes-Bonnett, and to exclude and bar
evidence of other lawsuits.[4] ECF No. 179-s at 9. Specifically, HPT requests that the Court exclude
any reference or evidence relating to the Sykes-Bonnett Case, the amount HPT sought from the
defendants in that case, any resolution or determination in that case, and any reference or argument
as to the potential recovery HPT should or will receive in that case. *Id*. at 10. HPT argues that
evidence of third-party malfeasance, evidence that HPT was or is involved in other litigation, and
evidence that HPT could recover damages from other litigation with factual overlap, is irrelevant,
misleading, and highly prejudicial. *Id*. at 11. In response, Cannata argues that the actions of Mr.
Sykes-Bonnett and, in general, the Sykes-Bonnett Case are entirely relevant because HPT
constantly referenced and sought discovery on the Cannata-Sykes-Bonnett relationship. ECF No.
197-s at 7–8.

In its ninth consolidated motion, HPT motions the Court to exclude and bar any attempt
Cannata might make to introduce evidence that, because HPT failed to terminate him for previous
misconduct, HPT similarly would have failed to terminate him for the malfeasance alleged here.
ECF No. 179-s at 13. HPT argues that such evidence is not relevant (ECF No. 179-s at 13), but

---

[4]    HPT filed a different lawsuit against Mr. Sykes-Bonnett and others, alleging misconduct,
in the United States District Court for the District of Washington (the "Sykes-Bonnett
Case"). This Court is aware of that lawsuit and its distinct nature from the matter pending
before the Court.

Cannata argues it could be relevant based on the Court's evidentiary ruling as to the Buy Sell Agreement. ECF No. 197-s at 13.

Finally, in its eleventh consolidated motion, HPT motions the Court to exclude and bar any attempt Cannata might make to introduce evidence that the Purchase Agreement should be rescinded, that the Buy Sell Agreement should be reinstated, or that the Court cannot return the parties to the status quo that existed in 2016, because such "recission" evidence is irrelevant and confusing. ECF No. 179-s at 14–15. In response, Cannata argues that this motion is HPT's attempt to preclude Cannata's assertion of legal arguments, instead of a motion to exclude evidence. ECF No. 197-s at 16.

Although these consolidated motions contain different evidentiary subjects, they involve similar questions of relevance, potential prejudice, confusion, and misleading. In general, relevant evidence is admissible. Fed. R. Evid. 402. Conversely, irrelevant evidence is not admissible. *Id*. Evidence that "has any tendency to make a fact more or less probable than it would be without the evidence[,]" is considered relevant. Fed. R. Evid. 401. The determination of whether evidence is relevant to an action or issue is expansive and inclusive. *See Sprint/United Mgmt.*, 552 U.S. 379, 384-87 (2008). "A district court is accorded a wide discretion in determining the admissibility of evidence ... particularly ... with respect to Rule 403 since it requires an on-the-spot balancing of probative value and prejudice." *Sprint/United Mgmt.,* 552 U.S. at 384.

Here, HPT argues that the pieces of evidence contemplated by its second, fifth, sixth, ninth, and eleventh consolidated motions in limine are not relevant to this case. *See* ECF No. 179-s at 3, 8, 11, 13, 15. For example, HPT's second consolidated motion argues that the financial status or wealth of any party has no relevance to HPT's alleged claims or Cannata's asserted defenses. ECF 179-s at 3. Moreover, many of these consolidated motions seek exclusion of evidence based on the Federal Rule of Evidence 403 balancing test which weighs probative value against prejudice, confusion, or misleading. *See id*. at 8, 11, 15. For example, HPT's sixth consolidated motion in limine argues that admitting evidence of third-party malfeasance, HPT's other litigation, or HPT's potential damages recovery from other litigation, would be misleading and highly prejudicial. *Id*. at 11. HPT argues that this evidence is not relevant as well. *Id*.

As to these arguments, the Court agrees. The wealth and financial status of the parties here, as well as third-party malfeasance and HPT's other lawsuits or potential recovery from them, has no tendency to make the facts of this matter more or less probable than they would be without the evidence. However, evidentiary questions of relevancy and prejudice are often best adjudged at trial where they can be "resolved in proper context." *Hawthorne*, 831 F.Supp. at 1400. Offers of proof of prospective evidence can also serve a valuable function in assessing challenges of relevancy.

The Court finds that trial is the most appropriate place to decide these evidentiary motions concerning relevancy, prejudice, confusion, and misleading. Accordingly, the Court denies without prejudice HPT's second, fifth, sixth, ninth, and eleventh consolidated motions in limine.

3.  HPT's third consolidated motion in limine to exclude and bar evidence of settlement offers, communications, or negotiations is granted with the understanding that settlement negotiation-type evidence will be excluded only when the evidence concerns the matter currently before the Court, and when the evidence is offered for a purpose contemplated by Fed. R. Evid. 408.

HPT motions the Court to exclude and bar any evidence of settlement offers, communications, or negotiations made during settlement discussions or mediation proceedings because such evidence is prohibited at trial by the federal rules of evidence. ECF No. 179-s at 3. Cannata does not oppose the motion and agrees that evidence of settlement offers, communications, and negotiations should be excluded per the rules, but that the exclusion is limited as to those settlement offers and negotiations pertaining to the matter currently before the Court, not other or related proceedings. ECF No. 197-s at 4.

Evidence of furnishing, promising, offering, accepting, or promising to accept or offer, valuable consideration to settle a claim, and conduct or statements made during settlement negotiations are not admissible at trial when used to prove or disprove the validity or amount of a disputed claim, or to impeach by prior inconsistent statement or contradiction. Fed. R. Evid. 408. Generally, Federal Rule of Evidence 408 prohibits evidence of settlement negotiations "to establish the strength or weakness of a claim." *Benkirane v. Am. Fam. Connect Prop. & Cas. Ins. Co*., No. 2-20-CV-01451-JCM-EJY, 2022 WL 225266, at *3 (D. Nev. Jan. 25, 2022). However,

18

1  courts may admit this type of evidence for another purpose. Fed. R. Evid. 408(b); *Rhoades v. Avon*

2  *Prod., Inc*., 504 F.3d 1151, 1161 (9th Cir. 2007) ("The court may admit this evidence for another

3  purpose, such as proving a witness's bias or prejudice, [or] negating contention of undue delay[.]").

4        Here, the parties have met, conferred, and agreed to exclude settlement offers and related

5  communications and negotiations for the purposes of proving liability or damages pursuant to

6  Federal Rule of Evidence 408 and Federal Rule of Civil Procedure 68. ECF No. 197-s at 4. To this

7  extent, the Court grants HPT's motion. However, HPT's motion is broadly written and requests

8  that the Court "exclude *any* evidence or argument of settlement offers during the course of any

9  settlement offers, negotiations and communications." ECF No. 179-s at 3, (emphasis added).

10  Federal Rule of Evidence 408 is limited in scope to settlement negotiation-type evidence offered

11  to "either prove or disprove the validity or amount of a disputed claim or to impeach by prior

12  inconsistent statement or a contradiction[.]" *See* Fed. R. Evid. 408. Further, Federal Rule of

13  Evidence 408 requires "that the claim as to which a settlement offer was made and the claim at

14  issue in the litigation in which the offer is proffered as evidence must be the same claim."

15  *Armstrong v. HRB Royalty, Inc*., 392 F. Supp. 2d 1302, 1304–05 (S.D. Ala. 2005). HPT's motion

16  fails to capture such nuance; there is no mention that the exclusion applies only to settlement

17  negotiation-type evidence pertaining to settlement negotiations between the parties from this

18  matter.

19        For these reasons, the Court grants HPT's motion to bar and exclude settlement and

20  negotiation-type evidence, but with the understanding that the exclusion will only apply to

21  settlement negotiation-type evidence that falls within the clear bounds of Federal Rule of Evidence

22  408. The Court will only apply Rule 408 to evidence offered for a purpose contemplated by the

23  rule and to evidence from settlement negotiation communications between the parties in this

24  matter.

25  ///

26  ///

27  ///

28  ///

1
2
3

    4.    <u>HPT's fourth consolidated motion in limine to exclude and bar evidence that all or part of its source code, superchips code, or any intellectual property was not created, developed, or owned by HPT, including testimony from Cannata's expert Mark D. Gianturco, Ph.D., is denied.</u>

4
5
6
7
8
9
10
11
12
13

HPT motions the Court to exclude and bar evidence that its source code, superchips code, or any intellectual property was not created, developed, or owned by HPT, including testimony from Cannata and Cannata's expert Mark D. Gianturco, Ph.D ("Mr. Gianturco"). ECF No. 179-s at 4–8. In its motion, HPT alleges that Cannata and Mr. Gianturco have attempted to introduce evidence that the source code Cannata shared with third parties was developed by other original equipment manufacturers, not HPT. *Id*. HPT specifically argues that Mr. Gianturco has no foundation or personal knowledge to make this argument and that he testified his reported opinion would change if HPT "did have the rights to use that code[.]" *Id*. at 7. As the basis for exclusion, HPT argues that evidence suggesting the intellectual property at issue was not developed by HPT is irrelevant, hearsay, speculative, demonstrably false, and improper. ECF No. *Id*. at 8.

14
15
16
17
18
19

In response, Cannata argues that HPT is required to show ownership or right of possession as to the trade secrets and copyrighted information at issue as part of the claims it has brought against Cannata. ECF No. 197-s at 5. Cannata alleges that HPT knows of this requirement as evidenced by HPT's Complaint. ECF No. 1 at 20–25. Because of this, Cannata argues that who owned the intellectual property, trade secrets, and copyrighted information at issue is entirely relevant here. ECF No. 197-s at 5.

20
21
22
23
24
25
26
27
28

The Court previously found that HPT's alleged trade secrets identification to be incomplete because HPT had failed to identify why each trade secret is "separate… from matters of general knowledge in the trade or of special knowledge of those persons… skilled in the trade.". ECF No. 157 at 17 (quoting *Imax Corp. v. Cinema Techs., Inc.,* 152 F.3d 1161, 1164 (9th Cir. 1998)). Further, the Court found that HPT had not yet established that any specific trade secret identified has independent economic value. ECF No. 157 at 1. A plaintiff asserting a misappropriation of trade secrets claim must identify their purported trade secrets with sufficient detail and precision. *See Imax*, 152 F.3d at 1164 (the plaintiff bears the burden of "describ[ing] the subject matter of the trade secret with sufficient particularity" (citation omitted)).

Here, to state a claim for trade secret misappropriation, HPT must allege, among other things, that it possessed a valuable trade secret. *See* 18 U.S.C. § 1839; *see also Physician's Surrogacy, Inc. v. German*, No. 17-cv-718-MMA, 2018 U.S. Dist. LEXIS 16261 (S.D. Cal. Jan. 31, 2018); *Switch Ltd. v. Fairfax*, No. 2:17-cv-02651-GMN-VCF, 2018 U.S. Dist. LEXIS 148818 (D. Nev. Aug. 30, 2018).[5] Who owned or possessed the trade secrets at issue here is relevant to at least some of HPT's asserted claims as well as Cannata's defenses. Without establishing ownership or possession of the alleged intellectual property, and specifically identifying that intellectual property, HPT cannot prevail on its claims for misappropriation and copyright violation. The evidence HPT seeks to exclude as to who created, developed, or owned the intellectual property at issue is necessary for the factfinder to determine certain elements of HPT's asserted claims.

For these reasons, the Court denies HPT's motion to bar and exclude evidence that its source code, superchips code, or any intellectual property was not created, developed, or owned by HPT, including testimony from Cannata and Mr. Gianturco.

> 5.   HPT's eighth consolidated motion in limine to exclude and bar evidence that Cannata did not receive a pecuniary benefit from his alleged misappropriation of HPT's intellectual property is denied.

HPT motions the Court to exclude and bar any argument or evidence that Cannata did not receive any benefit from his alleged misappropriation and admitted dissemination of HPT's intellectual property because such evidence is both irrelevant and misleading. ECF No. 179-s at 12–13. HPT argues that there is evidence on the record contradicting Cannata's claim that he has not received any benefit from the alleged misappropriation such as Cannata's wife being awarded ownership in Syked, as HPT postulates, to circumvent certain provisions of the Purchase Agreement. *Id*. In response, Cannata argues that "nothing could be more relevant" to HPT's unjust enrichment claim than whether Cannata received a benefit from the alleged misappropriation. ECF No. 197-s at 12. Cannata also notes that the Court already held that Cannata receiving a benefit is

---

[5]   Under both the NUTSA and ITSA, misappropriation of trade secrets is proven similarly. *See Switch Ltd. v. Fairfax*, No: 2:17- cv-02651-GMN-VCF, 2018 U.S. Dist. LEXIS 148818, *10 (D. Nev. Aug. 30, 2018) (NUTSA); *Property Rights Law Group, P.C. v. Lynch*, No. 13-00273 SOM/RLP, U.S. Dist. LEXIS 127330, *7 (D. Haw. Sept. 6, 2013) (ITSA).

21

a necessary element HPT must show if it wishes to succeed on its unjust enrichment claim. *Id*. at 12; ECF No. 157 at 18. However, depending upon the evidence, it is possible that a benefit to Cannata's wife may be a benefit to Cannata.

The Ninth Circuit and district courts have recognized that unjust enrichment, in the context of trade secret damages, may be appropriate where the infringer receives a benefit as a result of their wrongdoing. *See Bourns, Inc. v. Raychem Corp*., 331 F.3d 704, 709-10 (9th Cir. 2003). A benefit to Cannata, pecuniary or otherwise, is a relevant piece of HPT's unjust enrichment claim, particularly in the calculation of trade secret damages.

Accordingly, the Court denies HPT's motion to exclude and bar any argument or evidence that Cannata did not receive a pecuniary benefit from his alleged misappropriation. This will obviously be a contested issue at trial.

> 6. <u>HPT's tenth motion in limine to exclude and bar any attempt Cannata might make to introduce alternative bases for calculating damages is denied without prejudice.</u>

HPT motions the Court to exclude and bar any attempt Cannata might make to introduce alternative bases for calculating HPT's damages because such evidence would be highly prejudicial. ECF No 179-s at 14. This motion is tightly tied to HPT's motion to bar the report and testimony of Mr. Grant. *Id*. at 13–14. HPT claims that Mr. Grant was retained to "provide expert opinions relative to damages being claimed by [HPT], and a rebuttal of the report prepared by [Mr.Bone]" but that Mr. Grant did not provide any alternative theories as to how damages should be calculated and Cannata should not be able to offer alternative theories so close to trial. *Id*. In response, Cannata argues that Mr. Grant offered independent theories and rebuttal opinions in his report and alleges that rebuttal experts are permitted to challenge the assumptions of an expert report without generating independent calculations that arrive at different outcomes than the experts they are rebutting. ECF No. 197-s at 13–15.

The Court has already denied without prejudice, and preserved ruling for trial, HPT's motion to bar and exclude the testimony and report of Mr. Grant. *See* expert qualification discussion *supra* Section III.A.1. Because HPT's tenth motion in limine is so intricately bound up in its motion to bar and exclude the testimony and report of Mr. Grant, the Court also denies HPT's

tenth motion. The Court will hear the testimony of proposed experts at trial and, there, decide matters of expert qualification and expert testimony subject-matter. Moreover, evidentiary issues of potential prejudice are best decided at trial. *See Hawthorne*, 831 F. Supp. at 1400.

For these reasons, the Court denies without prejudice HPT's motion to exclude and bar any attempt Cannata might make to introduce alternative bases for calculating HPT's damages. The Court preserves ruling on this issue for trial.

### D. Cannata's Remaining Motions in Limine

#### 1. Cannata's motion in limine to preclude any reference to development costs incurred by HPT for alleged trade secrets is denied.

Cannata motions the Court to preclude any reference to development costs incurred by HPT for its alleged trade secrets. ECF No 182 at 1. Cannata contends that the way Mr. Bone calculates damages in his report is at odds with the Court's Summary Judgment Order. *Id*. at 2. Specifically, Cannata contends that the Court previously held "HPT can only seek to recover development costs that Cannata saved by misappropriating HPT's trade secrets – not how much the trade secrets actually cost to develop" (ECF No. 157 at 18), but that the Bone Report alleges damages entirely made up of development costs only to later rebrand them as avoided costs (ECF No. 182 at 2). In response, HPT argues that Cannata misstates and misconstrues the Court's prior ruling. ECF No. 190 at 2. In support of its argument, HPT alleges that the Court's previous ruling on this issue relied on Ninth Circuit caselaw that utilized development costs in calculating unjust enrichment damages it awarded to plaintiffs in the form of avoided costs. *Id*. at 2–3.

The Ninth Circuit has recognized that unjust enrichment, in the context of trade secret damages, may be appropriate where the infringer receives a benefit as the result of their wrongdoing. *See Bourns,* 331 F.3d at 709–10. Specifically, "recovery of development costs saved by misappropriating, rather than developing, the trade secrets at issue" may be sought as damages by the plaintiff. *Oracle Corp. v. SAP AG*, 734 F. Supp.2d 956, 970 (N.D. Cal. 2010). While this Court has held that HPT can only seek to recover development costs that Cannata saved by misappropriating HPT's trade secrets, not how much the trade secrets actually costs to develop, caselaw demonstrates that development costs may be a piece of an avoided costs calculation. *See*

*Bourns*, 331 F.3d at 709–10 (affirming $9M unjust enrichment damages award based on evidence that trade secrets cost $3M per year to develop and that defendant had saved at least 3 years of development by its misappropriation). Additionally, other Circuits have held that the cost incurred by plaintiffs to develop their intellectual property is a permissible proxy for the cost the alleged wrongdoer avoided through misappropriation. *See PPG Indus. Inc v. Jiangsu Tie Mao Glass Co. Ltd*, 47 F.4th 156, 163 (3d Cir. 2022) (affirming the district court's method of using plaintiff's research and development costs as indicative of the costs the defendant avoided by misappropriating plaintiff's trade secrets); *see also GlobeRanger Corp. v. Software AG United States of Am., Inc*., 836 F.3d 477, 499 (5th Cir. 2016) (holding that an expert's damages model was not flawed nor unreliable because "[t]he costs a plaintiff spent in development—which is the method used by [plaintiff's] expert—can be a proxy for the costs that the defendant saved."). Therefore, the Court finds that development costs, incurred by HPT, may be a sufficient proxy to determine how much costs Cannata saved or avoided through his alleged misappropriation.

Accordingly, the Court denies Cannata's motion to preclude any reference to the development costs HPT incurred for its alleged trade secrets. Moreover, HPT's request for oral argument on the motion is denied.

2.   Cannata's motion in limine to preclude scientific, technical, or other testimony from any lay person not disclosed as an expert witness pursuant to Federal Rule of Evidence 702 is denied without prejudice.

Cannata motions the Court to preclude any scientific, technical, or other testimony from any lay person not disclosed as an expert witness, including but not limited to Prociuk and Piastri, as such testimony would violate Federal Rule of Civil Procedure 26(a) and Federal Rule of Evidence 702. ECF No. 184 at 2, 6. Specifically, Cannata alleges that HPT has "cloaked" Prociuk as a lay witness while he testifies on expert topics like comparative analyses of HPT and Syked's code lines. *Id*. at 5. In response, HPT argues that Cannata applies the rules defining expert testimony to a witness who is testifying to subject matters for which he has personal knowledge. ECF No. 192 at 2. Specifically, HPT argues that Prociuk may testify as to the lines of code at issue here, including comparison, because he wrote the code and, therefore, has personal knowledge of it. *Id*. at 3.

24

Federal Rule of Evidence 602 permits a witness to testify as to a matter that the witness has personal knowledge of and states that personal knowledge may be proved by the witness's own testimony. Fed. R. Evid. 602. "Personal knowledge includes opinions and inferences grounded in observations and experience." *Great Am. Assur. Co. v. Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d 1084, 1089 (N.D. Cal. 2009).

> Lay witnesses may testify about inferences pursuant to Rule 701: If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

*United States v. Whittemore*, 776 F.3d 1074, 1082 (9th Cir. 2015). "The evidence is inadmissible if the trial court finds that the witness did not perceive or observe that to which she testifies." *Great Am. Assur. Co. v. Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d 1084, 1089 (N.D. Cal. 2009). Questions of whether a "lay witness is qualified to testify as to any matter of opinion is a preliminary determination within the sound discretion of the trial court[.]" *United States v. Skeet*, 665 F.2d 983, 985 (9th Cir. 1982). The court is given discretionary latitude in permitting witnesses to testify as to their conclusions based on common knowledge and their own experience. *United States v. Trenton Potteries Co.*, 273 U.S. 392, 407 (1927).

The Court acknowledges the intersection between personal knowledge testimony and expert testimony. Here, the parties admit that Prociuk wrote some of the code at issue. ECF No. 192 at 3. Prociuk has personal knowledge of the code he wrote and may testify as to inferences in the form of opinion testimony that is rationally based on his perception, helpful to understand testimony or determine a fact at issue, and not based on scientific, technical, or other specialized knowledge within the scope of Federal Rule of Evidence 702. Whether Prociuk's, or any other witness's, testimony crosses the clear boundaries established by Federal Rule of Evidence 701 is a question the Court will be better situated to decide at trial. The Court will exercise its discretion upon hearing lay testimony at trial to determine whether it has crossed the expert testimony threshold.

Accordingly, the Court denies without prejudice Cannata's motion to preclude any scientific, technical, or other testimony from any lay person not disclosed as an expert witness,

including but not limited to Prociuk and Piastri. The Court preserves ruling on this specific issue for trial. The Court also denies HPT's request for oral argument on Cannata's motion.

3.   <u>Cannata's motion in limine to exclude HPT's alleged damages not properly disclosed pursuant to Federal Rule of Civil Procedure 26 is denied.</u>

Cannata motions the Court to exclude the damages alleged in the Bone Report because they were not properly disclosed in HPT's Federal Rule of Civil Procedure 26(a) disclosures, nor in its Federal Rule of Civil Procedure 26(e) supplemental disclosures. ECF No. 186 at 7. Cannata claims that HPT's Rule 26(a) initial $7,000,000 damages disclosure was too general and failed to include a "computation" of damages pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii). *Id*. at 16. Cannata also argues that the Bone Report, which computed $15,000,000 damages, is not a proper supplement of its initial damages disclosure. *Id*. at 2. Cannata contends that no exception to these rules applies because HPT's failure to disclose and supplement is neither harmless nor substantially justified. *Id*. at 8.

In response, HPT argues that Cannata's motion is unfounded and baseless because: (1) Cannata was given the Bone Report on November 20, 2020, (2) Cannata used the Bone Report in its deposition of Mr. Bone on March 8, 2021, and (3) the updated damages figures were the subject of the parties' cross motions for summary judgment. ECF No. 193 at 2–3. In light of this, HPT contends that Cannata never expressed any concern as to the updated figures, nor did he seek to extend discovery when he first learned of them. *Id*.

The Federal Rules of Civil Procedure require parties to make certain initial disclosures including a "computation of each category of damages claimed by the disclosing party[.]" Fed. R. Civ. P. 26(a)(1)(A)(iii). "A party is not excused from making its disclosures because it has not fully investigated the case[.]" Fed. R. Civ. P. 26(a)(1)(E). Although Rule 26 does not provide a specificity level for how the damages disclosure should be pleaded, the word "computation" itself suggests more than a lump-sum figure is required. *City and County of San Francisco v. Tutor-Saliba Corporation*, 218 F.R.D. 219, 221–22 (N.D. Cal . 2003). At the same time, Rule 26(a)'s initial computation of damages need not "be detailed early in the case before all relevant documents or evidence has been obtained by the plaintiff." *LT Game Int'l Ltd. v. Shuffle Master,*

*Inc.*, 2013 WL 321659, *6 (D. Nev. Jan. 28, 2013). Courts traditionally view "the initial damages computation [. . .] as a preliminary assessment that is subject to revision." *Tutor-Saliba*, 218 F.R.D. at 222.

Rule 26(a) initial disclosures must be supplemented or corrected "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1)(A). "The requirement to supplement is a duty, not a right." *Luke v. Family Care & Urgent Med. Clinics*, 323 Fed. App'x 496, 500 (9th Cir. 2009). Failure to fulfill these requirements means "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1).

"The party facing exclusion bears the burden of proving that failure to comply with Rule 26 was harmless or substantially justified." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir.2001). There are several factors that guide the court's determination of "whether substantial justification and harmlessness exist, including (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 242 (D. Nev. 2017). "District courts have wide discretion to determine whether to exclude evidence under Rule 37(c)(1)." *See Granados v. N. Nevada High Speed*, LLC, No. 3:14-CV-00081-LRH, 2014 WL 5503118, at *2–3 (D. Nev. Oct. 30, 2014); *see also R & R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1245 (9th Cir.2012).

The Court finds that although HPT may have committed technical violations of Rule 26, its noncompliance is harmless. Although broad, HPT's initial computation of damages was a preliminary assessment subject to revision. After HTP gathered relevant information, it provided Cannata with the expert report containing a new basis for a more precise damages computation. Cannata is correct that HPT did not properly supplement its initial damages computation. However, HPT disclosed the Bone Report to Cannata on November 20, 2020, nearly four months

prior to the close of discovery. Courts are likely to "exclude evidence when a party first discloses the material at issue shortly before trial or substantially after discovery has closed." *Granados,* 2014 WL 5503118, at *2–3, (quotation omitted). The harm done by disclosing an updated computation of damages via expert report nearly four months before the close of discovery is not the type of harm that generally causes courts to exclude evidence. *See Yeti by Molly*, 259 F.3d at 1105 (excluding expert evidence submitted within a month of trial and almost two years after the close of discovery); *see also Allstate Ins. Co. v. Nassiri*, No. 2:08–cv–0369, 2011 WL 2977127, at *5 (D. Nev. July 21, 2011) (quotation omitted) (reasoning that exclusion of evidence is generally reserved for "extreme situations in which the plaintiff did not provide a damages computation until shortly before trial or until well after the close of discovery"); *CCR/AG Showcase Phase I Owner, LLC v. United Artists Theatre Circuit, Inc*., No. 2:08–cv–0984, 2010 WL 1947016, at *8 (D. Nev. May 13, 2010) (quoting *Hoffman v. Constr. Protective Servs., Inc*., 541 F.3d 1175, 1180 (9th Cir.2008) ("[C]ourts are more likely to exclude damages evidence when a party first discloses its computation of damages shortly before trial and substantially after discovery has closed.")).

HPT disclosed the Bone Report and, the material at issue, to Cannata almost two years before trial. Any argument that Cannata suffered surprise or prejudice because of the new computation is unavailing and weakened by the fact that Cannata possessed the Bone Report for more than three months before he deposed Mr. Bone. Cannata had ample opportunity to cure any prejudice by questioning Mr. Bone as to the new damages computation during the deposition. Further, the Court does not find any bad faith in HPT's technical noncompliance. When asked in interrogatories to provide a calculation of damages, HPT stated the new figures were subject to ongoing discovery and investigation and would be disclosed in its expert report. ECF No. 130-s at 179. The Court finds that no gamesmanship or "hiding of the ball" to be present under these facts.

The Court finds that any failure by HPT to comply with Rule 26 was harmless. Accordingly, the Court denies Cannata's motion. Further, the Court denies HPT's request for oral argument on the matter.

///

///

**IV.    CONCLUSIONS**

IT IS THEREFORE ORDERED that HPT's motion in limine to bar the testimony and report of Jeremiah H. Grant (ECF No. 177-s) is **DENIED without prejudice.**

IT IS FURTHER ORDERED that HPT's consolidated motions in limine (ECF No. 179-s) is **GRANTED** in part and **DENIED** in part in accordance with this Order.

IT IS FURTHER ORDERED that HPT's first consolidated motion in limine to exclude non-party and non-expert witnesses from the courtroom during testimony of other witnesses (ECF No. 179-s at 2) is **GRANTED**;

IT IS FURTHER ORDERED that HPT's second consolidated motion in limine to exclude and bar any evidence relating to the financial status or wealth of any party is denied. (ECF No. 179-s at 2) is **DENIED without prejudice**;

IT IS FURTHER ORDERED that HPT's third consolidated motion in limine to exclude and bar evidence of settlement offers, communications, or negotiations (ECF No. 179-s at 3) is **GRANTED** in accordance with this Order;

IT IS FURTHER ORDERED that HPT's fourth consolidated motion in limine to exclude and bar evidence that all or part of its source code, superchips code, or any intellectual property was not created, developed, or owned by HPT, including testimony from Cannata's expert Mark D. Gianturco, Ph.D. (ECF No. 179-s at 4) is **DENIED**;

IT IS FURTHER ORDERED that HPT's fifth consolidated motion in limine to exclude and bar evidence as to HPT's sales, profitability, or financial performance (ECF No. 179-s at 8) is **DENIED without prejudice**;

IT IS FURTHER ORDERED that HPT's sixth consolidated motion in limine to exclude and bar evidence as to any alleged third-party malfeasance, including that of Kevin Sykes-Bonnett, and to exclude and bar evidence of other lawsuits (ECF No. 179-s at 9) is **DENIED without prejudice**;

IT IS FURTHER ORDERED that HPT's seventh consolidated motion in limine to exclude and bar evidence as to any negotiations or communications leading up to the October 20, 2016, Membership Interest Purchase Agreement as violative of the parol evidence rule (ECF No. 179-s

at 11) is **DENIED without prejudice**;

IT IS FURTHER ORDERED that HPT's eighth consolidated motion in limine to exclude and bar evidence that Cannata did not receive a pecuniary benefit from his misappropriation of HPT's intellectual property (ECF No. 179-s at 12) is **DENIED**;

IT IS FURTHER ORDERED that HPT's ninth consolidated motion in limine to exclude and bar evidence that Cannata ostensibly should have been terminated from HPT for cause, but was not, premised on his prior mishandling of books and records (ECF No. 179-s at 13) is **DENIED without prejudice**;

IT IS FURTHER ORDERED that HPT's tenth consolidated motion in limine to exclude and bar evidence any attempt to introduce alternative bases for calculating HPT's damages (ECF No. 179-s at 13) is **DENIED without prejudice**;

IT IS FURTHER ORDERED that HPT's eleventh consolidated motion in limine to exclude and bar evidence any attempt to argue or introduce evidence of recission of the Purchase Agreement (ECF No. 179-s at 14) is **DENIED without prejudice.**

IT IS FURTHER ORDERED that Cannata's motion in limine to preclude any reference to development costs incurred by HPT for alleged trade secrets (ECF No. 182) **DENIED**.

IT IS FURTHER ORDERED that Cannata's motion in limine to exclude enforcement or reference to the Buy Sell Agreement and the terms therein per applicable evidence rules (ECF No. 183) is **DENIED without prejudice**.

IT IS FURTHER ORDERED that Cannata's motion in limine to preclude scientific, technical, or other specialized testimony from any kay person not disclosed as an expert witness pursuant to FRE 702 (ECF No. 184) is **DENIED without prejudice**.

IT IS FURTHER ORDERED that Cannata's motion in limine to disqualify and exclude testimony from HPT's proposed expert John Bone (ECF No. 185) is **DENIED without prejudice**.

IT IS FURTHER ORDERED that Cannata's motion in limine to exclude HPT's alleged damages not properly disclosed pursuant to Fed. R. Civ. P. 26 (ECF No. 186) is **DENIED**.

IT IS FURTHER ORDERED that Cannata's motion in limine to disqualify and exclude testimony from HPT's propose expert Elizabeth Groves (ECF No. 188) is **DENIED without**

1    **prejudice**.

2            IT IS FURTHER ORDERED that the parties' motions to seal exhibits (ECF Nos. 181, 187,

3    & 199) are **GRANTED** ***nunc pro tunc.***

4            IT IS SO ORDERED.

5            DATED this 27th day of January, 2023.

6

7                                                    _____
                                                     LARRY R. HICKS
8                                                    UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28